1  NIMALKA R. WICKRAMASEKERA
   (SBN: 268518)
2  nwickramasekera@winston.com
   STEPHEN R. SMEREK
3  (SBN: 208343)
   ssmerek@winston.com
4  JASON C. HAMILTON
   (SBN: 267968)
5  jhamilton@winston.com
   SHILPA A. COORG
6  (SBN: 278034)
   scoorg@winston.com
7  WINSTON & STRAWN LLP
   333 S. Grand Avenue
8  Los Angeles, CA 90071-1543
   Telephone:  (213) 615-1700
9  Facsimile:   (213) 615-1750

10 Attorneys for Defendants ALPHATEC
   HOLDINGS, INC. and
11 ALPHATEC SPINE, INC.

Wilson Sonsini Goodrich & Rosati P.C.
PAUL D. TRIPODI II (SBN 162380)
ptripodi@wsgr.com
GRACE J. PAK (SBN 277705)
Wilson Sonsini Goodrich & Rosati P.C.
633 West Fifth Street, Suite 1550
Los Angeles, CA 90071
Telephone: 323-210-2900
Fax: 866-974-7329

WENDY L. DEVINE (SBN 246337)
wdevine@wsgr.com
One Market Plaza
Spear Tower, Suite 3300
San Francisco, California 94105-1126
Telephone: 415-947-2000
Fax: 415-947-2099

NATALIE J. MORGAN (SBN 211143)
nmorgan@wsgr.com
CHRISTINA DASHE (SBN 292360)
cdashe@wsgr.com
12235 El Camino Real
San Diego, CA 92130
Telephone: 858-350-2300
Fax: 858-350-2399

SARA L. TOLBERT (SBN 300945)
stolbert@wsgr.com
650 Page Mill Road
Palo Alto, CA 94304
Telephone: 650-593-9300
Fax: 650-493-6811

Attorneys for Plaintiff NuVasive, Inc.

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA – SAN DIEGO DIVISION**

| | |
|---|---|
| NUVASIVE, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>ALPHATEC HOLDINGS, INC., a Delaware corporation and ALPHATEC SPINE, INC., a California corporation,<br><br>Defendants. | CASE NO. 18-cv-00347-CAB-MDD<br><br>**JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE**<br><br>[Filed pursuant to Hon. Mitchell D. Dembin's Chambers Rule IV] |

# TABLE OF CONTENTS

                                                                      **Page**

I.     STATEMENT OF FACTS ...................................................................1

II.    SPECIFIC REQUESTS FOR PRODUCTION AT ISSUE.........................1

    A.     Request No. 1 ......................................................................1

           Alphatec's Statement: ..........................................................2

           NuVasive's Statement:.........................................................7

    B.     Request for Production No. 2........................................11

           Alphatec's Statement: ........................................................13

           NuVasive's Statement:.......................................................16

    C.     Request for Production No. 3........................................19

           Alphatec's Statement: ........................................................20

           NuVasive's Statement:.......................................................22

    D.    Request for Production No. 5........................................26

           Alphatec's Statement: ........................................................27

           NuVasive's Statement:.......................................................32

    E.     Request for Production No. 6........................................40

           Alphatec's Statement: ........................................................40

           NuVasive's Statement:.......................................................43

    F.     Request for Production No. 7........................................47

           Alphatec's Statement: ........................................................47

           NuVasive's Statement:.......................................................49

    G.    Request for Production No. 8........................................52

           Alphatec's Statement: ........................................................53

           NuVasive's Statement:.......................................................54

    H.    Request for Production No. 11.......................................56

           Alphatec's Statement: ........................................................57

           NuVasive's Statement:.......................................................59

    I.      Request for Production No. 12.......................................61

           Alphatec's Statement: ........................................................62

           NuVasive's Statement:.......................................................66

    J.     Request for Production Nos. 14 and 15 ........................70

           Alphatec's Statement: ........................................................71

           NuVasive's Statement:.......................................................72

III.   SPECIFIC INTERROGATORIES AT ISSUE ...........................................73

    A.     Interrogatory No. 6.................................................................73

           Alphatec's Statement: ........................................................75

           NuVasive's Statement:.......................................................79

    B.     Interrogatory No. 7.................................................................82

           Alphatec's Statement: ........................................................84

NuVasive's Statement:.................................................................87
C.   Interrogatory No. 9.................................................................90
Alphatec's Statement: .............................................................92
NuVasive's Statement:.............................................................97
IV.   **ALPHATEC'S POINTS AND AUTHORITIES** ........................102
A.   Legal Standard .......................................................................102
B.   NuVasive Refuses to Identify Invalidity Analyses or Prior Art .........103
C.   NuVasive Refuses to Support Its Priority Date Contentions.............103
D.   NuVasive Refuses to Search for Documents Regarding Ownership and Assignment of the Patents-in-Suit ...........................104
E.   NuVasive Seeks to Inappropriately Limit Its Productions Regarding Relevant Financials ...............................................104
F.   NuVasive Seeks to Inappropriately Limit Its Productions Regarding Royalty Agreements and Payments ..................................105
G.   NuVasive Seeks to Inappropriately Limit and Refuses to Produce Documents Regarding Its Inducements to Surgeons .........................106
H.   NuVasive Refuses to Search Prior Document Productions................106
I.   NuVasive Requests Unilateral Compromises From Alphatec............106
V.   **NUVASIVE'S POINTS AND AUTHORITIES** ..........................107
A.   Legal Standard – It Is Alphatec's Burden To Establish Relevance....107
B.   NuVasive's Response To Interrogatory Nos. 6 & 7 Was Proper .......108
C.   NuVasive Agreed To Supplement Its Priority Date Contentions.......109
D.   NuVasive Fully Responded To Request No. 8 ..................................109
E.   NuVasive Agreed To Produce Requested Financial Documents .......109
F.   NuVasive Agreed to Produce Relevant Agreements and Payments.........................................................................................110
G.   NuVasive Agreed To Apply ESI Search Terms For Request No. 1 ....................................................................................................110
H.   Alphatec's Demand for All Documents Any Witness Reviews At Any Time For Any Purpose Is Grossly Overbroad ...........................110
I.   The Remainder of Alphatec's "Disputes" Are Fishing Expeditions..................................................................................111
J.   Conclusion..............................................................................111

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alcon Research Ltd. v. Barr Labs., Inc.*,
    745 F.3d 1180 (Fed. Cir. 2014) ......................................................... 100

*Asyst Techs., Inc. v. Empak, Inc.*,
    2006 WL 1749592 (N.D. Cal. June 22, 2006) ............................... 75, 84

*Bally Techs., Inc. v. Business Intelligence Sys. Solutions, Inc.*,
    2011 WL 3892221 (D. Nev. Aug. 30, 2011) ....................................... 17

*Beckner v. El Cajon Police Dep't*,
    2008 WL 2033708 (S.D. Cal. May 9, 2008) ...................................... 102

*Blast Motion, Inc. v. Zepp Labs, Inc.*,
    2016 WL 5107677 (S.D. Cal. Mar. 2, 2016) ...............................*passim*

*Brown v. China Integrated Energy, Inc.*,
    2013 WL 12124097 (C.D. Cal. Sept. 4, 2013) ..................... 6, 42, 49, 86

*Covance, Inc. v. Inclin, Inc.*,
    2016 WL 5870011 (N.D. Cal. Oct. 7, 2016) ................................*passim*

*Dolarian Capital, Inc. v. SOC, LLC*,
    2012 WL 4026818 (E.D. Cal. Sept. 12, 2012) .............................*passim*

*Facedouble, Inc. v. Face.com, Inc.*,
    2014 WL 585868 (S.D. Cal. Feb. 13, 2014) ................................17, 24, 104, 105

*Folz v. Union Pac. R.R. Co.*,
    2014 U.S. Dist. LEXIS 15020 (S.D. Cal. Jan. 29, 2014) .................... 101

*Fresenius Med. Care Holding Inc. v. Baxter Int'l, Inc.*,
    224 F.R.D. 644 (N.D. Cal. Feb. 5, 2004) ..............................46, 51, 106

*Gen-Probe Inc. v. Becton, Dickinson & Co.*,
    2010 WL 2011526 (S.D. Cal. May 19, 2010) ..................................... 101

*Ivy Hotel San Diego, LLC v. Houston Cas. Co*
    2011 WL 13240367 (S.D. Cal. Oct. 20, 2011) ............................*passim*

*Jardin v. DATAllegro, Inc.*,
    2011 WL 1769835 (S.D. Cal. May 9, 2011) ...................................................... 108

*Leadership Studies, Inc. v. Blanchard Training & Dev., Inc.*,
    2017 WL 2819847 (S.D. Cal. June 28, 2017) .................................................... 108

*Loop AI Labs Inc. v. Gatti*,
    2016 WL 2342128 (N.D. Cal. May 3, 2016) .......................................... 75, 76, 84

*Lucent Techs., Inc. v. Gateway, Inc.*,
    543 F.3d 710 (Fed. Cir. 2008) ............................................................... 92, 99, 104

*M & F Fishing, Inc. v. Certain Underwriters at Lloyds*
    2007 WL 9706573 (S.D. Cal. Apr. 13, 2007) ...............................................*passim*

*Medicinova Inc. v. Genzyme Corp.*,
    2017 WL 2829691 (S.D. Cal. June 29, 2017) .................................................... 111

*Micro Motion, Inc. v. Kane Steel Co., Inc.*,
    894 F.2d 1318 (Fed. Cir. 1990) ......................................................... 35, 46, 52, 111

*Microsoft Corp. v. i4i Ltd. P'ship*,
    564 U.S. 91 (2011) ........................................................................................... 100

*Montgomery v. Wal-Mart Stores, Inc.*,
    2015 WL 11233384 (S.D. Cal. July 17, 2015)............................................... 59, 97

*Odyssey Wireless, Inc. v. Apple Inc.*,
    2016 WL 7634450 (S.D. Cal. Sept. 13, 2016) ............................... 92, 97, 99, 104

*Pandora Jewelry, LLC v. Bajul Imports, Inc.*,
    2011 WL 976623, at *1–2 (E.D. Mo. Mar. 17, 2011)........................................ 17

*Rainbow Pioneer No. 44-18-04A v. Haw. Nev. Inv. Co.*,
    711 F.2d 902 (9th Cir. 1983) ........................................................................ 76, 85

*Reinsdorf v. Skechers U.S.A., Inc.*,
    2012 WL 12882125 (C.D. Cal. May 11, 2012)............................................. 76, 84

*Rivera v. Nibco, Inc.*,
    364 F.3d 1057 (9th Cir. 2004) ......................................................... 35, 47, 52, 111

*In re Rivera*,
    2017 WL 5163695 (C.D. Cal. Apr. 14, 2017)................................................*passim*

*Salisbury v. Hickman*,
     2013 WL 4402789 (E.D. Cal. Aug. 14, 2013) ..............................................*passim*

*San Diego Unified Port Dist. v. Nat'l Union Fire Ins. Co. of Pittsburg*,
     2017 WL 3877732 (S.D. Cal. Sept. 5, 2017) .................................................. 86, 97

*San Diego Unified Port Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh*,
     2017 WL 3877730 (S.D. Cal. Sept. 5, 2017) ...................................................... 108

*SPH Am., LLC v. Research in Motion, Ltd.*,
     2016 WL 6305414 (S.D. Cal. Aug. 16, 2016)...........................................86, 93, 97

*Thai v. AMCO Ins. Co.*,
     2017 WL 8180584 (C.D. Cal. July 12, 2017) ................................................ 76, 84

*Univ. of Va. Patent Found. v. Gen. Elec.*,
     2015 WL 4878880 (W.D. Va. Aug. 14, 2015) ................................................... 100

*Wi-LAN Inc. v. Lenovo (United States), Inc.*,
     2017 WL 3194692 (S.D. Cal. July 27, 2017)...........................................35, 47, 52

**Statutes**

35 U.S.C. 112...............................................................................................................100

**Other Authorities**

Fed. R. Civ. P. 26(b)(2)(B) ..............................................................................*passim*

Fed. R. Civ. P. 33...............................................................................................76, 85, 101

Fed. R. Civ. P. 33(a)(2) ...........................................................................................86, 97

Fed. R. Civ. P. 33(b) ................................................................................................75

Fed. R. Civ. P. 33(d) ..............................................................................................*passim*

Fed. R. Civ. P. 34.....................................................................................................*passim*

Fed. R. Civ. P. 37(a)(4)...............................................................................................103

http://legacy-assignments.uspto.gov/assignments/assignment-pat-
     40634-404.pdf); ........................................................................................55

(http://legacy-assignments.uspto.gov/assignments/assignment-pat-
     42490-236.pdf) ........................................................................................55

Pursuant to Civil Local Rule 26.1 and Rule IV.C of Honorable Mitchell D. Dembin's Chambers Rules, Defendants Alphatec Holdings, Inc. and Alphatec Spine, Inc. ("Alphatec") and Plaintiff NuVasive, Inc. ("NuVasive") respectfully submit this Joint Motion for Determination of Discovery Dispute.

## I.      STATEMENT OF FACTS

This dispute involves the following requests from Alphatec's First Set of Interrogatories (Nos. 1-12) ("Interrogatories") and First Set of Requests for Production (Nos. 1-15) ("RFPs" or "Requests"): RFP Nos. 1-3, 5-8, 11, 12, 14, and 15, and Interrogatory Nos. 6, 7, and 9.

The parties have met and conferred and exchanged correspondence on each of these issues.  Declaration of Jason C. Hamilton, at ¶¶ 3-5.

## II.     SPECIFIC REQUESTS FOR PRODUCTION AT ISSUE

### A.      Request No. 1

**Request:** All documents, communications, and things produced by NuVasive in any opposition, litigation[1] , reissue, reexamination, *inter partes* review, or other proceeding relating to the validity, enforceability, infringement, or patent term extension of any of the patents-in-suit, any related patent applications and patents, and any foreign counterparts, including, without limitation, all documents produced by NuVasive, prior art, prior art charts, claim construction charts, infringement or non-infringement charts, invalidity or validity charts, deposition transcripts, deposition exhibits, and expert reports.

---

[1] This request shall include, but is not limited to:
- *NuVasive, Inc., et al. v. Medtronic, Inc.*, Case No. 99-CV-02560-JM-AJB (S.D. Cal., Complaint filed Dec. 3, 1999).
- *Medtronic Sofamor Danek USA, Inc., et al. v. NuVasive, Inc.*, Case No. 08-CV-1512-CAB-MDD (S.D. Cal., Complaint filed Aug. 18, 2008).
- *Warsaw Orthopedic, Inc., et al. v. NuVasive, Inc.*, Case No. 12-CV-02738-CAB-MDD (S.D. Cal., Complaint filed Aug. 17, 2012).
- *NuVasive, Inc. v. Globus Medical, Inc.*, Case No. 10-CV-00849-LPS (D. Del., Complaint filed Oct. 5, 2010).

**Response:** NuVasive incorporates by reference each of the General Objections. NuVasive objects to this Request as vague and ambiguous with respect to the term "***produced by*** NuVasive." NuVasive objects to this Request on the ground and to the extent it is overly broad, unduly burdensome, not proportional to the needs of the case, and not related to any claim or defense in this case. Specifically, NuVasive objects to this Request to the extent it seeks information concerning third-party products and information concerning patents other than the patents-in-suit or related patents. Additionally, NuVasive objects to this Request to the extent it seeks "all documents, communications, and things," and "all documents produced by NuVasive," and it is unlimited as to time. NuVasive objects to this Request to the extent it seeks "Privileged Documents." NuVasive objects to this Request to the extent it seeks information that is publicly available. NuVasive objects to this Request to the extent it seeks information the disclosure of which is subject to third-party confidentiality obligations and/or a protective order. NuVasive will not produce documents in violation of third party confidentiality obligations and/or a protective order.

Subject to and without waiving the foregoing objections, NuVasive responds as follows: NuVasive states that, after conducting a reasonable search, there are no non-objectionable, non-ESI, non-Privileged Documents responsive to this Request and within NuVasive's possession, custody, or control. To the extent this Request is directed to ESI, NuVasive invites Alphatec to meet and confer regarding the scope of this Request.

**Alphatec's Statement:**

The Court should compel NuVasive to produce documents that result from the application of any agreed-to ESI search terms to any non-individual electronic storage locations reasonably likely to contain documents, communications, and things produced by NuVasive in any opposition, litigation, reissue, reexamination, *inter partes* review, or other proceeding relating to the validity, enforceability,

infringement, or patent term extension of any of the patents-in-suit, any related patent applications and patents, and any foreign counterparts.[2]

**NuVasive's Deficient Responses:** NuVasive's responses to this Request have been consistently deficient. *First*, NuVasive's answer is non-responsive, "invit[ing] Alphatec to meet and confer regarding the scope of this Request." A document request propounded under Rule 34 does not seek invitations to meet and confer.

*Second*, after meeting and conferring, NuVasive took the position that "to the extent that documents produced by NuVasive in any previous litigations or USPTO proceedings are responsive to the other RFPs for which NuVasive has agreed to produce documents, NuVasive will not withhold such documents to the extent they are located [through the application of ESI search terms and custodians]." Sept. 24, 2018 NuVasive Corr. This is insufficient—it is nothing more than a promise to produce documents responsive to *other* Requests, *not the present Request*. Indeed, the relevance of documents responsive to this Request does not appear to be in dispute, nor can it be: NuVasive produced these documents in other proceedings involving the patents-in-suit, related patents, and/or NuVasive's embodying products, which demonstrates both that they are relevant and proportional here.

*Third*, and as of the exchange of Alphatec's portions of this joint motion on October 12, 2018, NuVasive now takes the position that after having had Alphatec's Request for over two months, it is still "investigating the feasibility and burden" of applying search terms to non-individual ESI storage locations. Oct. 3, 2018 NuVasive Corr. NuVasive's continued refusals and dilatory tactics—especially after it filed this suit, continued to add as many patents as possible at every stage

---

[2] The parties have not yet met and conferred regarding identification of specific ESI search terms and custodians under the Model ESI Order and pursuant to the parties' agreed-to protocol (*see* Dashe Decl. ¶ 4) with respect to Alphatec's requests. The present disputes with respect to this request and the other requests discussed below do not concern ESI search terms or custodians, but rather whether NuVasive will even search its ESI for responsive documents through application of ESI search terms.

1    (now up to a total of nine after the dismissal of two with prejudice), and immediately

2    sought unwarranted emergency relief (repeatedly)—must come to an end.  NuVasive

3    should be ordered to produce documents responsive to this request because they are

4    relevant and proportional.

5        To the extent NuVasive seeks to hide behind the contention that such

6    documents require the application of ESI search terms and custodians—even though

7    collection of these documents requires no searching and they are indisputably

8    relevant—the parties have mutually agreed to:

9        1) treat all non-individual electronic storage locations (e.g., shared server

10           locations, shared databases, shared drives, shared folders, shared document

11           management systems, etc.) as one single custodian;

12       2) affirmatively locate those non-individual electronic storage locations

13           reasonably likely to contain documents responsive to the scope of

14           discovery based on the parties' specific document requests, objections and

15           responses, agreements reached by the parties during the meet and confer

16           process, and any applicable court orders; and

17       3) search those non-individual electronic storage locations using the agreed-

18           to ESI search terms.

19   Sept. 14, 2018 NuVasive Corr.  NuVasive has not agreed to apply ESI search terms

20   to the non-individual electronic storage locations likely to contain responsive

21   documents—e.g., NuVasive's document productions in proceeding relating to the

22   validity, enforceability, infringement, or patent term extension of the patents-in-suit

23   and related patents.  There is no basis for this refusal.

24       **Relevance of Requested Information:**  NuVasive has produced these

25   documents in other proceedings and, in doing so, determined their relevance to the

26   patents-in-suit and NuVasive's alleged embodying products.  As such, the subset

27   requested is necessarily relevant and proportional in matters concerning the patents-

28   in-suit or related patents and alleged embodying products here.

1    The requested documents, communications, and things are relevant at least to
2    evaluating (1) the validity, patentability, and enforceability of the patents-in-suit,
3    and (2) NuVasive's claims for damages, royalties, and injunctive relief.  **First**,
4    documents from previous proceedings "relating to the validity, enforceability,
5    infringement, or patent term extension" of the patents-in-suit will be critical to those
6    very issues here and will reveal previous facts and positions that NuVasive faced
7    and asserted regarding the identical technology.  Thus, the specific documents that
8    NuVasive produced in earlier proceedings, including, for example, prior art, prior
9    art charts, claim construction charts, and the other identified materials, will inform
10   Alphatec's invalidity and non-infringement defenses here.  **Second**, NuVasive's
11   documents from previous proceedings will reveal facts and positions on, for
12   example, financials and sales, that will be critical for evaluating potential damages,
13   a reasonably royalty, and any claims for injunctive relief NuVasive may assert.

14   **NuVasive's Objections Are Meritless:** For example, NuVasive argues that
15   "produced by NuVasive" is vague and ambiguous, but NuVasive has failed to state
16   how this phrase is ambiguous and how NuVasive has understood this phrase in
17   responding to the Request. *Salisbury v. Hickman*, No. 12-CV-01098-LJO-JLT, 2013
18   WL 4402789, at *6 (E.D. Cal. Aug. 14, 2013) (waiving vague and ambiguous
19   objection after responding party failed to "set[] forth specific facts in support of its
20   objection" explaining "how [requesting party's] discovery requests are 'vague and
21   ambiguous'").  Alphatec clarified that this Request seeks responsive *document*
22   *productions* made by NuVasive, yet NuVasive still has not agreed to search for and
23   produce responsive documents.  NuVasive also objects due to third-party
24   confidentiality concerns.  However, NuVasive ignores that this Request seeks
25   documents that it has already produced in other litigations and proceedings.  And,
26   confidentiality does not act as a bar to discovery and is not grounds to withhold
27   documents or information from discovery. *Ivy Hotel San Diego, LLC v. Houston*
28   *Cas. Co.*, No. 10-CV-2183-L-BGS, 2011 WL 13240367, at *3 (S.D. Cal. Oct. 20,

2011); *see Covance, Inc. v. Inclin, Inc.*, No. 16-CV-00429-YGR-MEJ, 2016 WL 5870011, at *3 (N.D. Cal. Oct. 7, 2016). Further, NuVasive's objection that the sought-after information is "publicly available" is not a valid, recognized objection. *See Brown v. China Integrated Energy, Inc.*, No. 11-CV-2559-BRO-PLAx, 2013 WL 12124097, at *3 (C.D. Cal. Sept. 4, 2013) (rejecting objection that documents were publicly available and noting that "courts have unambiguously stated that this exact objection [that the information is equally available or publicly available] is insufficient to resist a discovery request"). It is also inconsistent with its prior objection. NuVasive's overbreadth, burdensome, and proportionality objections are meritless because NuVasive has not provided any support for these objections, and in any event, there can be no justification for these objections because this Request seeks documents that have already been produced in other proceedings. *Dolarian Capital, Inc. v. SOC, LLC*, No. 11-CV-0031-LJO, 2012 WL 4026818, at *2 (E.D. Cal. Sept. 12, 2012) ("a party resisting discovery must make some showing as to how each discovery request is not relevant and/or is overly broad or unduly burdensome"); Fed. R. Civ. P. 26(b)(2)(B) ("On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost."). Moreover, even if there were some true undue burden, NuVasive must respond to the non-burdensome portion of the Request. *M & F Fishing, Inc. v. Certain Underwriters at Lloyds*, No. 06-CV-0934-DMS-BLM, 2007 WL 9706573, at *10 (S.D. Cal. Apr. 13, 2007) ("Rule 34 requires that the responding party permit inspection of non-objectionable documents responsive to the request."); *In re Rivera*, No. 16-CV-4676-JAK-SSX, 2017 WL 5163695, at *6 (C.D. Cal. Apr. 14, 2017) (compelling production of responsive documents because "even if the discovery requested was overbroad, [responding party] had an obligation at a minimum to respond to the requests to the extent that they sought non-objectionable information or documents").

Accordingly, NuVasive should be ordered to produce documents responsive to this Request.

**NuVasive's Statement:** [3]

**There Is No Actual Dispute Regarding This Request – Alphatec Prematurely And Unreasonably Moved Forward With This Motion:** There should be no dispute as to this request. In its original response set forth above, NuVasive confirmed it has no responsive hard copy documents. Then, with respect to ESI, after meeting and conferring with Alphatec and conducting an investigation regarding the feasibility and burden of producing ESI responsive to this request, NuVasive informed Alphatec a few weeks later (and before the 45-day default deadline for Alphatec to bring any dispute to the Court, Doc. No. 101 at 4)[4] that it will agree to "search its Non-Individual ESI Custodians [the non-individual electronic storage locations referenced by Alphatec above] containing documents

---

[3] Alphatec's statements in this Section II as well as Section III circumvent the Court's Chambers Rule IV.C.4 requiring, *inter alia*: (1) a "statement" by the propounding party as to why a further response should be compelled; (2) a "precise" statement by the responding party as to the basis for all objections and/or claims of privilege; and (3) a five page limitation on the parties' supporting points and authorities. In an apparent effort to avoid the Court's page limitations, Alphatec's "statements" are lengthy and contain numerous substantive legal (with extensive citations) and factual arguments that should be properly contained in the limited points and authorities as outlined in the Court's Chambers Rules. As just one example, Alphatec's "Statement" for Request No. 1 alone is over 4 pages. Because of this, NuVasive had no choice but to similarly address Alphatec's extensive arguments.

[4] NuVasive notes that although the default deadline for bringing any joint discovery motion is 45 days after the dispute arises, NuVasive has routinely sought extensions to those deadlines in order to allow the parties to continue good faith negotiations towards resolution, and this Court has granted each such request. *See, e.g.*, Doc. Nos. 90, 102, 115. Yet Alphatec did not seek any extension with respect to this request despite the fact that NuVasive offered to agree to such an extension. *See* Declaration of Christina Dashe In Support of Joint Motion for Determination of Discovery Dispute ("Dashe Decl.") ¶ 11 (October 10, 2018 letter).

1  produced by NuVasive in the prior litigations identified by Alphatec in footnote 5 to
2  this request using any future agreed-to ESI search terms." Dashe Decl. ¶ 12 (October
3  16, 2018 email).   And, per the parties' agreement, any such responsive ESI
4  documents will be produced on the timeframe that has been agreed to by the parties
5  once Alphatec has supplied its ESI search term and custodian proposals (which it
6  has not yet done). *See, e.g.*, Dashe Decl. ¶ 4 ("Alphatec agrees to NuVasive's
7  proposed schedule regarding ESI search terms and custodians ... NuVasive will
8  produce ESI pursuant to the parties' agreed-to schedule regarding timing of
9  production of ESI identified under the Model ESI Order"); ¶ 6 ("To date, Alphatec
10 has not identified a single ESI custodian or search term."). NuVasive further noted
11 it "has produced and will produce a complete copy of the full dockets for each *inter*
12 *partes* review or reexamination of any of the patents-in-suit or related patents," and
13 indeed produced such documents on September 25 and October 16, 2018. Dashe
14 Decl. ¶ 12 (October 16, 2018 email). Thus, there are no additional documents to
15 compel. There is no remaining dispute.[5]

---

16
17  [5] At the eleventh hour, Alphatec noted it would "accept" NuVasive's statements
18  regarding ESI search terms and production of full IPR and reexamination dockets
    (although there was nothing to accept), should NuVasive confirm that:

19
20      (1) There are no other litigations involving the patents-in-suit, any
        related patent applications and patents, and any foreign counterparts
21      beyond those identified in Footnote 5; and (2) For each *inter partes*
        review or reexamination of any of the patents-in-suit or related patents,
22      there are no document productions that include any documents other
        than those included in their respective dockets that you will produce.
23

24 Dashe Decl. ¶ 12 (October 18, 2018 email). But the existence of other litigations
25 involving the asserted or related patents is publicly available information, so
   NuVasive should not have to confirm anything. Further, NuVasive's comparison of
26 the specifically identified litigations to the ones on the public docket shows
27 additional litigation not listed in footnote 5 for which NuVasive had already
   investigated the existence of responsive documents and was already planning to
28 search for responsive documents. With respect to "document productions that

1    **Alphatec's Assertion That NuVasive Is Causing Delay Lacks Any Basis;**
2    **Alphatec Unreasonably Delayed In Seeking Any Discovery:**   Even though
3    NuVasive has produced or will timely produce a full set of responsive documents in
4    accordance with the parties' agreements in the case, Alphatec unnecessarily seeks
5    relief from the Court, contending that NuVasive's good faith investigation regarding
6    the feasibility and burden of producing documents from prior proceedings from
7    nearly a decade ago somehow constitute an improper dilatory tactic.  Instead, it is
8    Alphatec's own delay in serving its discovery requests that has created a dispute that
9    does not, and should not, exist.

