UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NUVASIVE, INC., <br><br> Plaintiff, <br><br> v. <br><br> ALPHATEC HOLDINGS, INC. et al., <br><br> Defendants. | Case No.: 3:18-CV-347-CAB-MDD <br><br> **ORDER RE NUVASIVE'S MOTION FOR PARTIAL SUMMARY JUDGMENT** <br><br> [Doc. No. 250] |

This is a patent infringement case in which NuVasive, Inc. ("NuVasive") asserts that Alphatec Holdings, Inc. ("Alphatec") infringes seven of NuVasive's United States patents.[1] Discovery has concluded, and NuVasive now moves for summary adjudication of infringement of three of the asserted patents, U.S. Patent No. 8,439,832; U.S. Patent No. 8,355,780; and U.S. Patent 8,753,270.[2] Additionally, NuVasive moves for summary

---

[1] U.S. Patent No. 7,819,801; U.S. Patent No. 8,355,780; U.S. Patent No. 8,439,832; U.S. Patent No. 9,833,227; U.S. Patent No. 8,753,270; U.S. Patent No. 9,924,859; and U.S. Patent No. 9,974,531.
[2] At Doc. Nos. 1-8; 1-6; and 1-12, respectively.

1

adjudication of the validity of all seven of the asserted patents. Finally, NuVasive moves for summary adjudication of Alphatec's inequitable conduct affirmative defense. [Doc. No. 250.] Alphatec opposed. [Doc. No. 260.] NuVasive filed a reply. [Doc. No. 262.] The Court held oral argument on March 13, 2020. Having considered the submissions of the parties and the arguments of counsel, the motion is GRANTED IN PART and DENIED IN PART.

The patents-at-issue generally claim a surgical access system including a tissue distraction assembly and a tissue retraction assembly, both of which may be equipped with one or more electrodes for use in detecting the existence of (and optimally the distance and/or direction to) neural structures before, during, and after the establishment of an operative corridor to a surgical target site.[3] In particular, the systems are designed for use in creating an operative corridor in a lateral, trans-psoas path to the lumbar spine.

NuVasive accuses Alphatec's Battalion Lateral Lumbar Spacer System ("Battalion System") of infringing various claims of the patents at issue and moves for summary judgment of infringement of claims 1, 3, 9 and 10 of the '832 patent, claims 21, 22, 24 and 27 of the '780 patent, and claims 1, 2, 3, 6 and 12 of the '270 patent.

### I. Summary Judgment of Infringement

Pursuant of Fed. R. Civ. P. 56(a), summary judgment is appropriate when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." To prove direct infringement a patentee must establish, by a preponderance of the evidence, that one or more claims of the patent read on the accused device literally or under the doctrine of equivalence. *See Adv. Cardiovascular Sys., Inc., v. Scimed Life Sys., Inc.* 261 F.3d 1329, 1336 (Fed Cir. 2001). Summary judgment for the plaintiff on the issue of infringement is proper when no reasonable jury could not find that every limitation recited in a properly construed claim is found in the accused device either literally or under

---

[3] See Abstract, '832 Patent; Abstract '780 Patent; Abstract '270 patent.

the doctrine of equivalents. *See PC Connector Solutions LLC v. Smartdisk Corp.,* 406 F.3d 1359, 1364 (Fed. Cir. 2005).

Determining whether a claim has been infringed requires a two-step analysis. First the claim must be properly construed to determine its scope and meaning. Second, the claim as properly construed must be compared to the accused device. *Id.* at 1362.

### A. The '832 Patent

The '832 patent is for a "Surgical Access System and Related Methods." The system is designed to establish an operative corridor through or near any of a variety of tissues having neural structures which, if contacted or impinged, may result in neural impairment for the patient. [Doc. No. 1-8, at Col. 2:65- Col. 3:3.] A specific intended use of the system of the '832 patent, as set forth in claim 1, is to create an operative corridor in a lateral, trans-psoas path to the lumbar spine. NuVasive alleges Alphatec's Battalion System literally infringes the following claims.

