UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NUVASIVE, INC.,<br><br>                      Plaintiff,<br><br>v.<br><br>ALPHATEC HOLDINGS, INC. et al.,<br><br>                    Defendants. | Case No.: 3:18-CV-347-CAB-MDD<br><br>**ORDER RE ALPHATEC'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Doc. No. 252, 256] |

      This is a patent infringement case in which NuVasive asserts that Alphatec infringes seven of its United States patents.[1] Discovery has concluded and Alphatec now moves for summary judgment of non-infringement of all the asserted patents, for summary judgment of the allegations of indirect infringement, for summary judgment of its invalidity defense as to the '832 patent and for the adjudication of NuVasive's assignor estoppel claim. Finally, Alphatec moves for summary adjudication of NuVasive's claim of lost profits damages. [Doc. No. 256.] NuVasive opposed. [Doc. No. 261.] Alphatec filed a reply. [Doc. No. 264.] The Court held oral argument on March 13, 2020. Having considered the

---

[1] U.S. Patent No. 7,819,801 [Doc. No. 1-4]; U.S. Patent No. 8,355,780 [Doc. No. 1-6]; U.S. Patent No. 8,439,832 [Doc. No. 1-8]; U.S. Patent No. 9,833,227 [Doc. No. 1-10]; U.S. Patent No. 8,753,270 [Doc. No. 1-12]; U.S. Patent No. 9,924,859 [Doc. No. 110-44]; and U.S. Patent No. 9,974,531 [Doc. No. 110-46].

submissions of the parties and the arguments of counsel, the motion is GRANTED IN PART and DENIED IN PART.

The patents-at-issue generally claim a surgical access system including a tissue distraction assembly and a tissue retraction assembly, both of which may be equipped with one or more electrodes for use in detecting the existence of (and optimally the distance and/or direction to) neural structures before, during and after the establishment of an operative corridor to a surgical target site.[2]  In particular the systems are designed for use in creating an operative corridor in a lateral, trans-psoas path to the lumbar spine.

NuVasive accuses Alphatec's Battalion Lateral Lumbar Spacer System ("Battalion System") of infringing various claims of the patents-at-issue.  Alphatec moves for summary judgment of non-infringement of all the asserted claims.

**I.      Summary Judgment of Non-Infringement**

Pursuant of Fed. R. Civ. P. 56(a), summary judgment is appropriate when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  The court must construe all facts in a light most favorable to the non-moving party and draw reasonable inferences in that party's favor, but it should grant summary judgment where a claim is factually unsupported, or where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

To prove direct infringement a patentee must establish, by a preponderance of the evidence, that one or more claims of the patent read on the accused device literally or under the doctrine of equivalence.  *See Advanced Cardiovascular Sys., Inc., v. Scimed Life Sys., Inc.* 261 F.3d 1329, 1336 (Fed Cir. 2001).  When an accused infringer seeks summary judgment of non-infringement, "nothing more is required than the filing of a motion stating that the patentee has no evidence of infringement and pointing to the specific ways in which

---

[2] See generally Doc. No. 1-4, Abstract.

the accused [products do] not meet the claim limitations." *Exigent Tech. v. Atrana Solutions, Inc.*, 442 F.3d 1301, 1309 (Fed. Cir. 2006).

Alphatec contends that its accused Battalion System does not meet all the limitations of any of the patents-at-issue.

### A. Dilator System/Distraction Assembly Limitation.

NuVasive contends that the Battalion System infringes the system claims of four of its patents, the '801 patent, the '832 patent, the '780 patent, and the '531 patent and the method claims of the '832 patent and '227 patent. Each of these patents are for a "Surgical Access System and Related Methods." They are directed at systems and methods designed to establish an operative corridor through or near any of a variety of tissues having neural structures which, if contacted or impinged, may result in neural impairment for the patient. [See generally Doc. No. 1-4, at Col. 2:51-54.]

