**WILSON SONSINI GOODRICH & ROSATI**
PAUL D. TRIPODI II (SBN 162380)
ptripodi@wsgr.com
WENDY L. DEVINE (SBN 246337)
wdevine@wsgr.com
NATALIE J. MORGAN (SBN 211143)
nmorgan@wsgr.com
633 West Fifth Street, Suite 1550
Los Angeles, CA 90071
Telephone: 323-210-2900
Fax: 866-974-7329

**Hilgers Graben PLLC**
MICHAEL T. HILGERS (*Pro Hac Vice*)
mhilgers@hilgersgraben.com
575 Fallbrook Blvd, Suite 202
Lincoln, NE 68521
Telephone: 402-218-2106
Fax: 402-413-1880

*Attorneys for Plaintiff NuVasive, Inc.*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SAN DIEGO DIVISION

| | |
|---|---|
| NUVASIVE, INC., a Delaware corporation, <br><br> Plaintiff, <br><br> v. <br><br> ALPHATEC HOLDINGS, INC., a Delaware corporation, and ALPHATEC SPINE, INC., a California corporation, <br><br> Defendants. | Case No. 18-cv-00347-CAB-MDD <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NUVASIVE, INC.'S MOTION TO STRIKE ALPHATEC'S INVALIDITY CONTENTIONS** <br><br> PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT <br><br> Judge: Hon. Cathy Ann Bencivengo <br> Magistrate Judge: Mitchell D. Dembin |

# TABLE OF CONTENTS

**PAGE(S)**

I.      INTRODUCTION ...................................................................................1

II.     FACTUAL BACKGROUND .................................................................6

    A.    Invalidity Contentions ................................................................6

    B.    NuVasive's Provisional Patent Application (March 29, 2004) ............7

    C.    Webpages from NuVasive.com showing CoRoent Implants ..............9

    D.    Alphatec's IPR Proceedings and Related Stays of this Action...........10

    E.    Alphatec's Post-Stay Invalidity Contentions ......................................11

    F.    Meet and Confer Regarding Alphatec's Invalidity Contentions ........12

III.    LEGAL STANDARDS AND ARGUMENT ................................................13

    A.    Statutory Estoppel under 35 U.S.C. § 315(e) Is Very Broad..............13

    B.    Alphatec Is Estopped From Presenting Its § 102(b) Arguments ........15

IV.     CONCLUSION ........................................................................................16

# TABLE OF AUTHORITIES

**PAGE(S)**

## Cases

*Biscotti Inc. v. Microsoft Corp.*,
No. 2:13-CV-01015-JRG-RSP, 2017 U.S. Dist. LEXIS 144164
(E.D. Tex. May 11, 2017)........................................................ 14, 15

*Cal. Inst. of Tech. v. Broadcom Ltd.*,
No. 16-cv-3714 GW, Docket No. 1432, 2019 U.S. Dist. LEXIS
141103 (C.D. Cal. Aug. 9, 2019) ....................................... 14

*Clearlamp, LLC v. LKQ Corp.*,
No. 12 C 2533, 2016 U.S. Dist. LEXIS 186028, 2016 WL 4734389
(N.D. Ill. Mar. 18, 2016) .................................................. 14

*GoPro, Inc. v. Contour IP Holding LLC*,
908 F.3d 690 (Fed. Cir. 2018) ........................................... 15

*Gree, Inc. v. Supercell Oy*,
C.A. No. 2:19-cv-00071-JRG-RSP, WL 4999689 (E.D. Tex. July 9,
2020)............................................................................. 15

*Medtronic, Inc. v. NuVasive Inc.*,
IPR2014-00073, Paper 48 ............................................... 8, 9

*Oil-Dri Corp. of Am. v. Nestlé Purina Petcare Co.*,
No. 15 C 1067, 2019 U.S. Dist. LEXIS 28279 (N.D. Ill. Feb. 22,
2019) ........................................................................... 14

*SAP America, Inc. v. Pi-Net International, Inc.*,
IPR2014-00414, Paper 11 .............................................. 8

*Vaporstream, Inc. v. Snap Inc.*,
C.A. No. 2:17-cv-00220-MLH, 2020 WL 136591 ............... 14

*Wasica Fin. GmbH v. Schrader Int'l Inc.*,
432 F. Supp. 3d 448 (D. Del. 2020) ............................ 13, 15

**TABLE OF AUTHORITIES**
**(CONTINUED)**

PAGE(S)