10    The first day Alphatec could have served its discovery requests on NuVasive
11    was April 4, 2018.  But Alphatec waited nearly ***4 months*** to serve its first discovery
12    requests, and still has not served any ESI search term or custodian proposals to
13    NuVasive (delaying more than ***6 months*** after it could have done so and delaying
14    over ***3 months*** since NuVasive identified ESI terms and custodians and despite
15    NuVasive's repeated requests for ESI proposals from Alphatec).  If Alphatec is now
16    concerned about timing issues, that concern is its own fault.

17    Alphatec's delay is even more inexcusable in light of its experiences with
18    NuVasive's discovery requests.  Specifically, although NuVasive served discovery
19    on the first day allowed (in April), *see* Doc. No. 60-2, Alphatec did not make its first
20    production of documents responsive to these requests until June, the parties only
21    finished initial negotiations of ESI custodians and search terms related to

---

23    include any documents other than those included in their [IPRs' and
24    reexaminations'] respective dockets," NuVasive does not immediately understand
25    what documents Alphatec may be referring to, and it was impossible for NuVasive
      to seek clarification from Alphatec and determine whether it can agree to Alphatec's
26    proposal the day before this joint motion is due (while also trying to finalize its
27    responses to Alphatec's improperly lengthy arguments as to other discovery
      requests).  Alphatec's last minute attempt to negotiate additionally demonstrates that
28    Alphatec has needlessly rushed to the Court and not allowed the parties a reasonable
      opportunity to seek resolution before seeking judicial relief.

1    NuVasive's discovery requests this month, and Alphatec stated that it expects to

2    **begin** its ESI document production responsive to NuVasive's requests later next

3    month at the earliest (more than **7 months** after original service of NuVasive's

4    requests).  Dashe Decl. ¶ 3 (June 11, 2018 email), ¶ 19 (September 19, 2018 letter),

5    ¶ 10 (October 9, 2018 letter).  Moreover, Alphatec is a much smaller company than

6    NuVasive, and Alphatec only began development of its accused products in 2014

7    (Doc. No. 60-4 at 10), nearly two decades after NuVasive began development of

8    XLIF and commenced the first prior litigation identified by Alphatec in this Request

9    for Production.  Thus, Alphatec's complaint that NuVasive is causing any delay is

10   unfounded.  NuVasive will need at least the same time (or more) as Alphatec to sift

11   through an exponentially greater volume of records spanning many additional years

12   of work and documents.  Alphatec's lack of foresight and planning does not mean

13   that NuVasive's good faith investigations and follow-up on Alphatec's discovery

14   complaints constitutes any intentional or unreasonable delay.

15           **Alphatec's Requested Relief Breaches An Agreement Between The**

16   **Parties Regarding ESI:**  Alphatec also attempts to manufacture a dispute where

17   there is none by implying that NuVasive should also be required to wholesale

18   produce its electronically stored information ("ESI") responsive to this request

19   outside of the specific ESI process set forth in this District's Model ESI Order,

20   Paragraphs 6-12.  *Supra* ("NuVasive seeks to hide behind the contention that such

21   documents require the application of ESI search terms and custodians—even though

22   collection of these documents requires no searching and they are indisputably

23   relevant").  Alphatec ignores the fact that the parties have ***mutually agreed*** that ESI

24   responsive to the parties' document requests is to be produced pursuant to the precise

25   ESI process set forth in the Model ESI Order, at a timeframe ***mutually agreed*** to by

26   the parties.  Dashe Decl. ¶ 4 (June 27 and 28, 2018 letters setting forth that once a

27   party has been served proposed ESI search term and custodian proposals, that party

28   will begin production of responsive ESI within 60 days of agreement as to any search

1   terms or custodians). Indeed, Alphatec has consistently taken the position, including

2   before this Court, that collection and production of *its own* ESI is to be done pursuant

3   to the Model ESI Order and the parties' agreement.  Doc. No. 60 at 15-16.  Alphatec

4   cannot have it both ways.  NuVasive's agreement to collect and produce <u>all</u> ESI

5   pursuant to the Model ESI Order and pursuant to the timing agreed to by the parties

6   both satisfies its discovery obligations in this District and is consistent with

7   Alphatec's own positions.[6]

8         Finally, NuVasive takes issue with Alphatec's assertion that NuVasive's

9   discovery responses requesting to meet and confer *regarding ESI* were somehow

10  improper.  The Model ESI Order in this District (which the parties have agreed to

11  follow in this case, Doc. No. 60 at 15, and the Court indicated during the Early

12  Neutral Evaluation Conference ("ENE") would control in this matter) delineates

13  separate procedures for production of responsive ESI as opposed to hard copy

14  documents.  Specifically, the Model ESI Order requires the application of agreed-to

15  ESI search terms to agreed-to ESI custodians, and Alphatec had not (and still has

16  not) provided NuVasive with any proposed ESI custodians or search terms.  Dashe

17  Decl. ¶ 9 (October 3, 2018 letter)  Thus, NuVasive properly sought to meet and

18  confer regarding Alphatec's ESI search proposals under the Model ESI Order before

19  setting forth the scope of its production of ESI responsive to this request.

20  **B.    Request for Production No. 2**

21  <u>**Request:**</u>  All documents, communications, and things concerning or

22  comprising any transfer of rights, assignment, license, proposed license, offer to

23  assign or license, sale, offer to sell, request for license, grants of rights, covenants

24  not to sue, indemnities, agreements not to assert patent rights, or settlements you

25  _____

26      [6] Moreover, any contention by Alphatec that NuVasive should collect and
    produce ESI outside the procedures of the Model ESI Order was raised for the first
27  time in this joint motion.  Thus, Alphatec has failed to meet its meet and confer
    obligation under the Local Rules and this Court's Chambers Rules, and this
28  argument should be waived.

have entered in the field of spinal fusion surgery, including but not limited to, with respect to any of the patents-in-suit, any patent application leading to the patents-in-suit, any related patent applications and patents, any foreign counterparts, and/or any embodying product.

**Response:** NuVasive incorporates by reference each of the General Objections. NuVasive objects to this Request as vague and ambiguous with respect to the term "***any*** transfer of rights, assignment …." NuVasive objects to this Request on the grounds and to the extent it is overly broad, unduly burdensome, not proportional to the needs of the case, and not relevant to any claim or defense in this case. Specifically, NuVasive objects to this Request to the extent it seeks "all documents, communications, and things," and information relating to foreign counterparts, and it is unlimited as to time. NuVasive objects to this Request to the extent it seeks "Privileged Documents." NuVasive objects to this Request to the extent it seeks documents that are the subject of confidentiality obligations to third parties. NuVasive will not produce documents in violation of third party confidentiality obligations. NuVasive further objects to this Request to the extent it seeks draft agreements. Pursuant to the parties' agreement, NuVasive will produce only executed agreements, as memorialized in the May 24, 2018 letter from NuVasive's counsel to Alphatec's counsel.

Subject to and without waiving the foregoing objections, NuVasive responds as follows: NuVasive will produce executed patent licenses NuVasive has entered into (licenses taken or given) in the field of spinal fusion surgery to the extent the production of such agreements does not violate any third party confidentiality obligations. NuVasive has produced and will produce relevant, responsive, non-ESI, non-Privileged Documents sufficient to show the grant or assignment of relevant rights to the patents-in-suit to the extent that such documents exist, are in the possession, custody or control of NuVasive, and can be located by a reasonably

1   diligent search.  To the extent this Request is directed to ESI, NuVasive invites

2   Alphatec to meet and confer regarding the scope of this Request.

3   **Alphatec's Statement:**

4   NuVasive has, without justification, attempted to limit the scope of this

5   Request to just "patent licenses:"

> NuVasive will produce executed agreements, however titled,
> responsive to this request that relate to the patents-in-suit or their
> related patents, subject to the resolution of any third party
> confidentiality obligations.  With respect to agreements in the field of
> spinal fusion surgery that do not relate to the patents-in-suit or related
> patents, NuVasive will produce executed ***patent license agreements***
> responsive to this request, subject to the resolution of any third party
> confidentiality agreements.

11   Oct. 10, 2018 NuVasive Corr. (emphasis added).  More than just "patent licenses"

12   will contain relevant, responsive information.  Thus, the Court should compel

13   NuVasive to produce the requested documents, communications, and things

14   concerning or comprising any transfer of rights, assignment, license, proposed

15   license, offer to assign or license, sale, offer to sell, request for license, grants of

16   rights, covenants not to sue, indemnities, agreements not to assert patent rights, or

17   settlements in the field of spinal fusion surgery.

18   **NuVasive's Deficient Responses:**  This Request seeks documents,

19   communications, and things concerning NuVasive's agreements, however titled,

20   that give another entity the ability to utilize NuVasive's technologies, or that give

21   NuVasive the ability to use another entities' technologies, in the field of spinal fusion

22   surgery.[7]  Yet, NuVasive seeks to arbitrarily and affirmatively limit a portion of its

23   production to "patent licenses." Such a limit is inappropriate.

24   ***First***, at the outset NuVasive agreed to "produce executed patent licenses

25   NuVasive has entered into (licenses taken or given) in the field of spinal fusion

26   surgery," and specifically for non-ESI, agreed to produce documents "sufficient to

---

28   [7] With respect to "the field of spinal fusion surgery," the parties have mutually agreed that this is the relevant scope of documents. May 24, 2018 NuVasive Corr.

1   show the grant or assignment of relevant rights to the patents-in-suit," but for ESI

2   stated only "NuVasive invites Alphatec to meet and confer regarding the scope of

3   this Request."   A document request propounded under Rule 34 does not seek

4   invitations to meet and confer.

5           ***Second,*** after meeting and conferring, NuVasive offered to produce:

6           NuVasive will produce executed agreements, however titled,
            responsive to this request that relate to the patents-in-suit or their
7           related patents, subject to the resolution of any third party
            confidentiality obligations.  With respect to agreements in the field of
8           spinal fusion surgery that do not relate to the patents-in-suit or related
            patents, NuVasive will produce executed ***patent license agreements***
9           responsive to this request, subject to the resolution of any third party
            confidentiality agreements.

10

11   Oct. 10, 2018 NuVasive Corr. (emphasis added).  With respect to ESI, NuVasive

12   has only agreed to produce "documents sufficient to show these executed patent

13   licenses and non-privileged, non-email correspondence regarding such executed

14   patent licenses."   Sept. 24, 2018 NuVasive Corr.  These offers remain deficient

15   because it is affirmatively limited, without justification to "patent licenses."

16   Agreements other than those specifically titled "patent licenses" are relevant and

17   NuVasive's affirmative limits do nothing more than allow NuVasive to arbitrarily

18   limit its production and withhold production of relevant, responsive information.

19           NuVasive's "third party confidentiality" concerns do not justify its response

20   that it will only produce responsive documents "to the extent the production of such

21   agreements does not violate any third party confidentiality obligations."   First,

22   NuVasive has not indicated whether any such "confidential" agreements provide any

23   carve out, as most do, for the production of documents ordered by a court.  Second,

24   the parties have agreed that "to the extent a party identifies responsive third party

25   information for production, that party will reach out to the third party for permission

26   to produce such information, and will promptly advise if the third party refuses to

27   grant permission."   May 24, 2018 NuVasive Corr.  Confidentiality is not a shield:

28   "documents are not shielded from discovery merely because they are confidential."

1    *Ivy Hotel*, 2011 WL 13240367, at *3.  Under the parties' agreement, NuVasive must

2    seek to resolve third party confidentiality issues and notify Alphatec if the third party

3    resists.  If any such third party desires to block production, it may seek a protective

4    order in this case.  Such a protective order, however, will not be warranted because

5    there is an Outside Counsel Eyes' Only designation that addresses any

6    confidentiality concerns by strictly limiting the disclosure and use of such

7    information.  *Covance, Inc.*, 2016 WL 5870011, at *3 (overruling confidentiality

8    objections because stipulated protective order addressed any such concerns).

9    NuVasive is attempting to hide behind alleged confidentiality concerns for third

10   parties that may not even exist.  It has not indicated any effort to resolve any alleged

11   "confidentiality" concerns it may have.

12        **Relevance of Requested Information:**  Documents, communications, and

13   things concerning NuVasive's agreements, however titled, that give another entity

14   the ability to utilize NuVasive's technologies (or vice versa) are relevant and

15   proportional to evaluating NuVasive's claims for damages, royalties, and injunctive

16   relief.  Indeed, these agreements are critical to determining the monetary value of

17   the patents (or the value derived from each patent) and the value that NuVasive has

18   previously assigned or considered for these technologies.  The value of the patents-

19   in-suit is inextricably tied to calculating any damages NuVasive has allegedly

20   suffered and/or any royalties that it argues should be awarded.  Moreover, the value

21   of the patents would also inform whether NuVasive has suffered irreparable harm to

22   support any claims for injunctive relief NuVasive may assert.   Additionally,

23   documents and communications concerning these agreements would contextualize

24   the same information.  This would further inform the monetary value of the patents.

25   Thus, the requested documents will provide Alphatec with information needed to

26   calculate lost profits and a reasonable royalty rate, and to assess any irreparable harm

27   that NuVasive may assert.   Indeed, NuVasive necessarily acknowledges the

28   relevance of this Request by agreeing to produce "patent licenses."

1      **NuVasive's Objections Are Meritless:** For example, NuVasive argues that

2    "***any*** transfer of rights, assignment …" is vague and ambiguous, but NuVasive has

3    failed to state how this phrase is ambiguous and how NuVasive has understood this

4    phrase in responding to the Request. *Salisbury*, 2013 WL 4402789, at *6.

5    NuVasive's overbreadth, burdensome, and proportionality objections are meritless,

6    as evidenced by its agreement to produce one type of agreement, just not others, and

7    because NuVasive has not provided any support for these objections. *Dolarian*

8    *Capital*, 2012 WL 4026818, at *2; Fed. R. Civ. P. 26(b)(2)(B). Moreover, even if

9    there were some true undue burden, NuVasive must respond to the non-burdensome

10   portion of the Request. *M & F Fishing*, 2007 WL 9706573, at *10; *In re Rivera*,

11   2017 WL 5163695, at *6.

12     Accordingly, NuVasive should be ordered to produce documents responsive

13   to this Request.

14     **NuVasive's Statement:**

15     **Alphatec Misrepresents What NuVasive Agreed To Produce:** Alphatec

16   again appears to have created a dispute that does not, and should not exist due to its

17   haste to run unnecessarily to the Court. First, Alphatec fails to note that the

18   correspondence it cited above specifically states that "NuVasive will produce

19   executed agreements, ***however titled, responsive to this request that relate to the***

20   ***patents-in-suit or related patents***." Oct. 10, 2018 NuVasive Corr. (emphasis added).

21   Thus, NuVasive has not actually limited the scope of this request to "just patent

22   licenses." Instead, NuVasive agreed to produce <u>all</u> responsive executed agreements

23   relating to the patents-in-suit (or related patents), and not just licenses.[8] NuVasive

---

24     [8] NuVasive has also agreed to produce documents sufficient to show non-
25   privileged, non-email correspondence regarding such executed agreements. Dashe
     Decl. ¶ 6 (September 24, 2018 letter re RFP No. 2). Additionally, NuVasive notes
26   that the parties have mutually agreed to produce only executed, non-draft
     agreements. *See id*. Finally, as with any discovery request that NuVasive has agreed
27   to produce documents, NuVasive will produce responsive ESI along the timeframe
28   agreed to by the parties, set forth above. *Id*.

only limited its production to patent licenses for those agreements in the field of spinal fusion surgery that ***do not relate*** to the patents-in-suit or related patents.

**Alphatec Fails To Establish That Non-License Agreements Related To Non-Asserted Patents Are Relevant:**  As for agreements that do not concern the asserted patents, NuVasive agreed to produce all license agreements.  Alphatec impliedly recognizes that NuVasive's limitation is justified, as all of Alphatec's relevancy arguments focus on how such agreements inform the ***value of the patents-in-suit***.  Indeed, the only law actually cited by Alphatec to support its claim of relevance deals with valuations of the patents-in-suit.  *See Facedouble, Inc. v. Face.com, Inc.*, No. 12-CV-1584-DMS-MDD, 2014 WL 585868, at *3 (S.D. Cal. Feb. 13, 2014).  While both non-patent license and patent license agreements referring or relating to the patents-in-suit or related patents may inform the value of the patents-in-suit (and NuVasive has agreed to produce such agreements), Alphatec has made no specific argument and cited no law in support of the proposition that non-patent license agreements (such as covenants not to sue or indemnification agreements) unrelated to the patents-in-suit are relevant to that valuation.  Instead, Alphatec simply makes conclusory, unsupported statements regarding the relevancy of these agreements, which is legally insufficient to support its requested relief.  *See infra* at Section V.A.  In fact, ample case law supports the opposite proposition – these non-patent license agreements are not relevant and thus do not need to be produced.  *See Bally Techs., Inc. v. Business Intelligence Sys. Solutions, Inc.*, No. 2:10-cv-00440-PMP-GWF, 2011 WL 3892221, at *3 (D. Nev. Aug. 30, 2011) (denying motion to compel agreements regarding non-asserted patents since the accused infringer failed to show how they were relevant to damages); *Pandora Jewelry, LLC v. Bajul Imports, Inc.*, No. 1:10-CV-135 SNLJ, 2011 WL 976623, at *1–2 (E.D. Mo. Mar. 17, 2011) (denying motion to compel settlement agreements, covenants not to sue, and correspondences related thereto).

**Alphatec Falsely States That NuVasive Is Refusing To Produce Agreements With Confidentiality Obligations:** Alphatec has also misapprehended NuVasive's statements regarding third-party confidentiality issues despite NuVasive's multiple attempts to clarify that there is no real dispute. Specifically, despite Alphatec's arguments above, NuVasive is <u>not</u> intending to withhold production of documents simply because there may be third party confidentiality issues. Instead, pursuant to the parties' previous mutual agreement, to the extent NuVasive identifies any responsive agreements for production that contain third party confidentiality obligations that prohibit NuVasive from producing such agreements without the other party's consent, NuVasive will reach out to the third party for permission to produce, and will either produce those agreements once the third party grants permission or will promptly advise Alphatec if the third party refuses to grant permission (at which time Alphatec is free to seek a court order compelling production). Dashe Decl. ¶ 6 (September 24, 2018 letter re "General Issues"). Thus, only if (1) an agreement contains confidentiality obligations that prohibit NuVasive from producing the agreement without the other party's consent; and (2) that third party refuses to grant permission to produce its confidential information in the agreement, will NuVasive withhold production. And even then NuVasive will only withhold production until Alphatec resolves those issues with the third party or the Court compels the agreement's production. To date, there are no specifically identified third party refusals and thus it is not clear to NuVasive what Alphatec's alleged dispute actually is.

To the extent Alphatec contends that NuVasive must simply produce agreements containing third party confidential information without the third party's consent, Alphatec is wrong (and its position is inconsistent with and breaches the parties' mutual agreement). NuVasive ***mutually agreed*** with Alphatec to the above procedure precisely because NuVasive (and likely Alphatec) does not have the right to unilaterally disclose confidential information that belongs to a third party. The

cases cited by Alphatec above (*Ivy Hotel*  and *Covance*) are inapposite as they deal with confidential information that belongs to a ***party to the litigation***.   Nor does Alphatec's citation to "Outside Counsel's Eye's Only" provisions in a protective order support its contentions.  First, no protective order has yet been entered in this case.  Second, the mere fact that this Court *may* deny a third party's motion for a protective order based on such a hypothetical provision does not mean that NuVasive can produce confidential information belonging to a third party without that third party's consent or a Court order.

**Alphatec's Requested Relief Breaches An Agreement Between The Parties Regarding ESI:**  Finally, as discussed above with respect to RFP No. 1, NuVasive reiterates that its response requesting to meet and confer ***regarding ESI*** was proper in light of the procedures for production of ESI set forth in the Model ESI Order and as agreed-to by the parties, and in light of the fact that Alphatec had not (and still has not) provided its ESI search terms or custodian proposals.

**C.     Request for Production No. 3**

**Request:** Documents sufficient to show all sales made pursuant to and any royalties NuVasive received or paid for any transfer of rights, assignment, license, proposed license, offer to assign or license, sale, offer to sell, request for license, grants of rights, covenants not to sue, indemnities, agreements not to assert patent rights, or settlements you have entered in the field of spinal fusion surgery, including but not limited to, with respect to any of the patents-in-suit, any patent application leading to the patents-in-suit, any related patent applications and patents, any foreign counterparts, and/or any embodying product.

**Response:** NuVasive incorporates by reference each of the General Objections.  NuVasive objects to this Request as vague and ambiguous with respect to the term "any transfer of rights, assignment …."  NuVasive objects to this Request on the grounds and to the extent it is overly broad, unduly burdensome, not proportional to the needs of the case, and not relevant to any claim or defense in this

1   case.   Specifically, NuVasive objects to this Request to the extent it seeks
2   information relating to "all sales" and foreign counterparts, and it is unlimited as to
3   time.   NuVasive objects to this Request to the extent it seeks "Privileged
4   Documents."  NuVasive objects to this Request to the extent it seeks documents that
5   are the subject of confidentiality obligations to third parties.  NuVasive will not
6   produce documents in violation of third party confidentiality obligations.

7        Subject to and without waiving the foregoing objections, NuVasive responds
8   as follows: NuVasive invites Alphatec to meet and confer regarding the scope of this
9   request.

10       **Alphatec's Statement:**

11       NuVasive has, without justification, attempted to limit the scope of this
12  Request to summary documents "that are sufficient to show payments made pursuant
13  agreements it agreed to produce in response to RFP No. 2 ***that relate to the patents-***
14  ***in-suit or related patents***."  Oct. 10, 2018 NuVasive Corr. (emphasis added).  More
15  than just "summary documents" sufficient to show the payments "that relate to the
16  patents-in-suit or related patents" will contain relevant, responsive information for
17  the same reasons discussed with respect to Request for Production No. 2.  Therefore,
18  the Court should compel NuVasive to produce the requested documents sufficient
19  to show all sales made pursuant to and any royalties NuVasive received or paid for
20  the agreements produced in response to Request for Production No. 2.

21       **NuVasive's Deficient Responses:**  NuVasive's responses to this Request are
22  deficient.  ***First***, NuVasive's answer is non-responsive, "invit[ing] Alphatec to meet
23  and confer regarding the scope of this Request."  A document request propounded
24  under Rule 34 does not seek invitations to meet and confer.

25       ***Second***, after meeting and conferring, NuVasive initially offered only to
26  produce "summary documents sufficient to show the royalty burden for embodying
27  components of XLIF."  Sept. 24, 2018 NuVasive Corr.  Now, NuVasive offers only
28  to produce summary documents "that are sufficient to show payments made pursuant

agreements it agreed to produce in response to RFP No. 2 *that relate* to the patents-in-suit or related patents." Oct. 10, 2018 NuVasive Corr.  This limit remains wholly insufficient—this Request seeks documents regarding sales and payments made pursuant to the agreements produced in response to Request for Production No. 2, which as discussed above, the parties agree concerns the field of spinal fusion surgery, not just "the patents-in-suit or related patents."[9] May 24, 2018 NuVasive Corr.  NuVasive's limit is particularly egregious in light of the parties' agreement that the field of spinal fusion surgery is relevant and the fact that NuVasive itself requested that Alphatec produce "Documents sufficient to show any royalties Alphatec received or paid for a patent license *in the field of spinal fusion surgery*." NuVasive Request for Production No. 16 (emphasis added).

Additionally, as discussed above, NuVasive's "third party confidentiality" concerns do not justify its response that it "will not produce documents in violation of third party confidentiality obligations."   Confidentiality is not a shield: "documents are not shielded from discovery merely because they are confidential." *Ivy Hotel*, 2011 WL 13240367, at *3.  If any third party desires to block production it may seek a protective order in this case, though such a protective order will not be warranted because there is an Outside Counsel Eyes' Only designation that strictly limits the disclosure and use of such information.  *Covance, Inc.*, 2016 WL 5870011, at *3 (overruling confidentiality objections because stipulated protective order addressed any such concerns).

**Relevance of Requested Information:** The requested documents showing sales and royalties are relevant and proportional to evaluating NuVasive's claims for

---

[9] This request seeks "Documents sufficient to show all sales made pursuant to and any royalties NuVasive received or paid for any transfer of rights, assignment, license, proposed license, offer to assign or license, sale, offer to sell, request for license, grants of rights, covenants not to sue, indemnities, agreements not to assert patent rights, or settlements you have entered *in the field of spinal fusion surgery*. . ."

damages, royalties, and injunctive relief. Indeed, the amount of sales made and any royalties paid or received under agreements giving another entity the ability to utilize NuVasive's technologies in the field of spinal fusion surgery (or vice versa), will be instrumental in determining the value of NuVasive's patents and relatedly, calculating lost profits and a reasonable royalty. Further, these transactions would be critical in evaluating the interest in and market for NuVasive's claimed inventions. Thus, the requested documents will provide Alphatec with information needed to calculate lost profits and a reasonable royalty rate, and to assess any claim for injunctive relief that NuVasive may assert.

**NuVasive's Objections Are Meritless:** For example, NuVasive argues that "***any*** transfer of rights, assignment …" is vague and ambiguous, but NuVasive has failed to state how this phrase is ambiguous and how NuVasive has understood this phrase in responding to the Request. *Salisbury*, 2013 WL 4402789, at *6. NuVasive also objects to "all sales," but it fails to identify a specific ground for its objection. NuVasive's overbreadth, burdensome, and proportionality objections are meritless and NuVasive has not provided any support for these objections. *Dolarian Capital*, 2012 WL 4026818, at *2; Fed. R. Civ. P. 26(b)(2)(B). Moreover, even if there were some true undue burden, NuVasive must respond to the non-burdensome portion of the Request. *M & F Fishing*, 2007 WL 9706573, at *10; *In re Rivera*, 2017 WL 5163695, at *6.

Accordingly, NuVasive should be ordered to produce documents responsive to this Request.

**NuVasive's Statement:**

**Alphatec Again Prematurely Brings This Motion When There Is No Real Dispute:** Alphatec propounded an overbroad request for production, and then, due to haste of entirely its own making, has prematurely run to the Court to seek relief when NuVasive reasonably sought (and is still willing to seek) to meet and confer to resolve issues stemming from its overbroad request.