> Claim 1. A system for forming an operating corridor to a lumber spine, comprising:
>
> a distraction assembly to create a tissue distraction corridor in a lateral, trans-psoas path to a lumbar spine, wherein said distraction assembly includes an elongate inner element and a plurality of dilators, the plurality of dilators being configured to sequentially advance along the lateral, trans-psoas path to the lumbar spine, the elongate inner element being positionable in a lumen of an initial dilator of the plurality of dilators, wherein at least one instrument from the group consisting of said elongate inner element and said dilators includes a stimulation electrode that outputs electrical stimulation for nerve monitoring when the at least one instrument is positioned in the psoas muscle;
>
> a three-bladed retractor tool slidable over an exterior of an outermost sequential dilator of the dilator system toward the targeted spinal disc along the lateral, trans-psoas path, the three-bladed retractor assembly including:
>
> a blade-holder assembly, and
>
> a posterior-most retractor blade, a cephalad-most retractor blade, and a caudal-most retractor blade that extend from the blade-holder assembly, wherein the posterior-most, cephalad-most, and caudal-most retractor blades are slidably advanced over the exterior of the outermost sequential dilator while in a first position, wherein the blade-holder assembly is adjustable to

> move the posterior-most, cephalad-most, and caudal-most retractor blades to a second position in which the cephalad-most and caudal-most retractor blades are spaced apart from the posterior-most retractor blade to define an operative corridor,
>
> wherein three-bladed retractor tool is configured to define the operative corridor along the lateral, trans-psoas path to the lumbar spine in which a space extending to the targeted spinal disc between the posterior-most, cephalad-most, and caudal-most refractor [sic] blades is dimensioned so as to pass an implant through the operative corridor along the lateral, trans-psoas path to the lumbar spine.
>
> Claim 3. The system of claim 1, wherein the elongate inner member is advanced along the lateral, trans-psoas path to the targeted spinal discs such that a distal tip portion of the elongate inner member penetrates into an annulus of the targeted spinal disc.
>
> Claim 9. The system of claim 1, further comprising a fourth retractor blade that couples with the blade-holder assembly only after the blade-holder assembly moves the posterior-most, cephalad-most and caudal-most retractor blades to the second position.
>
> Claim 10. The system of claim 1, further comprising a fixation element to releasably engage with one of said retractor blades so that at least a portion of the fixation element extends distally into the lumbar spine, wherein the fixation element is configured to releasably engage with the posterior-most retractor blade after the posterior-most retractor blade is advanced along the lateral, trans-psoas path to the lumbar spine.

[Doc. No. 1-8 at Col. 14:31- Col.15:45.] NuVasive contends that all the elements of claims 1, 3, 9 and 10 of the '832 patent are present in the Battalion System.

Alphatec's Surgical Technique Guide describes the Battalion System as including: (1) sequential dilators used to split and advance through the psoas muscle until flush to the disc space; (2) the dilators having neuromonitoring capability; (3) a K-wire (i.e., an elongate inner element) introduced through the dilators and inserted half-way into the target disc; and (4) a three-blade retractor system introduced over the second dilator flush with the disc space, the blades of which can be adjusted to define an operative corridor. [Doc. No. 250-42.] The Squadron Retractor, as described in the surgical guide, includes

an intradiscal shim (i.e., fixation element) to stabilize the retractor and an optional fourth blade.

### 1. Distraction Assembly Limitation

Alphatec contends that the Battalion System does not meet the limitations of claim 1 because it teaches a lateral, trans-psoas approach in which the surgeon is instructed to first use blunt scissors and/or a finger to "dissect the subcutaneous tissue" to reach the "retroperitoneal space" and then use a finger as a guide to insert an initial dilator to the psoas muscle. [Doc. No. 250-42 at 5-7.] The initial dilator is then used to traverse the psoas muscle to a position flush with the disc space. Alphatec argues that the "distraction assembly" of the accused Battalion System therefore does not meet the distraction assembly claim limitation as the system employs the use of scissors and/or the surgeon's finger to distract the tissues in the lateral path between the skin of the patient and the psoas muscle, not just the use of sequential dilators.