Each of the surgical access systems claimed in the patents-at-issue includes the claim limitation of a dilator system [*Id*., at Col. 13:32-34; Doc. No. 1-6, at Col. 15:5-6; and Doc. No. 110-46, at Col. 13:36-37] or a tissue distraction assembly comprising dilators [Doc. No. 1-8, at Col. 14:33-36] to create a tissue distraction corridor along a lateral trans-psoas path to the lumbar spine. The claimed dilator systems and tissue distraction assembly of each asserted patent are comprised of a plurality of sequential dilators used in the creation of the tissue distraction corridor. In the context of these patents, the use of these dilators, preferably with nerve monitoring electrodes, is disclosed as critical to traverse nerve-rich tissues, such as the psoas muscle, and avoid neural impairment.

The accused system is described in Alphatec's Surgical Technique Guide. [Doc. No. 250-42.] The system includes sequential dilators used to split and advance through the psoas muscle until flush to the disc space. Implementation of the Battalion System also instructs the surgeon to first use blunt scissors and/or a finger to "dissect the subcutaneous tissue" to reach the "retroperitoneal space" and then use a finger as a guide to insert an initial dilator to the psoas muscle. [Doc. No. 250-42, at 5-7.] The initial dilator is then used

to traverse the psoas muscle to a position flush with the disc space to complete the distraction corridor to the targeted disc space.

Alphatec argues that the accused Battalion System does not meet the distraction assembly or dilator system claim limitation as its system employs the use of scissors and/or the surgeon's finger to distract the tissues in the lateral path between the skin of the patient and the psoas muscle, not just the use of sequential dilators to form the corridor.

The asserted claims require a dilator system or distraction assembly that includes or comprises sequential dilators used to create the distraction corridor. "Includes" and "comprising" are equivalent, and not limiting. *See Lucent Tech., Inc. v. Gateway, Inc.*, 525 F.3d 1200, 1214 (Fed. Cir. 2008) ("including" and "comprising" have the same meaning namely, that the listed elements are essential but other elements may be added.) The asserted claims do not preclude the addition of a scissor or finger to assist in the creation of the distraction corridor, provided the distraction assembly or dilator system also utilizes a plurality of dilators to create the corridor to the target surgical site, particularly in accordance with the patents' disclosures to traverse nerve-rich tissue such as the psoas muscle to reach the target site.

It is undisputed that the Battalion System includes the essential elements—the sequential dilators. It is also undisputed that these elements of the accused system are capable of creating a distraction corridor in a lateral trans-psoas path to the patient's spinal target with or without the addition of the scissors or a finger to dissect the subcutaneous tissue. "It is fundamental that one cannot avoid infringement merely by adding elements if each element recited in the claim is found in the accused device." *A.D. Dick Co. v. Burrough Corp.*, 713 F.2d 700, 703 (Fed. Cir. 1983).

Alphatec's motion for summary judgment of non-infringement of the system claims of '801 patent, the '780 patent, the '832 patent, and the '531 patent for failure to meet this claim limitation is DENIED.

The methods claimed in the '832 patent and '227 patent include forming an operating corridor to a lumbar spine of a patient, comprising the steps of inserting a plurality of

sequential dilators into the patient and advancing them along a lateral trans-psoas path to a lateral aspect of a target intervertebral disc of the lumbar spine to create a tissue distraction corridor along the lateral trans-psoas path through a region of a psoas muscle. [Doc. No. 1-8, at Col.15:55-65; Doc. No. 1-10, Col. 17:37-57.] When a patent uses the term comprising, the method claim is open-ended and allows for additional steps. *Invitrogen Corp. v. Biocrest Mfg. LP,* 327 F.3d 1364, 1368 (Fed. Cir. 2003). The Alphatec Surgical Technique Guide instructs surgeons to insert the dilators of its Battalion System into the patient in a space formed by the surgeon's finger or a blunt scissor leading to the psoas muscle and to use the dilators to traverse the psoas muscle to complete the distraction corridor to the targeted disc space. Although the steps of the claims do not include the use of other instruments to assist in the formation of the distraction corridor, the addition of the steps of using a scissor or finger to create the initial path to the psoas muscle is not precluded by the methods claimed. The guide teaches a method of creating a distraction corridor that includes the essential steps of the claims—inserting and advancing the sequential dilators along a lateral trans-psoas path to the lumbar spine to create a tissue distraction corridor to the target intervertebral disc.