**Statutes**

35 U.S.C. § 102 ................................................................................*passim*

35 U.S.C. § 102(a) ....................................................................... 15

35 U.S.C. § 102(b) .........................................................................*passim*

35 U.S.C. § 311(b) ..................................................................... 8, 13

35 U.S.C. § 315(e) .........................................................................*passim*

**Other Authorities**

Local Patent Rule 3.3(a) ............................................................. 4, 12

Local Patent Rule 3.3(c) ............................................................. 4, 12

## I.   INTRODUCTION

Nearly two years ago on January 16, 2019, Alphatec successfully sought a stay of proceedings regarding NuVasive's U.S. Patent Nos. 8,361,156 ("the '156 patent") and 8,187,334 ("the '334 patent") (collectively, the "implant patents") in view of Alphatec's then pending *inter partes* review ("IPR") petitions seeking to invalidate those patents.[1]   In arguing for a stay, Alphatec made clear that that the division of labor between the Court and the PTAB would promote efficiency by allowing the PTAB to address whether the asserted claims were "valid and enforceable."

> Most notably, should the PTAB institute IPR, no matter what the outcome of the proceedings, **a stay would promote the efficient use of this Court's and the parties' resources by allowing the PTAB to assess whether the asserted claims of the '156 and '334 patents are valid and enforceable**.

Doc. No. 142-1 at 12 (emphasis added).   Alphatec also argued that a stay would simplify the issues in this case "given the high likelihood that the PTAB both institutes IPR ***and*** invalidates the asserted claims of the '156 and '334 patents." *Id.* (emphasis in original).   And, finally, Alphatec assured the Court that, "even if the asserted claims are upheld, the issues for trial will still be streamlined because statutory estoppel would bind Alphatec in this action." *Id.* at n.1.

In light of Alphatec's representations in its Motion for Stay, NuVasive did not oppose Alphatec's motion, and the Court entered a stay of the implant patents on February 6, 2019.   Doc. No. 156 at 2 ¶ 5.   Although the IPR Petitions were instituted in July of 2019, Alphatec's efforts to invalidate the asserted claims of the '156 and '334 patents were largely unsuccessful.   Doc. No. 288 at 2-3 and 288-1, -2, -3 Exs.

---

[1] The '156 and '334 patents are based on the same application and have the same specification.   A provisional patent application was filed on March 29, 2004; and a non-provisional application was filed on March 29, 2005.   '156 Patent at 1; '334 Patent at 1.   The '156 patent was part of the original complaint filed in this action. Doc. No. 1 ("2/13/18 Compl.")   The '334 patent was added in the First Amended Complaint filed in September of 2018.   Doc. No. 110 ("FAC").

A-C.  Accordingly, on July 30, 2020, the Court vacated the Stay and added the implant patents back into the case for a short, focused discovery period, and a consolidated trial with the access patents.  Doc. Nos. 290, 293.  Thereafter, fact discovery closed on November 6, 2020.

In accordance with the Court's Scheduling Order (Doc. No. 293), Alphatec served its Updated Preliminary Invalidity Contentions ("PICs") on October 15, 2020.  Despite Alphatec's representations to the Court that it would rely on the PTAB to "assess" all of the validity and enforceability issues, Alphatec's Amended PICs continued to maintain a *collection* of invalidity defenses could and should have been put forth during the IPR proceeding.[2]  Doc. No. 142-1 at 12.  Specifically, Alphatec's apparent argument is that the '156 and '334 patents should now be found invalid due to an on-sale bar.  In making this on-sale bar argument, Alphatec has admitted that it was aware of **"publicly available materials"** (i.e., *printed publications*) relating to sales and/or public use of NuVasive devices that could be used in a **"prior art"** attack with respect to both the '334 and '156 patents **"under one or more sections of 35 U.S.C. § 102"** – the very type of prior art invalidity attacks that are permissible in *inter partes* review.

---

[2] In its Supplemental PICs, Alphatec also asserted that the implants of Brantigan and Frey were in public use prior to the "alleged invention" of the '156 patent. Ex. F (12/07/2018 PIC) at 17-18; and Ex. C (10/15/2020 PIC) at 9.  Alphatec also asserted, but has subsequently withdrawn its contention that the term "an interbody space" and "generally parallel" in the '156 patent are indefinite.  Ex. F (12/07/18 PIC) at 280-281; Ex. D (11/12/20 FIC) and Exs. A&B.  Meanwhile, Alphatec's Supplemental PICs continued to allege that certain claim terms in the implant patents are indefinite – specifically, the terms "medial plane," and "central region" – despite the fact that Alphatec and the PTAB engaged in extensive discussion of these terms and parties' reached agreement regarding construction of "medial plane" during claim construction and the PTAB construed the term "proximate said medial plane" in the '156 IPR.  *Id.* at 12-16.  Alphatec has refused to withdraw these defenses. Ex. D (11/12/2020 FIC) at 13-14.