Alphatec justifies the relevancy of its request above by stating that it seeks documents that will "provide Alphatec with information needed to calculate lost profits and a reasonable royalty rate, and to assess any claim for injunctive relief that NuVasive may assert." *Supra*. Yet, these are the very documents NuVasive has already agreed to produce. Specifically, NuVasive agreed to produce the royalty burden for the embodying components of XLIF as well documents sufficient to show the payments made pursuant to any agreements regarding the rights identified in the request (not just patent licenses) relating to the patents-in-suit or related patents. Dashe Decl. ¶ 6 (September 24, 2018 letter re RFP No. 3), ¶ 11 (October 10, 2018 letter re RFP No. 3). NuVasive has also agreed to produce patent licenses in the field of spinal fusion surgery more generally even if they did not relate to the asserted patents. *Supra* (Alphatec's Statement re RFP No. 2 quoting October 10, 2018 letter). In light of Alphatec's own representations, there is nothing of relevance that NuVasive is not already producing.[10]

**Alphatec's Request Exceeds What NuVasive Requested Of Alphatec:** NuVasive's own discovery request seeking "Documents sufficient to show any royalties Alphatec received or paid for a patent license in the field of spinal fusion surgery" cited by Alphatec above underscores both the overbreadth of Alphatec's discovery requests as well as Alphatec's refusal to meaningfully negotiate with NuVasive to resolve any outstanding issues before prematurely moving the Court. First, NuVasive's request was directed at a significantly narrower set of information than that sought by Alphatec here: NuVasive sought only those documents sufficient to show Alphatec's ***royalty payments*** in the field of spinal fusion surgery – which

---

[10] Because this information will be pulled from electronically stored databases, NuVasive has agreed to endeavor to produce its documents responsive to this request at least by the time it produces other ESI in this case pursuant to the parties' agreed-to ESI production schedule. Dashe Decl. ¶ 11 (October 10, 2018 letter re RFP No. 3). Thus, there should also be no dispute about the timing of NuVasive's production because it is consistent with the parties' prior agreements.

may be relevant to a reasonable royalty here – whereas Alphatec seeks **all payments** NuVasive has ever made or received pursuant to **any** agreement in the general field of spinal fusion surgery.  Tellingly, Alphatec has not cited any law supporting its assertion that somehow this wide swathe of payments unlimited to royalty payments can in any way support or evidence a claim regarding reasonable royalty, lost profits, or other damages.  Instead, Alphatec again makes conclusory, unsupported statements regarding the relevancy of these payments, which is legally insufficient to support its requested relief.  *See infra* at Section V.A.[11]  Finally, to the extent Alphatec seeks to save its hopelessly overbroad request by seeking only NuVasive's royalty payments in the field of spinal fusion surgery, Alphatec never made this request to NuVasive for its consideration during the meet and confer or subsequent correspondence.

**Summary Documents Are Sufficient To Provide What Alphatec Contends Is Relevant Information:**  With respect to Alphatec's complaints regarding NuVasive's production of "summary documents," Alphatec's haste to seek relief has manufactured an additional dispute where there should not be one. NuVasive detailed multiple times in correspondence that compiling the requested information involves the collection of many different years of electronic data from databases, and that NuVasive would not undertake searches for documents that would reasonably be expected to only uncover documents that are duplicative of those otherwise located through less burdensome means.  Dashe Decl. ¶ 6 (September 24, 2018 letter re RFP No. 3 and "Burdensome and Duplicative Document Production"), ¶ 11 (October 10, 2018 letter re RFP No. 3).  Thus, NuVasive's agreement to produce "summary documents" sufficient to show the requested information reflects the fact that the requested financial information is

---

[11] As with RFP No. 2 above, the only law actually cited by Alphatec to support its claim of relevance deals with valuations of the **patents-in-suit**.  *See Facedouble*, 2014 WL 585868, at *3.

most efficiently identified and produced as a summary based on underlying documents containing entirely cumulative information (as is the case for most financial information). For example, Alphatec's position would appear to require NuVasive to search for and produce all of its purchase orders with hospitals as well as a copy of every single check sent or received for every single royalty payment, even though the responsive information contained in those documents would be reflected in NuVasive's summary financial documents. NuVasive is not obligated to search for, review, and produce thousands of individual documents that are duplicative of and contain no additional responsive information above and beyond the information contained in the summary financial documents NuVasive has already agreed to provide.

Alphatec also complains elsewhere that NuVasive's production of such summary financial documents allegedly constitutes a refusal to run ESI search terms through its financial databases and produce the resulting responsive ESI. Alphatec yet again misapprehends NuVasive's previously explained positions and yet again needlessly seeks relief from the Court. First, NuVasive has never refused to produce ESI documents responsive to this request. To the contrary, NuVasive has agreed, above and beyond what the Model ESI Order requires, to affirmatively identify and produce the electronically stored documents sufficient to show the information Alphatec itself stated was relevant to its claims and defenses here. Dashe Decl. ¶ 6 (September 24, 2018 letter re RFP No. 3), ¶ 11 (October 10, 2018 letter re RFP No. 3). This is because NuVasive's financial payment information is likely stored in databases that are not searchable in the same manner as other ESI (such as pdf, Word, or PowerPoint documents). Nor has NuVasive ever refused to run ESI search terms through its financial databases; instead NuVasive has repeatedly invited Alphatec to actually identify ESI custodians and search terms so that it could evaluate whether agreeing to Alphatec's demands would be overly burdensome, disproportionate to

1   the needs of the case, and/or would capture duplicative documents.  Dashe Decl. ¶ 9

2   (October 3, 2018 letter re RFP No. 11).

3         Finally, as discussed above with respect to RFP No. 2, NuVasive reiterates

4   that it is not intending to withhold production of documents simply because there

5   may be third party confidentiality issues, and simply intends to follow the parties'

6   mutual agreement so that it may comply with any of its obligations regarding another

7   party's confidential information.  Alphatec's statements above regarding third party

8   confidentiality mischaracterizes NuVasive's positions at best, and at worst (to the

9   extent Alphatec contends that NuVasive must simply produce agreements

10  containing third party confidential information without that party's consent)

11  constitutes a breach of the parties' mutual agreement.

12        **D.      Request for Production No. 5**

13        **Request:**  All documents, communications, and things concerning

14  NuVasive's retention of, agreements with, and/or payments to surgeons in the field

15  of spinal fusion surgery, including but not limited to the surgeons NuVasive

16  identified in its preliminary injunction briefing and supporting declarations in this

17  case.

18        **Response:**  NuVasive incorporates by reference each of the General

19  Objections.  NuVasive objects to this Request on the grounds and to the extent it is

20  overly broad, unduly burdensome, not proportional to the needs of the case, and not

21  relevant to any claim or defense in this case.  Specifically, NuVasive objects to this

22  Request to the extent it seeks "all documents, communications and things," and

23  information regarding any retention or, agreements with, and/or payments to

24  surgeons in the field of spinal fusion surgery, and it is unlimited as to time.

25  NuVasive objects to this Request to the extent it seeks "Privileged Documents."

26  NuVasive further objects to this Request to the extent it seeks draft agreements.

27  Pursuant to the parties' agreement, NuVasive will produce only executed

28  agreements.  NuVasive objects to this Request to the extent it seeks documents that

1    are the subject of confidentiality obligations to third parties.  NuVasive will not

2    produce documents in violation of third party confidentiality obligations.

3           Subject to and without waiving the foregoing objections, NuVasive responds

4    as follows: NuVasive states that, after conducting a reasonable search, there are no

5    non-objectionable, non-ESI, non-Privileged Documents that are responsive to this

6    Request and within NuVasive's possession, custody, or control.  NuVasive will

7    produce the executed existing agreements NuVasive identified in NuVasive's

8    preliminary injunction briefing to the extent the production of such agreements does

9    not violate any third party confidentiality obligations.  To the extent this Request is

10   directed to ESI, NuVasive invites Alphatec to meet and confer regarding the scope

11   of this Request.

12          **Alphatec's Statement:**

13          NuVasive is attempting to use its surgeon agreements as both a sword and a

14   shield in this case.  One the one hand, NuVasive points to the existence of such

15   agreements in its preliminary injunction briefing to justify seeking emergency relief

16   from this Court against Alphatec (which this Court denied). Doc. No. 77 at 15-16;

17   77-33 at ¶¶ 41, 47-49; 77-52 at ¶¶ 23-26.  On the other hand, NuVasive refuses to

18   produce these agreements and other agreements with its surgeon customers that

19   provide evidence regarding why surgeons purchase NuVasive's products.

20   Specifically, in response to this Request, NuVasive seeks to arbitrarily and

21   affirmatively limit its production to "the executed existing agreements NuVasive

22   identified in NuVasive's preliminary injunction briefing."  And only then if

23   NuVasive determines that such production "does not violate any third party

24   confidentiality obligations."  By referencing these agreements in the first place,

25   NuVasive has, arguably, waived or violated such confidentiality obligations.  In any

26   case, these limits—excluding other documents, communications, and things beyond

27   the agreements, and excluding surgeons that NuVasive did not choose to itself

28   identify—are not justified.  Thus, the Court should compel NuVasive to produce

documents, communications, and things concerning NuVasive's retention of, agreements with, and/or payments to surgeons in the field of spinal fusion surgery.

**NuVasive's Deficient Responses:** NuVasive's responses to this Request are deficient. *First*, NuVasive's answer is non-responsive, "invit[ing] Alphatec to meet and confer regarding the scope of this Request." A document request propounded under Rule 34 does not seek invitations to meet and confer.

*Second*, after meeting and conferring, NuVasive stated that it will only produce "existing, executed surgeon agreements NuVasive identified in its preliminary injunction briefing," which necessarily excludes other documents, communications, and things—including ESI—beyond the surgeon agreements, and excludes surgeons that NuVasive did not itself choose to identify. Sept. 24, 2018 NuVasive Corr. There is no basis for such exclusion.

Furthermore, NuVasive's efforts to articulate a burden of producing this information, raised for the first time on October 10, 2018, two days before the deadline for Alphatec to provide its portions of this joint motion, are meritless and nothing more than attorney "say so" about what might *potentially* be required. Fed. R. Civ. P. 26(b)(2)(B) ("On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost.").

NuVasive contends that a burden exists because "a sizable number of its surgeon agreements are subject to complicated third party confidentiality provisions, potentially requiring NuVasive to reach out to each and every such surgeon for permission to produce their agreement(s)." Oct. 10, 2018 NuVasive Corr. First, NuVasive—not Alphatec—squarely put these agreements at issue in this case by selectively disclosing them in an attempt to show harm to NuVasive's sales. Second, NuVasive's third party confidentiality claims do not warrant withholding production of these contracts which NuVasive already disclosed, at least in part, by alleging that Alphatec is threatening and specifically targeting those relationships, leading to lost

sales and lost collateral benefits following from those relationships.  Doc. No. 77 at 15-16; 77-33 at ¶¶ 41, 47-49; 77-52 at ¶¶ 23-26.  Confidentiality is not a shield: "documents are not shielded from discovery merely because they are confidential." *Ivy Hotel*, 2011 WL 13240367, at *3.  If any third party desires to block production it may seek a protective order in this case, though such a protective order will not be warranted because there is an Outside Counsel Eyes' Only designation that strictly limits the disclosure and use of such information. *Covance, Inc.*, 2016 WL 5870011, at *3 (overruling confidentiality objections because stipulated protective order addressed any such concerns).

NuVasive's other contention regarding burden fares no better.  NuVasive argues that "determining what payments, if any, to any given surgeon (or a related entity) were made pursuant to any given surgeon consulting agreement requires NuVasive (at the very least) to pull and review over a decades' worth of individual surgeon agreements and to conduct an extensive analysis into whether payments made were related to the 'field of spinal fusion surgery.'"  Oct. 10, 2018 NuVasive Corr.  This argument is a red herring because, with respect to payments, there is no need to determine whether the payments were made "pursuant to any given surgeon consulting agreement."  Rather, if the payment was made to a surgeon practicing spinal fusion surgery, it is relevant and responsive.  Even more, NuVasive put at issue all of its surgeon consulting agreements, not just specific consulting agreements for spinal fusion surgery.  Specifically, in connection with NuVasive's preliminary injunction motion, its declarants, Mr. Link and Mr. Inglish considered, respectively, lists of "all of NuVasive's surgeons who are consultants for NuVasive" and "all NuVasive consultants."  Doc. No. 37-33 ¶ 41; Doc. No. 37-52 ¶ 9 n. 3.  Indeed, in light of the careful sales and surgery tracking that Mr. Link testified regarding, NuVasive cannot plausibly contend it does not know which of the surgeons it sells its products to practice in the field of spinal fusion surgery.  Doc. No. 37-1 at 25; Doc. No. 37-13 at ¶¶ 28–35.  Moreover, such information is relevant

1  to show that NuVasive's sales may be driven not by its products, but rather as a

2  result of lucrative consulting arrangements with these surgeons.  Alphatec is entitled

3  to this critical discovery as part of its defense in this case.

4  **Relevance of Requested Information:** The full scope of requested

5  documents, communications, and things are relevant and proportional to this case.

6  ***First***, NuVasive specifically put its relationships with surgeons in the field of spinal

7  fusion surgery at issue by alleging that Alphatec is threatening and specifically

8  targeting those relationships, leading to lost sales and lost collateral benefits

9  following from those relationships.  Doc. No. 77 at 15-16; 77-33 at ¶¶ 41, 47-49; 77-

10  52 at ¶¶ 23-26.  Documents, communications, and things concerning NuVasive's

11  retention of, agreements with, and/or payments to these surgeons are relevant to

12  evaluating the reasons surgeons have entered those relationships, the scope of those

13  relationships, and NuVasive's allegations regarding Alphatec's impact on those

14  relationships, including, at least, on sales of NuVasive's embodying products.  This

15  information will, therefore, inform NuVasive's claims for damages and royalties, as

16  well as any claims for injunctive relief NuVasive may assert.

17  ***Second***, the requested documents, communications, and things are relevant to

18  evaluating the reasons why surgeons are using or have used NuVasive's products

19  allegedly embodying the patents-in-suit.  As Kelli Howell, a former NuVasive and

20  current Alphatec employee has stated, NuVasive surgeons are not easy to convert

21  because "NuVasive has developed deep relationships with surgeons, often tied to

22  consulting relationships that provide significant financial incentive for surgeons to

23  maintain their ongoing relationships with NuVasive."  Doc. No. 49-1 at ¶ 25.  These

24  relationships make surgeons "reluctant to" even "trial or use other available

25  systems." *Id.*   Indeed, NuVasive's own expert Dr. Youssef is such a consult,

26  NuVasive pays him pays him considerable sums annually ("around a million" in

27  2016 alone), and he has only ever performed lateral trans-psoas surgery using XLIF.

28  Doc. No. 49 at 26.  Even more, NuVasive has previously been investigated, and is

1   currently under investigation, by the federal government for inducing use of alleged

2   embodying products by paying improper kickbacks.  Doc. No. 49-72 at ¶¶ 121-125;

3   Doc. No. 49-129 at 2 (government alleged that "NuVasive caused false claims by

4   paying kickbacks to induce physicians to use the company's CoRoent System" and

5   "NuVasive knowingly offered and paid illegal remuneration to certain physicians to

6   induce them to use the CoRoent System in spine fusion surgeries").  The requested

7   documents, communications, and things are relevant to determining whether

8   surgeons are using NuVasive products not for the patented technologies, but instead

9   because they were induced to do so by payments from NuVasive.

10       ***Third***, there is no basis for limiting responsive documents to just the surgeons

11   NuVasive chose to identify in its preliminary injunction briefing.  NuVasive's

12   relationships with its consulting surgeons generally, not just those it chose to identify

13   at the preliminary injunction stage, are relevant to evaluating surgeon motivations

14   for using the allegedly embodying products, and therefore, NuVasive's claims for

15   damages and royalties as well as any secondary indicia of non-obviousness

16   NuVasive may assert.

17       **NuVasive's Objections Are Meritless:**  For example, NuVasive argues that

18   the sought-after documents and information are "not relevant to any claim or defense

19   in this case."  For the reasons above, this is plainly false.  NuVasive's overbreadth,

20   burdensome, and proportionality objections are meritless and NuVasive has not

21   provided any support for these objections. *Dolarian Capital*, 2012 WL 4026818, at

22   *2; Fed. R. Civ. P. 26(b)(2)(B).  Moreover, even if there were some true undue

23   burden, NuVasive must respond to the non-burdensome portion of the Request.

24   *M & F Fishing*, 2007 WL 9706573, at *10; *In re Rivera*, 2017 WL 5163695, at *6.

25       Accordingly, NuVasive should be ordered to produce documents responsive

26   to this Request.

27

28

**NuVasive's Statement:**

Alphatec propounded an unreasonably overbroad request for production seeking documents and information of little to no relevance to the actual claims and defenses of this case, and then, due to haste of entirely its own making, has prematurely run to the Court to seek relief.  Even though this request is hopelessly overbroad, NuVasive in good faith reached out to Alphatec to describe in detail the sizeable burden on NuVasive to produce all the agreements responsive to this request and invited Alphatec to further meet and confer regarding what specific information it hoped to glean from these documents so that NuVasive may evaluate whether and to what extent NuVasive may provide it via less burdensome means.  Dashe Decl. ¶ 11 (October 10, 2018 letter re RFP No. 5).  Yet Alphatec rejected NuVasive's reasonable attempt to resolve the issues posed by Alphatec's overbroad and unduly burdensome request without involving the Court.

**Alphatec Failed To Establish The Relevance Of Its Request:**  Alphatec once again makes only conclusory, unsupported statements regarding the relevancy of NuVasive's surgeon agreements and payments.  The only attempt Alphatec makes at tying these surgeon agreements and payments to the actual claims and defenses of this patent infringement suit is to baldly assert in one sentence that they are relevant to "damages and royalties as well as any secondary indicia of non-obviousness."  But Alphatec does not explain (as is its burden) why *all* of NuVasive's surgeon agreements and payments, including *every agreement and payment regarding non-relevant products and/or non-relevant, non-asserted patents* are relevant to damages, royalties, and/or objective indicia of non-obviousness for the *patents-in-suit*.  *See infra* at Section V.A.  For example, it is not apparent to NuVasive (nor has Alphatec explained) how an agreement between NuVasive and a surgeon requiring the surgeon to provide product development advice and/or peer education services regarding other surgical procedures (such as ALIF, TLIF, PLIF, or even cervical, rather than lumbar, spinal fusion), along with any payments for such services, is in

any way relevant to issues such as commercial success of the claimed invention, industry praise for the claimed invention, copying of the claimed invention, skepticism regarding the claimed invention, NuVasive's lost profits due to Alphatec's infringement of the asserted claims, etc.  Nor is it apparent to NuVasive (nor has Alphatec explained) how these unrelated agreements and payments are relevant to any other claim regarding Alphatec's infringement, the validity of the inventions of the patents-in-suit, or any other claim or defense. Yet, Alphatec's overbroad request would have NuVasive search for and produce such clearly irrelevant agreements.

**NuVasive Has Not Relied Upon Any Surgeon Agreements Or Related Payments To Surgeons For Its Claims Or Defenses:**  In light of Alphatec's tenuous case for actual relevancy, Alphatec then argues that NuVasive somehow put *all* of NuVasive's surgeon agreements and payments up for grabs by virtue of its statements in the preliminary injunction simply noting the mere fact that a handful of the surgeons targeted by Alphatec for conversion to its infringing products were NuVasive's consultants.  *See, e.g.*, Doc. No. 77 at 16.  NuVasive's simple identification of a very specific, limited group of surgeon-consultants does not make the entire universe of all surgeons, let alone every single NuVasive surgeon agreement and every single NuVasive surgeon payment, discoverable (including agreements and payments utterly unrelated to the subject matter of the patents-in-suit or related products), nor has Alphatec provided any authority supporting this position.[12]

---

[12] Alphatec's contention that NuVasive declarants Mr. Link and Mr. Inglish allegedly put at issue the identity of *all* of NuVasive's surgeon consultants in order to support its preliminary injunction papers is wrong and irrelevant to this request. Alphatec provided a list of its surgeon customers and prospective customers for its accused products.  Doc. No. 77-4 at 3-6.  NuVasive's damages expert (Mr. Inglish) asked for an identification of those Alphatec customers who are NuVasive consultants.  Doc. No. 77-3 at 34.  Thus, Mr. Inglish was provided with a list of

1    Alphatec's true motive for wanting these surgeon agreements and payments

2    becomes apparent in light of Alphatec's last attempt to assert relevancy by alleging

3    that NuVasive pays off its surgeon customers in order to allegedly improperly

4    influence their decisions to use its products.  But any of ***NuVasive's*** interactions

5    with its surgeon customers regarding those surgeon's general product purchasing

6    decisions (including purchasing decisions regarding products completely unrelated

7    to the patented products) have nothing to do with ***Alphatec's*** decision to knowingly

8    and affirmatively copy NuVasive's patented inventions and sell its infringing

9    knockoff to NuVasive's customers.[13]  Moreover, Alphatec fails to explain how all

10   of NuVasive's surgeon agreements (and/or related payments), including those

11   unrelated to the patented technology would provide any insight to a surgeon's

12   internal motive for purchasing the patented technologies.

13   Thus, it is clear that in order to deflect attention from its own willful

14   infringement, Alphatec's request is an attempt to dig up irrelevant mud on NuVasive

15   in order to turn this patent litigation lawsuit into a referendum on NuVasive's alleged

16   business practices (that NuVasive does not even employ) and to unwarrantedly

17   _____

18   NuVasive's consulting surgeon names, not any surgeon agreements.  *Id.* Thus,
     NuVasive did not put any surgeon agreement at issue.  Moreover, the fact that Mr.
19   Inglish may have relied on a list of surgeon names is not relevant to this request
     because it does not seek documents sufficient to show the surgeons who are
20   NuVasive consultants.  To the extent Alphatec seeks such information, this request
     does not ask for such documents.   Nor has Alphatec ever specifically asked
21   NuVasive to identify its full list of surgeon consultants, instead running to the Court
     for unwarranted and premature relief.  In any event, even if NuVasive somehow put
22   at issue the simple identity of each and every surgeon consultant, this alone cannot
     justify forcing NuVasive to also produce every agreement and every payment for
23   each of these surgeons.
24
     [13] And, as described below with respect to Alphatec's RFPs Nos. 6 and 7, the
25   government investigations it cites here to support its claim of NuVasive's alleged
     improper influence instead underscore the fact that NuVasive's interactions with its
26   surgeon customers Alphatec is pointing to have nothing to do with the claims and
     defenses of this case.  *See Infra* Sections II.E. and F (NuVasive's Statements re RFP
27   Nos. 6 and 7).
28

1   smear NuVasive's reputation. This is precisely the type of discovery fishing

2   expedition that courts find improper and to be avoided. *See Micro Motion, Inc. v.*

3   *Kane Steel Co., Inc.*, 894 F.2d 1318, 1328 (Fed. Cir. 1990) ("A litigant may not

4   engage in merely speculative inquiries in the guise of relevant discovery."); *Wi-LAN*

5   *Inc. v. Lenovo (United States), Inc.*, No. 17CV365-BEN-MDD, 2017 WL 3194692,

6   at *2 (S.D. Cal. July 27, 2017); *Rivera v. Nibco, Inc.*, 364 F.3d 1057, 1072 (9th Cir.

7   2004) (courts "need not condone the use of discovery to engage in 'fishing

8   expedition[s]'") (citation and quotation omitted).

9   **Complying With Alphatec's Request Poses Significant Burden To**

10  **NuVasive (And In Certain Instances, It Is Impossible For NuVasive To**

11  **Comply):**   Not only are Alphatec's discovery requests seeking all surgeon

12  agreements and payments overbroad and not sufficiently tailored to issues relevant

13  to this case, collecting and producing the requested agreements and payments will

14  be incredibly burdensome to NuVasive.  NuVasive timely informed Alphatec about

15  these issues and even invited Alphatec to provide the information it specifically

16  looked to glean from these surgeon agreements and payments in order to figure out

17  a way to resolve such issues stemming from Alphatec's overbroad requests.  Dashe

18  Decl. ¶ 11 (October 10, 2018 letter re RFP No. 5).  But Alphatec not only refused

19  NuVasive's good faith request to negotiate a mutually acceptable solution and

20  prematurely ran to the Court, it further dismisses NuVasive's concerns regarding

21  burden out of hand and without meaningfully considering NuVasive's position.

22  First, Alphatec contends that NuVasive's statements in correspondence

23  regarding burden were "nothing more than attorney say so." That is false.  NuVasive

24  specifically noted in correspondence that its concerns regarding burden were based

25  on an actual investigation of NuVasive's own documents and information, and thus

26  were not mere attorney arguments.  *Id.*  Indeed, it is Alphatec that relies on mere

27  attorney argument to dismiss NuVasive's substantiated concerns regarding burden.

28  For example, Alphatec dismisses NuVasive statement that:

1
2
3
4

> determining what payments, if any, to any given surgeon (or a related entity) were made pursuant to any given surgeon consulting agreement requires NuVasive (at the very least) to pull and review over a decades' worth of individual surgeon agreements and to conduct an extensive analysis into whether payments were made related to the field of spinal fusion surgery,

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20

*id.*, arguing, based on no actual evidence, that NuVasive does not actually need to determine whether a payment was made pursuant to any given surgeon consulting agreement because *any* payments made to a surgeon practicing spinal fusion surgery is relevant and responsive to this request. But Alphatec's position is based on an entirely new and significantly broader interpretation of the scope of this request – up until this briefing, it was NuVasive's understanding based on the plain meaning of the language of the request that Alphatec sought all surgeon agreements in the field of spinal fusion surgery and payments *related* to those agreements. Yet despite NuVasive's statements in its correspondence indicating it reasonably believed Alphatec sought "all agreements with and ***related*** payments to surgeons in the field of spinal fusion surgery," *id.*, Alphatec never informed NuVasive it disputed this interpretation, leaving NuVasive to be ambushed in this briefing to the Court. Thus, Alphatec has failed to satisfy its meet and confer obligations and its request for all payments to surgeons in the field of spinal fusion surgery (even those not made pursuant to any consulting agreement) should be denied on that basis alone.[14]

21
22
23
24
25
26
27
28

---

[14] Relatedly, Alphatec appears to argue for the first time in this motion that NuVasive "put at issue all of its surgeon consulting agreements, not just specific consulting agreements for spinal fusion surgery," and thus NuVasive should potentially be forced to produce all payments to all surgeons even outside of the field of spinal fusion surgery. First, as explained in footnote 11 above, Alphatec's contention that Mr. Inglish's identification of a small handful of NuVasive surgeon consultants targeted by Alphatec somehow puts every single surgeon consulting agreement (even outside of the field of spinal fusion surgery) at issue is wrong. Additionally, not only has Alphatec never informed NuVasive it believes NuVasive should produce payments to all surgeons (even though who are not in the field of spinal surgery), even this document request does not seek such payments, based any

Additionally, had Alphatec taken NuVasive's concerns seriously and actually negotiated with NuVasive as requested, NuVasive would have explained to Alphatec (as set forth in the attached sworn declaration of John A. English in Support of Joint Motion for Determination of Discovery Dispute ("NuVasive Decl.") at ¶¶ 7-8) that for payments made before August 1, 2013, it tracks the payments it makes by the actual entities paid, rather than by the individual being paid; for payments made after August 1, 2013 to present, the data collected and tracked is limited to what is required under the Sunshine Act and will not encompass all payments made to all surgeons or work for a particular project.   Nor are NuVasive's systems specifically designed to identify the specific individuals associated with the actual entity paid. NuVasive Decl. at ¶¶ 7-8.  And, many surgeons specify that payments should be made to a related entity, not the individual surgeon.  NuVasive Decl. at ¶¶ 7-8.  Thus, despite Alphatec's unsupported contention that NuVasive's "careful" sales tracking can allow it to pull any and all data with ease, in practice, for the payments pre-dating August 1, 2013, it is essentially impossible for NuVasive to go to its accounting system, look at every entity paid, and simply reverse engineer every single individual surgeon NuVasive has ever paid.  NuVasive Decl. at ¶¶ 7-8.  For those pre-August 1, 2013 payments, NuVasive would have to have persons with special knowledge of NuVasive's systems and surgeon documents abandon their ordinary jobs to spend hundreds of hours (at least) to manually compile the list of individual surgeons and their related payment entities from thousands of documents that must be individually reviewed (such as consulting agreements).  NuVasive Decl. at ¶¶ 7-8.  Only then could NuVasive potentially generate the report of those pre-August 1, 2013 payments that Alphatec is requesting.  And for post-August 1, 2013 payments, the data collected and maintained is limited to what is required under the

reasonable interpretation of the request's language.  Thus, Alphatec's request as to these payments should be denied.