To meet the limitations of claim 1, the distraction assembly must include sequential dilators, an elongate element, and the retractor in accordance with the claim limitations. "Includes" is the equivalent of "comprising" and is therefore not limiting. *See Lucent Technologies, Inc. v. Gateway, Inc.*, 525 F.3d 1200, 1214 (Fed. Cir. 2008) ("including" and "comprising" have the same meaning namely, that the listed elements are essential but other elements may be added). The distraction assembly of claim 1 does not preclude the addition of a scissor or finger to assist in the creation of the distraction corridor, provided the distraction assembly also utilizes the elongate inner element and the plurality of dilators. It is undisputed that the Battalion System includes the essential elements. It is also undisputed that these elements of the accused system are capable of creating a distraction corridor in a lateral, trans-psoas path to the patient's spinal target, with or without the addition of the scissors or a finger to dissect the subcutaneous tissue. Accordingly, the Court finds that the Battalion System meets the distraction assembly limitation.

## 2. Electrodes That Output Electrical Stimulation Limitation

Alphatec also argues that the Battalion System does not meet the claim limitation of "electrodes that output electrical stimulation for nerve monitoring when [. . .] positioned in the psoas muscle." [Doc. No. 1-8 at Col. 14:42-45.] Because the Battalion System does not include a source of electrical stimulation, Alphatec contends the electrodes on its dilators of the system do not "output electrical stimulation" as required by the claim.

The question, however, is whether "all of the elements of the claim are present in the accused system." *Omega Patents, LLC v. CalAmp Corp.,* 920 F.3d 1337, 1345 (Fed. Cir. 2019). "To infringe a claim that recites capability and not actual operation, an accused device need only be capable of operating in the described mode." *Finjan Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1204 (Fed. Cir. 2010). Here, claim 1 requires only that the elongate inner element or at least one of the dilators have a stimulation electrode *capable of* outputting electrical stimulation for nerve monitoring when positioned in the psoas muscle. Claim 1 does not recite as an element a source for generating the electrical stimulation to the electrodes. There is no dispute that the electrodes on the dilators of the Battalion System are capable of outputting electrical stimulation when positioned in the psoas muscle if the electrodes are connected to the "appropriate neuromonitoring platform." [Doc. No. 250-42 at 6.] Thus, the Batallion System's lack of a neuromonitoring platform does not render it non-infringing because a source of electrical stimulation is not an element of Claim 1.

In light of the foregoing, and because Alphatec did not raise any other disputed facts, NuVasive's motion for summary judgment of infringement of '832 patent by the Battalion System is GRANTED.

### B.   The '780 Patent

The '780 patent is also for a "Surgical Access System and Related Methods." The system is designed to establish an operative corridor through or near any of a variety of tissues having neural structures which, if contacted or impinged, may result in neural impairment for the patient. [Doc. No. 1-6, at Col. 2:65- Col. 3:4.] A specific intended use

6

3:18-CV-347-CAB-MDD

of the system of the '780 patent, as set forth in claim 21, is to create an operative corridor in a lateral, trans-psoas path to the lumbar spine. NuVasive alleges Alphatec's Battalion System literally infringes the following claims.

> Claim 21. A system for forming an operating corridor to a lumber spine, comprising:
>
> a dilator system to create a distraction corridor along a lateral, trans-psoas path to a lumbar spine, wherein said dilator system comprises at least two dilators of sequentially larger widths deliverable to a spinal disc along the lateral, trans-psoas path to the lumbar spine, a second dilator of said at least two dilators being slidably engageable with an exterior of the first of said at least two dilators, at least one of the first and second dilators including a stimulation electrode to deliver electrical stimulation for nerve monitoring when the stimulation electrode is positioned along the lateral, trans-psoas path to the lumbar spine;
>
> a three-bladed retractor assembly slidable over the dilator system toward the spinal disc along the lateral, trans-psoas path, the three-bladed retractor assembly including:
>
> a blade holder assembly and first, second and third retractor blades that extend generally perpendicularly relative to arm members of the blade holder assembly,
>
> wherein the three-bladed retractor assembly is adjustable from a first position in which the first, second and third retractor blades are adjacent to one another and slidable over the dilator system to a second position in which the second and third retractor blades are moved away from the first retractor blade to enlarge the distraction corridor and thereby form an operative corridor along the lateral, trans-psoas path to the lumbar spine,
>
> wherein the first retractor blade is linearly movable relative to the second and third retractor blades in response to rotation of a knob element on the blade holder assembly,
>
> wherein the second refractor [sic] blade is movable relative to the first blade in response to pivoting movement of the first pivotable arm member of said arm members which is coupled to the second retractor blade, and wherein the third retractor blade is movable relative to the first blade in response to pivoting movement of the second pivotable arm member of said arm members which is coupled to the third retractor blade; and
>
> wherein when the three-bladed retractor assembly is adjusted to the second position to form the operative corridor along the lateral, trans-psoas path to

the lumbar spine, the first retractor blade is a posterior-most retractor blade of the first, second, and third retractor blades and the operative corridor is dimensioned so as to pass an implant through the operative corridor and into the lumbar spine.