Accordingly, Alphatec's motion for summary judgment of non-infringement of the method claims of the '832 patent and '227 patent for failure to meet this claim limitation is DENIED.

### B. Retractor Arm Limitation.

The surgical access systems claimed in the '801 patent, the '780 patent, and the '531 patent also include the claim limitation of a three-bladed retractor assembly designed to slide into place over the dilator and then be adjusted to move two of the blades away from the third to form an operative corridor. [Doc. No. 1-4, at Col. 13:61-Col. 15:2; Doc. No. 1-6, at Col. 15:37-44; and Doc. No. 110-46, at Col. 13:61-Col. 14:4.] Two of the arms of the retractor assembly that are connected to the blades move relative to the third arm of the assembly thereby moving their respective blades away from the third. The retractor arms are claimed as "pivotable" and the blades move away from each other in response to the

"pivoting" of the arms.   [Doc. No. 1-6, at Col. 15:37-39; Doc. No. 1-4, at Col. 13:35-46, Col. 13:67-Col. 14:2; Doc. No. 110-46, at Col. 13:66-Col. 14-4.]

Alphatec contends that the Squadron Retractor of the Battalion System does not meet the claim limitation requiring that the arm members of the retractor assembly pivot or move in a pivoting manner.  The retractor of the Battalion System has three arm members to which the retractor blades are attached.  The retractor blades are positioned to slide over the dilator and then the arm members are adjusted to move two of the blades away from the third to form the operative corridor. [Doc. No. 250-42, at 16.] Alphatec focuses on the structure of its retractor, the arms of which are not connected at a single axis pin or shaft, contrasting its structural design to an embodiment of the retractor assembly shown in the patent specification.  The Court, however, does not find this structural comparison dispositive as the claim language is descriptive of a movement, not a structural design.

The Court was not asked to construe "pivot" or "pivoting movement" at the claim construction hearing.  NuVasive contends it has a plain and ordinary meaning and requires no further explanation.  Alphatec references the PCT application WO 2006/042241, related to the patents at issue, which describes in the summary of the invention that the cephalad-most and /or caudal-most blade may pivot or "rotate outward from a central axis of insertion" such that the operative corridor may be further expanded. [Doc. No. 260-11, at 9; Doc. No 256-1 at 15.][3] This definition of "pivot" or "pivoting movement," to rotate outward or turn away from a central axis of insertion, is adopted by the Court. [See also Doc. No. 281, at 9-10.]

The parties dispute whether the movement of the retractor arms of the accused device meets the pivot limitation—a rotation or turning away from the central axis of insertion.  The Court finds this to be a material factual dispute, and therefore Alphatec's motion for

---

[3] Alphatec also offers a second construction of pivoting, "rotation about a single, central axis in a single plane" but provides no support for this narrow interpretation in the context of these claims. {Doc. No. 256-1 at 17.]

summary judgment of non-infringement of the '801 patent, the '780 patent, and the '531 patent for failure to meet this claim limitation is DENIED.