(continued...)

NUVASIVE'S MOTION TO STRIKE ALPHATEC'S INVALIDITY CONTENTIONS

2

18-cv-00347-CAB-MDD

Further, in order to even assert the on-sale defense, Alphatec must first prove that the implant patents are not entitled to the priority (i.e., filing) date of the original provisional application.  Ex. C[3]  This is yet another issue that could and should have been resolved during the IPR.  If that "priority" attack is unsuccessful, then Alphatec's entire 102(b) defense fails, because none of the alleged activities took place more than one year prior to the March 29, 2004 filing date of the provisional.

Alphatec has essentially admitted that this exact issue could and should have been resolved during the IPR.  Specifically, prior to filing the IPR and in support of their contention of an on-sale bar defense, Alphatec stated that they were in possession of "publicly available materials" that evidenced NuVasive's purported sales and/or public uses of NuVasive devices.  While Alphatec has yet to identify which "publicly available materials" to which they referred, they expressly stated that these materials could be used in a "prior art" attack with respect to both the '334 and '156 patents "under one or more sections of 35 U.S.C. § 102".  Alphatec successfully fought to resolve all validity issues relating to the implant patents to be resolved by the PTAB via IPR.  Alphatec then elected <u>not</u> to put forth the above-threatened validity attack during the IPR—they should now be estopped from reviving and litigating these arguments in a new forum.

Furthermore, a quick search on the "Wayback Machine" conducted by NuVasive counsel quickly identified a webpage showing a family of "CoRoent" devices on "nuvasive.com" in or around February 8, 2004.  This webpage is a "printed publication" from the exact time period (prior to March 29, 2014 but not before March 29, 2013) at issue in Alphatec's new on-sale bar argument.  In fact, Alphatec has now incorporated an image of this webpage into their Final Invalidity

---

[3] "Ex. _" refers to the exhibits to the Declaration of Christina Dashe ("Dashe Decl."), filed concurrently herewith.

Contentions in support of their current argument. Alphatec could therefore have made the same argument before the PTAB that they are now trying to litigate. Again, Alphatec fought to have the PTAB as their forum to decide validity issues relating to the implant patents. They should therefore be estopped from reviving arguments that could and should have already been resolved.

Shortly after receiving Alphatec's PICs, NuVasive objected to all of the improperly resurrected invalidity contentions, including Alphatec's renewed prior art attack under 102(b). The parties met and conferred and were able to reach agreement that Alphatec would drop at least some of its defenses in light of the IPR proceedings. *See* Dashe Decl. ¶ 11; Ex. H. Nevertheless, in its Final Invalidity Contentions ("FICs") approximately two weeks ago (November 12, 2020), Alphatec continued to maintain certain prior art defenses relating to NuVasive devices. *See* Ex. D. And, Alphatec supplemented its invalidity contentions the following week, on Tuesday, November 17, 2020, by providing the charts and (some, but not all) additional information required under Local Patent Rules 3.3(a) and 3.3(c). Ex. E. Later in the same week, on Friday, November 20, 2020, Alphatec served its expert report on invalidity, including 157 pages discussing its Section 102(b) on-sale bar/public use defense, entitlement to priority date, and indefiniteness contentions, and also relying again on the publicly available "Wayback Machine" webpage – a printed publication that was available for use in the now concluded IPRs. Dashe Decl. ¶ 4. As discussed in detail herein, Alphatec's pre-stay defenses are **barred by statutory estoppel** in light of "prior art" invalidity attacks that Alphatec identified in its pre-stay invalidity contentions and therefore "could have raised" in IPR, but did not. Accordingly, NuVasive brings this motion to strike these invalidity defenses pursuant to 35 U.S.C. § 315(e).