Sunshine Act and will not encompass all payments to all surgeons or work for a particular project, as discussed above. NuVasive Decl. at ¶¶ 7-8.

Moreover, further assuming Alphatec had actually reached out to NuVasive to continue negotiations regarding NuVasive's concerns regarding relevancy and burden, NuVasive would have also explained (as also set forth in the attached declaration) that simply narrowing the scope of this request to seek only those consulting agreements or payments relating to the asserted patents or related XLIF products would still be incredibly burdensome. NuVasive Decl. at ¶¶ 3-5. Specifically, NuVasive has more than 2,000 – 3,000 individual surgeon consulting agreements and many of these thousands of consulting agreements are related only to NuVasive's non-XLIF product portfolio (e.g., cervical, posterior, biologics, trauma, etc.). NuVasive Decl. at ¶ 4. NuVasive also does not specifically track which surgeon consulting agreements relate to the asserted patents or related XLIF products. NuVasive Decl. at ¶ 5. In order to identify those agreements that specifically relate to the asserted patents or related XLIF products, multiple NuVasive employees with specialized knowledge regarding NuVasive's product portfolio and naming conventions would have to spend hundreds of hours manually reviewing each and every surgeon agreement to determine whether any particular agreement actually related to the asserted patents or XLIF. NuVasive Decl. at ¶ 5. And, as discussed above, those people would also have to manually review and pull the relevant payment entities from each surgeon contract before being able to run a report regarding payments pursuant to any of these contracts that pre-dated August 1, 2013 (and post-August 1, 2013 payment data is limited to what is required to be collected and tracked by the Sunshine Act). NuVasive Decl. at ¶¶ 7-8.

Similarly, Alphatec simply dismisses NuVasive's stated concerns that production of surgeon agreements would be burdensome regarding third party confidentiality issues and related burden based on mere speculation. For example, Alphatec states that there can be no third party confidentiality concerns regarding

1   surgeon agreements since NuVasive's mere mention that a surgeon is a consultant

2   in its preliminary injunction papers must have waived or violated any confidentiality

3   obligations.  Alphatec's assertion is based on no evidence whatsoever, and is flatly

4   contradicted by NuVasive's sworn declaration (attached) that generally NuVasive's

5   surgeon consulting agreements contain some confidentiality provision limiting the

6   disclosure of the precise terms of the agreement or the agreement itself to third

7   parties.  NuVasive Decl. at ¶ 6.  And, as additionally described in NuVasive's

8   declaration, to make sure it does not potentially breach any agreements that may

9   contain any such third party confidentiality terms, NuVasive would have to manually

10  review each and every one of the 2,000 to 3,000 agreements to determine if they

11  have a confidentiality clause, and if so, what procedures or steps NuVasive may have

12  to follow before production to avoid breach (such as notifying the surgeon and/or

13  redacting specific information).  NuVasive Decl. at ¶ 6.  However, NuVasive is <u>not</u>

14  taking the position it can simply withhold production of all surgeon consulting

15  agreements based on third party confidentiality concerns alone.  Instead, as

16  explained repeatedly above, NuVasive simply intends to follow the parties' mutual

17  agreement regarding third party confidentiality.  In light of that, NuVasive has

18  notified Alphatec that this could pose significant burden and rather than refusing to

19  produce documents, simply requested the parties meet and confer to determine if

20  there was some less burdensome way to get Alphatec the information it believes it

21  needs to make its claims and defenses in this case.  Dashe Decl. ¶ 11 (October 10,

22  2018 letter re RFP No. 5).  So yet again, Alphatec's haste to seek relief has

23  manufactured a dispute where there should be none.

24       **NuVasive's Response To Meet And Confer Was Proper:**  Finally, as

25  discussed above with respect to RFP No. 1, NuVasive reiterates that its response

26  requesting to meet and confer ***regarding ESI*** was proper in light of the procedures

27  for production of ESI set forth in the Model ESI Order and as agreed-to by the

28  parties, and in light of the fact that Alphatec had not (and still has not) provided its

1   ESI search terms or custodian proposals.  Moreover, as explained in detail above,

2   Alphatec's request is unreasonably overbroad, and NuVasive properly sought to

3   meet and confer regarding narrowing the scope of this request.

4       **E.**     **Request for Production No. 6**

5       **Request:** All documents, communications, and things concerning the Society

6   of Lateral Access Surgery.

7       **Response:** NuVasive incorporates by reference each of the General

8   Objections.  NuVasive objects to this Request on the grounds and to the extent it is

9   overly broad, unduly burdensome, not proportional to the needs of the case, and not

10   relevant to any claim or defense in this case.  Specifically, NuVasive objects to this

11   Request to the extent it seeks "all documents, communications, and things," and

12   "all" information concerning the Society of Lateral Access Surgery, and it is

13   unlimited as to time.  NuVasive objects to this Request to the extent it seeks

14   "Privileged Documents."  NuVasive objects to this Request to the extent it seeks

15   information that is publicly available.

16       Subject to and without waiving the foregoing objections, NuVasive responds

17   as follows: NuVasive invites Alphatec to meet and confer regarding the scope of this

18   Request.

19       **Alphatec's Statement:**

20       NuVasive has not agreed to search for documents responsive to this Request.

21   The Court should compel NuVasive to do so for the same reasons discussed above.

22   Specifically, the Court should compel NuVasive to produce documents that result

23   from the application of any agreed-to ESI search terms to any non-individual

24   electronic storage locations reasonably likely to contain documents,

25   communications, and things regarding the Society of Lateral Access Surgery

26   ("SOLAS").

27       **NuVasive's Deficient Responses:** NuVasive's responses to this Request are

28   deficient.  ***First***, NuVasive's answer is non-responsive, "invit[ing] Alphatec to meet

and confer regarding the scope of this Request."  A document request propounded under Rule 34 does not seek invitations to meet and confer.

*Second*, after meeting and conferring, NuVasive stated that it "will not withhold "documents responsive to other RFPs for which NuVasive has agreed to produce documents on the grounds that they may also relate to [SOLAS]." Sept. 27, 2018 NuVasive Corr.  This amounts to nothing more than a promise to produce documents responsive to *other* Requests, *not the present Request*.  Alphatec seeks production of documents responsive to *this* Request (in addition to those responsive to others).  This non-response provides no indication of whether and to what extent NuVasive will produce documents responsive to *this Request*.

*Third*, in response to NuVasive, Alphatec requested that NuVasive confirm "that NuVasive will apply any agreed-to search terms to any non-individual electronic storage locations reasonably likely to contain documents, communications, and things concerning SOLAS."  Oct. 1, 2018 Alphatec Corr.  NuVasive responded that it "is currently further considering [Alphatec's] position" and, continued its dilatory tactics by requesting case law supporting Alphatec's position.  Oct. 3, 2018 NuVasive Corr.  Two months have passed since the Request was served, and NuVasive still has not substantively responded.  Indeed, NuVasive has not even agreed to apply ESI search terms to the non-individual electronic storage locations likely to contain responsive documents—e.g., NuVasive's documents regarding SOLAS.  There is no basis for this refusal.  If NuVasive has any non-individual ESI locations that are reasonably likely to contain responsive documents, it should be ordered to search them pursuant to the parties' agreements regarding non-individual ESI custodians discussed above with respect to Request for Production No. 1.

**Relevance of Requested Information:** Documents, communications, and things that hit on any agreed-to search terms applied to ESI storage locations regarding SOLAS are relevant.  Alphatec served this request knowing that it would

1    necessarily be functionally limited by the scope of the parties' search terms and

2    custodians.  But, NuVasive refuses to even apply its search terms to its ESI storage

3    locations regarding SOLAS.

4         SOLAS is an organization created and funded by NuVasive.  The DOJ alleged

5    NuVasive used SOLAS to violate the federal Anti-Kickback Statue—allegations

6    which NuVasive settled by paying the U.S. government millions of dollars.  Doc.

7    No. 49-72 at ¶¶ 121-122; Doc. No. 49-129 at 2.  SOLAS was the perceived

8    marketing arm of NuVasive, and prior to the DOJ settlement, membership in SOLAS

9    was contingent on a surgeon performing at least 10 XLIF procedures per year.  Doc.

10   No. 49-72 at ¶ 122; Doc. No. 49-139 at 58:11-58:15.  Moreover, NuVasive's

11   declarant Matthew Link cites to an article published in SOLAS News for what

12   "NuVasive's internal market research demonstrated" regarding perceptions of XLIF

13   (the products allegedly embodying the patents-in-suit).  Doc. No. 37-13 ¶ 20.

14   Therefore, the requested documents, communications, and things are relevant to

15   evaluating the reasons why surgeons are using or have used NuVasive's products

16   allegedly embodying the patents-in-suit—for example, to demonstrating that

17   surgeons use the products because of SOLAS marketing efforts, as well as whether

18   NuVasive induced such surgeons to purchase XLIF as a result of alleged kickbacks.

19   Accordingly, the requested documents, communications, and things will inform

20   NuVasive's claims for damages, royalties, and injunctive relief as well as any

21   secondary indicia of non-obviousness NuVasive may assert.  NuVasive cannot

22   contend that it's sales of XLIF are relevant to show harm, yet attempt to shield the

23   reasons for those sales from this Court or Alphatec.

24         **NuVasive's Objections Are Meritless:** For example, NuVasive argues that

25   the sought-after documents and information are "not relevant to any claim or defense

26   in this case."  For the reasons above, this is plainly false.  NuVasive's objection that

27   the sought-after information is "publicly available" is not a valid, recognized

28   objection. *See Brown*, 2013 WL 12124097, at *3.  NuVasive must respond with the

1  information it has in its possession, custody, or control.  NuVasive's overbreadth,

2  burdensome, and proportionality objections are meritless and NuVasive has not

3  provided any support for these objections.  *Dolarian Capital*, 2012 WL 4026818, at

4  *2; Fed. R. Civ. P. 26(b)(2)(B).  Moreover, even if there were some true undue

5  burden, NuVasive must respond to the non-burdensome portion of the Request.

6  *M & F Fishing*, 2007 WL 9706573, at *10; *In re Rivera*, 2017 WL 5163695, at *6.

7       Accordingly, NuVasive should be ordered to produce documents responsive

8  to this Request.

9       **NuVasive's Statement:**

10      As with its request for surgeon agreements and payments, Alphatec

11  propounded a grossly overbroad request for production encompassing wide swathes

12  of documents unrelated to any claim or defense in this case, and rushed to seek relief

13  from the Court (due to timing concerns cause entirely by its own delay), despite

14  NuVasive's further attempts to come to an agreement to reasonably narrow the scope

15  of this request.[15]

16      **Alphatec's Assertion That NuVasive Is Causing Delay Lacks Any Basis:**

17  Alphatec baselessly accuses NuVasive of engaging in dilatory tactics merely

18  because it reasonably took time to: (1) undertake an investigation regarding

19  production of all documents relating to an entity that was founded over 15 years ago

20  and has also not been affiliated with NuVasive for years, and (2) further requested

21  case law from Alphatec to support its assertion that this request was not overbroad

22  as NuVasive believed (in order to assist the parties in coming to a reasonable

23  compromise).  As explained with respect to RFP No. 1, Alphatec's general refusal

24  to negotiate with NuVasive due to timing issues caused by its own lack of foresight

25

26

27      [15] NuVasive also notes that because Alphatec's request is grossly overbroad,

28  NuVasive's good faith response seeking a meet and confer, rather than an outright
refusal to produce documents, is entirely proper (contrary to Alphatec's assertion).

1  does not mean that NuVasive's good faith investigations and negotiations constitute

2  intentional or unreasonable delay.

3  **Alphatec's Request Is Overbroad And A Thinly-Disguised Fishing**

4  **Expedition:** Alphatec has misrepresented what SOLAS is to contend that any and

5  all SOLAS-related documents are relevant to the claims and defenses of this case.

6  SOLAS is an organization founded by NuVasive many years ago in the early days

7  of lateral surgery, when lateral surgery was still considered by many to be a "niche"

8  technique, dedicated to the advancement of these new minimally disruptive spine

9  surgery techniques through peer-to-peer communication, research, and clinical

10  education efforts.  Doc. Nos. 37-13 at 21; 37-19.  Surgeons who used competitor

11  products were able to be members, and SOLAS's educational outreach efforts

12  generally related to lateral surgery, including XLIF.  *See* Doc. No. 37-19.  However,

13  SOLAS was spun out from NuVasive in 2015, and since then has been (and is

14  currently) a wholly independent legal entity no longer under the direction or control

15  of NuVasive.  Nor has SOLAS ever been the marketing arm of NuVasive, as

16  Alphatec suggests.

17  NuVasive recognizes that documents in its possession regarding surgeon

18  outreach, training, clinical education, etc. relating to lateral spinal fusion surgery

19  and/or XLIF may have been presented at SOLAS-related functions (e.g., the

20  document cited by NuVasive's declarant Matthew Link and pointed to by Alphatec

21  above, which contained an article by an XLIF doctor regarding his experiences with

22  training surgeons on what they perceived to be a new lateral technique).  Doc. No.

23  37-19 at 4.  Thus, NuVasive has agreed to search for and produce documents

24  responsive to other requests, including those specifically seeking such surgeon

25  outreach, training, clinical education, etc. documents, *see* Dashe Decl. Ex. A (and

26  will further undertake parties' agreed-to ESI search process if Alphatec ever submits

27  its ESI search term and custodian proposals), and will not withhold any such

28

1  documents by virtue of also being related to SOLAS.  Dashe Decl. ¶ 7 (September

2  27, 2018 letter re RFP No. 6).

3      However, Alphatec's request is not limited to relevant surgeon outreach,

4  training, clinical education, etc. documents (which NuVasive will already be

5  producing).  Instead, it additionally seeks *each and every additional document* that

6  may refer or relate to SOLAS at all, untethered to the inventions of the patents-in-

7  suit or Alphatec's infringement, such as administrative documents, as well as

8  documents merely mentioning SOLAS in passing without any further reference to

9  XLIF or even other lateral competitors.  Yet Alphatec again fails to provide more

10 than conclusory, unsupported statements regarding the relevancy of these additional

11 SOLAS documents.

12     As with the surgeon agreements and payments discussed above, Alphatec

13 similarly makes only a bald one-sentence assertion that these documents are

14 somehow relevant to "damages, royalties, and injunctive relief as well as any

15 secondary indicia of non-obviousness."  But Alphatec similarly fails to explain (as

16 is its burden) *why* all of NuVasive's SOLAS documents are relevant to these issues.

17 *See infra* at Section V.A.  Instead, as with RFP No. 6 above, Alphatec again falls

18 back on its same argument that these documents somehow relate to NuVasive's

19 improper attempts to influence its customers.  And as explained with RFP No. 6,

20 even this explanation fails.  Alphatec similarly does not explain how *all* of

21 NuVasive's SOLAS documents, including those unrelated to the patented

22 technology, would provide any insight into a surgeon's motive for purchasing the

23 patented technologies.

24     Nor does the one single government investigation that Alphatec alleges above

25 involved improper payments via SOLAS support Alphatec's argument that *all*

26 SOLAS documents are relevant here.  The lone case Alphatec cites in its

27

28

memorandum of points and authorities below[16] – *Fresenius Med. Care Holding Inc. v. Baxter Int'l, Inc.*, 224 F.R.D. 644, 654 (N.D. Cal. Feb. 5, 2004) – further supports the fact that this single unrelated investigation cannot be used to justify Alphatec's claims that this request seeks information relevant to the claims and defenses in this patent infringement lawsuit, such as lost profits.  In *Fresenius*, the patentee claimed lost profits, including lost profits from lost sales of collateral products.  *Id.*  But it had recalled one of those collateral products, which resulted in a government investigation of the recall – thus, the Court found that documents relating to that recall (including the government investigation) were specifically relevant to show that the patentee did not lose any given sale due to the infringing product, but rather it lost a given sale because it had to recall its own product.  *Id*.  In contrast, here, Alphatec did not launch its accused product until 2017: years *after* any actions giving rise to the investigation referenced above by Alphatec and years since SOLAS has been controlled by NuVasive.  *See* Doc. No. 49-72 at 49 (investigation settled in 2015).  Thus, any interactions between NuVasive and its customers that Alphatec alleges above were subject to this 2015 investigation cannot have any relevance to establishing or refuting the contention that NuVasive has lost sales to Alphatec's infringing product.

This is a case about ***Alphatec's*** improper infringing interactions with surgeons (knowingly and purposely infringing NuVasive's patents by selling and offering to sell its XLIF copycat to NuVasive's surgeon customers), and Alphatec should not be allowed to use the discovery process in this patent infringement lawsuit to engage in a fishing expedition to attempt to dig up irrelevant mud on NuVasive to deflect attention from its actually relevant willful infringement.  *See Micro Motion*, 894 F.2d

---

[16] NuVasive also notes that despite **repeatedly** asking Alphatec for cases supporting is assertion that SOLAS and government investigation documents are relevant to the claims and defenses of this case, *see, e.g.*, Dashe Decl. ¶ 11 (October 10, 2018 letter re RFP No. 6), Alphatec cites *Fresenius* for the first time in this motion, and thus, Alphatec has refused to negotiate in good faith with NuVasive.

at 1328 ("A litigant may not engage in merely speculative inquiries in the guise of relevant discovery."); *Wi-LAN*, 2017 WL 3194692, at *2; *Rivera*, 364 F.3d at 1072 (courts "need not condone the use of discovery to engage in 'fishing expedition[s]'") (citation and quotation omitted).

## F.    Request for Production No. 7

**Request:**  All documents, communications, and things concerning any government investigation of NuVasive regarding sales, marketing, and/or payments to surgeons in the field of spinal fusion surgery.

**Response:**  NuVasive incorporates by reference each of the General Objections.  NuVasive objects to this Request on the grounds and to the extent it is overly broad, unduly burdensome, not proportional to the needs of the case, and not relevant to any claim or defense in this case.  Specifically, NuVasive objects to this Request to the extent it seeks "all documents, communications, and things," "any government investigation. . . .," and "the field of spinal fusion surgery," and it is unlimited as to time.  NuVasive objects to this Request to the extent it seeks "Privileged Documents."  NuVasive objects to this Request to the extent it seeks information that is publicly available.  Pursuant to and without waiving the foregoing objections, NuVasive responds as follows: NuVasive will not produce documents in response to this Request.

### Alphatec's Statement:

NuVasive has refused to produce documents in response to this Request, which are squarely relevant to NuVasive's alleged harm and sales of its embodying products, as discussed above.  The Court should compel NuVasive to produce documents, communications, and things concerning any government investigation of NuVasive regarding sales, marketing, and/or payments to surgeons in the field of spinal fusion surgery.

**NuVasive's Deficient Responses:** After meeting and conferring, NuVasive's response has been only that it "is willing to meet and confer further … if Alphatec

provides case law supporting its assertion that the requested documents regarding government investigations are relevant and proportional." Sept. 27, 2018 NuVasive Corr. NuVasive takes this position *despite* the fact that Alphatec has already outlined, both through telephone meet and confers and correspondence, how and why a request seeking documents about government investigations into NuVasive's improper sales practices is relevant. NuVasive's relevance argument is not a proper basis to withhold discovery. NuVasive must produce the documents. To the extent it believes such documents should be limited in their use in this case, NuVasive is free to seek a motion *in limine* at the appropriate time.

**Relevance of Requested Information:** The requested documents, communications, and things are relevant to evaluating the reasons why surgeons are using or have used NuVasive's products allegedly embodying the patents-in-suit. NuVasive has previously been investigated, and is currently under investigation, by the federal government for improperly inducing use of its products by paying improper kickbacks. Doc. No. 49-72 at ¶¶ 121-125; Doc. No. 49-129 at 2.

- In 2015, NuVasive paid $13.5 million to settle government allegations that "NuVasive caused false claims by paying kickbacks to induce physicians to use the company's CoRoent System" and "NuVasive knowingly offered and paid illegal remuneration to certain physicians to induce them to use the CoRoent System in spine fusion surgeries." Doc. No. 49-72 at ¶¶ 121-122; Doc. No. 49-129 at 2.

- On August 31, 2015, NuVasive received a civil investigative demand issued by the DOJ regarding an additional investigation. The DOJ alleged in this instance that NuVasive "assisted a physician group customer in submitting improper claims for reimbursement, and made improper payments to the physician group in violation of the Anti-Kickback Statute." This investigation is ongoing. Doc. No. 49-72 at ¶ 123; Doc. No. 49-130 at 4.

- On June 9, 2017, NuVasive received a subpoena from the Office of the Inspector General of the U.S. Department of Health and Human Services ("OIG") connected to "an investigation into possible false or otherwise improper claims submitted to Medicare and Medicaid." The OIG was seeking documents pertaining to "sales to a particular customer and relationships related to that customer account." This investigation is also ongoing. Doc. No. 49-72 at ¶ 124; Doc. No. 49-130 at 4.

Therefore, the requested documents, communications, and things are relevant to determining whether surgeons are using NuVasive products not for the patented technologies, but instead because they were induced to do so by payments from NuVasive. Accordingly, the requested documents, communications, and things will inform NuVasive's claims for damages, royalties, and injunctive relief as well as any secondary indicia of non-obviousness NuVasive may assert.

**NuVasive's Objections Are Meritless:** For example, NuVasive's objection that the sought-after information is "publicly available" is not a valid, recognized objection. *See Brown*, 2013 WL 12124097, at *3. Thus, NuVasive must respond with the information it has in its possession, custody, or control. NuVasive's overbreadth, burdensome, and proportionality objections are meritless and NuVasive has not provided any support for these objections. *Dolarian Capital*, 2012 WL 4026818, at *2; Fed. R. Civ. P. 26(b)(2)(B). Moreover, even if there were some true undue burden, NuVasive must respond to the non-burdensome portion of the Request. *M & F Fishing*, 2007 WL 9706573, at *10; *In re Rivera*, 2017 WL 5163695, at *6.

Accordingly, NuVasive should be ordered to produce documents responsive to this Request.

**NuVasive's Statement:**

**NuVasive's Responses Were Not Deficient:** As with its requests for all surgeon agreements and payments, as well as its request for all SOLAS documents,

Alphatec's request regarding government investigations is hopelessly overbroad and seeks information having nothing to do with this case. Despite that, NuVasive has repeatedly in good faith attempted to negotiate with Alphatec to avoid involving the Court by asking Alphatec to actually provide an actual explanation and legal authority justifying its request (as is required for Alphatec to meet its burden in any motion to compel filed with this Court) rather than merely repeating its conclusory, non-explanatory statements during meet and confers and other correspondence. *See, e.g.*, Dashe Decl. ¶ 7 (September 27, 2018 letter re RFP No. 7). Yet Alphatec stonewalled NuVasive's requests, insisting that these unrelated government investigations were relevant based merely on its say so, and refused to provide any further explanation or case law.

**Alphatec Fails To Justify The Relevance Of This Request, Instead It Is A Thinly-Disguised Fishing Expedition:** Incredibly, Alphatec affirmatively takes the position that it need not actually explain or justify its claim of relevance regarding government investigations, instead stating that NuVasive must simply agree with Alphatec's unsupported conclusory allegations of relevance, and seek a motion *in limine* later to "limit" these documents' use. But that is not the standard – Alphatec as the propounding party is the one who bears the initial burden of justifying the relevance of its requests, *see infra* at Section V.A.; it cannot circumvent its burden here by saying NuVasive can somehow fix the problems with its grossly overbroad request later via a motion *in limine*.

As with the surgeon payment and SOLAS requests, Alphatec again makes only a bald one-sentence assertion that these government investigation documents are somehow relevant to "damages, royalties, and injunctive relief as well as any secondary indicia of non-obviousness." But Alphatec similarly fails to explain (as is its burden) *why* all documents that even tangentially concern completely unrelated government investigations into issues unrelated to the patented technologies here are relevant to these issues. *See infra* at Section V.A. Instead, as with RFP Nos. 6 and

1   7 above, Alphatec again falls back on its same argument that these documents

2   somehow relate to NuVasive's improper attempts to influence its customers.  And

3   as explained above, even this explanation fails.  Alphatec similarly does not it

4   explain how *all* of NuVasive's documents that may even tangentially relate to

5   government investigations, including ones regarding products and payments

6   unrelated to the patented technologies, would provide any insight into a surgeon's

7   motive for purchasing the patented technologies.

8           Moreover, even the facts and circumstances of the government investigations

9   as set forth by Alphatec above demonstrate they have no relevance to the claims and

10  defenses of this case.  As discussed above, the lone case Alphatec cites as support in

11  its memorandum of points and authorities below[17] – *Fresenius* , 224 F.R.D. at 654 –

12  found that documents relating to government investigations into a recall of a

13  collateral product were specifically relevant to show that the patentee did not lose

14  any given sale of its collateral products due to the infringing product, but rather

15  because it had to recall its own product. *Id*.  Yet, as explained above with respect to

16  the 2015 investigation referenced for RFP No. 6 above, the additional investigation

17  Alphatec cites also took place in 2015.  As Alphatec did not launch its accused

18  product until years *after*, any surgeon interactions Alphatec alleges were part of this

19  investigation cannot have any relevance to establishing or refuting the contention

20  that NuVasive has lost sales to Alphatec's infringing product.  And the June 2017

21  investigation described by Alphatec above not only relates to actions that predate the

22  majority of Alphatec's sales (as it did not fully launch its accused product until

23  October 2017) and similarly is not relevant to any of NuVasive's lost sales due to

24  Alphatec's product, it also relates to a ***subpoena*** to NuVasive regarding ***others'***

_____

26      [17] NuVasive also notes that despite ***repeatedly*** asking Alphatec for cases
27  supporting is assertion that SOLAS and government investigation documents are
    relevant to the claims and defenses of this case, Dashe Decl. ¶ 11 (October 10, 2018
28  letter re RFP No. 6), Alphatec cites *Fresenius* for the first time in this motion,
    underscoring that Alphatec has refused to negotiate in good faith with NuVasive.

1  activities.  This cannot provide any relevance to either establishing lost profits (as

2  set forth in Alphatec's lone legal authority allegedly justifying this request) or any

3  other claim or defense in this action.

4       This is a case about *Alphatec's* improper infringing interactions with surgeons

5  (knowingly and purposely infringing NuVasive's patents by selling and offering to

6  sell its XLIF copycat to NuVasive's surgeon customers), and Alphatec should not

7  be allowed to use the discovery process in this patent infringement lawsuit to engage

8  in a fishing expedition to attempt to dig up irrelevant mud on NuVasive to deflect

9  attention from its actually relevant willful infringement.  *See Micro Motion*, 894 F.2d

10  at 1328 ("A litigant may not engage in merely speculative inquiries in the guise of

11  relevant discovery."); *Wi-LAN*,  2017 WL 3194692, at *2; *Rivera*, 364 F.3d at 1072

12  (courts "need not condone the use of discovery to engage in 'fishing expedition[s]'")

13  (citation and quotation omitted).

14  **G.    Request for Production No. 8**

15  **Request:**  All documents, communications, and things concerning the

16  ownership, including any assignments, of the patents-in-suit.

17  **Response:**  NuVasive incorporates by reference each of the General

18  Objections.  NuVasive objects to this Request on the grounds and to the extent it is

19  overly broad, unduly burdensome, not proportional to the needs of the case, and not

20  relevant to any claim or defense in this case.  Specifically, NuVasive objects to this

21  Request to the extent it seeks "all documents, communications, and things," and it

22  is unlimited as to time.  NuVasive objects to this Request to the extent it seeks

23  "Privileged Documents."   NuVasive objects to this Request to the extent it is

24  duplicative of and cumulative to Request for Production Nos. 2 and 10.

25       Subject to and without waiving the foregoing objections, NuVasive responds

26  as follows: NuVasive has already produced documents sufficient to show its

27  ownership of the patents-in-suit pursuant to Patent L.R. 3.2.d.