Claim 22. The system of claim 21, wherein when the three-bladed retractor assembly is adjusted to the second position to form the operative corridor, the first retractor blade is the posterior-most retractor blade, the second blade is a cephalad-most retractor blade, and the third blade is a caudal-most retractor blade.

Claim 24. The system of claim 21, wherein said arm members of the blade holder assembly further comprise a translating arm member coupled to the first retractor blade, wherein the rotation of the knob element of the blade holder assembly causes the translating arm member to linearly adjust a position of the first retractor blade relative to the second and third retractor blades.

Claim 27. The system of claim 21, further comprising an elongate member deliverable to a spinal disc along a lateral, trans-psoas path to the lumbar spine such that a distal tip region of the elongate member is configured to penetrate into an annulus of the spinal disc, said first dilator being configured to slidably engage an exterior of the elongate member.

[Doc. No. 1-6, at Col. 15:3- Col.16:36.]

As discussed *supra*, the Battalion System includes: (1) sequential dilators used to split and advance through the psoas muscle until flush to the disc space; (2) the dilators having neuromonitoring capability; (3) a K-wire introduced through the dilators and inserted half-way into the target disc; and (4) a three-blade retractor system introduced over the second dilator flush with the disc space, the blades of which can be adjusted to define an operative corridor. NuVasive contends that all the elements of claims 21, 22, 24 and 27 are present in the Battalion System.

### 1. Distraction Assembly and Electrode Stimulation Limitations

In its opposition Alphatec raises the some of the same arguments for non-infringement of this patent that it made with respect to the '832 patent: (1) the Battalion System does not create a distraction corridor with only the use of dilators and therefore does not meet the claim's dilator system limitation; and (2) it does not include a source of

8

electrical stimulation so it does not "deliver electrical stimulation for nerve monitoring when the stimulation electrode is positioned along the lateral, trans-psoas path to the lumbar spine." For the reasons discussed *supra* regarding the '832 patent, these arguments do not preclude a finding of infringement of the '780 patent.

### 2. Slidably Engageable Limitation

Alphatec additionally contends that NuVasive has not demonstrated that the Battalion System meets the '780 patent's claim limitation of "a second dilator of said at least two dilators being slidably engageable with an exterior of the first of said at least two dilators." The Court previously construed "slideably engageable" as "slides to contact." [Doc. No. 167.] In the Battalion System a secondary dilator is advanced over an initial dilator's exterior in a clockwise, counter-clockwise motion. [Doc No. 250-42 at 9.]

Although Alphatec does not dispute that the secondary dilator of the Alphatec system is advanced by sliding it over the initial dilator, Alphatec contends that the dilators do not contact one another. Alphatec asserts that the dilators are designed to have a gap or clearance such that they are easily slideable and that NuVasive has not demonstrated that the secondary dilator sufficiently contacts the exterior of the initial dilator to meet the claim limitation. Although the Court finds Alphatec's argument weak, it is for a jury to resolve the factual dispute as to whether the circumferential differences between the sequential dilators of the Battalion System result in contact between the interior of the secondary dilator and the exterior of the initial dilator as the secondary dilator is slidably advanced over the initial dilator.

### 3. Pivoting Movement Limitation

Alphatec also challenges NuVasive's assertion that the Squadron Retractor of the Battalion System meets the claim limitation requiring that the arm members of the retractor assembly move in a pivoting manner – the retractor blade "is movable… in response to pivoting movement of the… pivotable arm member." [Doc. No. 1-6 at Col. 15:37-39.] The Squadron Retractor has three arm members to which the retractor blades are attached. The retractor blades are positioned to slide over the dilator and then the arm members are

adjusted to move two of the blades away from the third to form the operative corridor. [Doc. No. 250-42 at 16.] Alphatec contends that although the arm members of the Squadron Retractor move away from each other, the movement is not a "pivoting movement."