### C. Rotation about Longitudinal Axes Limitation.

The retractor assembly of the surgical access system claimed in the '859 patent includes the limitation of

> a retractor body including a first arm having a distal end with a first blade connector and first longitudinal axis extending through the distal end, a second arm having a distal end with a second blade connector and second longitudinal axis extending through the distal end, and a third arm having a distal end with a third blade connector and third longitudinal axis extending through the distal end,
> …
> wherein the retractor body is operable to:
> …
> rotate the first retractor blade about the first longitudinal axis to move a distal end of the first retractor blade relative to a proximal end of the first retractor blade; and
> rotate the second retractor blade about the second longitudinal axis to move a distal end of the second retractor blade relative to a proximal end of second retractor blade; …

[Doc. No. 110-44, at Col. 22:36-43; Col. 23:5-12.]

The blades of the accused retractor can be adjusted so the distal end of a retractor blade moves relative to the proximal end of the blade, such that the blade extends in an angular position rather than perpendicularly from the arm. [Doc. No. 252-13, at 17.]



NuVasive contends this is done by rotating the blade about the longitudinal axis of the arm of the retractor body as required by the claim. [Doc. No. 261, at 37-38.]



Alphatec disagrees. According to Alphatec, moving the distal end of the blade relative to its proximal end by rotation about the longitudinal axis of the retractor arm, would necessarily cause the blade to rise. The blade of the Squadron Retractor remains level. Consequently, Alphatec argues the blade movement, or tilt, of the blade of the accused device is not accomplished by rotating the blade about the longitudinal axis of the retractor arm. [Doc. No. 256-1, at 18.]

The Court is unable to determine without further testimony and explanation whether this claim limitation is met. The Surgical Guide indicates that the blade is tilted by the rotation of a connection on the retractor arm. Alphatec's illustration in support of its non-infringement contention does not place the longitudinal axis in the correct location, i.e.,



from the arm to which the blade is attached as required by the claim. Further the claim is silent as to whether to movement results in blade remaining level or rising.

1  The Court finds that there is a material factual dispute as to whether this claim limitation is met. Therefore, Alphatec's motion for summary judgment of non-infringement of the '859 patent for failure to meet this claim limitation is DENIED.

### D. Rigidly Coupled Limitation.

The '801 patent requires that the blade of the retractor assembly be "rigidly coupled" to the arm member of the assembly prior to introduction toward the targeted spinal site. [Doc. No. 1-4, at Col. 13:41-49.] The Court construed "rigidly coupled" to mean "fixed and immovably connected." [Doc. No. 167.] Alphatec contends that the blades of its retractor while fixed to the retractor arms are not immovably connected to the retractor arms because they can be raised or lowered after insertion into the patient to accommodate the patient's anatomy. [Doc. No. 253-14, at 17.]

NuVasive contends the claim limitation is met because the retractor blades of the accused device are fixed and immovably connected to the retractor arms prior to introduction to the patient. As described in the Battalion System surgical guide: "Load appropriately sized blades onto the Retractor directly in front of the Blade Release Levers. An audible click confirms each blade is fully inserted and locked into place." [Id., at 10.] After the retractor is inserted into the patient the height of the retractor blades may be adjusted "by turning depth control screws" at depth control articulation points. [Id., at 12, 17.] It is disputed that this ability to raise or lower the blade depth changes the connection between the blade and the arm member. [Doc. No. 261, at 34.]

The Court finds this to be a material factual dispute, and therefore Alphatec's motion for summary judgment of non-infringement of the '801 patent for failure to meet this claim limitation is DENIED.

### E. Rearwardly Extending Ridge Structure Limitation.

The '270 patent claims are specifically directed at a shim device designed to augment the structural stability of the retractor blades. [Id., at Col. 4:56-62.] The intradiscal shim of the Battalion System has a rearward extending structure that releasably engages with a corresponding groove on the interior face of a retractor blade. [Doc. No. 250-42, at 20;

Doc. No. 253-7, at 2.] The parties dispute whether that structure meets the claim limitation of a rearwardly extending ridge structure having "a length extending parallel to the longitudinal axis of the shim device." [Doc. No. 1-12, at 14:57-58.] For the reasons set forth in the Court's Order denying NuVasive's motion for summary judgment of infringement of this patent [Doc. No. 281, at 10-13], Alphatec's motion of summary judgment of non-infringement of the '270 patent is DENIED.