<u>Alphatec's Prior Art Invalidity Arguments Are Barred Because They Could
Have (And Should Have) Been Raised in IPR</u>

On December 7, 2018 (just a month prior to its Motion to Stay), Alphatec served Amended Invalidity Contentions regarding the '156 patent. Ex. F (the "12/07/2018 PICs"). Alphatec argued in its Amended Invalidity Contentions that the asserted claims of the '156 patent were invalid in light of an alleged "on-sale bar" based on sales of NuVasive's CoRoent XL implants. *Id.* at 13-17. In connection with its pre-stay invalidity assertions, Alphatec explicitly stated that (1) "**publically available materials**"[4]; (2) relating to "***devices…sold by [] NuVasive, Inc.***"; (3) were **known** to Alphatec; and (4) "***may also qualify as prior art under one or more sections of 35 U.S.C. § 102***." *Id.* at 13 (emphasis added).

**C. On-Sale Bar and Prior Public Use**

The asserted claims are subject to the on-sale bar under 35 U.S.C. § 102(b) and/or 35 U.S.C. § 102(a)(1) (AIA). For at least the reasons explained above, Plaintiff has not met its burden to show that it is entitled to any priority date earlier than the filing date of each of the asserted patents. Each of the devices discussed below were sold by Plaintiff NuVasive, Inc. and are subject to the on-sale bar for the reasons described below. Each of these instruments (and publically available materials describing them) may also qualify as prior art under one or more sections of 35 U.S.C. § 102.

*Id.* (highlighting added).

Alphatec repeated the same assertions about "**publically available materials**" relating to **NuVasive devices** in its Amended Invalidity Contentions with respect to the '334 patent, served January 16, 2019. Ex. G (1/16/2019 PIC) at 17-18.

---

[4] Alphatec's PICs and FICs state "publically" which NuVasive believes to be a typographical error, and thus NuVasive corrects this error in the relevant quotations herein.

Thus, in its pre-stay contentions, Alphatec admitted that it was aware of **"publicly available materials"** (i.e., *printed publications*) relating to sales and/or public use of NuVasive devices that could be used in a **"prior art"** attack with respect to both the '334 and '156 patents **"under one or more sections of 35 U.S.C. § 102"** – the very type of prior art invalidity attacks that are permissible in *inter partes* review. Nevertheless, Alphatec completely failed to present any such arguments to the PTAB and is now attempting to resurrect these prior art defenses under Section 102(b). As explained in detail herein, since Alphatec "reasonably could have raised" these arguments in IPR, it is estopped under 35 U.S.C. § 315(e) from pursuing its belated attack.

## II.  FACTUAL BACKGROUND

In 2018, NuVasive sued Alphatec for infringing nine of its patents covering NuVasive's XLIF system and methods for spinal fusion surgery. Two of the asserted patents – the '156 and '334 patents – relate to NuVasive's implants. The remaining seven asserted patents relate to NuVasive's access system.

### A.  <u>Invalidity Contentions</u>

During the course of this action, Alphatec has served the following Preliminary and Final Invalidity Contentions relating to the '156 and '334 implant patents, as follows:

- August 28, 2018, Defendants' Preliminary Invalidity Contentions and Appendix F

- October 30, 2018, Defendants' Preliminary Invalidity Contentions and Appendix C

- **December 7, 2018**, Defendants' Amended Invalidity Contentions and Appendix F ('156 patent); and Exhibit 6 ('156 patent)

- October 15, 2020, Defendants' Updated Preliminary Invalidity Contentions and Exs. A&B

- November 12, 2020, Defendants' Final Invalidity Contentions and Exs. A&B

- November 17, 2020, Defendants' Supplemental Final Invalidity Contentions and Appendices A&B

- **January 16, 2019,**
  Defendants' Supplemental
  Amended Invalidity
  Contentions ('334 patent)

At the time of the stay in February of 2019, Alphatec had already served its pre-stay Invalidity Contentions dated **December 7, 2018**, relating to the '156 patent and its **January 16, 2019**, contentions relating to the '334 patent.  In each of those contentions, Alphatec asserted that the claims of the '156 and '334 patents were invalid in light of an "on-sale bar" based on sales of NuVasive's CoRoent XL implants.  Ex. F (12/07/2018) PIC at 13-17; Ex. G (1/16/2019 PIC) at 17-18.  As noted in the Section I *infra*, in advancing arguments that various devices were sold and thus creating an "on-sale bar" under Section <u>102(b)</u>, Alphatec also stated that "[e]ach of these instruments **(and publicly available materials describing them)** may also qualify as **prior art under one or more sections of 35 U.S.C. § 102**."  Ex. F (12/07/2018 PIC) at 13 (emphasis added); and Ex. G (1/16/2019 PIC) at 15.