28

**Alphatec's Statement:**

NuVasive has refused to produce documents responsive to this Request, contending that it "has already produced documents sufficient to show its ownership of the patents-in-suit pursuant." NuVasive's ownership, while relevant, is not the only relevant ownership interest.  Thus, the Court should compel NuVasive to produce documents, communications, and things concerning the ownership, including any assignments, of the patents-in-suit in addition to those "sufficient to show its ownership of the patents-in-suit."

**NuVasive's Deficient Responses:** NuVasive has not agreed to produce documents responsive to this Request, instead maintaining that it "has already produced documents sufficient to show its ownership of the patents-in-suit."  But this Request does not only seek "documents sufficient to show [NuVasive's] ownership of the patents-in-suit."  Instead, it seeks documents, communications, and things concerning the ownership of the patents-in-suit, including any assignments, of the patents-in-suit.  As such, this Request seeks information about all ownership interests, not just NuVasive's purported current ownership interest in each patent-in-suit.  Thus, NuVasive has impermissibly limited the scope of this Request.

**Relevance of Requested Information:** The requested documents, communications, and things are relevant to determining who are the proper parties to this lawsuit, and to evaluating NuVasive's claims for damages, royalties, and injunctive relief.  This Requests seeks basic, foundational information about the ownership history of the patents-in-suit—information that is (1) relevant to understanding who currently has standing to assert infringement claims against Alphatec, and (2) critical to understanding any transfer of interests or rights in the patents, as such a transfer would very likely have involved, or considered at the very least, a monetary value assigned to the patent(s) at stake.  The requested information will then inform the past and current value of the patents-in-suit, which is

1   inextricably tied to NuVasive's claims for lost profits and a reasonable royalty, as

2   well as any future claim for injunctive relief NuVasive may assert.

3      **NuVasive's Objections Are Meritless:** For example, NuVasive argues that

4   the sought-after documents and information are "not relevant to any claim or defense

5   in this case." For the reasons above, this is plainly false. NuVasive also objects that

6   this Request is duplicative, but it fails to specify how so. NuVasive's overbreadth,

7   burdensome, and proportionality objections are meritless and NuVasive has not

8   provided any support for these objections. *Dolarian Capital*, 2012 WL 4026818, at

9   *2; Fed. R. Civ. P. 26(b)(2)(B). Moreover, even if there were some true undue

10  burden, NuVasive must respond to the non-burdensome portion of the Request.

11  *M & F Fishing*, 2007 WL 9706573, at *10; *In re Rivera*, 2017 WL 5163695, at *6.

12     Accordingly, NuVasive should be ordered to produce documents responsive

13  to this Request.

14     **NuVasive's Statement:**

15     **There Is No Real Dispute Regarding Request No. 8:** Alphatec's assertion

16  that NuVasive has not agreed to produce documents responsive to this Request is

17  incorrect. NuVasive already produced documents showing its ownership of the

18  patents-in-suit. NuVasive already produced the patent assignments and the record

19  of each patent assignment from the USPTO according to Patent L.R. 3.2 on June 29,

20  2018. Thus, the chain of ownership of the asserted and related patents is complete

21  and intact and, therefore, Alphatec has no basis to assert that NuVasive's production

22  and agreement to produce is not complete or sufficient.

23     Despite all this, when Alphatec asserted that NuVasive's response was

24  insufficient, NuVasive asked Alphatec to explain what else it wants. Alphatec has

25  only ever specifically identified two agreements regarding a security interest in

26

27

28

NuVasive's patent portfolio,[18] which NuVasive also agreed to produce despite the fact that they have nothing to do with ownership of the asserted patents.  Dashe Decl. ¶ 6 (September 24, 2018 letter re RFP No. 8), ¶ 11 (October 10, 2018 letter re RFP No. 8).  Thus, there is nothing Alphatec has asked for that NuVasive is withholding and there is nothing to compel.

**Alphatec's Request Is Overbroad, Not Relevant, And Exceeds The Parties' Agreement Regarding ESI:**  Clearly, Alphatec has a different definition of "ownership" than is understood in patent law as evidenced by the fact that it has asserted that a security agreement in a certain group of patents somehow relates to ownership.  Thus, NuVasive has repeatedly asked Alphatec what else it is looking for.  Alphatec identified nothing more and NuVasive is unaware of any other agreements bearing on ownership.

To the extent Alphatec seeks in its motion to compel production of "[a]ll documents, communications, and things," this request is overbroad and has been raised for the first time in this motion instead of in a meet and confer as Alphatec was required to do.  Alphatec fails to explain what "documents" it seeks other than what NuVasive has agreed to provide.  Alphatec further fails to explain how "[a]ll . . . communications" are relevant or how ""[a]ll . . . things" are relevant beyond what NuVasive has agreed to provide.[19]  Instead, Alphatec makes the conclusory assertion

---

[18] And these agreements grant a ***security interest*** to Bank of America for a certain collection of patents and have nothing to do with "ownership" in any event ***because they state on their face that they are not assignments***.  *See* Notice of Grant of Security Interest in Patents, Reel/Frame 040634/0404 (available at http://legacy-assignments.uspto.gov/assignments/assignment-pat-40634-404.pdf); Notice of Grant of Security Interest in Patents, Reel/Frame 042490/0236 (http://legacy-assignments.uspto.gov/assignments/assignment-pat-42490-236.pdf)

[19] And, because Alphatec failed to raise this in a meet and confer, the scope of what constitutes "all" was never raised or discussed.  NuVasive has already conducted a reasonable investigation and has not located any non-privileged "documents, communications, and things" concerning ownership other than the documents NuVasive already agreed to provide.  To the extent Alphatec is seeking

1   that "all" is relevant.  This is insufficiently particular where, as here, there is no
2   legitimate question that the patents were properly assigned by the named inventors
3   to NuVasive, and that NuVasive recorded its ownership with the PTO.

4        For all these reasons, Alphatec's motion should be denied.

5        **H.    Request for Production No. 11**

6        **Request:** All documents, communications, and things concerning your
7   analysis or projections regarding the financial impact and duration thereof on
8   NuVasive's business of the alleged infringement of each of the patents-in-suit by
9   Alphatec.

10       **Response:** NuVasive incorporates by reference each of the General
11  Objections.  NuVasive objects to this Request on the grounds and to the extent it is
12  overly broad, unduly burdensome, not proportional to the needs of the case, and not
13  relevant to any claim or defense in this case.  Specifically, NuVasive objects to this
14  Request to the extent it seeks "all documents, communications, and things" and
15  documents concerning the undefined "financial impact" and "duration thereof" on
16  NuVasive's business due to Alphatec's infringement.   NuVasive objects to this
17  Request to the extent it seeks "Privileged Documents."   NuVasive objects to this
18  Interrogatory to the extent it prematurely seeks expert opinion.

19       Subject to and without waiving the foregoing objections, NuVasive responds
20  as follows: NuVasive states that, after conducting a reasonable search, there are no
21  non-objectionable, non-ESI, non-Privileged Documents, responsive to this Request
22  and within NuVasive's possession, custody, or control.  To the extent this Request
23  is directed to ESI, NuVasive invites Alphatec to meet and confer regarding the scope
24  of this Request.

25

26

27  ESI "documents, communications and things," that was never raised or discussed in
28  any meet and confer.  And, in any event, Alphatec has failed to abide by the parties'
    agreement regarding ESI.  *See supra* at Section II.A (NuVasive's Statement).

**Alphatec's Statement:**

NuVasive seeks to arbitrarily and affirmatively limit its production to "summary documents containing information pulled from electronic data sources sufficient to show NuVasive's financial projections and analysis regarding the financial impact and duration thereof on NuVasive's business of the alleged infringement of the patents-in-suit by Alphatec." Sept. 27, 2018 NuVasive Corr. These limits—excluding other documents as well as all communications and things beyond "summary documents" produced from whatever metrics NuVasive unilaterally decides to apply to its "electronic data sources"—are not justified. Thus, the Court should compel NuVasive to produce the requested documents, communications, and things.

**NuVasive's Deficient Responses:** NuVasive's responses to this Request are deficient. *First*, NuVasive's answer is non-responsive, "invit[ing] Alphatec to meet and confer regarding the scope of this Request." A document request propounded under Rule 34 does not seek invitations to meet and confer.

*Second*, during the parties' meet and confer process, NuVasive offered to produce only "summary documents containing information pulled from electronic data sources sufficient to show NuVasive's financial projections and analysis regarding the financial impact and duration thereof on NuVasive's business of the alleged infringement of the patents-in-suit by Alphatec." Sept. 27, 2018 NuVasive Corr. But again, NuVasive has manufactured limits for the sought-after documents by restricting the production to "summary documents"—a product of own its subjective decisions. Indeed, NuVasive's response necessarily excludes other documents, communications, and things—including ESI—beyond its self-selected summaries. There is no justification for such limits.

*Third*, in response to NuVasive, Alphatec requested that NuVasive confirm "that, in addition to the summary documents … NuVasive will also produce documents, communications, and things responsive to this Request based on

application of any agreed-to ESI search terms to the agreed-to ESI custodians, including any non-individual electronic storage locations reasonably likely to contain responsive information." Oct. 1, 2018 Alphatec Corr. NuVasive, as of the exchange of Alphatec's portions of this joint motion on October 12, 2018, has not agreed to do so. Instead, NuVasive has stated that "it is not withholding documents responsive to this Request that are sufficient to show its financial projections and analyses regarding the financial impact and duration thereof on NuVasive's business due to Alphatec's infringement of the patents-in-suit" and reiterated that it "is not refusing to produce documents responsive to this Request. To the contrary, NuVasive has agreed to provide multiple summary documents sufficient to show the information requested." Oct. 3, 2018 NuVasive Corr. Beyond attempting to hide relevant information responsive to this Request, there is no reason for NuVasive not to produce documents, communications, and things responsive to this Request based on application of any agreed-to ESI search terms to the agreed-to ESI custodians, including any non-individual electronic storage locations reasonably likely to contain responsive information.

**Relevance of Requested Information:** The requested documents, communications, and things concern NuVasive's analysis of the financial impact of Alphatec's alleged infringement. Any projections or analyses as well as any communications or other documents concerning the impact of Alphatec's alleged infringement are critical for understanding and evaluating NuVasive's claims for damages and royalties, as well as any future claims for injunctive relief NuVasive may assert.

**NuVasive's Objections Are Meritless:** For example, NuVasive argues that the sought-after documents and information are "not relevant to any claim or defense in this case." For the reasons above, this is plainly false. NuVasive also objects "to this interrogatory to the extent it prematurely seeks expert opinion." But this Request does not seek expert opinion—it seeks responsive documents in NuVasive's

possession, custody, or control.  *See Montgomery v. Wal-Mart Stores, Inc.*, No. 12-CV-3057-JLS-DHB, 2015 WL 11233384, at *4 (S.D. Cal. July 17, 2015) ("Non-privileged facts known to Plaintiff are not immune from discovery simply because they will ultimately become part of an expert's opinion.").  NuVasive's overbreadth, burdensome, and proportionality objections are meritless and NuVasive has not provided any support for these objections.  *Dolarian Capital*, 2012 WL 4026818, at *2; Fed. R. Civ. P. 26(b)(2)(B).  Moreover, even if there were some true undue burden, NuVasive must respond to the non-burdensome portion of the Request. *M & F Fishing*, 2007 WL 9706573, at *10; *In re Rivera*, 2017 WL 5163695, at *6.

Accordingly, NuVasive should be ordered to produce documents responsive to this Request.

**NuVasive's Statement:**

**There Is No Actual Dispute Regarding This Request – Alphatec Prematurely And Unreasonably Moved Forward With This Motion:**  As with many other of the discovery requests in this motion, there should be no dispute as to this request.  In its original response, NuVasive simply and properly sought to meet and confer to seek clarification regarding Alphatec's proposed scope of production, as the language of the request sought potentially any and all documents relating to an undefined set of projections regarding Alphatec's "impact" on NuVasive's by its infringement (and in further light of the fact that this request appeared to sweep in ESI and Alphatec had not and has not provided its ESI custodian and search term proposals).  Then, once the parties met and conferred, NuVasive confirmed it had no reasonably accessible hard copy documents responsive to this request.  Dashe Decl. ¶ 6 (September 24, 2018 letter re RFP Nos. 11 and 12).  With respect to ESI, after meeting and conferring with Alphatec and conducting an investigation regarding the feasibility and burden of producing ESI responsive to this request, NuVasive then informed Alphatec that it will agree to "produce summary documents containing information pulled from electronic data sources sufficient to show NuVasive's

financial projections and analysis regarding the financial impact and duration thereof on NuVasive's business of the alleged infringement of the patents-in-suit by Alphatec, to the extent such information is maintained by NuVasive." Dashe Decl. ¶ 7 (September 27, 2018 letter re RFP No. 11).   And, as production involved collection of ESI data, NuVasive further agreed to endeavor to produce this ESI along with its other ESI that will be produced on the timeframe that has been agreed to by the parties once Alphatec has supplied its ESI search term and custodian proposals (which it has not yet done). *Id.* Finally, NuVasive further confirmed "it is not withholding documents responsive to this request that are sufficient to show its financial projections and analyses regarding the financial impact and duration thereof on NuVasive's business due to Alphatec's infringement of the patents-in-suit." Dashe Decl. ¶ 9 (October 3, 2018 letter re RFP No. 11).   Thus, there are no additional documents to compel.  There is no remaining dispute.

**Summary Documents Are Sufficient To Provide What Alphatec Contends Is Relevant Information:**   With respect to Alphatec's complaints regarding NuVasive's production of "summary documents," Alphatec's haste to seek relief has manufactured an additional dispute where there should not be one. NuVasive detailed multiple times in correspondence that compiling the requested information involves the collection of many different years of electronic data from databases, and that NuVasive would not undertake searches for documents that would reasonably be expected to only uncover documents that are duplicative of those otherwise located through less burdensome means.   Dashe Decl. ¶ 6 (September 24, 2018 letter re Burdensome and Duplicative Document Production), ¶ 7 (September 27, 2018 letter re RFP No. 11).   Thus, NuVasive's agreement to produce "summary documents" sufficient to show the requested information reflects the fact that the requested financial projections are most efficiently identified and produced as a summary based on underlying documents containing entirely cumulative information (as is the case for most financial information).  NuVasive is

1  not obligated to search for, review, and produce thousands of individual documents

2  that are duplicative of and contain no additional responsive information above and

3  beyond the information contained in the summary financial documents NuVasive

4  has already agreed to provide.

5      Alphatec also complains that NuVasive's production of such summary

6  financial documents allegedly constitutes a refusal to run ESI search terms through

7  its financial databases and produce the resulting responsive ESI.  Alphatec yet again

8  misapprehends NuVasive's previously explained positions and yet again needlessly

9  seeks relief from the Court.  First, NuVasive already told Alphatec that it is not

10  refusing to produce ESI documents responsive to this request.  Dashe Decl. ¶ 9

11  (October 3, 2018 letter re RFP No. 11).  To the contrary, NuVasive has agreed, above

12  and beyond what the Model ESI Order requires, to affirmatively identify and

13  produce the electronically stored documents sufficient to show the exact information

14  requested by Alphatec.  Dashe Decl. ¶ 7 (September 27, 2018 letter re RFP No. 11).

15  This is because NuVasive's financial projection information is likely stored in

16  databases that are not as easily searchable in the same manner as other ESI (such as

17  pdf, Word, or PowerPoint documents).  Nor has NuVasive ever refused to run ESI

18  search terms through its financial databases for these projections.  Instead, NuVasive

19  simply reiterated its months' long multiple requests to Alphatec that it actually

20  identify ESI custodians and search terms so that it could evaluate whether agreeing

21  to Alphatec's demands would be overly burdensome, disproportionate to the needs

22  of the case, and/or would capture duplicative documents.

23  **I.      Request for Production No. 12**

24  **Request:**  All documents, communications, and things concerning or

25  comprising any financial documents, including but not limited to, budget forecasts

26  and competitive analyses, concerning the patents-in-suit, any accused product, any

27  embodying product, or any competing product.

28

**Response:** NuVasive incorporates by reference each of the General Objections.  NuVasive objects to this Request as vague and ambiguous with respect to the terms "budget forecasts" and "competing product."  NuVasive objects to this Request on the grounds and to the extent it is overly broad, unduly burdensome, not proportional to the needs of the case, and not relevant to any claim or defense in this case.  Specifically, NuVasive objects to this Request to the extent it seeks "all documents, communications, and things," and "any financial documents," and it is unlimited as to time.  NuVasive objects to this Request to the extent it seeks "Privileged Documents."  NuVasive objects to this Request to the extent it seeks information outside of NuVasive's possession, custody, or control.

Subject to and without waiving the foregoing objections, NuVasive responds as follows: NuVasive invites Alphatec to meet and confer regarding the scope of this Request.

**Alphatec's Statement:**

NuVasive seeks to arbitrarily and affirmatively limit its production to, for example, "summary documents containing information pulled from electronic data sources," "electronically stored formal reports or summaries," and post-2016 subsets of documents.  Sept. 27, 2018 NuVasive Corr.  These limits, excluding other documents as well as all communications and things, are not justified.  Thus, the Court should compel NuVasive to produce the requested documents, communications, and things.

**NuVasive's Deficient Responses:** NuVasive's responses to this Request are deficient.  ***First***, NuVasive's answer is non-responsive, "invit[ing] Alphatec to meet and confer regarding the scope of this Request."  A document request propounded under Rule 34 does not seek invitations to meet and confer.

***Second***, after meeting and conferring, NuVasive unreasonably and inappropriately has attempted to affirmatively limit this Request by offering only to produce:

(1) "summary documents containing information pulled from electronic data sources sufficient to show NuVasive's sales, revenues, and costs associated with the embodying components of XLIF and components sold along with the embodying components of XLIF for use in lateral spinal fusion surgery (including those that may also refer or relate to the Accused Products or third party competitor products in the field of lateral spinal fusion surgery), to the extent such information is maintained by NuVasive;"

(2) "summary documents containing information pulled from electronic data sources sufficient to generally show its sales and market share projections regarding the embodying components of XLIF from 2016 to the present (including those that also refer or relate to the Accused Products or third party competitor products in the field of lateral spinal fusion surgery);" and

(3) "electronically stored formal reports or summaries of competitive analyses it has prepared regarding the embodying components of XLIF (including those that also refer or relate to the Accused Products or third party competitor products in the field of lateral spinal fusion surgery)."

Sept. 27, 2018 NuVasive Corr.  NuVasive's arbitrary limits are not warranted or appropriate.  Restricting the production to "summary documents" that are the product of NuVasive's own subjective decisions regarding what to "pull[] from electronic data sources" and "formal reports or summaries of competitive analyses" is not justified and does not provide the relevant, responsive documents, communications, and things for this Request.  Indeed, NuVasive's positions explicitly exclude other documents as well as all communications and things beyond "summary documents" produced from whatever metrics NuVasive unilaterally decides to apply to its "electronic data sources."

Further, restricting production to post-2016 "summary documents" that are the product of NuVasive's own subjective decisions regarding what to "pull[] from

electronic data sources" is also unwarranted.  Pre-2016 documents are also relevant to this case and will demonstrate NuVasive's financial performance and market share over time, and as significant competitors have entered the market.  Indeed, such information has been preliminary discussed in Dr. Neels' report in opposition to NuVasive's preliminary injunction motion, wherein Dr. Neels opined based on limited, public data that NuVasive maintained its reputation and grew its revenues despite the entry of many serious market competitors from 2007 to 2013.  Doc. No. 49-72 at ¶¶ 29-47.  NuVasive's internal documents and analysis are crucial to further developing this analysis and will inform analysis of NuVasive's claims for damages as well as any future claims for injunctive relief.

*Third*, with respect to such pre-2016 documents as well as a fourth subset of documents that NuVasive arbitrarily attempts to limit its response to cover ("financials solely relating to the Accused Products or third party competitor products in the field of lateral spinal fusion surgery"), as of the exchange of Alphatec's portions of this joint motion on October 12, 2018, NuVasive has stated that it is "still investigating" the feasibility and burden of producing these documents.  Oct. 10, 2018 NuVasive Corr.  NuVasive has had ample time and opportunity to conduct any such investigation.  Indeed, NuVasive has been sitting on Alphatec's Requests for over *two months*.  No further delay is justifiable.

NuVasive certainly should produce the documents it has identified.  But, this Request is not so limited, and there is no justification for NuVasive's arbitrary limits.  As such, NuVasive's obfuscations are not warranted.  Beyond attempting to hide relevant information responsive to this Request, there is no reason for NuVasive not to search for and produce documents, communications, and things responsive to this Request based on application of any agreed-to ESI search terms to the agreed-to ESI custodians, including any non-individual electronic storage locations reasonably likely to contain responsive information.

**Relevance of Requested Information:** Documents, communications, and things relating to budget forecasts or competitive analyses concerning the patents-in-suit, will be crucial for understanding the amount of lost profits that NuVasive has suffered and will potentially suffer in the future. Documents, communications, and things concerning competitive analysis regarding competing products and Alphatec's products will also reveal where NuVasive's products stand relative to its competitors and whether any alleged lost sales can be tied to Alphatec's alleged infringement, or rather, external market factors. Further, documents, communications, and things concerning competitive analyzes concerning embodying products and competing products will help define the relevant market. Each of these is fundamentally relevant to evaluating NuVasive's claims for damages and royalties, as well as any future claims for injunctive relief NuVasive may assert.

**NuVasive's Objections Are Meritless:** For example, NuVasive argues that the sought-after documents and information are "not relevant to any claim or defense in this case." For the reasons above, this is plainly false. Further, NuVasive objects to "budget forecasts" and "competing product" as being vague and ambiguous, but it fails to state how these terms are vague and ambiguous, and how NuVasive understood them in responding to the Interrogatory. *Salisbury*, 2013 WL 4402789, at *6. Also, while NuVasive objects on the grounds that certain information is "outside of NuVasive's possession, custody, or control," it fails to identify what specific information is outside of its possession and which entities or persons currently possess such information. Further, NuVasive's overbreadth, burdensome, and proportionality objections are meritless and NuVasive has not provided any support for these objections. *Dolarian Capital*, 2012 WL 4026818, at *2; Fed. R. Civ. P. 26(b)(2)(B). Moreover, even if there were some true undue burden, NuVasive must respond to the non-burdensome portion of the Request. *M & F Fishing*, 2007 WL 9706573, at *10; *In re Rivera*, 2017 WL 5163695, at *6.

1    Accordingly, NuVasive should be ordered to produce documents responsive

2    to this Request.

3    **NuVasive's Statement:**

4    **There Is No Actual Dispute Regarding This Request – Alphatec**

5    **Prematurely And Unreasonably Moved Forward With This Motion:**  As with

6    many other of the discovery requests in this motion, there should be no dispute as to

7    this request.  In its original response, NuVasive simply and properly sought to meet

8    and confer to seek clarification regarding Alphatec's proposed scope of production,

9    as the language of the request sought potentially each and every single financial

10   document ever generated by NuVasive. Then, once the parties met and conferred,

11   NuVasive confirmed it had no reasonably accessible hard copy documents

12   responsive to this request.  Dashe Decl. ¶ 6 (September 24, 2018 letter re RFP Nos.

13   11 and 12).  With respect to ESI, after meeting and conferring with Alphatec and

14   conducting an investigation regarding the feasibility and burden of producing ESI

15   responsive to this request, NuVasive then informed Alphatec that it would produce

16   documents responsive to this request and documents sufficient to show extensive,

17   relevant financial information regarding sales, revenues, and costs, as well as sales

18   and market share projections, and competitive analyses (as Alphatec has detailed in

19   its statement above).  *See also* Dashe Decl. ¶ 7 (September 27, 2018 letter re RFP

20   No. 12).  And, as production involved collection of ESI data, NuVasive further

21   agreed to endeavor to produce this ESI along with its other ESI that will be produced

22   on the timeframe that has been agreed to by the parties once Alphatec has supplied

23   its ESI search term and custodian proposals (which it has not yet done).  *Id*.  Thus,

24   there is nothing of relevance left to compel.

25       Moreover, even for the only remaining documents Alphatec complains about

26   here – pre-2016 financial projections for XLIF and financials solely relating  to the

27   accused products or competitor products – for which Alphatec has failed to establish

28   relevancy (as explained below), in the interest of compromise, NuVasive is still

investigating the existence, feasibility and burden of producing such documents. But as the additional documents Alphatec seeks potentially span the course of over twenty years, NuVasive's ongoing investigation is reasonable, and Alphatec again, out of urgency of its own making, has prematurely sought relief from the Court.

**Summary Documents Are Sufficient To Provide What Alphatec Contends Is Relevant Information and NuVasive is Not Refusing to Comply with its Obligations under the Model ESI Order:** With respect to Alphatec's complaints regarding "summary documents," as already explained above with respect to RFP Nos. 3 and 11, Alphatec's haste to seek relief has manufactured an additional dispute where there should not be one. As set forth with respect to those RFPs, the financial information Alphatec seeks encompasses many different years of electronic data stored in electronic databases. Dashe Decl. ¶ 7 (September 27, 2018 letter re RFP No. 12). The summary financial documents NuVasive intends to produce contain information entirely duplicative of any underlying documents, including hard copy documents (as is the case for most financial information). For example, Alphatec's position would appear to require NuVasive to search for and produce all of its purchase orders with hospitals as well as a copy of every single check sent or received for every single payment NuVasive has ever made or received as a company, even though the responsive information contained in those documents would be reflected in NuVasive's summary financial documents. Thus, NuVasive's agreement to produce "summary documents" sufficient to show the requested information reflects the fact that the requested financial information is most efficiently identified and produced as a summary. As also explained above, NuVasive is not obligated to search for, review, and produce thousands of individual documents that are duplicative of and contain no additional responsive information above and beyond the information contained in the summary financial documents NuVasive has already agreed to provide.

1    Alphatec again complains that NuVasive's production of such summary
2    financial documents allegedly constitutes a refusal to run ESI search terms through
3    its financial databases and produce the resulting responsive ESI. Alphatec yet again
4    misapprehends NuVasive's previously explained positions and yet again needlessly
5    seeks relief from the Court. First, as explained to Alphatec repeatedly and as set
6    forth above, NuVasive is not refusing to produce responsive ESI documents pursuant
7    to the Model ESI order parameters, nor is it attempting to "hide" or "obfuscate"
8    relevant, responsive documents as Alphatec contends. To the contrary, as explained
9    above, NuVasive has agreed to go ***above and beyond*** what the Model ESI Order
10   requires in order to affirmatively identify and produce responsive electronically
11   stored documents that may not have otherwise been easily searchable with ESI
12   search terms. And with respect to the Model ESI Order process, NuVasive never
13   refused to run ESI search terms through its financial databases. Instead, NuVasive
14   has simply reiterated its months' long multiple requests to Alphatec that it actually
15   identify ESI custodians and search terms so that it could evaluate whether agreeing
16   to Alphatec's demands would be overly burdensome, disproportionate to the needs
17   of the case, and/or would capture duplicative documents.

18   **Alphatec Fails to Justify the Relevance of This Request as to The**
19   **Remaining Categories of Documents:** As to the only remaining categories of
20   information NuVasive has not outright agreed to produce responsive to this request,
21   Alphatec has failed to adequately justify these documents' relevance (as is their
22   burden), offering similar, unsupported and conclusory statements as for many of its
23   other requests set forth above. This is legally insufficient to support its requested
24   relief. *See infra* at Section V.A.