The Court was not asked to construe "pivoting movement" at the claim construction hearing. "Pivoting movement," although used in claim 21, does not appear in the body of the specification of the '780 patent. NuVasive contends it has a plain and ordinary meaning and requires no further explanation. Alphatec references PCT application WO 2006/042241, related to the '780 patent, which describes in the summary of the invention that the cephalad-most and/or caudal-most blade may pivot or "rotate outward from a central axis of insertion" such that the operative corridor may be further expanded. [Doc. No. 260-11 at 9.] This definition of "pivoting movement"—to rotate outward or turn away from a central axis of insertion—is adopted by the Court.

The evidence presented, including a demonstration at the oral argument of the operation of the Squadron Retractor, establishes that the retractor arms to which the blades are affixed, once the blades are inserted into the distraction corridor, are operable to move outward from that insertion point to expand the distraction corridor into an operative corridor. The parties dispute whether the movement of the retractor arms of the accused device meets the pivot limitation, i.e., whether they a rotate or turn away from the central axis of insertion. This material factual dispute must be resolved by a jury.

In light of the foregoing, NuVasive's motion for summary adjudication of infringement of claim 21 is DENIED. Because claims 22, 24 and 27 depend from claim 21, summary adjudication of infringement of those claims is also DENIED.

### C. The '270 Patent

The '270 patent is also for a "Surgical Access System and Related Methods." The system is designed to establish an operative corridor through or near any of a variety of tissues having neural structures which, if contacted or impinged, may result in neural impairment for the patient. [Doc. No. 1-12 at Col. 3:1-6.] The claims of the '270 patent

10

3:18-CV-347-CAB-MDD

are specifically directed at a shim device designed to augment the structural stability of the retractor blades. [Id. at Col. 4:56-62.] NuVasive alleges the Battalion System's intradiscal shim literally infringes the following claims.

> Claim 1. A spinal shim device configured to releasably attach to spinal access retractor blade and to penetrate into a spinal disc space for anchoring the spinal access retractor blade to the disc space, the shim device comprising:
>
> a proximal portion configured to releasably attach to a spinal access refractor [sic] blade, a distal extension configured to extend distally of the spinal access retractor blade and penetrate into a disc space between two adjacent vertebrae, and a maximum longitudinal length extending from a proximal-most end of the proximal portion to a distal-most end of the distal extension and extending parallel to a longitudinal axis of the shim device, wherein the maximum longitudinal length of shim device is less than a maximum longitudinal length of the spinal access retractor blade to which the proximal portion is configured to releasably attach;
>
> the distal extension including: a tapered tip region, and a maximum lateral width of the distal extension located proximally away from the distal-most end;
>
> the proximal portion having a proximal lateral width that is greater than the maximum lateral width of the distal extension, the proximal portion defining a forward surface portion, and the proximal portion including a rearwardly extending ridge structure to releasably engage with a corresponding groove along an interior face of the spinal access refractor [sic] blade when the proximal portion releasably attaches to the spinal access retractor blade, the ridge structure having a length extending parallel to the longitudinal axis of the shim device and being bisected by a longitudinal plane passing through the longitudinal axis of the shim device.
>
> Claim 2. The spinal shim device of claim 1, wherein the proximal lateral width of the proximal portion is defined between opposing lateral sides of the proximal portion, the rearwardly extending ridge structure being centered between the opposing lateral sides of the proximal portion.
>
> Claim 3. The spinal shim device of claim 2, wherein the length of the rearwardly extending ridge structure is greater than a lateral width of the ridge structure and greater than a rearwardly extending thickness of the ridge structure.
>
> Claim 6. The spinal shim device of claim 1, wherein the distal extension includes a distal lateral width that is generally consistent along a portion of

> the distal extension that is adjacent to the tapered tip region, the distal lateral width being the maximum lateral width of the distal extension.
>
> Claim 12. The spinal shim device of claim 1, wherein a maximum lateral width of the proximal portion extends in a lateral plane that extends perpendicularly to the longitudinal axis and passes through the ridge structure.