## II. Summary Judgment of the Indirect Infringement Allegations

### A. Inducement to Infringe

NuVasive alleges that Alphatec infringes method claims 12, 14, and 16 of the '832 patent [Doc. No. 1-8, at Col. 15:55-Col. 16: 49] and method claims 2, 6, 13, 15, 17, 22, and 28 of the '227 patent [Doc. No. Col. 17:37-Col. 20:49] by inducing, or contributing to, the direct infringement of third parties, i.e., surgeons using the Alphatec Battalion System. Inducement to infringe is defined by 35 U.S.C. § 271(b), which states that "[w]hoever actively induces infringement of a patent shall be liable as an infringer." Necessarily,

> there can be no inducement of infringement without direct infringement by some party. Upon a failure of proof of direct infringement any claim of inducement of infringement also fails. A finding of contributory infringement likewise requires underlying proof of direct infringement.

*Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.,* 279 F.3d 1022, 1033 (Fed. Cir. 2002) (internal cites omitted).

Alphatec contends that NuVasive has no evidence that Alphatec induced the practice of the method claims. First Alphatec contends there is no knowledge the use of its system would infringe as its witnesses have testified to differences between the accused products and NuVasive's products. [Doc. No. 256-1, at 24.] This is not, however, the measure of infringement. *See Amgen, Inc. v. Hoeschst Marion Roussell, Inc.* 314 F.3d 1313, 1347 (Fed. Cir. 2003) (it is a cardinal principle that a finding of infringement is based on a comparison to the claims and not a preferred or commercial embodiment).

Second, Alphatec contends that there is no evidence that Alphatec "mandates" that surgeons using the Battalion System conduct spine surgery in any specific way. [Doc No. 256-1, at 23.] "[Alphatec teaches surgeons] about the features [of Alphatec's instruments], about what we conceived as the intended use of those instruments. And then the way they use them is at their discretion." [Doc. No. 253-29, at 6.] NuVasive however need not show that Alphatec "mandates" how its system is used. If a defendant, aware of the patent in suit, supplied the infringing products with instruction on how they were to be used, which, when followed would lead to infringement, there can be liability for inducing infringement. *Minnesota Min. & Mfg., Co. v. Chemque, Inc.*, 303 F.3d 1294, 1304-05 (Fed. Cir. 2002).

NuVasive must present evidence of direct infringement resulting from the use of the Battalion System as instructed by Alphatec. Although Alphatec presented evidence that not all surgeons utilize the Battalion System as directed by the Alphatec Surgical Guide, NuVasive has offered evidence that third parties have performed surgeries in accordance with the provided instructions, and therefore practice the asserted method claims. [Doc No. 261, at 29-30.]

Whether use of the Battalion System by third parties in accordance with the instructions provided by Alphatec constitutes direct infringement of the asserted method claims remains a material factual dispute, and therefore Alphatec's motion for summary judgment on NuVasive's claims of inducing infringement of method claims of the '832 patent and the '227 patent is DENIED.

### B. Contributory Infringement

Contributory infringement is defined by 35 U.S.C. § 271(c), which states that "[w]hoever offers to sell or sells within the United States . . . a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer." To establish contributory infringement, the

patentee must show 1) that there is direct infringement, 2) that the accused infringer had knowledge of the patent, 3) that the component has no substantial non-infringing uses, and 4) that the component is a material part of the invention. *Fujitsu Ltd. v. Netgear Inc.,* 620 F.3d 1321, 1326 (Fed. Cir. 2010). As discussed above, there is a material factual dispute as to the first element of direct infringement. In addition, Alphatec contends that NuVasive has failed to show that each component of the accused products has no substantial non-infringing use. [Doc. No. 256-1, at 24.]