**B.   NuVasive's Provisional Patent Application (March 29, 2004)**

The "Provisional" Patent Application that ultimately led to the '156 and '334 patents was filed on **March 29, 2004.**  Thus, the relevant 102(b) "on-sale bar" date is March 29, **200<u>3</u>** – one year prior to the filing date of the provisional application. Importantly, Alphatec has not asserted that any activity relevant to its on-sale bar defense occurred prior to March 29, 2003.

Figures 2 and 3 of the '156 and '334 patents are reproduced below, ***as they appeared in identical form in the Provisional Applications***:



**Figs. 2 and 3 of NuVasive's Provisional Application,
filed March 29, 2004 (Ex. A)**

The Provisional Application included a total of 17 Figures and a 28-page detailed description of spinal fusion implants and related methods. NUVA_ATEC0020805-853 at NUVA_ATEC0020836-37. The formal "non-provisional" application for the '156 and '334 patents was filed on March 29, 2005. NUVA_ATEC0020854-22144.

In order to prevail on its 102(b) defense, Alphatec must successfully challenge NuVasive's claim of priority to its Provisional Application. As noted above, Alphatec stated that it was aware of "publicly available materials" concerning NuVasive's devices prior to the Stay in this action. *See* Ex. C (10/15/2020 PIC) at 10. Thus, Alphatec could have presented a prior art invalidity challenge in IPR using these public documents and, in the process, required the PTAB to resolve issues relating to priority.

It should be noted that priority date challenges are routinely made and resolved by the PTAB in IPR proceedings. By statute, IPR petitions may only include challenges "on a ground that could be raised under Sections 102 or 103 and only on the basis of prior art consisting of patents or printed publications." *See* 35 U.S.C. § 311(b). But, an IPR petitioner can use a priority determination to avail itself of intervening art. *See, e.g.*, *SAP America, Inc. v. Pi-Net International, Inc.*, IPR2014-00414, Paper 11 at 13 (explaining that challenge to priority may be brought in an IPR); *Medtronic, Inc. v. NuVasive Inc.*, IPR2014-00073, Paper 48 at

1  8-12 (explaining that the priority challenge failed and thus the reference is not prior

2  art).

3  **C.**   **Webpages from NuVasive.com showing CoRoent Implants**

4  It is unknown what "publicly available materials" relating to NuVasive

5  implant "devices" were known to Alphatec at the time it served its pre-stay

6  Invalidity Contentions.  But, a quick search on the "Wayback Machine" conducted

7  by NuVasive counsel quickly identified a webpage showing a family of "CoRoent"

8  devices on "nuvasive.com" in or around February 8, 2004.  (As noted above,

9  NuVasive filed its provisional application for the implant patent approximately a

10  month after the date of this screen capture, on March 29, 2004.)  *See* Dashe. Decl. ¶

11  4.

12

13  

14

15

16

17

18

19

20

21

22  **Wayback Machine Screen Capture**

23  **of "nuvasive.com" from February 8, 2004**
    **(NUVA_ATEC0342156) (Ex. B)**

24

25  NuVasive's counsel made Alphatec's counsel aware of this webpage during the

26  meet and confer process regarding this motion.  Ex. H.  Rather than accepting that it

27  could have (and should have) presented these types of publications for consideration

28  in IPR, Alphatec instead added this webpage to its invalidity contentions two days

NUVASIVE'S MOTION TO STRIKE                9              18-cv-00347-CAB-MDD
ALPHATEC'S INVALIDITY
CONTENTIONS

before expert reports were due.  Ex. E (11/17/2020 Suppl. FIC and Appendices A&B).

### D.    Alphatec's IPR Proceedings and Related Stays of this Action

In December 2018 and January 2019, Alphatec filed a series of three IPR petitions seeking *inter partes* review seeking to invalidate all asserted claims of both the '156 and '334 patents[5]

At that time, Alphatec reasonably could have, but failed to, present **(1) a § 102 printed publication challenge** based on the "publicly available materials" regarding NuVasive's implants that Alphatec referenced to in its pre-IPR invalidity contentions; and **(2) a challenge to NuVasive's claim of priority** to its March 29, 2004 provisional application for the implant patents.