25   First, with respect to sales and market share projections that pre-date 2016,
26   Alphatec fails to actually explain how old projections predating Alphatec's launch
27   of its accused products are relevant here. Alphatec states that these old projections
28   will somehow establish the amount of lost profits NuVasive has suffered and will

1   suffer in the future, and will also reveal whether any lost sales can be tied to
2   Alphatec's alleged infringement.  But these statements only shore up the relevancy
3   of sales and market share projections that post-date Alphatec's launch (as NuVasive
4   has not and cannot argue that it lost profits due to Alphatec's infringement before
5   Alphatec even launched its products).  And these are precisely the projections
6   NuVasive has agreed to produce.  Dashe Decl. ¶ 7 (September 27, 2018 letter re RFP
7   No. 12).  Alphatec tries to save its claim of relevancy as to these old projections by
8   noting that its own expert discussed the XLIF's performance in the lateral market
9   from 2007 to 2013 in the preliminary injunction proceedings.  But NuVasive is
10  producing its *actual* sales and marketing information regarding the embodying
11  components of XLIF from its 2003 launch to present, which shows precisely the
12  information Dr. Neels' discussed.  *Id.*  Thus, NuVasive should not have to undertake
13  the burden of locating and producing irrelevant documents that may go back for
14  decades when NuVasive is already producing the actually relevant projections and
15  other sales information.

16       With respect to financial information solely regarding third party competitor
17  products in the field of lateral spinal fusion surgery), Alphatec only explicitly
18  discusses these specific documents in its unwarranted complaint regarding
19  NuVasive's reasonable investigations; it makes *no* specific relevancy
20  arguments.  Thus, Alphatec's request on these documents should be denied on that
21  basis alone.  Moreover, NuVasive has already agreed to produce documents that may
22  contain financials and projections regarding both the embodying components of
23  XLIF and the accused products or lateral competitors (to the extent maintained by
24  NuVasive), Dashe Decl. ¶ 7 (September 27, 2018 letter re RFP No. 12), which are
25  sufficient to show precisely the information Alphatec stated was relevant: XLIF's
26  performance in the lateral market, including as compared to its competitors.  Again,
27  NuVasive should not have to undertake the burden of locating and producing
28  NuVasive's financial documents completely unrelated to its own products when it

1    will produce documents sufficient to show precisely the information Alphatec thinks

2    is relevant.

3         **J.       Request for Production Nos. 14 and 15**

4         **Request No. 14:** All materials that have been made by, reviewed by, or

5    provided to any witness who has provided testimony in or may be called to testify

6    as a witness in this case.

7         **Response:** NuVasive incorporates by reference each of the General

8    Objections.  NuVasive objects to this Request on the ground and to the extent it is

9    overly broad, unduly burdensome, not proportional to the needs of the case, and not

10   related to any claim or defense in this case.  Specifically, NuVasive objects to this

11   Request to the extent it is not limited by subject matter and to the extent it seeks "all

12   materials."  NuVasive objects to this Request to the extent it seeks "Privileged

13   Documents."  NuVasive objects to this Request to the extent it seeks information

14   outside of NuVasive's possession, custody, or control.

15        Subject to and without waiving the foregoing objections, NuVasive responds

16   as follows: NuVasive invites Alphatec to meet and confer regarding the scope of this

17   Request.

18        **Request No. 15:** All materials relating to facts or data considered by any

19   witness who has provided testimony in or will testify in this case.

20        **Response:** NuVasive incorporates by reference each of the General

21   Objections.  NuVasive objects to this Request on the ground and to the extent it is

22   overly broad, unduly burdensome, not proportional to the needs of the case, and not

23   related to any claim or defense in this case.  Specifically, NuVasive objects to this

24   Request to the extent it is not limited by subject matter and to the extent it seeks "all

25   materials.'  NuVasive objects to this Request to the extent it seeks "Privileged

26   Documents."  NuVasive objects to this Request to the extent it seeks information

27   outside of NuVasive's possession, custody, or control.  Subject to and without

28

1    waiving the foregoing objections, NuVasive responds as follows: NuVasive invites

2    Alphatec to meet and confer regarding the scope of this Request.

3        **Alphatec's Statement:**

4        The Court should compel NuVasive to respond to the full scope of these

5    Requests.

6        **NuVasive's Deficient Responses:** NuVasive's answer is non-responsive,

7    "invit[ing] Alphatec to meet and confer regarding the[se] scope of th[ese]

8    Request[s]."  A document request under Rule 34 does not seek invitations to meet

9    and confer.   After meeting and conferring, NuVasive offered to produce only

10   existing documents for current witnesses, but unjustifiably failed to agree to produce

11   documents made by, reviewed by, provided to, or relating to facts or data considered

12   by future witnesses:

13       NuVasive will produce the documents cited within the declarations
         submitted in support of its preliminary injunction and documents from
14       which any facts identified in the declarations may have been pulled, to
         the extent such documents have not already been produced or filed with
15       the Court, by October 18, 2018.  NuVasive will further produce the
         documents provided to its expert witnesses who provide expert reports
16       in this case pursuant to its obligations under the Federal Rules and the
         Amended Scheduling Order in this case with the understanding that
17       Alphatec will do the same.  If that is not correct, please let us know
         immediately.  With respect to documents and information relied upon
18       by fact witnesses in this case, NuVasive is willing to further meet and
         confer with Alphatec to determine if a reciprocal agreement can be
19       reached between the parties.

20   Sept. 24, 2018 NuVasive Corr.  This is not an agreement to produce unquestionably

21   relevant information.   Even more, NuVasive has not provided any proposed

22   "compromise" despite Alphatec's requests for NuVasive's proposal.  It should be

23   incumbent on NuVasive to propose any compromise and Alphatec should not have

24   to unilaterally limit its initial request because NuVasive seeks to "meet and confer."

25       **Relevance of Requested Information:** The requested materials, documents,

26   communications, and things are directly relevant to evaluating the testimony of

27   NuVasive's witnesses in this case.  Documents and materials that NuVasive provides

28   to its potential witnesses, as well as any information reviewed or made by those

1   witnesses, will impact the scope, strengths, weaknesses, and credibility of any such

2   testimony.

3      **NuVasive's Objections Are Meritless:** For example, NuVasive argues that

4   the sought-after documents and information are "not related to any claim or defense

5   in this case." This is plainly false—the Requests specifically concern witnesses who

6   have or are expected to testify in this case. Also, while NuVasive objects on the

7   grounds that certain information is "outside of NuVasive's possession, custody, or

8   control," NuVasive fails to identify what specific information it no longer possesses

9   and which entities or persons currently possess such information. NuVasive's

10  overbreadth, burdensome, and proportionality objections are meritless and

11  NuVasive has not provided any support for these objections. *Dolarian Capital*, 2012

12  WL 4026818, at *2; Fed. R. Civ. P. 26(b)(2)(B). Moreover, even if there were some

13  true undue burden, NuVasive must respond to the non-burdensome portion of the

14  Requests. *M & F Fishing*, 2007 WL 9706573, at *10; *In re Rivera*, 2017 WL

15  5163695, at *6.

16     Accordingly, NuVasive should be ordered to produce documents responsive

17  to these Requests.

18     **NuVasive's Statement:**

19     **These Requests Are Grossly Overbroad And Unduly Burdensome:** As

20  written, these requests are unbounded and untethered to any time, fact, or any issue

21  that has any relevance to this case. What is worse is that Alphatec refused to consider

22  or propose any narrowing even after NuVasive pointed out the gross breadth of these

23  requests.

24     Requests Nos. 14 and 15 literally seek ***all*** materials (of any kind) relating to

25  facts or data (of any subject) considered by ***any*** witness (at any time and for any

26  purpose) and ***all*** materials (of any kind or subject matter) made by, reviewed by, or

27  provided to ***any*** witness (at any time and for any purpose) who has provided

28  testimony in or may be called to testify as a witness in this case. For example, the

literal scope of these requests would require NuVasive to produce the following indisputably non-relevant documents simply because NuVasive's Preliminary Injunction Motion declarant Mathew Link received, reviewed, or considered the document at some point in time:  (1) a draft marketing document from 2008 related to a non-relevant product; (2) a meeting invite from Mr. Link's first week at NuVasive in 2006 for a sales strategy meeting for a non-relevant product; (3) the personal performance review of an employee who reported to Mr. Link; and (4) field reports from sales personnel regarding non-relevant products.  There are only a few examples of the unreasonable scope of Alphatec's requests.

Because of the unbounded breadth of these requests, Alphatec has failed to meet its burden to show that these requests seek relevant information.

**Alphatec Refused And Rejected All Invitations To Narrow Or Compromise:**  Because the information sought is overbroad and would be extremely burdensome to produce, not just for NuVasive, but for Alphatec, as well, NuVasive suggested "that the parties could potentially come to a reciprocal arrangement regarding the production of documents and information *relied upon* by fact witnesses in this case."  Dashe Decl. ¶ 6 (September 24, 2018 letter re RFP Nos. 14 and 15).  NuVasive further suggested that the parties reciprocally agree to "produce the documents provided to its expert witnesses who provide expert reports in this case pursuant to its obligations under the Federal Rules and the Amended Scheduling Order in this case."  *Id*.  Alphatec rejected both and proposed no reasonable narrowing or compromises of its own.

For all these reasons, Alphatec's motion as to these requests should be denied.

## III.   SPECIFIC INTERROGATORIES AT ISSUE

### A.   Interrogatory No. 6

**Request:** For each asserted claim of the patents-in-suit, identify and describe any investigations, evaluations, or opinions relating to the validity, patentability, and/or enforceability of such claim, whether performed by you or any other entity;

1  identify all persons with knowledge of such investigations, evaluations, or opinions;

2  identify the persons most knowledgeable regarding such investigations, evaluations,

3  or opinions; and identify all documents concerning the results, whether preliminary,

4  interim, or final, of such investigations, and/or containing such evaluations or

5  opinions.

6  **Response:** NuVasive incorporates by reference each of the General

7  Objections.  NuVasive objects to this Interrogatory on the grounds that it contains at

8  least three discrete subparts, is compound, and constitutes at least three

9  interrogatories.  NuVasive objects to this Interrogatory as vague and ambiguous with

10  respect to the term "***any*** investigations, evaluations, or opinions."  NuVasive objects

11  to this Interrogatory on the grounds and to the extent it is overly broad, unduly

12  burdensome, not proportional to the needs of the case, and not relevant to any claim

13  or defense in this case.  Specifically, NuVasive objects to the Interrogatory to the

14  extent it calls for NuVasive to "identify all persons with knowledge of such

15  investigations, evaluations, or opinions" and "identify all documents concerning the

16  results … of such investigations."  NuVasive objects to this Interrogatory to the

17  extent it seeks "Privileged Information."  NuVasive objects to this Interrogatory as

18  premature to the extent it seeks opinions of counsel the disclosure of which is

19  governed by Patent L.R. 3.7.  NuVasive objects to this Interrogatory to the extent it

20  seeks information the disclosure of which is subject to third-party confidentiality

21  obligations and/or a protective order.

22  Subject to and without waiving the foregoing objections, NuVasive responds

23  as follows: pursuant to Local Patent Rule 3.2(b) and Fed. R. Civ. P. 33(d), NuVasive

24  states that it will produce documents from which the information requested can be

25  ascertained, including documents:

26  NUVA_ATEC0016949 – NUVA_ATEC0039458; and

27  NUVA_ATEC0039459 – NUVA_ATEC0040421.

28

In addition, the following are publicly available documents from which the information requested can be ascertained: Public records of the documents filed in the *inter partes* review proceedings of the '156 Patent; and public records of the documents filed in the reexamination proceeding of the '801 Patent. Discovery is ongoing and NuVasive reserves its right to amend or supplement its response to this Interrogatory.

**Alphatec's Statement:**

After meeting and conferring, NuVasive has taken the following position:

NuVasive has identified in its response to this interrogatory the specific validity evaluations performed for the patents-in-suit in prior proceedings. NuVasive also confirms that it is not currently withholding and does not intend to withhold any other non-privileged investigations or evaluations of validity ***that have been specifically undertaken by NuVasive as a company*** that are responsive to this request (although NuVasive's reasonable investigation to date shows that there are no such additional evaluations or investigations).

Oct. 3, 2018 NuVasive Corr. (emphasis added). NuVasive's affirmative limits are inappropriate and demonstrate that it is actively attempting to hide relevant, responsive information. Therefore, the Court should compel NuVasive to respond to this Interrogatory and provide the requested information with respect to any investigations, evaluations, or opinions relating to the validity, patentability, and/or enforceability of any claim of the patents-in-suit, whether or not "specifically undertaken" and whether or not performed by NuVasive or any other entity.

**NuVasive's Deficient Responses:** NuVasive's responses to this Interrogatory have been consistently deficient. ***First***, in its initial response, NuVasive only cross-referenced over twenty thousand pages of produced documents and referred to "publicly available documents." Setting aside the fundamental deficiency of such cross-references,[20] NuVasive still did not provide the requested information and also

---

[20] *Asyst Techs., Inc. v. Empak, Inc.*, No. C 98-20451 JF (EAI), 2006 WL 1749592, at *1 (N.D. Cal. June 22, 2006) ("The Court remains of the opinion that incorporation by reference is not permitted under Rule 33(b) …."); *Loop AI Labs*

did not identify the requested knowledgeable individuals (including those most knowledgeable), and identification of all documents concerning the results of any of the requested investigations, evaluations, or opinions.

Instead, NuVasive's response inappropriately utilizes Rule 33(d) as a "document dump" by asking Alphatec to comb through over twenty thousand pages for information that NuVasive either is, or should be, intimately familiar with given that the Interrogatory concerns evaluations of *NuVasive's own patents*. *Reinsdorf v. Skechers U.S.A., Inc.*, No. CV 0-07181-DDP-SSx, 2012 WL 12882125, at *3 (C.D. Cal. May 11, 2012); *Loop AI Labs Inc. v. Gatti*, No. 15-CV-00798-HSG-DMR, 2016 WL 2342128, at *2 (N.D. Cal. May 3, 2016) (under Rule 33(d), a "responding party 'may not abuse the option ... by directing the propounding party to a mass [o]f undifferentiated records'"); *Thai v. AMCO Ins. Co.*, No. 16-CV-01214-DOC-KESx, 2017 WL 8180584, at *2 (C.D. Cal. July 12, 2017) (finding that burden of obtaining information from records was not substantially the same when one party had "knowledge beyond the information in the records").  And, NuVasive has also failed to specify where in these thousands of pages the answers to this Interrogatory can be found.  Fed. R. Civ. P. 33(d); *Rainbow Pioneer No. 44-18-04A v. Haw. Nev. Inv. Co.*, 711 F.2d 902, 906 (9th Cir. 1983) (noting that Rule 33 was amended "to make it clear that a responding party has the duty to specify, by category and location, the records from which the answers to the interrogatories can be derived").

***Second***, after meeting and conferring, NuVasive has persisted in unilaterally imposing material limitations on Alphatec's Interrogatory.  Initially, NuVasive stated that it "has not *specifically commissioned* an investigation or evaluation regarding the validity of the patents-in-suit" and offering to later provide responsive information only "to the extent any such *specifically or formally commissioned* investigations or evaluations are identified."   Sept. 27, 2018 NuVasive Corr.

---

*Inc. v. Gatti*, No. 15-CV-00798-HSG-DMR, 2016 WL 2342128, at *2 (N.D. Cal. May 3, 2016) (noting that "[i]ncorporation by reference is not a responsive answer").

1   (emphasis added).  Then, after Alphatec highlighted that its request is not limited to
2   "specifically commissioned" investigations or evaluations and requested that
3   NuVasive confirm that it "is not withholding any investigation or evaluation …
4   whether or not 'specifically commissioned,'" NuVasive again equivocated.  Oct. 1,
5   2018 Alphatec Corr.  Specifically, NuVasive responded: "NuVasive also confirms
6   that it is not currently withholding and does not intend to withhold any other non-
7   privileged investigations or evaluations of validity *that have been specifically*
8   *undertaken by NuVasive as a company* that are responsive to this request (although
9   NuVasive's reasonable investigation to date shows that there are no such additional
10  evaluations or investigations)."  Oct. 3, 2018 NuVasive Corr. (emphasis added).

11      The plain language of Alphatec's Interrogatory contains no such limitation on
12  evaluations "specifically commissioned" or "specifically undertaken by NuVasive."
13  These affirmative limits are without justification and do nothing more than allow
14  NuVasive to arbitrarily limit its responses.  Indeed, NuVasive's persistence in
15  adding these limits even after Alphatec pointed them out indicates that it is
16  affirmatively trying to hide relevant, responsive information, including
17  investigations or evaluations conducted by NuVasive personnel or third parties,
18  regardless of whether NuVasive "specifically commissioned" them.  Either
19  NuVasive has responsive information or it does not, but either way, NuVasive must
20  respond to *this* Interrogatory, not its own arbitrarily-limited version of it.

21      Moreover, NuVasive's contention that "'***any*** investigations or evaluations'
22  regarding the validity of the asserted claims is vague and unduly burdensome" is
23  incongruous, and in any event belied by the fact that it has requested very similar
24  discovery from Alphatec.  Oct. 3, 2018 NuVasive Corr. (emphasis in original).
25  NuVasive specifically requested that Alphatec produce: "All documents,
26  communications, and things concerning, relating to, or comprising any analysis of
27  or opinions regarding the validity of the Patents-in-Suit, any patent application
28  leading to the Patents-in-Suit, any Related Patent Applications or Patents, and any

1   Foreign Counterparts, including any documents tending to support or refute the

2   novelty, non-obviousness, utility, or patentability of the subject matter claimed by

3   the Patents-in-Suit." NuVasive RFP No. 67. NuVasive certainly understands the

4   scope of the request enough to ask Alphatec for the same things.

5         **Relevance of Requested Information:** The requested information is relevant

6   to evaluating the validity, patentability, and enforceability of each patent-in-suit, and

7   also to identifying potential witnesses and ESI custodians who may have information

8   on these issues. Indeed, the results of any investigation, evaluation, or opinion

9   relating to the validity, patentability, and/or enforceability of any asserted claim of

10  the patents-in-suit will provide information *on those exact issues*—all of are central

11  to this case. Identification of individuals with knowledge of such events (including

12  those most knowledgeable) will provide Alphatec with key deponents and ESI

13  custodians, while also contextualizing the investigation, evaluation, or opinion.

14  Likewise, documents concerning the results, whether preliminary, interim, or final,

15  of any such investigation would be vital to understanding the investigative process

16  and how the results were reached, both from the investigation's inception and from

17  the time of any preliminary findings.

18        **NuVasive's Objections Are Meritless:** For example, NuVasive objects to

19  "***any*** investigations, evaluations, or opinions" as being vague and ambiguous, but it

20  fails to state how this phrase is vague and ambiguous, and how NuVasive has

21  understood the phrase in responding to the Interrogatory. *Salisbury*, 2013 WL

22  4402789, at *6. Also, NuVasive's confidentiality objections are baseless.

23  Confidentiality does not act as a bar to discovery and is not grounds to withhold

24  documents or information from discovery. *Ivy Hotel*, 2011 WL 13240367, at *3;

25  *Covance, Inc.*, 2016 WL 5870011, at *3. NuVasive's overbreadth, burdensome, and

26  proportionality objections are meritless and NuVasive has not provided any support

27  for these objections. *Dolarian Capital*, 2012 WL 4026818, at *2; Fed. R. Civ. P.

28  26(b)(2)(B). Moreover, even if there were some true undue burden, NuVasive must

1  respond to the non-burdensome portion of the request.  *M & F Fishing*, 2007 WL

2  9706573, at *10; *In re Rivera*, 2017 WL 5163695, at *6.

3    Accordingly, NuVasive should be ordered to supplement its response with the

4  requested information in this Interrogatory.

5    **NuVasive's Statement:**

6    **NuVasive Is Not Withholding Relevant, Responsive Information:**

7  NuVasive has repeatedly stated that it is not withholding or hiding responsive

8  information.  Dashe Decl. ¶ 7 (September 27, 2018 letter re Interrogatory No. 6), ¶

9  9 (October 3, 2018 letter re Interrogatory No. 6).  NuVasive performed a reasonable

10  search and identified information it believed to be responsive.  *Id.*  For example,

11  because statements made during patent prosecution and during *inter partes* and

12  reexamination proceedings regarding the asserted patents could be construed as

13  "evaluations" or "opinions" regarding the validity, patentability, or enforceability of

14  the asserted patent claims, NuVasive identified the records of those proceedings in

15  its response.  Beyond that, NuVasive understood this Interrogatory to seek analyses

16  that NuVasive performed or had performed regarding the validity, patentability, or

17  enforceability of the patent claims.  Thus, NuVasive specifically searched for, but

18  could not identify, any such analyses undertaken by or for the company.

19    When Alphatec complained that this response was "deficient," NuVasive

20  asked for what more Alphatec is seeking.  *See* Dashe Decl. ¶ 9 (October 3, 2018

21  letter re Interrogatory No. 6) ("During the meet and confer, we requested

22  clarification regarding what Alphatec considered to be 'any investigations or

23  evaluations' of validity, but you could not provide additional specificity.").

24  Alphatec refused to provide any clarity or identify what it believed was allegedly

25  missing, other than insist that NuVasive must have some opinion it is refusing to

26  identify.  In an effort to placate Alphatec, NuVasive further confirmed that "it is not

27  currently withholding and does not intend to withhold any other non-privileged

28  investigations or evaluations of validity that have been specifically undertaken by

NuVasive as a company that are responsive to this request." *Id.* The phrase "specifically undertaken by NuVasive as a company" was not meant to "hide" anything as Alphatec asserts. Rather, it was meant to reconfirm that it is not withholding and does not intend to withhold any requested analysis that NuVasive has performed or has had performed by another entity.

In addition, because Alphatec refused to explain what it meant by "any investigations, evaluations, or opinions . . . whether performed by you or any other entity" (which is not the language NuVasive used in its requests Alphatec in any event), NuVasive was attempting to clarify that it interpreted the interrogatory to seek opinions commissioned by the company NuVasive.[21] Thus, Alphatec's assertions that NuVasive has unreasonably limited this interrogatory or is "hiding" information is patently false. In fact, had Alphatec simply asked for clarification instead of prematurely moving, NuVasive would have explained as much. Because NuVasive is not withholding any responsive information from production, there is nothing to compel.

**NuVasive's Reliance On Fed. R. Civ. P. 33(d) Is Proper:** NuVasive is permitted to rely on Rule 33(d) "[i]f the answer to an interrogatory may be determined by examining . . . [documents], and if the burden of deriving or ascertaining the answer will be substantially the same for either party. As described above, because statements made during patent prosecution and during *inter partes* and reexamination proceedings regarding the asserted patents could be construed as "evaluations" or "opinions" regarding the validity, patentability, or enforceability of the asserted patent claims, NuVasive identified the records of those proceedings in its response. These prosecution files and PTO submissions are extensive across the

---

[21] For example, surely Alphatec's interrogatory cannot seek to require NuVasive to poll all of its employees and ask whether any employee happens to have developed (on his or her own and not at the request of the company) a personal opinion on one of the asserted patents (which is currently unknown to NuVasive). That would be unreasonable, overly burdensome, and not relevant.

1    nine asserted patents and potentially responsive information can be found in

2    numerous places within, such as responses to office actions and declarations

3    submitted.   Any counsel familiar with patents (which Alphatec's attorneys

4    presumably are) can easily identify such submissions within a patent's file history.

5    Thus, it is no more burdensome for Alphatec to review those file histories to identify

6    the office actions and declarations that discuss the validity and patentability of the

7    patents than it is for NuVasive to do the same.[22]   And NuVasive does not have

8    "secret" knowledge beyond reading the file histories just as Alphatec would need to

9    do.   Moreover, the prosecution histories and PTO records come with detailed table

10   of contents or similar content lists.   Any reasonable, competent patent attorney

11   would know how to read such tables of contents to find the specific information

12   sought.   Furthermore, because NuVasive does not know what Alphatec may consider

13   to be "any investigations, evaluations, or opinions," it is even less burdensome for

14   Alphatec to simply review the documents and identify what it deems relevant for its

15   purposes.

16       **The Remainder Of Alphatec's Interrogatory Seeks Non-Relevant And**

17   **Burdensome Information:**   To the extent Alphatec seeks to compel NuVasive to

18   "identify all persons with knowledge of such investigations, evaluations, or

19   opinions" and "the persons most knowledgeable regarding" the same, Alphatec

20

21

22   —————————————

23       [22] None of the cases Alphatec cites are relevant because none are analogous to
     the facts here.   The cited records are not "undifferentiated" as there are tables of
24   contents and these are specific records from the back-and-forth with the PTO about
     the asserted patents.   NuVasive cited the file histories and PTO records out of an
25   abundance of caution because Alphatec refused to identify what it considers to be
26   "any investigations, evaluations, or opinions."   If Alphatec clarifies that it does not
     consider statements made to the PTO to be such "investigations, evaluations, or
27   opinions," NuVasive will gladly withdraw its identification.   And NuVasive has no
28   knowledge beyond what is stated in the identified documents.

1   specifically and only called out any investigations or evaluations.[23]  Dashe Decl. ¶ 8

2   (October 1, 2018 letter re Interrogatory No. 6).  In addition, this request is overly

3   burdensome and Alphatec does not explain how the information is relevant.  *The*

4   *PTO records already identified by NuVasive identify the attorneys and declarants*

5   *who participated in the statements and arguments made to the PTO*.  Alphatec does

6   not explain what it wants beyond this, or why an identification of "all persons" with

7   any knowledge whatsoever of what was submitted to the PTO is relevant or

8   proportional.    Because of this failure, Alphatec's request for any further

9   identification should be denied.

10           **B.     Interrogatory No. 7**

11           **Request:** Identify all prior art and documents, communications, or things

12   potentially constituting prior art that you are aware of for each of the patents-in-suit,

13   any patent application leading to the patents-in-suit, any related patent applications

14   and patents, and any foreign counterparts; identify all persons with knowledge

15   regarding such prior art and potential prior art; and identify the persons most

16   knowledge regarding such prior art and potential prior art.  Your answer should

17   include identification of any documents, communications, or things identified as

18   potential prior art by NuVasive or other person(s), whether or not such prior art was

19   identified to the USPTO or any other patent office.

20           **Response:** NuVasive incorporates by reference each of the General

21   Objections.  NuVasive objects to this Interrogatory on the grounds that it contains at

22   least three discrete subparts, is compound, and constitutes at least three

23   interrogatories.  NuVasive objects to this Interrogatory as vague and ambiguous with

24   respect to the phrase "potentially constituting prior art" and the term "potential prior

25   _____

26           [23] And Alphatec's assertion that NuVasive has not identified "all documents
    concerning the results of any of the requested investigations, evaluations, or
27   opinions" is nonsensical.  NuVasive does not understand what could be such a
    "result" other than what was submitted to the PTO and the ultimate outcome at the
28   PTO, all of which is in the documents NuVasive identified in its response.

art."  NuVasive objects to this Interrogatory on the grounds and to the extent it is overly broad, unduly burdensome, not proportional to the needs of the case, and not relevant to any claim or defense in this case.  Specifically, NuVasive objects to the Interrogatory to the extent it seeks identification of "all prior art," information "potentially constituting prior art," information regarding "any related patent applications and patents, and any foreign counterparts," and identification of "all persons with knowledge regarding such prior art and potential prior art."  NuVasive objects to this Interrogatory to the extent it attempts the shift the burden of proof regarding invalidity to NuVasive.  NuVasive objects to this Interrogatory to the extent it seeks "Privileged Information."  NuVasive objects to this Interrogatory to the extent it calls for legal conclusions.  NuVasive objects to this Interrogatory to the extent it seeks information that is publicly available and/or equally available to Alphatec and NuVasive, and therefore is as easily obtainable by Alphatec as NuVasive.

Subject to and without waiving the foregoing objections, NuVasive responds as follows: In addition, pursuant to Local Patent Rule 3.2(b) and Fed. R. Civ. P. 33(d), NuVasive further states that it will produce and has produced non-privileged documents from which the information requested can be ascertained, including documents:

NUVA_ATEC0016949 – NUVA_ATEC0039458; and

NUVA_ATEC0039459 – NUVA_ATEC004042.