[Doc. No. 1-12, at Col. 14:30 – Col. 16:21.]

The intradiscal shim of the Battalion System has a rearward extending structure that releasably engages with a corresponding groove on the interior face of a retractor blade. [Doc. No. 250-42 at 20; Doc. No. 253-7 at 2.] The parties dispute whether that structure meets the claim limitation of a rearwardly extending ridge structure having "a length extending parallel to the longitudinal axis of the shim device." [Doc. No. 1-12 at 14:57-58.]

NuVasive contends that claim 1 does not require the rearward extending ridge structure to have a specific length of parallel extension along the longitudinal axis, and that therefore the structure identified by Alphatec meets the limitation. Moreover, NuVasive contends that the rearward extending structure of the Alphatec shim is not limited, as Alphatec asserts, to the portion that engages into the retractor blade groove. As highlighted in yellow below, NuVasive contends that the rearward extending ridge structure of the Alphatec shim includes the entire portion of the shim that extends rearward from the surface portion, thereby having a length extending parallel to the longitudinal axis of the shim device. [Doc. No. 253-7 at 2, highlighting added.]



12

Alphatec contends that the structure of its shim that engages with a corresponding groove in the retractor is not a parallel extension from the shim device. The releasable structure of the shim is only that portion that extends perpendicularly from the surface portion as highlighted in yellow below. [Id., highlighting added.]



Therefore, according to Alphatec, the intradiscal shim of the Battalion System does not meet the claim limitation.

The Court finds a material factual dispute at to whether the accused device meets all the limitations of claim 1. NuVasive's motion for summary adjudication of infringement of claim 1 and its dependent claims 2, 3, 6 and 12 is DENIED.

## II. Summary Adjudication of Invalidity Defenses

Each claim of a patent is presumed valid. 35 U.S.C. § 282. The party challenging the validity of a patent claim must prove invalidity by clear and convincing evidence. *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 108-09 (2011). A patent claim is invalid as obvious if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains. 35 U.S.C. § 103.

NuVasive moves for summary adjudication that Alphatec's invalidity challenges against all seven patents at issue fail as a matter of law to establish invalidity based on obviousness by clear and convincing evidence. To prevail on its motion, NuVasive must establish that Alphatec, "who bears the burden of proof at trial, failed to produce clear and

convincing evidence on an essential element of a defense upon which a reasonable jury could invalidate the patent." *Eli Lilly & Co. v. Barr Labs, Inc.*, 251 F.3d 955, 962-63 (Fed. Cir 2001).

As to each asserted patent, NuVasive contends that Alphatec's evidence of obviousness, provided by Dr. Charles Branch, is insufficient and relies only upon his conclusory and unsupported opinions that a person of skill in the art would be motivated to combine the various prior art references he puts forth. Alphatec's opposition however is persuasive that its evidence challenging the validity of the patent claims at issue is sufficient for a reasonable jury to conclude the patents are obvious. NuVasive has not demonstrated that Alphatec's invalidity defenses fail as a matter of law. The motion for summary adjudication of the validity of the patents at issue, or more accurately an adjudication dismissing Alphatec's affirmative defenses of invalidity as to each patent, is DENIED.

### III. Summary Adjudication of the Inequitable Conduct Defense

NuVasive moves for summary adjudication of Alphatec's affirmative defense of inequitable conduct during the prosecution of the '227, '531, '832 and '859 patents. The Court finds many material facts in dispute regarding this defense. Further, because it is an equitable defense for the Court's determination, it will be bifurcated from the jury trial and heard separately as a bench trial at the conclusion of the jury case. The motion is therefore DENIED.

### IV. Conclusion

For the reasons stated above and on the record at the hearing on this motion, NuVasive's motion for summary adjudication is:

1. **GRANTED** as to infringement of the '832 Patent;
2. **DENIED** as to infringement of the '780 Patent;
3. **DENIED** as to infringement of the '270 Patent;
4. **DENIED** as to Alphatec's invalidity defenses; and

5.  **DENIED** as to Alphatec's inequitable conduct defense.

It is **SO ORDERED**.

Dated:  April 10, 2020

_____
Hon. Cathy Ann Bencivengo
United States District Judge