NuVasive contends it has presented evidence that there is direct infringement of the method claims of its patents and the Battalion System is a material component of that infringement. NuVasive's expert has opined that the devices of the Battalion System are provided for the practice of the methods claimed and have no substantial non-infringing uses. [Doc. No. 261, at 240.] Alphatec's reply is simply that this is an insufficient showing to satisfy NuVasive's burden. [Doc No. 264, at 10.]

Whether the Battalion System has substantial non-infringing uses beyond practicing the methods claimed and therefore its sales do not constitute liability for contributory infringement of the asserted method claims remains a material factual dispute. Therefore Alphatec's motion for summary judgment on NuVasive's claims of contributory infringement of method claims of the '832 patent and the '227 patent is DENIED.

### III. Invalidity of the '832 Patent

Each claim of a patent is presumed valid. 35 U.S.C. § 282. The party challenging the validity of a patent claim must prove invalidity by clear and convincing evidence. *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 108-09 (2011). A patent claim is invalid as obvious if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains. 35 U.S.C. § 103.

Alphatec moves for summary judgment on its validity challenge to the '832 patent. The '832 patent is a continuation of U.S. Patent No. 7,691,057 patent. [Doc. No. 1-8, at 2;

Doc. No. 256-8.] On or about February 18, 2020, the US. Patent Trial and Appeal Board ("PTAB") issued its final decision on remand finding by a preponderance of the evidence that amended independent claim 17 of the '057 patent, and its dependent claims, are obvious combinations of prior art, despite NuVasive's evidence of secondary considerations of non-obviousness. [Doc. No. 265-1.] Contending that the asserted claims of the '832 patent are "slight and obvious variations" of invalidated claims of the '057 patent, Alphatec argues that the Court should find the '832 patent claims are also an obvious combination of "ubiquitous surgical tools" and techniques known in the art. [Doc. No. 256-1, at 25.]

NuVasive contends that the claims of the '832 patent and the '057 patent are significantly different in scope and rejection of the '057 patent is inapplicable to the evaluation of the asserted claims of the '832 patent. Particularly, NuVasive points to the retractor assembly limitations of each patent and distinguishes the '057 patent claim for "a plurality of blades" (2 or more) from the '832 patent that claims a "three-bladed retractor," as a significant difference in scope. NuVasive cites to a third-party's rejected challenge to the '801 patent based in part on a lack of motivation to combine known two-bladed retractors with other art to meet the three-bladed retractor limitation of the '801 patent. [Doc. No. 37-3, p.12.] NuVasive contends this demonstrates the significant difference of the claim scope between the limitations of the '832 patent's retractor assembly and the '057 patent's retractor assembly.

NuVasive also notes that the combination of references applied in the '057 patent reexamination is not the same as the combination Alphatec has disclosed in its invalidity contentions regarding the '832 patent. Further, although the PTAB found NuVasive's secondary considerations of non-obviousness unconvincing in its invalidity analysis of the '057 patent, the PTAB's burden is by a preponderance of the evidence standard. Alphatec must prove obviousness by clear and convincing evidence.

The Court finds there to be a material factual dispute, and therefore Alphatec's motion for summary judgment of the invalidity of the '832 patent is DENIED.

### IV. Assignor Estoppel

Assignor estoppel is an equitable remedy that prohibits an assignor of a patent, or one in privity with an assignor, from attacking the validity of that patent when he is sued for infringement by the assignee. *MAG Aerospace Indus. v. B/E Aerospace*, 816 F.3d 1374, 1379-80 (Fed. Cir. 2016). As an equitable doctrine, the application of assignor estoppel is within the sound discretion of the trial court. *Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 412 F.3d 1331, 1337 (Fed. Cir. 2005).