On January 16, 2019, Alphatec moved for a stay in light of its IPRs.  Doc. No. 142-1.  Alphatec stressed that the "impact of those proceedings will be significant" and would "have fundamental implications for this lawsuit."  *Id.* at 6.  Specifically, Alphatec represented that:

- "no matter what the outcome of the proceedings, **a stay would promote the efficient use of this Court's and the parties' resources"** since "the number of issues before the court is reduced because either **the accused infringer is estopped from raising certain invalidity arguments** . . . or claims of infringement for the invalidated [arguments] are removed from the action."  *Id.* at 11-12 (emphasis added).

---

[5] On December 13, 2018, Alphatec filed a petition challenging the validity of claims 1–3, 5, 9–10, 12–21, 23–24, and 27 of the '156 patent (IPR2019-00362). Doc. No. 136-1, Ex. A (IPR2019-00362 petition).  On December 21, 2018, Alphatec filed a petition challenging the validity of claims 1, 6–9 and 18 of the '334 patent (IPR2019-00361). Doc. No. 136-1, Ex. B (IPR2019-00361 petition).  On January 10, 2019, Alphatec filed a petition challenging the validity of claim 16 of the '334 patent (IPR2019-00546). Doc. No. 142-3, Ex. A (IPR2019-00546 petition).

- "Most notably, should the PTAB institute IPR, no matter what the outcome of the proceedings, a stay would promote the efficient use of this Court's and the parties' resources **by allowing the PTAB to assess whether the asserted claims of the '156 and '334 patents are valid and enforceable."** *Id.* at 12 (emphasis added).

- Alphatec also argued that a stay would simplify the issues in this case "given the high likelihood that the PTAB both institutes IPR *and* invalidates the asserted claims of the '156 and '334 patents." *Id.* at 12 (emphasis in original).

With the benefit of Alphatec's representations and assurances in its motion, the Court granted a stay of the entire action on February 6, 2019, pending a decision on institution of Alphatec's IIPR challenges.  Doc. No. 156 at 2.

On July 9, 2019, the PTAB granted institution of all three of Alphatec's IPR petitions.  Doc. No. 174 at 3-4.  A year later on July 8, 2020, the PTAB issued its Final Written Decisions for each of the implant patent IPRs, rejecting Alphatec's prior art defenses and upholding the validity of currently asserted implant patent claims.  Doc. No. 288 at 2-3.  The Court subsequently lifted the stay on July 30, 2020, and the parties and the Court finalized a discovery plan and case schedule for the post-IPR implant patent proceedings, including deadlines for Alphatec to file Preliminary and Final Invalidity Contentions for the implant patents.  Doc. Nos. 290, 292, 293.  As a part of these renewed proceedings, Alphatec again confirmed its understanding regarding the estoppel that would attach following its IPRs.  Doc. No. 292 at 11.  In the parties' submission, Alphatec alluded, without explanation, to a 102(b) defense that it intended to pursue in the renewed proceedings.  *Id.* at 15.

### E.    Alphatec's Post-Stay Invalidity Contentions

Alphatec's subsequent Updated Preliminary Invalidity Contentions for the implant patents were served on October 15, 2020.  Ex. C (10/15/2020 PIC).  In its initial post-stay contentions, Alphatec deviated significantly from its prior

1    statements regarding estoppel and issue simplification.  Instead, Alphatec raised a

2    multitude of issues that either were or should have been decided during the IPR.

3        Specifically, Alphatec argued that the implant patents are not entitled to claim

4    priority to the March 29, 2004 provisional application, and are therefore invalid

5    pursuant to § 102(b) in view of NuVasive's public use or sale of the implants before

6    March 2004. Ex. C (10/15/2020 PIC) at 9-11.  Yet, as discussed herein, Alphatec

7    already had a full opportunity to raise the substance of these issues in IPR and failed

8    to do so.

9        **F.    <u>Meet and Confer Regarding Alphatec's Invalidity Contentions</u>**

10        After receiving Alphatec's PICs on October 15, 2020, NuVasive promptly

11    reached out to Alphatec to object to the inclusion of these issues in its invalidity

12    contentions.  Ex. H. After being unable to reach an agreement, NuVasive proposed

13    that the parties agree to an expedited joint submission to the Court to resolve this

14    dispute and, in the process, potentially avoid any unnecessary expense in addressing

15    Alphatec's claims during discovery.  *Id.*  The parties met and conferred shortly

16    thereafter – on November 11, 2020 – to discuss NuVasive's concerns.  Dashe. Decl.