In addition, the following are publicly available documents from which the information requested can be ascertained: Public records of the documents filed in the *inter partes* review proceedings of U.S. Patent Nos. 8,192,356; 8,000,782; 8,016,767; 8,005,535; 8,361,156; and 8,187,334; and public records of the documents filed in the reexamination proceedings of U.S. Patent Nos. 7,819,801; 7,570,236; 7,691,057; 7,582,058; and 7,207,949.

1  Discovery is ongoing and NuVasive reserves its right to amend or supplement

2  its response to this Interrogatory.

3  **Alphatec's Statement:**

4  After meeting and conferring, NuVasive has taken the following position:

5  NuVasive reiterates that it has not intentionally withheld any prior art
   it has identified from the USPTO.  In addition, NuVasive is not
6  withholding from production any prior art not disclosed to the
   USPTO.  To the extent any additional prior art is identified pursuant
7  to NuVasive's discovery obligations in this case that is responsive to
   this interrogatory, NuVasive will produce it.

8

9  Oct. 3, 2018 NuVasive Corr.  First, whether or not anything was "intentionally

10 withheld" is not grounds for limiting the scope of this Interrogatory.  Second, this

11 Interrogatory seeks *identification* of prior art and information about the prior art, not

12 *production*.  Thus, the Court should compel NuVasive to respond and provide the

13 requested information with respect to any documents, communications, or things

14 potentially constituting prior art that NuVasive is aware of.

15 **NuVasive's Deficient Responses:** NuVasive's responses to this Interrogatory

16 have been consistently deficient.  ***First***, in its initial response, NuVasive only cross-

17 referenced over twenty thousand pages of produced documents and referred to

18 "publicly available documents."  Setting aside the fundamental deficiency of such

19 cross-reference, [24] NuVasive still did not provide the requested information,

20 including but not limited to, any identified prior art, all persons with knowledge

21 regarding such prior art, and documents identified as potential prior art by NuVasive.

22 Instead, NuVasive's response inappropriately utilizes Rule 33(d) as a

23 "document dump" by asking Alphatec to comb through over twenty thousand pages

24 for information that NuVasive either is, or should be, intimately familiar with given

25 that the Interrogatory concerns evaluations of *NuVasive's own patents*.  *Reinsdorf*,

26 2012 WL 12882125, at *3; *Loop*, 2016 WL 2342128, at *2; *Thai*, 2017 WL 8180584,

27

28  [24] *Asyst Techs.*, 2006 WL 1749592, at *1; *Loop*, 2016 WL 2342128, at *2.

at *2.  And, NuVasive has also failed to specify where in these thousands of pages the answers to this Interrogatory can be found.  Fed. R. Civ. P. 33(d); *Rainbow Pioneer*, 711 F.2d at 906.

**Second**, after meeting and conferring, NuVasive first stated that it was "conducting a reasonable investigation to confirm if *all prior art* to the patents-in-suit and related U.S. patent applications and patents that NuVasive is aware of was previously identified to the USPTO in its publicly available filings."  Sept. 24, 2018 NuVasive Corr. (emphasis added).  Next, NuVasive stated, "after a reasonable investigation and to the best of its current knowledge, NuVasive is not aware of any prior art that was *intentionally withheld* from the USPTO."  Sept. 27, 2018 NuVasive Corr. (emphasis added).  And, as of the exchange of Alphatec's portions of this joint motion on October 12, 2018, NuVasive has continued to maintain that "it has not *intentionally withheld* any prior art the it has identified from the USPTO."  Oct. 3, 2018 NuVasive Corr. (emphasis added).  NuVasive's response is necessarily narrower than its own investigation and the information requested in the Interrogatory.  This affirmative qualification is without justification and does nothing more than allow NuVasive to arbitrarily limit its response.  Indeed, the very fact that NuVasive inserted this qualification after its investigation indicates that it is affirmatively trying to hide relevant, responsive information.

Further, NuVasive's statement that it "is not withholding from production any prior art not disclosed to the USPTO" is fundamentally nonresponsive and inappropriate.  Oct. 3, 2018 NuVasive Corr.  Alphatec propounded a Rule 33 interrogatory asking NuVasive to *identify specific information*, not a request for production.

**Relevance of Requested Information:**  This Interrogatory seeks identification of and information about prior art.  The requested information is, therefore, fundamentally relevant to evaluating the validity, patentability, and enforceability of each patent-in-suit, and also to identifying potential witnesses and

ESI custodians who may have information on these issues.  Indeed, the scope and content of the prior art is the essential basis of Alphatec's invalidity arguments.  To that end, individuals knowledgeable, including those most knowledgeable, about any prior art may provide testimony on the same key issues. Further, to the extent this Interrogatory reveals prior art not submitted to the USPTO in the prosecution of the patents-in-suit, such information could render the patents unenforceable.

**NuVasive's Objections Are Meritless:** For example, NuVasive objects to "potentially constituting prior art" and "potential prior art" as being vague and ambiguous, but it fails to state how these phrases are vague and ambiguous, and how NuVasive has understood these phrases in responding to this Interrogatory. *Salisbury*, 2013 WL 4402789, at *6.  Nor is "call[ing] for legal conclusions" a valid or cognizable objection.  *See* Fed. R. Civ. P. 33(a)(2); *San Diego Unified Port Dist. v. Nat'l Union Fire Ins. Co. of Pittsburg, PA*, No. 15-CV-1401-BEN-MDD, 2017 WL 3877732, at *2 (S.D. Cal. Sept. 5, 2017) ("It is not generally grounds for an objection that an interrogatory calls for a legal conclusion. … Only an interrogatory that calls for a legal conclusion that extends to legal issues unrelated to the facts of the case is objectionable on that basis.").  Also, NuVasive's objection that this Interrogatory "attempt[s] to shift the burden of proof regarding invalidity to NuVasive" is neither true nor a cognizable objection.  *See SPH Am., LLC v. Research in Motion, Ltd.*, No. 13-CV-2320-CAB-KSC, 2016 WL 6305414, at *2 (S.D. Cal. Aug. 16, 2016) ("The ultimate burden of invalidity, however, does not dictate the scope of discovery").  Further, NuVasive's objection that the sought-after information is "publicly available and/or equally available" is not a valid, recognized objection.  *Brown*, 2013 WL 12124097, at *3.  NuVasive's overbreadth, burdensome, and proportionality objections are meritless and NuVasive has not provided any support for these objections. *Dolarian Capital*, 2012 WL 4026818, at *2; Fed. R. Civ. P. 26(b)(2)(B).  Moreover, even if there were some true undue

1  burden, NuVasive must respond to the non-burdensome portion of the request.

2  *M & F Fishing*, 2007 WL 9706573, at *10; *In re Rivera*, 2017 WL 5163695, at *6.

3      Accordingly, NuVasive should be ordered to supplement its response with the

4  requested information in this Interrogatory.

5      **NuVasive's Statement:**

6      **NuVasive Is Not Unilaterally Limiting Its Response:**  Once again, Alphatec

7  is affirmatively misrepresenting NuVasive's response and inappropriately

8  suggesting that NuVasive is attempting to hide responsive information.  Alphatec

9  mistakenly argues that NuVasive's use of the phrase "intentionally withheld" means

10  NuVasive is limiting the scope of the request.  That is not correct.  NuVasive

11  repeatedly confirmed that it agreed to produce all prior art it was aware of and went

12  further to confirm that it is not aware of any prior art that was intentionally withheld

13  from the USPTO (and thus is not aware of any undisclosed prior art to produce).

14  Dashe Decl. ¶ 7 (September 27, 2018 letter re Interrogatory No. 7), ¶ 9 (October 3,

15  2018 letter re Interrogatory No. 7).  NuVasive cannot agree to produce prior art it

16  does not know about, although NuVasive agreed to supplement its response to

17  identify any prior art it becomes aware of.  Thus, there is no real dispute here.

18      Alphatec created its own confusion: At Alphatec's request, NuVasive agreed

19  to conduct a reasonable investigation to confirm "if all prior art to the patents-in-sit

20  and related U.S. patent applications and patents *that NuVasive is aware of was*

21  *previously identified to the USPTO in its publicly available filings*."  Dashe Decl. ¶

22  6 (September 24, 2018 letter re Interrogatory No. 7).  NuVasive confirmed this by

23  stating that it "is not aware of any prior art that was intentionally withheld from the

24  USPTO."[25]  Dashe Decl. ¶ 7 (September 27, 2018 letter re Interrogatory No. 7).  In

25  other words, NuVasive disclosed everything it was aware of to the USPTO in its

26

27      [25] NuVasive uses the phrase "intentionally withheld" because although NuVasive

28  is not currently aware of any, it is possible that there may exist prior art somewhere
    that was not disclosed to the USPTO.

public filings and it identified in its response the relevant USPTO filings. NuVasive does not understand how Alphatec could now be confused by this response and, to the extent Alphatec was confused, it should have sought clarification from NuVasive instead of rushing to the Court with this motion. For the avoidance of any potential doubt, NuVasive is not refusing to identify any prior art it is currently aware of in response to this interrogatory.

**NuVasive's Reliance On Fed. R. Civ. P. 33(d) Is Proper:** NuVasive is permitted to rely on Rule 33(d) "[i]f the answer to an interrogatory may be determined by examining . . . [documents], and if the burden of deriving or ascertaining the answer will be substantially the same for either party. Alphatec asks for an identification of all prior art and documents, communications, or things potentially constituting prior art. This information is identified in multiple different documents submitted to the PTO during prosecution of the NuVasive's patents, on the face of each patent, and in the various *inter partes* reviews and reexaminations of the asserted patents and related patents. The prior art is clearly and explicitly identified in each of these types of documents and this is what NuVasive identified in its response. It would be just as burdensome for NuVasive to compile a list of all this prior art from all of the documents it identified as it would be for Alphatec to create such a compilation. Alphatec knows just as well as NuVasive where prior art references are listed in the types of documents NuVasive identified. As such, NuVasive should not be required to specifically list out and identify each piece of prior art that NuVasive already listed out and identified previously in the documents NuVasive produced and identified in its response.

Moreover, NuVasive's identification of numerous documents does not change the propriety of its reliance on Rule 33(d). Because there are nine asserted patents, dozens more related patents, and Alphatec asked for all prior art to any of these patents, this necessarily calls for the prior art identified in during the prosecution of each of these patents, all related patents, and during *inter partes* review and

1    reexamination proceedings of each.  Indeed, Alphatec argues out of both sides of its
2    mouth, asserting that NuVasive's response is deficient but complaining that
3    NuVasive identified too much information.  Alphatec cannot have it both ways.

4        Alphatec's complaint that "NuVasive has also failed to specify where in these
5    thousands of pages the answers to this Interrogatory can be found" is specious.  For
6    example, any counsel familiar with patents (which Alphatec's counsel should be)
7    knows that prior art is identified in multiple places in patent prosecution, such as in
8    information disclosure statements, office actions, responses to office actions, search
9    reports, appeals, etc.  The same is true for *inter partes* and reexamination records.
10   These documents are easy for any attorney familiar with patents to navigate.

11   **Any Remaining Scope Of Alphatec's Request Is Overbroad And Not**
12   **Relevant:**  Although Alphatec only asked for NuVasive to supplement its response
13   to identify merely prior art, Dashe Decl. ¶ 8 (October 1, 2018 letter re Interrogatory
14   No. 7).  Alphatec now asserts that NuVasive should be required to identify "all
15   persons with knowledge regarding such prior art, and documents identified as
16   potential prior art by NuVasive."  Section V.B. (Alphatec's Statement).  The prior
17   art identified on the face of the nine asserted patent alone totals hundreds of
18   references.  It is wholly unreasonable and overly burdensome to ask NuVasive to
19   identify any and all of its employees who may have any knowledge of these
20   numerous references.  For example, it is not relevant if an employee who works on
21   a different type of spinal product that is unrelated to XLIF has read at some point in
22   his career one of the numerous references disclosed to the USPTO.  Even identifying
23   "those most knowledgeable" for these hundreds of references is burdensome because
24   it requires the same investigation – an identification of everyone with knowledge to
25   identify who has the most knowledge.  This is not like other subject matters that are
26   part of NuVasive's regular business conduct where a person most knowledgeable
27   can be readily identified (such as the person most knowledgeable regarding the sales
28   and marketing of XLIF).  There is no one person or even a group of people who are

1  responsible for "knowing" about prior art.  Furthermore, Alphatec's request for

2  person identification is completely irrelevant to enforceability because that concerns

3  whether there was knowledge of undisclosed prior art and NuVasive is not currently

4  aware of any undisclosed prior art that was withheld from the PTO.

5      As for the term "potential prior art," Alphatec has refused to explain what this

6  means or provide a definition for what constitutes "potential prior art."  A reference

7  either constitutes prior art or it does not.  NuVasive has fully responded to this

8  Interrogatory to the extent it seeks prior art.

9      **C.    Interrogatory No. 9**

10     **Request:** If you contend that any of the patents-in-suit or any of the asserted

11  claims is entitled to a priority date prior to the filing date of that patent, state in detail

12  the full factual and legal basis for each contention, including identifying all persons

13  with knowledge regarding such contentions, the persons most knowledge regarding

14  such contentions, and all documents supporting such contentions.  Your answer

15  should include for each limitation of each asserted claim identified in NuVasive's

16  Disclosure of Asserted Claims and Infringement Contentions, an identification of

17  the section, by column and line number, from the earliest filed patent application

18  that NuVasive contends supports and/or describes the subject matter disclosed in the

19  limitation and identifying all documents that support your contentions.

20     **Response:** NuVasive incorporates by reference each of the General

21  Objections.  NuVasive objects to this Interrogatory on the grounds that it contains at

22  least three discrete subparts, is compound, and constitutes at least three

23  interrogatories.  NuVasive objects to this Interrogatory on the grounds and to the

24  extent it is overly broad, unduly burdensome, not proportional to the needs of the

25  case, and not relevant to any claim or defense in this case.  Specifically, NuVasive

26  objects to the Interrogatory to the extent it calls for NuVasive to state the "full factual

27  and legal basis," identify "all persons with knowledge," and identify "all

28  documents."  NuVasive objects to this Interrogatory to the extent it seeks "Privileged

Information."  NuVasive objects to this Interrogatory because Alphatec bears the burden of proof on invalidity and has not asserted invalidity contentions that call the priority dates of the patents-in-suit into question.  NuVasive objects to this Interrogatory to the extent it calls for legal conclusions.  NuVasive objects to this Interrogatory as premature to the extent it seeks expert opinion or testimony.

Subject to and without waiving the foregoing objections, NuVasive responds as follows:

| Patent | Priority Date | Knowledgeable Persons |
|---|---|---|
| 7,819,801 | At least as early as February 27, 2003, which is the filing date of U.S. Pat. App. No. 60/450,806, to which the '801 patent claims priority | Patrick Miles, Scot Martinelli, Eric Finley, James Gharib, Allen Farquhar, Norbert Kaula, Jeffrey Blewett (deceased) |
| 8,355,780 | At least as early as September 25, 2003, which is the filing date of U.S. Pat. App. No. 60/506,136, to which the '780 patent claims priority | Patrick Miles, Scot Martinelli, Eric Finley |
| 8,361,156 | At least as early as March 29, 2004, which is the filing date of U.S. Pat. App. No. 60/557,536, to which the '156 patent claims priority. | Matthew Curran, Mark Peterson |
| 8,439,832 | At least as early as January 16, 2003, which is the filing date of U.S. Pat. App. No. 60/440,905, to which the '832 patent claims priority | Patrick Miles, Scot Martinelli, Eric Finley, James Gharib, Allen Farquhar, Norbert Kaula, Jeffrey Blewett (deceased) |
| 8,753,270 | At least as early as January 16, 2003, which is the filing date of U.S. Pat. App. No. 60/440,905, to which the '270 patent claims priority | Patrick Miles, Scot Martinelli, Eric Finley |

| 9,833,227 | At least as early as June 26, 2002, which is the filing date of U.S. Pat. App. No. 60/392,214, to which the '227 patent claims priority | Patrick Miles, Scot Martinelli, Eric Finley, James Gharib, Allen Farquhar, Norbert Kaula, Jeffrey Blewett (deceased) |
|---|---|---|

To date, Alphatec has not asserted any invalidity contention that calls the priority dates of the patents-in-suit into question. Discovery is ongoing. In addition, while Alphatec has served preliminary invalidity contentions, they were served on August 28, 2018, only three business days prior to this response. NuVasive is still reviewing these contentions and reserves the right to amend or supplement this response in light of those contentions. NuVasive reserves its right to amend and supplement its response to this Interrogatory.

**Alphatec's Statement:**

After meeting and conferring, NuVasive has offered to supplement its response only to "identify a specific priority date for each claim of the patents-in-suit." Oct. 3, 2018 NuVasive Corr. With respect to the actual information requested in this Interrogatory, NuVasive has only offered to respond "if Alphatec Agrees to supplement its contentions to identify which asserted claims it believes are not entitled to the earliest priority date." Oct. 3, 2018 NuVasive Corr.

NuVasive "bears the burden of coming forward with evidence to prove 'entitlement to claim priority to an earlier filing date.'" *Odyssey Wireless, Inc. v. Apple Inc.*, No. 15-CV-01735-H-RBB, 2016 WL 7634450, at *5 (S.D. Cal. Sept. 13, 2016). This analysis is done on a claim-by-claim basis. *Lucent Techs., Inc. v. Gateway, Inc.*, 543 F.3d 710, 718 (Fed. Cir. 2008) ("Patent claims are awarded priority on a claim-by-claim basis based on the disclosure in the priority applications."). NuVasive has already specifically contended, in its initial Infringement Contentions in June 2018, that each asserted patent is entitled to a priority date earlier than the filing date. Yet, NuVasive provides a fundamentally insufficient response to this Interrogatory and its purported "compromise" is nothing

more than an attempt to shift NuVasive's burden to Alphatec and to further delay and limit providing highly relevant information.  Oct. 3, 2018 NuVasive Corr.

This Interrogatory seeks the basis for NuVasive's contentions, not a response to Alphatec's contentions.  Thus, the Court should compel NuVasive to respond to this Interrogatory and provide the requested information.

**NuVasive's Deficient Responses:** NuVasive's responses to this Interrogatory have been consistently deficient.  ***First***, in its initial response, NuVasive failed to provide any information beyond what is on the face of the patents-in-suit.  In providing this limited information, NuVasive failed to provide *any* factual and legal basis for its priority date assertions on the legally-required claim-by-claim basis.  Indeed, despite Alphatec specifically delineating the information it seeks, including "an identification of the section, by column and line number, from the earliest filed patent application that NuVasive contends supports and/or describes the subject matter disclosed in the limitation and identifying all documents that support your contentions," NuVasive provided no such information.

***Second***, after meeting and conferring, NuVasive seeks to improperly shift its burden to Alphatec, offering to provide the requested information only if and to the extent "Alphatec agrees to supplement its contentions to identify which asserted claims it believes are not entitled to the earliest priority date."  Oct. 3, 2018 NuVasive Corr. Indeed, this evasive non-response ignores that separate and apart from the fact that, as discussed above, NuVasive has the burden of proving its priority date contentions, whether a party has the burden of proof does not impact NuVasive's clear and undisputable obligation to respond to this request.  *Blast Motion, Inc. v. Zepp Labs, Inc.*, No. 15-CV-00700-JLS-NLS, 2016 WL 5107677, at *2 (S.D. Cal. Mar. 2, 2016) ("the Federal Rules do not restrict the scope of discovery based on which party bears the burden of establishing an issue in later proceedings"); *accord Research in Motion*, 2016 WL 6305414, at *2 ("The ultimate burden of invalidity, however, does not dictate the scope of discovery.").

NuVasive's contention, as of the exchange of Alphatec's portions of this joint motion on October 12, 2018, that the "request is unduly burdensome and premature in light of the status of this case," is meritless and has been rejected in connection with similar requests.  Oct. 3, 2018 NuVasive Corr.  Specifically, in *Blast Motion* the court rejected arguments that an interrogatory seeking "For each limitation of each asserted claim identified in Section VI of Your Disclosure of Asserted Claims and Infringement Contentions ... provide a chart that identifies the section, by column and line number, from the earliest filed patent application which You contend supports and/or describes the subject matter disclosed in the limitation" was premature and unduly burdensome.  *Blast Motion*, 2016 WL 5107677, at *1-3.  The Court specifically rejected NuVasive's argument:

> The circumstances presented here are more akin to a recent case from this District, *Odyssey Wireless v. Apple*, where the court compelled further responses to a contention interrogatory regarding priority date discovery.  *Id.*, 15cv1735-H (RBB).  In *Odyssey Wireless*, the defendants moved the court to compel further responses to interrogatories, including a contention interrogatory that sought the basis for the plaintiff's claim it was entitled to the filing date of the first provisional application.  ***The parties in Odyssey were in a similar posture to this case – i.e., the parties had served their infringement and invalidity contentions, and were nearing claims construction at the time the court ruled on the defendants' motion to compel.***  (Dkt. No. 137 at 6-7.) The District Judge, although acknowledging *University of Virginia*, granted the defendants' motion to compel further responses.  (Dkt. No. 139, Dkt. No. 140 at 19.) The court reasoned that the plaintiff needed to provide the facts to support its claim to priority and it is fair for the defendants to know how the plaintiff claims priority.  (Dkt. No. 140 at 7, 20.) The court further reasoned that this District is a "lay all the cards on the table" District as evidenced by the Local Rules, so that everyone has information up front. (Id. at 12.) The court also determined this to be helpful so the parties are not pushing off responses to these interrogatories, which would be useful for all parties to properly evaluate the case, until the expert reports at nearly the end of discovery when the parties are preparing to file their dispositive motions and preparing for trial.  (Id.) This Court finds the District Judge's analysis in *Odyssey* persuasive.  Accordingly, this Court concludes Zepp's interrogatories are neither premature nor unduly burdensome and further responses are warranted.

*Blast Motion*, 2016 WL 5107677, at *3.  In this case, the parties have exchanged initial infringement and invalidity contentions and are currently in the mist of claim

construction exchanges.  Therefore, this discovery is ripe, relevant, proportional, and appropriate.  *Blast Motion*, 2016 WL 5107677, at *2 ("Because discovery as to the priority date is relevant to Zepp's defense and its assessment of prior art, and because the Federal Rules do not restrict the scope of discovery based on which party bears the burden of establishing an issue in later proceedings, the Court finds Zepp's request both relevant and proportional to the needs of the case.").

That NuVasive contends Alphatec has not provided "any specific challenge to the priority dates" of the asserted claims is likewise irrelevant.  Oct. 3, 2018 NuVasive Corr.  Indeed, Alphatec has challenged NuVasive's asserted priority dates based on NuVasive failure to meet its burden.  In any event, this is irrelevant to discovery.  As stated in *Blast Motion*:

> As explained below, the Court concludes Zepp has demonstrated the information sought is relevant and proportional to the needs of the case, and that Blast Motion's objections are not justified.  While Zepp may first need to come forward with invalidating art, and even though Blast Motion can show the prior art either does not invalidate the patent or that it is not prior art because the claim is entitled to an earlier priority date, this does not affect Zepp's right to discover this information.  *See generally, McKesson Info. Solutions v. Epic Sys. Corp.*, 242 F.R.D. 689, 692 (N.D. Ga. 2007) ("Nowhere in the Federal Rules of Civil Procedure is it required that a party who carries the ultimate burden on an issue at trial must establish a *prima facie* case before it is entitled to discover information the other party may use to rebut the *prima facie* case.  Quite the opposite, the rules contemplate that a party receive this information up front, during discovery, so that when the time comes to discharge its burden it has the ammunition necessary to do so.")

*Blast Motion*, 2016 WL 5107677, at *2.  NuVasive chose to sue on 9 patents and over 140 claims.  NuVasive has refused to limit its asserted claims.  Therefore, NuVasive should provide the support to prove its priority date claims for each of its asserted claims—it bears the burden for doing so and there is no reason it should not do so now.  If NuVasive is unable to support its priority date contentions, then the prior art available to Alphatec as this case proceeds—including toward final invalidity contentions—will expand.  Indeed, there is a wealth of additional potential prior art that Alphatec could turn to, including, as just a few examples:

- U.S Patent Publication No. 2005/0096508 (Valentini), which published on May 5, 2005 and was filed on November 8, 2004 (disclosing a retractor having two pivoting arms each provided with a finger, and a translating actuating member provided with a third finger);

- European Patent Application No. 632 185 (Petit), which published on August 3, 2006 (disclosing a retractor having two to five blades arranged for forming an operative channel);

- U.S. Patent No. 7,780,594 (Hutton), which claims priority to U.S. Provisional Patent Application No. 60/725,007 filed on October 7, 2005 (disclosing a retractor having at least three blades);

- U.S. Patent No. 7,803,150 (Chang), which claims priority to U.S. Patent Application No. 10/829,917 filed on April 21, 2004 (disclosing sequential dilators);

- U.S. Patent Publication No. 2011/0208226 (Fatone), which published on August 25, 2011 and was filed on October 6, 2008 (disclosing a method using sequential dilation to access a patient's spine through the psoas muscle); and

- U.S. Patent Publication No. 2008/0221586 (Garcia-Bengochea), which published on September 11, 2008 and was filed on February 11, 2008 (disclosing performing spinal surgery through the psoas muscle).

**Relevance of Requested Information:** Alphatec seeks foundational information regarding NuVasive's contentions that the patents-in-suit are entitled to priority dates earlier than each patent's respective filing date—a fundamental request in a patent infringement action like this one. Indeed, "[i]nformation about whether [NuVasive] is entitled to the claimed priority date is an important threshold issue because it will determine which references qualify as prior art." *See Blast Motion*, 2016 WL 5107677, at *2.

**NuVasive's Objections Are Meritless:** For example, NuVasive assertion that "Alphatec bears the burden of proof on invalidity and has not asserted invalidity contentions that call the priority dates of the patents-in-suit into question" is a red herring because it ignores that *NuVasive* bears the burden of proving priority dates for each patent-in-suit. *Odyssey Wireless*, 2016 WL 7634450, at *5. Even more, this purported objection is irrelevant because it is not a basis to withhold responsive information. *See Research in Motion*, 2016 WL 6305414, at *2 ("The ultimate burden of invalidity, however, does not dictate the scope of discovery."). Nor is "call[ing] for legal conclusions" a valid or cognizable objection. *See* Fed. R. Civ. P. 33(a)(2); *San Diego Unified Port Dist.*, 2017 WL 3877732, at *2. Furthermore, this Interrogatory is not premature per Patent Local Rule 2.5, nor does it seek an expert opinion—it only seeks NuVasive's bases for its priority date contentions, something that NuVasive has already disclosed in its infringement contentions. *See Montgomery*, 2015 WL 11233384, at *4. NuVasive's overbreadth, burdensome, and proportionality objections are meritless, as evidence by its offer to provide all the requested information subject to its proposed terms, and NuVasive has not provided any support for these objections. *Dolarian Capital*, 2012 WL 4026818, at *2; Fed. R. Civ. P. 26(b)(2)(B). Moreover, even if there were some true undue burden, NuVasive must respond to the non-burdensome portion of the request. *M & F Fishing*, 2007 WL 9706573, at *10; *In re Rivera*, 2017 WL 5163695, at *6.

Accordingly, NuVasive should be ordered to supplement its response with the requested information in this Interrogatory.

**NuVasive's Statement:**

**Alphatec Misrepresents What NuVasive Agreed To Do:** Alphatec selectively quotes a letter that described the supplement NuVasive agreed to provide for Interrogatory No. 9. NuVasive agreed to:

> [I]n a further attempt to avoid going to the Court on this interrogatory, NuVasive agrees to supplement its response by October 31, 2018 to identify a specific priority date for each

asserted claim of the patents-in-suit.  To the extent that Alphatec seeks additional information (e.g., for each asserted claim limitation, an identification of the section, by column and line number, from the earliest filed patent application that NuVasive contends supports and/or describes the subject matter), NuVasive notes that such a request is unduly burdensome and premature in light of the status of this case as well as Alphatec's failure to provide any specific challenge to the priority dates of the asserted claims in its invalidity contentions. However, NuVasive reiterates that if Alphatec agrees to supplement its contentions to identify which asserted claims it believes are not entitled to the earliest priority date, NuVasive is willing to further supplement its response to this interrogatory to provide such additional responsive information for those claims identified by Alphatec.