NuVasive contends Alphatec is in privity with Patrick Miles, an inventor of the '801, '780, '832, '227, '270 and '531 patents, and Brian Snider, an inventor of the '859 patent, and therefore should be barred from challenging the validity of the patents-at-issue. Whether Alphatec is in privity and should be bound by the doctrine of assignor estoppel depends on the equities dictated by the relationship between the inventor and the company in light of the act of infringement. *Shamrock Tech., Inc. v. Med. Sterilization, Inc.*, 903 F.2d 789, 793-94 (Fed. Cir. 1990).

To determine whether a finding of privity is appropriate, the Court considers a number of factors identified in *Shamrock Technologies:* (1) the assignor's leadership role at the employer; (2) the assignor's ownership stake in the defendant company; (3) whether the defendant company changed course from manufacturing non-infringing goods to infringing activity after the inventor was hired; (4) the assignor's role in the infringing activities; (5) whether the inventor was hired to start the infringing operations; (6) whether the decision to manufacture the infringing products was made partly by the inventor; (7) whether the defendant company began manufacturing the accused product shortly after hiring the assignor; and (8) whether the inventor was in charge of the infringing operation. *MAG Aerospace Indus.*, 816 F.3d at 1380.

The Court considered whether Alphatec should be estopped from challenging the validity of the patents-at-issue based on its relationship with Mr. Miles in the context of NuVasive's motion for preliminary injunction. [Doc. No. 94, at 11-13.] At the time, the Court concluded that although Mr. Miles holds a leadership role at Alphatec and was

recruited to further define and implement Alphatec's strategic initiatives, expand relationships with surgeon customers and lead new technology development, that alone did not support a finding of privity. *See e.g., HWB, Inc. v. Braner, Inc.*, 869 F.Supp. 579, 581-82 (N.D. Ill. 1994) ("the relevant knowledge and assistance of which the defendant company avails itself is knowledge and assistance associated with the manufacture of the infringing product").

The Court found that Alphatec had embarked on the development and marketing of the accused systems and devices in 2014, culminating in its first sale and public surgical use of the accused components in February 2017 and product launch in April 2017. Mr. Miles joined Alphatec on October 2, 2017 after the alleged infringing activity had commenced. Mr. Miles was not brought on board to initiate the allegedly infringing activity, but rather for his expertise to promote and increase Alphatec's share in the spine surgery market. [Doc. No. 94, at 13.]

Nor did the evidence of a financial investment in Alphatec made by Mr. Miles in December 2017, support a finding of privity. The timing of the investment and his percentage of interest did not demonstrate that he financially enabled the alleged development of the accused system. *Compare Mentor Graphics Corp. v. Quickturn Design Sys.*, 150 F.3d 1374, 1379 (Fed. Cir. 1998) (Mentor, the patent assignor, purchased all the stock of Meta, the party found in privity, to provide the capital so Meta could manufacture the accused devices.)

The remaining factors in a privity analysis focus on the role that the assignor had in the defendant company's decision to engage in the manufacture of the accused device. *MAG Aerospace Indus.*, 816 F.3d at 1380 (change course to infringing activity after inventor was hired; role in the infringing activities; hired to start infringing operations; decision to manufacture infringing products made in part by inventor; began manufacturing shortly after hiring inventor; and inventor in charge of the infringing operation). Mr. Miles was not affiliated with Alphatec when these decisions were made.

Alphatec now moves for adjudication of NuVasive's assignor estoppel claim, contending that discovery has not uncovered any facts that alter the Court's prior analysis of this issue. In response, NuVasive highlights that Mr. Miles was part of an investment group that sought to finance Alphatec in early 2016. That group's proposal, however, was rejected by Alphatec. Mr. Miles neither invested at that time or joined the company. There is no evidence that he was directing Alphatec's operations and activities in 2016.

In March 2017, Alphatec initiated a private placement purchase agreement to raise $18.9 million of capital. [Doc. No. 261-25.] Mr. Miles made a $500,000 investment in Alphatec as part of that larger private placement. An investment of less than 2.7% of the total capital raised does not demonstrate that he financially enabled the development or roll out of the accused system.