17    ¶ 11; Ex. H.  While Alphatec agreed to drop certain arguments raised in its PICs,

18    Alphatec refused to drop its on-sale bar or agree to an expedited briefing schedule.

19    *Id.*  In serving its Final Invalidity Contentions ("FICs") on November 12, 2020,

20    Alphatec reasserted these arguments.  Ex. D (11/12/2020 FIC) at 13-14.  And

21    thereafter, in response to NuVasive's concerns that Alphatec had failed to comply

22    with the specific requirements of Local Patent Rules 3.3(a) and 3.3(c), [6] Alphatec

23    doubled down on its position by including Wayback Machine webpage in its

24    belatedly-served supplement to its Final Invalidity Contentions on November 17,

25

26

---

27        [6] LPR 3.3(a) governs detailed disclosures that are required when advancing

28    invalidity arguments under Section 102(b) and LPR 3.3(c) sets forth requirements
     for charting of invalidity arguments.

1  2020 –just days before the filing of this Motion.  Ex. I; Ex. H; Ex. E (11/17/2020

2  Suppl. FIC and Appendices A&B) at 2.

3  **III.    LEGAL STANDARDS AND ARGUMENT**

4      **A.    <u>Statutory Estoppel under 35 U.S.C. § 315(e) Is Very Broad</u>**

5      Statutory estoppel is set forth in 35 U.S.C. § 315(e)(2), which states that:

6        The petitioner in an inter partes review of a claim in a
7        patent under this chapter that results in a final written
      decision under section 318(a), or the real party in interest
      or privy of the petitioner, **may not assert . . . that the**
8        **claim is invalid on any ground that the petitioner**
      **<u>raised</u> or <u>reasonably could have raised</u> during that**
9        **inter partes review**.

10  (emphasis added).  Accordingly, the plain language of the statute makes clear that,

11  once a final written decision has been entered in an IPR, estoppel applies and

12  prevents a petitioner from asserting invalidity grounds that it actually "raised" or

13  those grounds it "reasonably could have raised" during those proceedings.

14      Because an IPR petitioner may only assert invalidity based on "patents and

15  printed publications," 35 U.S.C. § 311(b), failed IPR petitioners will often attempt

16  to salvage an invalidity case in later district court proceedings by pointing to, *e.g.*,

17  prior art *devices*, arguing that these issues could not have been raised during IPR.

18  However, courts have recognized a variety of circumstances that will act to prevent

19  a former IPR petitioner from raising invalidity in view of prior art devices in

20  subsequent district court proceedings.

21      Although physical products are outside the scope of an IPR, "patents or

22  **printed publications that relate to and describe a physical product** can, like

23  other patents and printed publications, be raised in an IPR."  *Wasica Fin. GmbH v.*

24  *Schrader Int'l Inc.*, 432 F. Supp. 3d 448, 453 (D. Del. 2020) (emphasis added).

25  Courts have consistently applied 35 U.S.C. § 315(e)(2) estoppel to physical products

26  "where all the relevant features of that physical product had been disclosed in a

27  patent or printed publication that reasonably could have been raised during the

28  IPR…"  *Id.* at 453.

Several cases illustrate this point:

- "**Where there is evidence that a petitioner had reasonable access to printed publications corresponding to or describing a product that it could have proffered during the IPR process, [the IPR petitioner] cannot avoid estoppel simply by pointing to its finished product (rather than the printed materials) during litigation.**" *Oil-Dri Corp. of Am. v. Nestlé Purina Petcare Co.*, No. 15 C 1067, 2019 U.S. Dist. LEXIS 28279, at \*31 (N.D. Ill. Feb. 22, 2019) (emphasis added) (citing *Clearlamp, LLC v. LKQ Corp.*, No. 12 C 2533, 2016 U.S. Dist. LEXIS 186028, 2016 WL 4734389, at \*9 (N.D. Ill. Mar. 18, 2016));

- "**[I]f a patent challenge is simply *swapping labels* for what is otherwise a patent or printed publication invalidity ground in order to cloak its prior art ground and skirt estoppel, then § 315(e)(2) estoppel still applies.**" *Vaporstream, Inc. v. Snap Inc.*, C.A. No. 2:17-cv-00220-MLH (KSx), 2020 WL 136591, at \*23-24 (quoting *Cal. Inst. of Tech. v. Broadcom Ltd.*, No. 16-cv-3714 GW (AGRx), Docket No. 1432 at 11, 2019 U.S. Dist. LEXIS 141103 (C.D. Cal. Aug. 9, 2019)) (emphasis added) (internal quotes omitted)

- **Estoppel will apply if the "purported system prior art [defendant] relies on or is based on patents or printed publications that [defendant] would otherwise be estopped from pursuing at trial, e.g., patents or printed publications that a 'skilled searcher conducting a diligent search reasonably <u>could have been expected to discover</u>[.]'"** *Biscotti Inc. v. Microsoft Corp.*, No. 2:13-CV-01015-JRG-RSP, 2017 U.S. Dist. LEXIS 144164, at \*25 (E.D. Tex. May 11, 2017) (underlining added).