Dashe Decl. ¶ 9 (October 3, 2018 letter re Interrogatory No. 9).  Thus, NuVasive agreed to identify the priority date for each asserted claim – exactly what Alphatec requested.  And, NuVasive agreed to provide the further requested "identification of the section, by column and line number . . ." if Alphatec identified which claims it believes are not entitled to such dates.  NuVasive never refused to provide the requested details identifying column and line numbers.  It only objected to the timing of Alphatec's demands.  Thus, NuVasive's response was proper and more than sufficient under even the minimal and largely inapposite case law Alphatec relies upon.

**Alphatec Failed To Identify Any Authority Requiring The Burdensome Details It Seeks At This Point In The Case:**  To be clear, the only part of Alphatec's request in dispute is the portion that seeks "identification of the section, by column and line number, from the earliest filed patent application that NuVasive contends supports and/or describes the subject matter disclosed in the limitation." Thus, Alphatec wants NuVasive to identify on an element-by-element and claim-by-claim basis for every one of the 140 asserted claims the exact column and line number where such element is supported in the priority document for each patent. NuVasive has not refused to provide this information; it only contends that

1   demanding this level of detail now is premature given the current status of the case.
2   The case law Alphatec relies upon supports NuVasive.

3       In *Odyssey Wireless, Inc. v. Apple Inc.*, No. 15-CV-01738-H-RBB, 2016 WL
4   7634450 (S.D. Cal. Sept. 13, 2016), the court was considering a summary judgment
5   motion and the moving party (the infringer) asserted that the claims of the patents
6   were not entitled to early priority dates. Thus, it was the patentee's burden to
7   demonstrate priority entitlement *after* the infringer came forward with its assertions
8   regarding priority. There was no requirement that the patentee identify the detailed
9   information Alphatec seeks in the absence of any contentions putting the priority
10  dates at issue (as is the case here). The same is true in *Lucent Techs., Inc. v. Gateway,*
11  *Inc.*, 543 F.3d 710 (Fed. Cir. 2008). Thus, neither support Alphatec's motion.

12      Similarly, *Blast Motion, Inc. v. Zepp Labs, Inc.*, Case No.: 3:15-cv-00700-
13  JLS-NLS, 2016 WL 5107677 (S.D. Cal. Mar. 3, 2016) supports NuVasive, not
14  Alphatec. The Court in *Blast Motion* explicitly noted that the patentee needed to
15  supplement its interrogatory response to provide its priority date contentions along
16  with supporting column and line number citations *because*: (1) the defendant had
17  identified 24 prior art references whose status as invalidating prior art was dependent
18  on the exact priority date of the asserted claims; and (2) the parties were much further
19  along in discovery, as *they had each served their initial and amended contentions*,
20  and claims construction was less than two months away. *Id.* at *2-3. This is not the
21  case here. While Alphatec served initial invalidity contentions for six of the asserted
22  patents, it has not yet served any invalidity contentions for three asserted patents
23  (and will not do so until October 30, 2018). Neither party has served any amended
24  contentions. Moreover, *none of the prior art* Alphatec identified in its initial
25  invalidity contentions for six of the patents have a date that puts the priority date of
26  the patents at issue. In fact, NuVasive specifically pointed this out to Alphatec,
27
28

asking Alphatec to amend its contentions if it had such prior art. Alphatec refused.[26] Furthermore, the claim construction hearing is nearly five months away.

This case is far more like that of *Univ. of Va. Patent Found. v. Gen. Elec.*, 2015 WL 4878880 (W.D. Va. Aug. 14, 2015), cited by the *Blast Motion* Court, where it was found that a similar request was premature where full invalidity contentions had not yet been served and the currently asserted claims were many more than would actually be contested; thus, requiring the patentee to fully respond was premature and burdensome in light of the status of the litigation. Similarly, Alphatec only very recently served preliminary invalidity contentions for only six patents and has not served any contentions for three patents. Thus, the details Alphatec seeks are premature at this point.

**Alphatec's Motion Seeks to Force NuVasive to Do Alphatec's Invalidity Work**: Alphatec bears the ultimate burden on invalidity. *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 100 (2011). More specifically, Alphatec has the burden to identify and disclose any contentions it may have that the patents-in-suit lack written description under 35 U.S.C. 112. Pat. L.R. 3.3 (e). For such arguments, an infringer must, *inter alia*, identify the specific claim element it contends is not supported by the patent specification. *Alcon Research Ltd. v. Barr Labs., Inc.*, 745 F.3d 1180, 1190–91 (Fed. Cir. 2014) ("[t]he critical inquiry is whether the patentee has provided [an adequate description of] ... the ***claimed invention*** ... [t]hat assessment requires ***an objective inquiry into the four corners of the specification***") (emphases added). In other words, Alphatec has to do the reverse of what it is asking NuVasive to do

---

[26] While Alphatec identified six references for the very first time in its motion that are supposedly prior art "that Alphatec could turn to" (Section III.C.), Alphatec refused to provide this during the meet and confer process. Moreover, Alphatec fails to identify which patents for these references might be prior art. Thus, Alphatec's identification is insufficient and, in any event, late for purposes of this dispute. Notably, NuVasive offered Alphatec an extension on its time to bring a motion to that this dispute (and others) could be more fully vetted, but Alphatec refused and rushed into Court.

here.  To date, Alphatec has largely avoided this burden by disclosing only minimal information in its initial contentions for only some of the patents and its amended contentions for all asserted patents are not due until January 15, 2019 – three months from now.  Thus, Alphatec seeks to shift its "work" and burden to NuVasive:  it wants to force NuVasive to identify where its claims are supported so that Alphatec can avoid doing that analysis itself for its required written description contentions.

**Alphatec's Contention Interrogatory Is Premature Under S.D. Cal. Law:** Courts often find contention interrogatories (like this interrogatory) to be premature when they are served at the early stage of litigation and before substantial discovery has been completed.  *See Folz v. Union Pac. R.R. Co.*, No. 13-cv-00579-GPC-(PCL), 2014 U.S. Dist. LEXIS 15020, at *5 (S.D. Cal. Jan. 29, 2014) ("There is no dispute that, at some time, the party answering contention interrogatories will have to respond fully to these discovery requests. However, many courts have found that, within the framework of Rule 33, contention interrogatories need not be answered until the substantial completion of pretrial discovery.");  *Gen-Probe Inc. v. Becton, Dickinson & Co.*, No. 09CV2319 BEN (NLS), 2010 WL 2011526, at *1 (S.D. Cal. May 19, 2010) (noting that "courts have found contention interrogatories served toward the beginning of a litigation to 'be of questionable value to the goal of efficiently advancing the litigation'" and denying motion to compel a response to the contention interrogatory because "the parties have not yet completed substantial discovery, and because BD does not object to responding further to this contention interrogatory as discovery progresses") (*citing In re Ebay Seller Antitrust Litig.*, No. C-07-1882 JF (RS), 2008 U.S. Dist. LEXIS 102815, at*6 (N.D. Cal. Dec. 11, 2008)).  This case is at the very early stage of discovery as Alphatec has not even provided initial invalidity contentions (which it is permitted to change) for all of the asserted patents, let alone amended contentions or provided any substantial document production.  Thus, the Court should not compel NuVasive to provide a response to this contention interrogatory at this early stage of the case.

For all these reasons, and because Alphatec refused NuVasive's reasonable and orderly accommodation of its request, instead bringing this motion prematurely, Alphatec's motion should be denied.[27]

## IV.   ALPHATEC'S POINTS AND AUTHORITIES

Despite filing this suit, asserting nine patents and over 140 claims, NuVasive's discovery responses are consistently deficient.  NuVasive's initial responses were dilatory requests to meet and confer and/or bare cross-references to massive document dumps or purported publicly available information.  After conferring, NuVasive inappropriately added affirmative limitations that serve no purpose other than to allow NuVasive to arbitrarily limit its responses and withhold relevant, responsive information.   Indeed, the discovery at issue seeks foundational, fundamentally relevant information regarding, for example: (1) the scope and content of prior art; (2) NuVasive's validity analyses; (3) NuVasive's claims for damages, royalties, and injunctive relief; (4) the reasons why surgeons use NuVasive's products; and (5) evaluating the testimony of NuVasive's witnesses in this case.  Yet, NuVasive continues its obfuscations and now, after over *two months* has passed to give NuVasive time to investigate, NuVasive contends that it is still "currently investigating."     These dilatory and evasive tactics are pure gamesmanship—gamesmanship that must end with NuVasive being compelled to respond to the interrogatories and requests for production at issue here.

### A.   Legal Standard

Once relevance is shown, the opposing party "has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining, and supporting its objections."  *Beckner v. El Cajon Police Dep't*, No. 07-CV-509-W (BLM), 2008 WL 2033708, at \*2 (S.D. Cal. May 9, 2008).  Evasive or incomplete

---

[27] NuVasive remains prepared to supplement its response as promised and described above by October 31, 2018, to identify a specific priority date for each asserted claim of the patents-in-suit.

1  responses are tantamount to a failure to answer or respond.  Fed. R. Civ. P. 37(a)(4).

2  **B.    NuVasive Refuses to Identify Invalidity Analyses or Prior Art**

3  Interrogatory Nos. 6 and 7 seek information regarding: (No. 6) validity,

4  patentability, and enforceability analyses; and (No. 7) prior art NuVasive is aware

5  of for the patents-in-suit.   Rather than providing the requested information,

6  NuVasive affirmatively self-limits its responses, offering to provide information

7  only regarding "investigations or evaluations of validity *that have been specifically*

8  *undertaken by NuVasive as a company*" and stating that "it has not *intentionally*

9  *withheld* any prior art it has identified from the USPTO."  Oct. 3, 2018 NuVasive

10 Corr. (emphasis added).  These limits are unjustified and do nothing more than allow

11 NuVasive to arbitrarily narrow its responses.  NuVasive's persistence in maintaining

12 these limits after Alphatec pointed them out and after NuVasive's "investigations"

13 indicates that it is trying to hide relevant, responsive information about fundamental

14 issues.  Alphatec has already discovered examples.  In *inter partes* reviews against

15 Medtronic regarding similar technologies (IPR2013-00206 and -00208), NuVasive

16 identified the following references in November 2011: (1) U.S. Patent No. 4,545,374

17 (Jacobson);  (2)  Friedman,  Percutaneous  Discectomy:  An  Alternative  to

18 Chemonucleolysis?, Neurosurgery, Vol. 13, No. 5 (1983); (3) Kanter and Friedman,

19 Percutaneous Discectomy: An Anatomical Study, Neurosurgery, Vol. 16, No. 2

20 (1985); and (4) Leu, et al., Percutaneous Fusion of the Lumbar Spine, Spine, 1992,

21 6(3): 593-604.  Yet, NuVasive did not disclose some or all of these references during

22 examination of the patents-in-suit which occurred after 2011: (1) the 9,924,859

23 patent issued on March 27, 2018; (2) the 8,439,832 patent issued on May 14, 2013;

24 (3) the 8,355,780 patent issued on January 15, 2013; (4) the 9,833,227 patent issued

25 on December 5, 2017; and (5) the 9,974,531 patent was issued on May 22, 2018.

26 **C.    NuVasive Refuses to Support Its Priority Date Contentions**

27 Interrogatory No. 9 requests the basis for NuVasive's priority date assertions

28 on the required claim-by-claim basis.  Yet, NuVasive has provided only information

from the face of its patents and offered to further respond "if Alphatec agrees to supplement its contentions to identify which asserted claims it believes are not entitled to the earliest priority date." Oct. 3, 2018 NuVasive Corr. NuVasive's burden-shifting response is deficient and its compromise is an attempt to further delay and limit providing relevant information. NuVasive "bears the burden" of proving an "entitlement to claim priority to an earlier filing date." *Odyssey Wireless*, 2016 WL 7634450, at *5. This analysis is done on a claim-by-claim basis. *Lucent Techs.*, 543 F.3d at 718. NuVasive has already contended that each asserted patent is entitled to a priority date earlier than the filing date. As NuVasive already provided its contentions, presumably it had an actual basis for making them. Therefore, there is no reason for it to delay providing that information to Alphatec other than to hide the ball while the parties work on claim construction and final contentions. Courts in this district have granted motions to compel on similar requests at similar stages. *See Blast Motion*, 2016 WL 5107677, at *3 (following other S.D. Cal. case law and granting motion to compel similar information where "the parties had served their infringement and invalidity contentions, and were nearing claims construction").

### D.     NuVasive Refuses to Search for Documents Regarding Ownership and Assignment of the Patents-in-Suit

Request for Production No. 8 seeks documents concerning the ownership, including any assignments, of the patents-in-suit. Yet, NuVasive responds only that it "has already produced documents sufficient to show its ownership." NuVasive's ownership, while relevant, is not the only relevant interest and the Court should compel NuVasive to respond regarding all ownership interests, which will show the proper parties in this case and information regarding the value of the patents-in-suit, "an important component of any patent suit." *Facedouble, Inc. v. Face.com, Inc.*, No. 12-CV-1584-DMS-MDD, 2014 WL 585868, at *3 (S.D. Cal. Feb. 13, 2014).

### E.     NuVasive Seeks to Inappropriately Limit Its Productions

**Regarding Relevant Financials**

Request for Production Nos. 11 and 12 seek, respectively, documents concerning: (No. 11) the financial impact of the alleged infringement on NuVasive; and (No. 12) NuVasive's financial analyses for the patents-in-suit, and any accused, embodying, or competing product. These documents are critical to understanding and evaluating NuVasive's claims for damages and royalties, as well as any future claims for injunctive relief. Yet, NuVasive tries to affirmatively limit its production to, for example, "summary documents containing information pulled from electronic data sources." Sept. 27, 2018 NuVasive Corr. NuVasive's exclusion of all other documents, including ESI, beyond self-selected "summary documents" is not justified. Indeed, NuVasive has not even agreed to produce responsive documents based on application of any agreed-to ESI search terms to the agreed-to ESI custodians. Beyond attempting to hide relevant information, there is no reason for NuVasive not to search for and produce these documents.

**F.     NuVasive Seeks to Inappropriately Limit Its Productions Regarding Royalty Agreements and Payments**

Request for Production Nos. 2 and 3 seek documents regarding NuVasive's agreements, however titled, that give another entity the ability to utilize NuVasive's technologies in the field of spinal fusion surgery (and vice versa) and the payments made pursuant to such agreements. However, NuVasive seeks to limit its production to "patent license agreements" and royalty payments related to the "patents-in-suit or related patents." The parties have agreed that the "field of spinal fusion surgery" is relevant. Agreements beyond those titled "patent license agreements" and payments beyond those related to the "patents-in-suit or related patents" provide key information for valuing the patents-in-suit and determining any damages or reasonably royalty rate that may apply. Thus, there is no reason for NuVasive to arbitrarily withhold relevant, responsive information. *See Facedouble*, 2014 WL 585868, at *3 ("[v]aluation is an important component of any patent suit").

**G.** **NuVasive Seeks to Inappropriately Limit and Refuses to Produce Documents Regarding Its Inducements to Surgeons**

Request for Production Nos. 5, 6, and 7 are relevant to evaluating NuVasive's inducing surgeons to use the allegedly embodying products and seek documents regarding: (No. 5) NuVasive's consulting agreements and related payments to surgeons; (No. 6) its purported marketing arm, SOLAS; and (No. 7) government investigations regarding kickbacks. NuVasive has developed deep relationships with surgeons through lucrative consulting relationships. Doc. No. 49-1 at ¶ 25. It has been investigated, and is currently under investigation, by the federal government for inducing use of alleged embodying products by paying improper kickbacks, including allegations that it used SOLAS to make those kickbacks. Doc. No. 49-72 at ¶¶ 121-125; Doc. No. 49-129 at 2-3. Thus, these requests are relevant to NuVasive's claims for damages and royalties as well as any secondary indicia of non-obviousness that NuVasive may assert. *See Fresenius Med. Care Holding Inc. v. Baxter Int'l, Inc.*, 224 F.R.D. 644, 654 (N.D. Cal. Feb. 5, 2004) (compelling production of documents relating to government investigations of information that would impact lost profit damages).

**H.** **NuVasive Refuses to Search Prior Document Productions**

Despite the parties' agreement to search non-individual ESI locations, NuVasive refuses to apply any agreed-to search terms to its non-individual ESI locations reasonably likely to contain documents produced by NuVasive in other proceedings relating to the validity, enforceability, infringement, or patent term extension of any of the patents-in-suit and related patents, as requested in Request for Production No. 1. There is no reason for NuVasive's refusal—such documents were necessarily relevant and proportional in matters concerning the same issues as in this case. *See, e.g.*, *Fresenius*, 224 F.R.D. at 656 (compelling production relating to "any prior litigation pending or threatened regarding any patents in suit").

**I.** **NuVasive Requests Unilateral Compromises From Alphatec**

Requests for Production Nos. 14 and 15 seek information provided to, made by, or relied upon by NuVasive's current and future witnesses in this case. NuVasive did not agree to provide this information and instead sought a compromise, but never provided the requested compromise proposal. While Alphatec is willing to consider NuVasive's proposal (if made), Alphatec should not have to unilaterally limit its requests, which seek relevant information about NuVasive's witness testimony.

## V.   NUVASIVE'S POINTS AND AUTHORITIES

Alphatec waited *four months* to serve a single discovery request. Alphatec also severely delayed seeking ESI for *multiple months*. Perhaps because of its own delays, Alphatec has prematurely and improperly rushed to this Court for relief on discovery where no legitimate disputes exist because NuVasive did, in fact, agree to produce relevant, responsive information for a vast number of the so-called disputes. For several other discovery requests, it is Alphatec, not NuVasive, who is holding up any discovery because the requested documents exist only in ESI and Alphatec has, to date, failed to follow the agreed-upon framework for such documents. Other Alphatec discovery requests are unreasonably overbroad, untethered to any claim, defense, or issue in this case and Alphatec refused to propose any narrowing of such requests. The remainder are gross fishing expeditions for which Alphatec has offered only broad conclusory assertions of relevance with no supporting legal authority.

Alphatec's motion should be denied in its entirety for failure to comply with this Court's Rules, for failure to completely meet and confer, for moving on discovery where no actual dispute exists, for failure to properly establish the relevance of requests, and failure to narrow requests to any reasonable scope.[28]

### A.   Legal Standard – It Is Alphatec's Burden To Establish Relevance

---

[28] If the Court compels *any* production, NuVasive requests it be given more time than Alphatec to comply as NuVasive is an exponentially larger company and began development of its embodying product nearly 20 years ago.

It is Alphatec's burden to establish the relevance of what it is seeking to compel. Conclusory statements that the requested information is relevant are not sufficient to sustain this burden. *Jardin v. DATAllegro, Inc.*, No. 11-CV-87-IEG (WVG), 2011 WL 1769835, at *3 (S.D. Cal. May 9, 2011) ("conclusory statements do not satisfy [a party's] burden"); *Leadership Studies, Inc. v. Blanchard Training & Dev., Inc.*, No. 15CV1831-WQH(KSC), 2017 WL 2819847, at *8 (S.D. Cal. June 28, 2017) (conclusory arguments not enough). Alphatec must ***explain*** how the information it seeks to compel has any bearing on the claims or defenses in this case. *San Diego Unified Port Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. 15CV1401-BEN-MDD, 2017 WL 3877730, at *2 (S.D. Cal. Sept. 5, 2017). Alphatec failed to meet this burden.

**B.     NuVasive's Response To Interrogatory Nos. 6 & 7 Was Proper**

Regarding Interrogatory Nos. 6 (validity, patentability, and enforceability analyses), NuVasive performed a reasonable search and identified information it believed to be responsive and specifically searched for, but could not identify, any additional analyses undertaken by or for the company.[29] The phrase "specifically undertaken by NuVasive as a company" was not meant to "hide" anything as Alphatec asserts. If fact, had they simply asked instead of prematurely moving, NuVasive would have explained as much. NuVasive is not withholding any responsive information from production. There is nothing to compel here.

For Interrogatory No. 7, Alphatec is again manufacturing a dispute. NuVasive identified all the prior art it is aware of in its response and represented that it would supplement if it became aware of additional prior art. NuVasive went further, representing that it has not intentionally withheld prior art from the PTO not as a

---

[29] Specifically, NuVasive identified records from PTO proceedings regarding the asserted patents because statements in those records could be broadly construed as "evaluations" or "opinions" of patent validity, patentability, and enforceability.

1   limitation on its response, but as explanation that its response already identified
2   everything it was aware of.[30]   There is nothing to compel here.

3   **C.    NuVasive Agreed To Supplement Its Priority Date Contentions**

4   Alphatec's assertions regarding Interrogatory No. 9 (priority date) are false.
5   NuVasive agreed to supplement its response to identify a specific priority date for
6   each asserted claim by October 31, 2018.   To the extent Alphatec believes that
7   NuVasive is not entitled to those priority dates, it is Alphatec's burden to set forth
8   such a contentions (*see supra* Section V.C. (NuVasive's Statement)) and NuVasive
9   already agreed that it would supplement if Alphatec provides such contentions
10  (which is has not yet done to date).   Alphatec's request should be denied because it
11  is simply premature and it refused all reasonable compromises.

12  **D.    NuVasive Fully Responded To Request No. 8**

13  Regarding Request for Production No. 8 (ownership, including any
14  assignments, of the patents-in-suit), NuVasive already produced documents showing
15  its ownership of the patents-in-suit.   When Alphatec asserted this was insufficient,
16  NuVasive asked Alphatec to explain what else it wants.   Alphatec only identified
17  two agreements regarding a security interest in NuVasive's patent portfolio,[31] which
18  NuVasive also agreed to produce.   There is nothing Alphatec has asked for that
19  NuVasive is withholding.

20  **E.    NuVasive Agreed To Produce Requested Financial Documents**

21  Regarding Requests for Production Nos. 11 and 12 (financial documents),
22  there is no dispute because NuVasive has not refused to produce requested
23  documents.   First, as to hard copy documents, NuVasive conducted a reasonable

---

25  [30] The supposed "examples" of prior art Alphatec identified are not relevant to
26  this Interrogatory because those references were cited as prior art to *Medtronic*
    *patents*.  Moreover, when NuVasive asked Alphatec what more it wanted, Alphatec
27  did not say it wanted more information on this art or anything else.

28  [31] And these agreements have nothing to do with "ownership" in any event
    because they state on their face that they are not assignments.

search and determined it does not have requested documents in hard copy. Second, above and beyond what the model ESI rules require, NuVasive agreed to produce summary documents showing the information requested. This is because the information is likely stored in financial databases that are not "searchable" in the same manner as other ESI (such as Word and Power Point documents). Third, regarding ESI, NuVasive explicitly stated that it is "not refusing to produce documents responsive to this request" but, because this seeks financial information which most likely resides in financial databases, NuVasive asked Alphatec to identify the ESI custodians and search terms it has in mind pursuant to the parties' agreements regarding ESI. Alphatec refused. Alphatec cannot demand agreement to something where it has refused to identify the scope of its demands.

### F.    NuVasive Agreed to Produce Relevant Agreements and Payments

Concerning Requests for Production Nos. 2 and 3 (license agreements and royalty payments), NuVasive agreed to produce (1) any agreements regarding the asserted patents and related patents, (2) any *license* agreements in the "field of spinal fusion surgery," and (3) documents sufficient to show payments made pursuant to such agreements regarding the asserted patents and related patents. Alphatec completely failed to explain why non-license agreements (such as covenants not to sue or indemnity agreements) regarding non-asserted patents are relevant. Likewise, Alphatec failed to explain why payments made pursuant to agreements regarding non-relevant products and non-relevant, non-asserted patents are relevant to any issue. NuVasive has already agreed to produce what is relevant.

### G.    NuVasive Agreed To Apply ESI Search Terms For Request No. 1

Alphatec again prematurely brought its motion on Request No. 1 and its assertions are false. NuVasive agreed to search the ESI folders it has located that contain its productions in other cases using ESI search terms the parties may agree upon (if Alphatec ever identifies such terms for potential agreement).

### H.    Alphatec's Demand for All Documents Any Witness Reviews At Any Time For Any Purpose Is Grossly Overbroad

Alphatec's Requests Nos. 14 and 15 (information provided to, made by, or relied upon by NuVasive's current and future witnesses) is unlimited as to time, context, subject matter, etc.  They literally request the production of any document any witness in this case reviews or considers at any time even if it concerns non-relevant products, non-relevant subjects, or non-relevant contexts.  And Alphatec refused to limit these requests to any reasonable scope.  It is not NuVasive's burden to narrow Alphatec's unreasonable discovery requests.

## I. The Remainder of Alphatec's "Disputes" Are Fishing Expeditions

The remainder of Alphatec's discovery requests are not relevant whatsoever to the issues of this case and constitute mere fishing expeditions.  Specifically, Requests for Production Nos. 5, 6, and 7, relating to surgeon agreements, SOLAS, and  government investigations, are not relevant and Alphatec provided nothing more than conclusory statements of relevance.  For example, it was Alphatec's burden to *explain* how these documents are relevant to "damages and royalties as well as any secondary indicial of non-obviousness."  Alphatec failed.  Moreover, these requests are the very types of fishing expeditions prohibited by the Federal Rules.  *See Micro*, 894 F.2d at 1328 ("A litigant may not engage in merely speculative inquiries in the guise of relevant discovery."); *Rivera*, 364 F.3d at 1072 (fishing expeditions not condoned); *Medicinova Inc. v. Genzyme Corp.*, No. 14CV2513-L(KSC), 2017 WL 2829691, at *5 (S.D. Cal. June 29, 2017) (amended Federal Rules designed to change "the legal culture that embraces the leave no stone unturned and scorched earth approach to discovery").  These requests would also be unduly burdensome for NuVasive to comply with, as explained above.   NuVasive should not be compelled to undertake such burdens to produce information that is not even remotely relevant to the issues in this case.

## J. Conclusion

Alphatec's motion should be denied in its entirety.

1    Date: October 19, 2018                Wilson Sonsini Goodrich & Rosati

2                                          */s/ Christina Dashe*

3                                          Paul D. Tripodi II
4                                          Wendy L. Devine
                                           Natalie J. Morgan
5                                          Grace Pak
6                                          Christina Dashe
                                           Sara L. Tolbert
7
                                           Attorneys for Plaintiff NuVasive, Inc.
8

9
10   Date: October 19, 2018                WINSTON & STRAWN LLP

11                                          */s/ Jason C. Hamilton*

12                                          NIMALKA R. WICKRAMASEKERA
                                            STEPHEN R. SMEREK
13                                          JASON C. HAMILTON
14                                          SHILPA A. COORG

15                                          Attorneys for Defendants
16                                          ALPHATEC   HOLDINGS,   INC.  and
                                            ALPHATEC SPINE, INC.
17

18

19

20

21

22

23

24

25

26

27

28

---

1

## **SIGNATURE ATTESTATION**

2          I, Jason Hamilton, hereby attest that I obtained the concurrence of Christina

3  Dashe in filing this document.  I declare under penalty of the laws of the United

4  States that the foregoing is true and correct.

5          Executed this 19th day of 2018 at Ladera Ranch, California.

6                                  By: */s/Jason C. Hamilton*
                                      Jason C. Hamilton
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was filed with the Court's CM/ECF system which will provide notice to all counsel deemed to have consented to electronic service.  All other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing document by mail on this day.

Date:  October 19, 2018                    WINSTON & STRAWN LLP


By: /s/ Jason C. Hamilton
Jason C. Hamilton