Mr. Snider, meanwhile, joined Alphatec on March 24, 2017, also long after Alphatec had initiated its development of the accused systems. His investment of $100,000 in the March private placement, less than 0.06% of the total, also does not support a finding that he financially enabled the development or roll out of the accused system.

These facts remain unchanged: 1) Alphatec began research and development of the Battalion Lateral System in 2014; 2) in 2016, Alphatec sought and received FDA clearance for the accused system; 3) the Alphatec Surgical Guide that provides the basis for many of NuVasive's infringement contentions, was published January 5, 2017; 4) on February 14, 2017, Alphatec made its first sale and public surgical use of the accused components; 5) in April of 2017, Alphatec launched a limited release of the Battalion Lateral System; and 6) Alphatec made a full launch in October of 2017.

Mr. Snider joined Alphatec on March 24, 2017. Mr. Miles joined Alphatec on October 2, 2017. By the time these former NuVasive employees became officers at Alphatec, the company was already deeply committed to, manufacturing and promoting the accused system. Alphatec embarked on its competing technology, and it was fully developed well before it employed the expertise of Mr. Miles or Mr. Snider. The status

these individuals have at Alphatec, and the expertise they bring in sales and marketing, does not support a finding of assignor estoppel based on privity.

As an equitable doctrine, the application of assignor estoppel is within the sound discretion of the trial court. Having considered the record and evidence presented, the Court finds that NuVasive has not demonstrated that the doctrine of assignor estoppel should bar Alphatec from asserting invalidity defenses against the patents-at-issue. Alphatec's motion for summary adjudication in its favor of the assignor estoppel claim is GRANTED.

## V. NuVasive's Claim for Lost Profits.

A patentee is entitled to lost profits when there is a "reasonable probability" that "but for" the infringement the patentee would have made the sale. *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1380 (Fed. Cir. 1993). NuVasive contends it will demonstrate lost profits based on sales it would have made but for Alphatec's infringing systems, based on the lost profits model under the four-factor *Panduit* test. [Doc. No. 261, at 40.] "The Panduit test requires the patentee to show: (1) demand for the patented product; (2) absence of acceptable noninfringing substitutes; (3) manufacturing and marketing capability to exploit the demand; and (4) the amount of profit that … would have [been] made*." Georgetown Rail Equipment Co. v. Holland L.P*., 867 F.3d 1229, 1241 (Fed. Cir. 2017) (*citing Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.,* 575 F.2d 1152, 1156 (6th Cir. 1978).

Alphatec suggests that surgeons' selection of Alphatec's accused system over NuVasive's commercial embodiment of the patented inventions is the result of Alphatec's better customer relationships and preference for other Alphatec product offerings and not based on demand for the aspects of its Battalion System alleged to infringe NuVasive's patents. Therefore, Alphatec contends NuVasive cannot demonstrate that it would have made Alphatec's sales.

NuVasive contends that the demand is for systems that practice the claimed inventions. *Georgetown Rail*, 867 F.3d at 1241. If NuVasive demonstrates that customer

demand is for the patented systems and that there is an absence of acceptable noninfringing substitutes, it can reasonably establish that it would have made Alphatec's accused system sales if Alphatec was not on the market.

The Court finds there to be a material factual dispute, and therefore Alphatec's motion for summary adjudication of NuVasive's lost profits claim is DENIED.

## VI. Conclusion

For the reasons stated above and on the record at the hearing on this motion, Alphatec's motion for summary judgment or summary adjudication is:

1. Denied as to non-infringement of all the patents-at-issue;
2. Denied as to the claims of indirect infringement of the asserted method claims;
3. Denied as to the invalidity of the '832 patent;
4. Granted as to the dismissal of NuVasive's assignor estoppel allegation;
5. Denied as to the dismissal of NuVasive's claim for lost profits.

It is **SO ORDERED**.

Dated: April 24, 2020

Hon. Cathy Ann Bencivengo
United States District Judge