Thus, a petitioner is estopped from relying on a prior art device where it actually "raised" or "reasonably could have raised" a patent or printed publication during IPR that is "materially identical" to the device itself (i.e., they "disclose the same claim elements"). *Wasica*, 432 F. Supp. 3d at 455. And, as noted above, the estoppel includes printed publications that a **"skilled searcher conducting a diligent search reasonably could have been expected to discover[.]"** *Biscotti*, 2017 U.S. Dist. LEXIS 144164, at *25.

### B.     Alphatec Is Estopped From Presenting Its § 102(b) Arguments

The Court should strike each of Alphatec's prior art invalidity contentions set forth in its FICs because 35 U.S.C. (1) § 315(e)(2) estoppel **legally bars** Alphatec's contentions based on the alleged prior use/sale of the implants.

In particular, Alphatec should be estopped from challenging invalidity under Section 102(b) based on the public disclosure and/or use of the implants before March 29, 2004 (and its related challenge to NuVasive's priority date), because Alphatec was aware of publications related to the implants and "reasonably could have raised" this alleged prior art – and its priority challenge – in IPR. *GoPro, Inc. v. Contour IP Holding LLC*, 908 F.3d 690, 695 (Fed. Cir. 2018) (reversing a PTAB decision erroneously finding that a sales brochure distributed at a trade show was not a printed publication).

Having failed at the PTAB, Alphatec is attempting to avoid the consequences of statutory estoppel by relying on a related prior art defense under Section 102(b) involving NuVasive's *devices,* rather than the publicly available materials (i.e., Section 102(a) publications) known to Alphatec prior to the filing of its IPR petitions. *See* 35 U.S.C. § 315(e)(2).   Alphatec should not be allowed to raise these arguments now. *See Gree, Inc. v. Supercell Oy*, C.A. No. 2:19-cv-00071-JRG-RSP, WL 4999689, *13 (E.D. Tex. July 9, 2020) (petitioner estopped from relying on a reference because it was "found in a later prior art search" which resulted in "a reasonable inference that it could have been found earlier by a skilled searcher.").

Moreover, Alphatec provided repeated assurances about case efficiencies and a broad estoppel when advancing successful efforts **first,** to obtain NuVasive's consent to an initial stay of both the access <u>and</u> implant patents in February 2019, and **second,** in convincing the Court to maintain a stay of the implant patents after the institution decision in July 2019, over NuVasive's objections.  In light of NuVasive's reliance on these statement, it is reasonable to require Alphatec to abandon its invalidity defensesand streamline the action as Alphatec suggested it would be in seeking to stay the case.

## IV.     CONCLUSION

Alphatec made a deliberate decision to seek relief in IPR and benefitted from a stay of this action based on its representations that *"no matter what the outcome of the proceedings, a stay would promote the efficient use of this Court's and the parties' resources by allowing the PTAB to assess whether the asserted claims of the '156 and '334 patents are valid and enforceable."* Doc. No. 142-1 at 12 (emphasis added).  For the foregoing reasons, and to realize the efficiency promised in Alphatec's motion to stay, NuVasive respectfully requests that the Court strike Alphatec's invalidity contentions.

Dated: November 25, 2020     **WILSON SONSINI GOODRICH & ROSATI**

By:  */s/ Paul Tripodi*
Paul D. Tripodi II (SBN162380)
Christina Dashe (SBN 292360)

**HILGERS GRABEN PLLC**
Michael T. Hilgers, *pro hac vice*
Trenton D. Tanner, *pro hac vice*

*Attorneys for Plaintiff NuVasive, Inc.*

# CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing document has been served on this date to all current and/or opposing counsel of record, if any to date, who are deemed to have consented to electronic service via the Court's CM/ECF system per Civ.L.R. 5.4(d). Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

I declare under penalty of perjury under the Laws of the United States of America that the above is true and correct. Executed this 25 day of November 2020, at Los Angeles, California.

By: */s/ Hilda Vecino*
HILDA VECINO