**WILSON SONSINI GOODRICH & ROSATI P.C.**
PAUL D. TRIPODI II (SBN 162380)
ptripodi@wsgr.com
WENDY L. DEVINE (SBN 246337)
wdevine@wsgr.com
NATALIE J. MORGAN (SBN 211143)
nmorgan@wsgr.com
633 West Fifth Street, Suite 1550
Los Angeles, CA 90071
Telephone: 323-210-2900
Fax: 866-974-7329

**Hilgers Graben PLLC**
MICHAEL T. HILGERS (*Pro Hac Vice*)
mhilgers@hilgersgraben.com
575 Fallbrook Blvd, Suite 202
Lincoln, NE 68521
Telephone: 402-218-2106
Fax: 402-413-1880

*Attorneys for Plaintiff NuVasive, Inc.*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SAN DIEGO DIVISION

| | |
|---|---|
| NUVASIVE, INC., a Delaware corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>ALPHATEC HOLDINGS, INC., a Delaware corporation, and ALPHATEC SPINE, INC., a California corporation,<br><br>    Defendants. | Case No. 18-cv-00347-CAB-MDD<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NUVASIVE, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT (IMPLANT PATENTS)**<br><br>PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT<br><br>Judge: Hon. Cathy Ann Bencivengo<br>Magistrate Judge: Mitchell D. Dembin |

# TABLE OF CONTENTS

I.     UNDISPUTED FACTS ............................................................... 1

    A.     The Asserted Patents ..................................................... 1

    B.     Claim Construction ....................................................... 1

    C.     The Accused Products .................................................... 2

II.     LEGAL STANDARDS ............................................................. 2

    A.     Summary Judgment ...................................................... 2

    B.     Infringement ................................................................ 2

    C.     Validity ....................................................................... 3

       1.     Indefiniteness ................................................... 3

       2.     Priority Date .................................................... 4

III.     INFRINGEMENT ................................................................... 4

    A.     The Accused Products Infringe The Asserted Claims ......... 5

       1.     '156 Patent: The Accused Battalion and Transcend Implants Infringe Claims 1, 5, 10, 18, and 24 ......... 5

       2.     '334 Patent: The Accused Implants Infringe Claims 16 and 18 ................................................................... 9

    B.     Alphatec's Non-Infringement Arguments are Insufficient to Withstand Summary Judgment ........................................ 10

       1.     Alphatec's Anti-Migration Argument ..................... 11

       2.     Alphatec's Proximal Wall Argument ...................... 12

       3.     The Radiopaque Markers in the Accused Implants are "Proximate to the Medial Plane" ............................. 13

       4.     The Accused Implants Include the Relevant Claim Features of Claim 5 of the '156 Patent .................... 14

5.    Alphatec's Medial Support Argument Regarding the Battalion Implant .................................................................15

6.    Alphatec's Argument that the Radiopaque Marker is Not "At Least Partially Positioned in the Proximal Wall" Argument ...............................................................................17

7.    Alphatec's Partial Non-Infringement Configuration Arguments.............................................................................18

8.    Alphatec's Unsupported Non-Infringement Contentions regarding the Battalion and Transcend Implants.....................18

C.    Alphatec's No Commercial Purpose Argument Regarding the "Titec Coated Implants"........................................................20

IV.    VALIDITY ..................................................................................22

A.    The Asserted Claims Are Valid Under Section 112 ............................22

1.    Alphatec's "proximate to said medial plane" Argument Regarding the '156 Patent .........................................22

2.    Alphatec's "central region" Argument Regarding the '334 Patent .................................................................24

3.    Dr. Sachs' New Indefiniteness Arguments ...........................25

B.    The Implant Patents Are Entitled to a Priority Date of March 29, 2004.................................................................................26

1.    The Provisional Application Discloses the Claimed Implant .................................................................27

2.    The Provisional Application Discloses the Dimension Limitations of the Asserted Claims ...............................28

3.    Alphatec's Priority Date Arguments Regarding Radiopaque Markers are Insufficient to Withstand Summary Judgment ................................................31

a.    Dr. Sachs Concedes the Purpose of the Radiopaque Markers ...............................................31

b.    Alphatec's Individual Priority Date Arguments.....................32

C.   Alphatec does not contend an invalidating event occurred before the critical date ....................................................................... 33

V.   CONCLUSION ............................................................................. 33

# TABLE OF AUTHORITIES

**CASES**                                                                 **PAGE(S)**

*Altair Instruments, Inc. v. Kelley W. Enters., Ltd. Liab. Co.*,
  No. CV 15-8115-R (C.D. Cal. Sept. 26, 2016) ................................. 5

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ................................................................ 2

*Ariad Pharm., Inc. v. Eli Lilly & Co.*,
  598 F.3d 1336 (Fed. Cir. 2010) ........................................... 4, 32

*Becton Dickinson & Co. v. C.R. Bard, Inc.*,
  922 F.2d 792 (Fed. Cir. 1990) ............................................... 2

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ................................................................ 2

*Colorado v. New Mexico*,
  467 U.S. 310 (1984) ................................................................ 3

*Crown Operations Int'l., Ltd. v. Solutia Inc.*,
  289 F.3d 1367 (Fed. Cir. 2002) ........................................... 27

*Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*,
  246 F.3d 1336 (Fed. Cir. 2001) ........................................... 21

*Cybor Corp. v. FAS Techs., Inc.*,
  138 F.3d 1448 (Fed. Cir. 1998) ............................................. 3

*Effective Exploration, LLC v. Pa. Land Holdings Co.*,
  No. 14-CV-00845-AJS, 2015 WL 7184907 (W.D. Pa. Mar. 5,
  2015) ..................................................................................... 24

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
  535 U.S. 722 (2002) .............................................................. 27

*Finjan Inc. v. Secure Computing Corp.*,
  626 F.3d 1197 (Fed. Cir. 2010) ........................................... 12

*Horizon Pharma, Inc. v. Dr. Reddy's Labs., Inc.*,
  Civil Action No. 15-3324 (SRC), 2018 U.S. Dist. LEXIS 196702
  (D.N.J. Nov. 19, 2018), *aff'd*, 2021 U.S. Dist. LEXIS 296 (Fed.
  Cir. Jan. 6, 2021) ............................................................ 15, 22

*Interval Licensing LLC v. AOL, Inc.*,
    766 F.3d 1364 (Fed. Cir. 2014) ................................................................. 3, 23

*Lockwood v. Am. Airlines, Inc.*,
    107 F.3d 1565 (Fed. Cir. 1997) ..................................................................... 26

*Magnetar Techs. Corp. v. Six Flags Theme Parks, Inc.*,
    C. A. No. 07-127-LPS-MPT, 2014 U.S. Dist. LEXIS 15679 (D.
    Del. Feb. 7, 2014) .......................................................................................... 18

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ......................................................................................... 2

*Microsoft Corp. v. i4i Ltd. P'ship*,
    564 U.S. 91 (2011) ........................................................................................... 3

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
    572 U.S. 898 (2014) .................................................................................... 3, 23

*New Railhead Mfg., L.L.C. v. Vermeer Mfg. Co.*,
    298 F.3d 1290 (Fed. Cir. 2002) ................................................................. 26, 27

*Park Assist, LLC v. San Diego Cty. Reg'l Airport Auth.*,
    No. 318CV02068BENDEB, 2020 WL 7130505 (S.D. Cal. Dec.
    3, 2020) ............................................................................................................ 3

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) ..................................................................... 13

*ScriptPro LLC v. Innovation Assocs., Inc.*,
    833 F.3d 1336 (Fed. Cir. 2016) ....................................................................... 4

*Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*,
    844 F.3d 1370 (Fed. Cir. 2017) ..................................................................... 23

*Strategic Operations, Inc. v. Joseph*,
    No. 17-CV-1539 JLS (WVG), 2019 U.S. Dist. LEXIS 77188
    (S.D. Cal. May 7, 2019) ................................................................................. 21

*Stumbo v. Eastman Outdoors, Inc.*,
    508 F.3d 1358 (Fed. Cir. 2007) ......................................................... 15, 22, 26

*Tech. Licensing Corp. v. Videotek, Inc.*,
    545 F.3d 1316 (2008) ....................................................................................... 3

*Thermolife Int'l, LLC v. Myogenix Corp.*,
     No. 13cv651 JLS (MDD), 2015 U.S. Dist. LEXIS 194276 (S.D.
     Cal. Dec. 8, 2015) ............................................................................................ 25

*THX, Ltd. v. Apple, Inc.*,
     No. 13-CV-01161-HSG, 2016 WL 6563340 (N.D. Cal. Nov. 4,
     2016) ................................................................................................................ 24

*Warner-Lambert Co. v. Teva Pharms. USA, Inc.*,
     418 F.3d 1326 (Fed. Cir. 2005) ...................................................................... 3

*Wi-Lan Inc. v. LG Elecs., Inc.*,
     421 F. Supp. 3d 911 (S.D. Cal. 2019) ........................................................... 29

**STATUTES**

35 U.S.C. § 102(b) .............................................................................................. 1, 33

35 U.S.C. § 112 ............................................................................................ 1, 22, 26

35 U.S.C. § 271(a) ............................................................................................... 2, 21

35 U.S.C. § 282(a) .................................................................................................... 3

**RULES**

Fed. R. Civ. P. 56(a) ................................................................................................. 2

Patent L.R. 3.3 ........................................................................................................ 25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF ABBREVIATIONS

| | |
|---|---|
| "'156 patent" | U.S. Patent No. 8,361,156 |
| "'334 patent" | U.S. Patent No. 8,187,334 |
| "the '156 patent and '334 patent" | The Implant Patents |
| "Baccelli" | U.S. Publication No. 2003/0028249 |
| "NuVasive" | NuVasive, Inc. |
| "Alphatec" | Alphatec Holdings, Inc. and Alphatec Spine, Inc. |
| "the Accused Products" | Battalion™ Lateral Spacer, TiTec Coated LLIF Implants, and Transcend™ LIF PEEK Spacer |
| "Alphatec's IPRs" | Alphatec's IPR petitions related to the '156 and '334 patents (IPR2019-00362 (Doc. No. 136-1, Ex. A), IPR2019-00361 (Doc. No. 136-1, Ex. B), IPR2019-00546 (Doc. No. 142-3, Ex. A)) |
| "Asserted Claims" | Claims 1, 5, 10, 18, and 24 of the '156 patent; and Claims 16 and 18 of the '334 patent |
| "Battalion" | Battalion™ Lateral Spacers |
| "Titec Coated" | Titec Coated LLIF Implants |
| "Transcend" | Transcend™ LIF PEEK Spacer |
| "Infringement Contentions" | NuVasive Final Infringement Contentions served November 6, 2020 |
| "IPR" | *Inter Partes* Review |
| "PTAB" | Patent Trial and Appeal Board |
| "Sachs 11/20/20 Rpt." | Opening Report of Barton L. Sachs, M.D., M.B.A., F.A.C.P.E., F.A.C.H.E. (November 20, 2020) |
| "Sachs Rebuttal 12/18/20 Rpt." | Rebuttal Report of Barton L. Sachs, M.D., M.B.A., F.A.C.P.E., F.A.C.H.E. (December 18, 2020) |

| "Sachs 1/11/21 Tr." | Transcript of Deposition of Barton L. Sachs M.D., M.B.A., F.A.C.P.E., F.A.C.H.E. (January 11, 2021) |
|---|---|
| "Youssef 11/20/20 Rpt." | Corrected Opening Expert Report of Jim Youssef, MD, and Supporting App. D (November 20, 2020) |
| "Youssef Rebuttal 12/18/20 Rpt." | Rebuttal Expert Report of Jim Youssef, MD Regarding U.S. Patent Nos. 8,361,156 ('156 Patent) and 8,187,334 ('187 patent) (December 18, 2020) |
| "Youssef 1/13/21 Tr." | Transcript Deposition of Jim Youssef, MD (January 13, 2021) |
| "Robinson 11/4/20 Tr." | Transcript Deposition of Scott Robinson (November 4, 2020) |
| "Aleali 10/30/20 Tr." | Transcript Deposition of Mike Aleali October 30, 2020) |
| "Ex. ___" | Refers to Exhibits attached to the Declaration of Christiana Garrett filed herewith |

*****Unless stated otherwise, all emphasis is added and internal citations are omitted.

Plaintiff NuVasive moves for summary judgment of infringement and validity.  For the reasons discussed below, this Court should grant summary judgment as to infringement of Alphatec's Battalion, Transcend, and Titec Coated implants.  With respect to validity, this Court should grant summary judgment that the claims are definite under 35 U.S.C. § 112, that the Implant Patents are entitled to its earliest claim for priority date, and that the Implant Patents are not invalid under section 35 U.S.C. § 102(b).

## I.      UNDISPUTED FACTS

### A.      The Asserted Patents

1.      The Implant Patents claim systems and methods for minimally invasive spinal surgery and lateral interbody fusion procedures.  Doc. No. 110 (Amended Complaint) at ¶¶ 454, 731.

2.      On July 8, 2020, the PTAB issued Final Written Decisions upholding the patentability of each of the currently asserted implant patent claims.  Doc. No. 288 at 2-3; Doc. Nos. 288-1, 288-2, and 288-3.

3.      The '156 patent issued on January 29, 2013.  Doc. No. 110-38 at 2.

4.      NuVasive is the owner of the '156 patent by assignment.  *Id.*

5.      The '334 patent issued on May 29, 2012.  Doc. No. 110-48 at 2.

6.      NuVasive is the owner of the '334 patent by assignment.  *Id.*

### B.      Claim Construction

7.      On August 21, 2020 in the Joint Discovery Plan, the parties agreed claim construction for the Implant Patents was complete. Doc. No. 292 at 16.

8.      The parties agreed the claim term "medial plane that is generally perpendicular to said longitudinal length" as used in the Asserted Claims of the '156 patent means "plane that is generally perpendicular to and intersects with said longitudinal length at the middle or midline of the longitudinal length."  Doc. No. 133-2 (App. B4) at 21-23.

9.      The parties agreed in the Joint Discovery Plan that no terms in the asserted claims of the '334 patent require construction.  Doc. No. 292 at 16.

10.     The PTAB construed "longitudinal length" to mean "the implant's longer dimension 'extending from a proximal end of said proximal wall to a distal end of the said distal wall.'"  Doc. No. 288-1 at 19.

## C.    The Accused Products

11.     NuVasive alleges that Alphatec's Battalion™ Lateral Spacer, Transcend™ LIF PEEK Spacer, and TiTec Coated LLIF implants infringe the Asserted Claims.  Ex. 21 (Infringement Contentions) at 2, Exs. A-F at pg. 1.

## II.    LEGAL STANDARDS

### A.    Summary Judgment

Summary judgment should be granted where "there is no genuine issue as to any material fact and that the [movant] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  If the moving party is able to demonstrate an absence of disputed material facts, the nonmoving party must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  A fact will only be considered genuinely disputed if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Becton Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 796 (Fed. Cir. 1990).  Moreover, if the moving party meets the initial burden, the nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient . . .").

### B.    Infringement

Direct infringement exists when "whoever without authority makes, uses, offers to sell, or sells any patented invention." 35 U.S.C. § 271(a).  The

determination of infringement is a two-step process involving: (1) construction of the claim to determine its meaning and scope and (2) comparison of the construed claim to the infringing device. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1466-67 (Fed. Cir. 1998) (en banc).  Infringement is "proven by a preponderance of the evidence, which simply requires proving that infringement was more likely than not to have occurred." *Warner-Lambert Co. v. Teva Pharms. USA, Inc.*, 418 F.3d 1326, 1341 n.15 (Fed. Cir. 2005).

## C.   Validity

Each claim of a patent is presumed valid.  35 U.S.C. § 282(a).  The party challenging the validity of a patent claim must prove invalidity by clear and convincing evidence, and the burden of proof always remains with the challenger. *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 100 (2011).  Clear and convincing evidence requires that the fact finder have "an abiding conviction that the truth of [the] factual contentions are highly probable" such that "the material [] offered instantly tilt[s] the evidentiary scales in the affirmative [for the proponent] when weighed against the evidence [] offered in opposition." *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984).  "[I]f the fact trier of the issue is left uncertain, the party with the burden loses." *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1327 (2008).

### 1.   Indefiniteness

A claim is indefinite only if it, when "read in light of the patent's specification and prosecution history, fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 898-99 (2014).  "The definiteness requirement, so understood, mandates clarity, while recognizing that absolute precision is unattainable." *Id*. at 910.  That is, absolute or mathematical precision is not required. *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1370 (Fed. Cir. 2014); *see also Park Assist, LLC v. San Diego Cty. Reg'l Airport Auth.*, No.

318CV02068BENDEB, 2020 WL 7130505, at *4 (S.D. Cal. Dec. 3, 2020) ("[t]erms of degree do not render a claim indefinite so long as the term provide[s] enough certainty to one of skill in the art when read in the context of the invention.")

### 2. *Priority Date*

"Compliance with the written description requirement is a question of fact but is amenable to summary judgment in cases where no reasonable fact finder could return a verdict for the non-moving party." *ScriptPro LLC v. Innovation Assocs., Inc.*, 833 F.3d 1336, 1340 (Fed. Cir. 2016). "The test for sufficiency is whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010). Under Federal Circuit law "the test requires an objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art. Based on that inquiry, the specification must describe an invention understandable to that skilled artisan and show that the inventor actually invented the invention claimed." *Id*. "[T]he level of detail required to satisfy the written description requirement varies depending on the nature and scope of the claims and on the complexity and predictability of the relevant technology." *Id.*

## III. INFRINGEMENT

A finding of infringement of the asserted claims of the Implant Patents is appropriate because the undisputed evidence shows the Accused Products infringe the asserted claims and because Alphatec's defenses are either (1) not relevant to the actual language of the asserted claims, (2) legally improper, or (3) factually incorrect.[1] For these reasons, there is no issue of fact regarding infringement of the

---

[1] This motion addresses Alphatec's currently asserted non-infringement positions. Alphatec does not offer non-infringement positions for all claim limitations. To the extent that Alphatec offers new non-infringement positions in opposition to this motion, such arguments are inappropriate and untimely because they were not disclosed in Alphatec's final non-infringement contentions.

Implant Patents, and summary judgment is proper.  *Altair Instruments, Inc. v. Kelley W. Enters., Ltd. Liab. Co*., No. CV 15-8115-R (C.D. Cal. Sept. 26, 2016); Doc. No. 250-63 at 13.

## A.    The Accused Products Infringe The Asserted Claims

There is no triable issue of fact regarding infringement of claims 1[2], 5, 10, 18, and 24[3] of the '156 patent and claims 16 and 18[4] of the '334 patent.

### 1.    *'156 Patent: The Accused Battalion and Transcend Implants Infringe Claims 1, 5, 10, 18, and 24*

In relevant part, the claims of the '156 patent recite: (1) an upper and lower surface with anti-migration elements, (2) a longitudinal length greater than lateral width, (3) a longitudinal length greater than 40 mm, (4) a maximum lateral width greater than the height, (5) one or more fusion apertures, (6) a radiolucent, non-bone material that is PEEK, and (7) at least two radiopaque markers proximate to the medial plane.  The accused implants infringe each of these claim limitations. The Titec Coated implants are the Battalion implant with Titec coating on the top and bottom.  *See* Ex. 6 (Robinson 11/4/20 Tr.) at 36:11-20.  Therefore, the Titec Coated implants infringe the Asserted Claims for the same reasons the Battalion implants infringe.

**First**, the Battalion and Transcend implants have an upper and lower surface with anti-migration elements. Alphatec's implant guides depict accused implants with anti-migration elements.

---

[2] Notably, during preliminary injunction proceedings, this Court found NuVasive had "sufficiently established a likelihood of success on its claim[] for infringement of . . . Claim 1 of the '156 patent."  Doc. No. 94 at 14.

[3] Claims 5, 10, 17, 18, and 24 depend from claim 1. Claim 17 is not asserted but claim 18 which is asserted depends from claim 17. Claim 17 is thus included to provide context. *See* App. A. – U.S. Patent 8,361,156 Claims.

[4] Claims 16 and 18 depend from claim 1. Claim 1 is not asserted but claims that depend from claim 1 are asserted. Claim 1 is thus included to provide context. *See* App. B. – U.S. Patent 8,187,334 Claims.



**Battalion**  **Transcend**

Ex. 1 (Battalion Lateral Implant Guide) at ATEC_LLIF000964102 (annotated);

Ex. 2 (Transcend Implant Guide) at ATEC_LLIF000964711 (annotated).

Accordingly, Alphatec infringes this claim limitation.

**Second**, the accused implants have a longitudinal length[5] greater than lateral width.  Again, Alphatec's own implant guides show an implant where the length is greater than the width.



**Battalion**  **Transcend**

Ex. 1 (Battalion Lateral Implant Guide) at ATEC_LLIF000964104 (annotated);

Ex. 2 (Transcend Implant Guide) at ATEC_LLIF000964712 (annotated).

Therefore, Alphatec infringes this claim limitation.

**Third**, the accused implants have a longitudinal length greater than 40 mm. Alphatec's own implant guides indicate that all implants have a length of at least 45 mm.  Ex. 1 (Battalion Lateral Implant Guide) at ATEC_LLIF000964103-106;

---

[5] As noted above, the PTAB determined the term "longitudinal length" to mean "the implant's longer dimension 'extending from a proximal end of said proximal wall to a distal end of the said distal wall.'"  Doc. No. 288-1 at 19.

Ex. 2 (Transcend Implant Guide) at ATEC_LLIF000964712-15.  Thus, the accused implants meet this claim limitation.

**Fourth**, the accused implants have a maximum lateral width greater than height.  Yet again, Alphatec's implant guides show that the width of the implants is greater than the height.



Ex. 1 (Battalion Lateral Implant Guide) at ATEC_LLIF000964103-06 (annotated); Ex. 2 (Transcend Implant Guide) at ATEC_LLIF000964712-15 (annotated).[6] Therefore, the accused implants meet this claim limitation.

**Fifth**, the accused implants contain one or more fusion apertures. Alphatec's guides show an implant with two large "graft chambers" or fusion apertures.



---

[6] Alphatec's guides lists the dimensions of the implants. Ex. 22 (Annotated Battalion Lateral Implant Guide); Ex. 23 (Annotated Transcend Implant Guide).

Ex. 1 (Battalion Lateral Implant Guide) at ATEC_LLIF000964102 (annotated); Ex. 2 (Transcend Implant Guide) at ATEC_LLIF000964711 (annotated). Thus, Alphatec infringes this claim limitation.

**Sixth**, the accused implants are made of a PEEK, a radiolucent, non-bone material.  Alphatec's own documentation confirms that the implants are made of PEEK. Ex. 3 (Battalion Inventory Control) at ATEC_LLIF000964054; Ex. 4 (Transcend PEEK Interbody System) at ATEC_LLIF000964591. Accordingly, Alphatec infringes this claim limitation.

**Seventh**, the accused implants have at least two radiopaque markers (shown in red) proximate to the medial plane that Alphatec's implant guides and corporate representative confirm are located proximate to the medial plane.

### Battalion                                    Transcend



Ex. 1 (Battalion Lateral Implant Guide) at ATEC_LLIF000964103-04 (annotated)(stating that the radiopaque markers are "at medial center line of the implant"); Ex. 2 (Transcend Implant Guide) at ATEC_LLIF000964712-13 (annotated)(same); Ex. 5 (Aleali 10/30/20 Tr.) at 103:3-19 (confirming same); Ex. 6 (Robinson 11/4/20 Dep.) at 82:4-83:2 (confirming same).  Therefore, the accused implants meet this claim limitation.  Alphatec's own documentation shows it is beyond dispute that Alphatec infringes the '156 patent; thus, there is no dispute of fact that the accused implants infringe these claim limitations.

### 2.    '334 Patent: The Accused Implants Infringe Claims 16 and 18

In relevant part, the claims of the '334 patent recite: (1) an upper and lower surface with anti-migration elements, (2) a longitudinal length greater than 40 mm, (3) a longitudinal length at least two and half times greater than said maximum lateral width, (4) a maximum lateral width that is approximately 18 mm, (5) at least a first fusion aperture, and (6) at least three radiopaque markers, with the third and/or fourth marker spaced apart from each other and positioned in the central region of the implant.  The undisputed evidence shows the accused implants infringe each of these claim limitations.

**First**, for the same reasons as discussed above with respect to the '156 patent, the accused implants have an upper and lower surface with anti-migration elements. Accordingly, Alphatec infringes this claim limitation.

**Second**, for the same reasons discussed above with respect to the '156 patent, the accused implants have a longitudinal length greater than 40 mm. Therefore, Alphatec infringes this claim limitation.

**Third**, the accused implants have a longitudinal length at least two and half times greater than said maximum lateral width.  Two and a half times of 18 mm is 45 mm and two and a half times of 22 mm is 55 mm.  Alphatec's documentation shows that there are numerous configurations where the implant has a length at least two and a half times greater than said lateral width.  Ex. 1 (Battalion Lateral Implant Guide) at ATEC_LLIF000964103-06; Ex. 2 (Transcend Implant Guide) at ATEC_LLIF000964712-15.  Thus, the accused implants meet this claim limitation.

**Fourth**, the accused implants have a maximum lateral width that is approximately 18 mm.  Again, Alphatec's implant guides show implants with a width of 18 mm.  Ex. 1 (Battalion Lateral Implant Guide) at ATEC_LLIF000964103-105; Ex. 2 (Transcend Implant Guide) at ATEC_LLIF000964712-14. Thus, Alphatec infringes this claim limitation.

**Fifth**, for the same reasons as stated above with respect to the '156 patent, the accused implants have at least one fusion aperture. Therefore, Alphatec infringes this claim limitation.

**Sixth**, the accused implants have at least three radiopaque markers, with the third and/or fourth marker spaced apart from each other and positioned in the central region of the implant. Again, Alphatec's implant guides depict implants with four radiopaque markers where the third and fourth marks are positioned in the central region.

**Battalion**                 **Transcend**



Ex. 1 (Battalion Lateral Implant Guide) at ATEC_LLIF000964104 (annotated); Ex. 2 (Transcend Implant Guide) at ATEC_LLIF000964712-13 (annotated). Accordingly, Alphatec infringes this claim limitation.

Alphatec's own documentation shows it is beyond dispute that Alphatec infringes the Implant Patents; thus, there is no dispute of fact that the accused implants infringe the Asserted Claims.

**B.    Alphatec's Non-Infringement Arguments are Insufficient to Withstand Summary Judgment**

Alphatec and Alphatec's expert, Dr. Sachs, offer five non-infringement positions regarding claims 1, 5, 10, 18, and 24 and four non-infringement positions regarding claims 16 and 18—none of which is legally or factually plausible, or supported by the record in this case.

### *1.   Alphatec's Anti-Migration Argument*

Claims 1, 5, 10, 18, and 24 of the '156 patent and claim 1 and thus asserted claims 16 and 18 of the '334 patent recite "an upper surface including anti-migration elements to contact said first vertebra when said implant is positioned within the interbody space, a lower surface including anti-migration elements to contact said second vertebra when said implant is positioned within the interbody space." Doc. Nos. 110-38 at 30, 12:35-40; 110-48, at 30, 12:35-40. Alphatec contends that anti-migration elements of the Battalion and Transcend implants do not meet this limitation because the anti-migration elements do not contact the vertebra. Ex. 7 (Alphatec's Seventh Suppl. Resp. to Interrog. 1) at 158-59, 162, 166-167, and 169. Alphatec's argument is factually incorrect and based on a legally incorrect interpretation of the claim.

**First**, Alphatec's implant guides show that the accused anti-migration elements contact the first and second vertebrae.

 

Ex. 1(Battalion Lateral Implant Guide) at ATEC_LLIF000964101, ATEC_LLIF000964103-04; Ex. 2 (Transcend Implant Guide) at ATEC_LLIF000964712-13. Notably, the Alphatec guides do not depict any gap between the implant and the vertebrae, but show the implant in contact with the first and second vertebrae. This is consistent with the testimony of Alphatec's designated 30(b)(6) witnesses who confirmed that the accused implants contact

vertebrae at least at the apophyseal ring (which is part of the vertebrae).  Ex. 5 (Aleali 10/30/20 Tr.) 90:2-91:25; Ex. 6 (Robinson 11/4/20 Tr.) 73:4-21; *see also* Ex. 8 (Sachs 1/11/21 Tr.) 58:18-21; 69:3-6 (confirming the apophyseal ring is part of the vertebral body).  Alphatec's documentation shows "[t]he implant system shall have unique geometric teeth on the superior and inferior surfaces" whose purpose is "to resist migration post-implantation."  Ex. 9 (Battalion Product Requirement Specification) ATEC_LLIF000265880.  As this documentation makes clear, the upper and lower surfaces would not be able to "resist migration" of the implant unless these were in contact with the vertebrae.  *Id.*

**Second**, Alphatec contends that the anti-migration elements do not contact the vertebrae because the vertebrae have a concave shape.  Ex. 10 (Sachs Rebuttal 12/18/20 Rpt.) ¶¶ 152, 201.  This argument is factually flawed.  As confirmed by Alphatec's expert, Dr. Sachs, spinal fusion procedures (in which the accused implants are placed) are performed on a diseased spine that lacks the concavity of a healthy spine.  Ex. 8 (Sachs 1/11/21 Tr.) 59:15-60:17; 64:2-16; 72:6-20.

**Third**, Alphatec's argument is legally incorrect because the claims at issue are device claims ***not*** method claims.  "To infringe a claim that recites capability and not actual operation, an accused device need only be capable of operating in described mode." *Finjan Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1204 (Fed. Cir. 2010); Doc. No. 281 at 6.  Contrary to Alphatec's assertions, there does not need to be contact through a particularized method, but the accused implant must only be capable of contacting the vertebrae.  For these reasons, Alphatec's anti-migration argument does not present an issue of fact.

### 2.   *Alphatec's Proximal Wall Argument*

Claims 1, 5, 10, 18, and 24 of the '156 patent and claim 1 and thus asserted claims 16 and 18 of the '334 patent recite a "proximal wall."  Doc. Nos. 110-38, at 30, 12:40-52; 110-48,  at 30-31, 12:35-46; 12:65-13:4.  Alphatec asserts that the

Battalion and Transcend implants do not have a proximal wall due to various "cutouts" for the inserter.  Ex. 10 (Sachs Rebuttal 12/18/20 Rpt.) ¶¶ 169-73, 238.



Ex. 1 (Battalion Lateral Implant Guide) at ATEC_LLIF000964102 (annotated); *Id*. Alphatec's argument is based on a belated, incorrect claim construction.  The plain language of the asserted claims does not limit "proximal wall" to a solid wall with no aperture.  For example, asserted claim 5 of the '156 patent recites that the proximal wall "includ[es] at least one receiving aperture."  Doc. No. 110-38,  at 31, 13:13-14.  Moreover, the specification of the '156 and '334 patents explicitly disclose a proximal wall with visualization apertures or cutouts.  Doc. Nos. 110-38, at 26, 4:9-15; 110-48, at 26, 4:9-15.  Thus, Alphatec's contention is directly contradicted by the plain language of the claims and the specification and should be rejected.[7]

### 3. The Radiopaque Markers in the Accused Implants are "Proximate to the Medial Plane"

Claims 1, 5, 10, 18, and 24 of the '156 patent recite "at least first and second radiopaque markers oriented generally parallel to a height of the implant, wherein said first radiopaque marker extends into said first sidewall at a position proximate to said medial plane, and said second radiopaque markers extends into said second

---

[7] Alphatec's expert, Dr. Sachs, stated he did not look at the patent specification in forming his opinion about whether the Battalion and Transcend implants have a proximal wall, but instead improperly relied on extrinsic evidence.  Ex. 8 (Sachs 1/11/21 Tr.) 147:17-148:21; *Phillips v. AWH Corp*., 415 F.3d 1303, 1324 (Fed. Cir. 2005).

sidewall at a position proximate to the medial plane." Doc. No. 110-38 at 30, 12:62-67. The accused implants contain "midline markers" that Alphatec's implant guides and corporate representative confirm are located proximate to the medial plane. Ex. 1 (Battalion Lateral Implant Guide) at ATEC_LLIF000964103-04 (stating that the radiopaque markers are "at medial center line of the implant"); Ex. 2 (Transcend Implant Guide) at ATEC_LLIF000964712-13 (same); Ex. 5 (Aleali 10/30/20 Tr.) at 103:3-19 (confirming same); Ex. 6 (Robinson 11/4/20 Tr.) at 82:4-83:2 (confirming same). Dr. Sachs does not dispute these facts. Ex. 10 (Sachs Rebuttal 12/18/20 Rpt.) at ¶ 187. It is beyond dispute that the accused implants infringe this claim limitation.[8]

### 4. The Accused Implants Include the Relevant Claim Features of Claim 5 of the '156 Patent

Claim 5 of the '156 patent recites that the implant has: (a) "at least one receiving aperture position at said proximal wall;" and (b) the "longitudinal length" of that implant "is greater than 40 mm." Doc. No. 110-38 at 31, 13:13-15. The undisputed evidence proves that the accused implants meet both of these requirements: they have proximal wall with the recited receiving aperture and have a longitudinal length greater than 40 mm. **<u>First</u>**, Alphatec's implant guides shows that the Implant Inserter is intended to "[e]ngage, [t]wist, [a]ttach" to the accused implants via "the inserter thread" and "inserter stabilizers" (*i.e.*, the receiving aperture) of the implants located on their proximal wall:



---

[8] Moreover, in support of this defense, Alphatec offers only an incorrect, belated claim construction argument that "proximate to the medial plane" is indefinite. Yet, as discussed below (§ IV.A.1), there is no issue of fact that this claim phrase is definite.

Ex. 1 (Battalion Lateral Implant Guide) at ATEC_LLIF000964102 (annotated); Ex. 2 (Transcend Implant Guide) at ATEC_LLIF000964711.  **Second**, Alphatec's implant guides for the accused implants show that these implants all have a longitudinal length greater than 40 mm.  Ex. 1 (Battalion Lateral Implant Guide) at ATEC_LLIF000964103-06; Ex. 2 (Transcend Implant Guide) at ATEC_LLIF000964712-15.

Alphatec again offers ***no*** actual non-infringement arguments regarding dependent claim 5; nor does Dr. Sachs dispute that the accused implants have the recited receiving aperture and longitudinal length.  Instead, Alphatec asserts that the claim limitation "does not make grammatical sense," without further explanation.  Ex. 7 (Alphatec's Seventh Suppl. Resp. to Interrog. 1) at 160, 168; Ex. 10 (Sachs Rebuttal 12/18/20 Rpt.) ¶¶ 183, 231.  Not only is Alphatec's assertion plainly contradicted by the undisputed facts set forth above, its cursory conclusion is not sufficient to raise material factual disputes.  *Horizon Pharma, Inc. v. Dr. Reddy's Labs., Inc.*, Civil Action No. 15-3324 (SRC), 2018 U.S. Dist. LEXIS 196702, at *25-26 (D.N.J. Nov. 19, 2018), *aff'd*, 2021 U.S. Dist. LEXIS 296 (Fed. Cir. Jan. 6, 2021); *Stumbo v. Eastman Outdoors, Inc.,* 508 F.3d 1358, 1365 (Fed. Cir. 2007) ("We have repeatedly held that such cursory conclusions will not withstand summary judgment.").

### 5. *Alphatec's Medial Support Argument Regarding the Battalion Implant*

Claim 18[9] of the '156 patent requires a "medial support." Doc. No. 110-38 at 31, 14:8-10.  Alphatec asserts the Battalion implants do not have a "medial support" because the center support is not located in the exact middle of the implant.  Ex. 7 (Alphatec's Seventh Suppl. Resp. to Interrog. 1) at 161.  Alphatec's

---

[9] Claim 18 depends from claim 17 which is unasserted. Alphatec does not raise any non-infringement arguments with respect to claim 17.

argument is directly contradicted by its own documentation, corporate testimony, and even its own expert, and thus cannot present an issue of material fact.

**First**, Alphatec's Implant Guides explicitly depict that the accused implants have a medial support which overlaps the midline of the implant at the medial plane (i.e., along the line between the midline markers).  The accused implants each have two fusion apertures separated by a medial support spanning between the sidewalls of the implant.

**Battalion**



Ex. 1 (Battalion Lateral Implant Guide) at ATEC_LLIF000964103 (annotated) (depicting the midline radiopaque markers as overlapping the medial support).

**Second**, Alphatec's 30(b)(6) witnesses confirm that the radiopaque markers are exactly in the middle (i.e., along the medial plane) of the implant are the "midline" radiopaque markers, which are located along the corresponding medial support between the two apertures.  Ex. 6 (Robinson 11/4/20 Tr.) 82:4-83:2; Ex. 5 (Aleali 10/30/20 Tr.) 103:3-19.  Furthermore, the accused implant guide states that the "radiopaque markers" are at the "medial center line of the implant."  Ex. 1 (Battalion Lateral Implant Guide) at ATEC_LLIF000964103.  At deposition, Dr. Sachs stated that in order to be a medial support, the medial support does not have to be exactly in the center of the implant.  Ex. 8 (Sachs 1/11/21 Tr.) 162:11-20.  More importantly, claim 18 of the '156 patent does <u>not</u> require that the medial support be perfectly centered on either side of the middle of the implant. Thus, there is no issue of fact that the accused implant meets this claim limitation.

Tellingly, Alphatec does not dispute that the Transcend implants have a medial support.  Alphatec also confirmed that "[t]here are not significant differences" between the Battalion and Transcend implants.  Ex. 6 (Robinson 11/4/20 Tr.) 89:12-19; 95:23-97:4; Ex. 5 (Aleali 10/30/20 Tr.) 65:17-66:13.

### 6.     Alphatec's Argument that the Radiopaque Marker is Not "At Least Partially Positioned in the Proximal Wall" Argument

Claim 1 and thus asserted claims 16 and 18 of the '334 patent require "at least three radiopaque markers; wherein . . . a second of said at least three radiopaque markers is at least partially positioned in the proximal wall."  Doc. No. 110-48 at 30-31, 12:65-13:4.  Alphatec argues that the Battalion and Transcend implants do not meet this limitation because the second radiopaque marker is located on the upper/lower surface of the proximal wall.  Ex. 7 (Alphatec's Seventh Suppl. Resp. to Interrog. 1) at 165-66, 171.  Yet again, Alphatec's own documentation and corporate and expert testimony directly contradict Alphatec's factually baseless argument.

**First**, for the reasons discussed above (§ III.B.2), the accused implants have a proximal wall.  Alphatec's guides indicate that the "beads" are radiopaque markers.  Ex. 1 (Battalion Lateral Implant Guide) at ATEC_LLIF000964103-04 (annotated); Ex. 2 (Transcend Implant Guide) at ATEC_LLIF000964712-13.  The guides also show that the accused implants have "radiopaque markers" located "at the **proximal posterior corners** . . .".



1    Ex. 1 (Battalion Lateral Implant Guide) at ATEC_LLIF000964103-04 (annotated);

2    Ex. 2 (Transcend Implant Guide) at ATEC_LLIF000964712-13.  **Second,** Dr.

3    Sachs confirmed that the "beads" or "radiopaque markers" are embedded in the

4    surface of the proximal wall.  Ex. 8 (Sachs 1/11/21 Tr.) 159:14-21.  According to

5    the plain and ordinary meaning of the claims, radiopaque beads embedded in the

6    wall surface are partially positioned in the proximal wall.  Thus, there is no issue of

7    fact that the accused implants meet this limitation.

### 7.   *Alphatec's Partial Non-Infringement Configuration Arguments*

9        Alphatec contends that certain *configurations* of the accused implants do not

10   infringe the claims of the '334 patent because they do not meet the dimension

11   limitations.  **First**, Claim 1 and thus asserted claims 16 and 18 of the '334 patent

12   recite "a longitudinal length greater than 40 mm extending from a proximal end of

13   said proximal wall to a distal end of said distal wall" and the "longitudinal length is

14   at least two and a half times greater than said maximum lateral width."  Doc. No.

15   110-48 at 30, 12:44-46; 12:52-54.  **Second**, claim 18 of the '334 patent requires a

16   "maximum lateral width of said implant is approximately 18 mm."  *Id.* at 14:11-13.

17   However, Alphatec does not offer non-infringement positions for the accused

18   implants that meet these claim limitations.  And, implants that are accused of

19   infringement meet these dimension limitations.  Ex. 1 (Battalion Lateral Implant

20   Guide) at ATEC_LLIF000964103-06; Ex. 2 (Transcend Implant Guide) at

21   ATEC_LLIF000964712-15.  Accordingly, there is no dispute of fact that the

22   accused implants infringe these claim limitations.

### 8.   *Alphatec's Unsupported Non-Infringement Contentions regarding the Battalion and Transcend Implants*

25       Alphatec makes a handful of other non-infringement arguments for the

26   Implant Patents that remain similarly unsupported by Dr. Sachs.  None of these

27   non-infringement positions raise a material issue of fact because they are not

28   supported.  *Magnetar Techs. Corp. v. Six Flags Theme Parks, Inc.*, C. A. No. 07-

127-LPS-MPT, 2014 U.S. Dist. LEXIS 15679, at *78 (D. Del. Feb. 7, 2014) (granting defendant summary judgment where plaintiff's expert report was struck and thus plaintiff could not support their arguments).  Even if the Court considers these unsupported positions, the accused implants meet the asserted claims as discussed below.

**First**, claims 1, 5, 10, 18, and 24 of the '156 patent and claim 1 and thus asserted claims 16 and 18 of the '334 patent recite "at least a first fusion aperture extending through said upper surface and lower surface and configured to permit bone growth between the first vertebra and the second vertebra when said implant is positioned within the interbody space."  Doc. Nos. 110-38 at 30, 12:52-56; 110-48 at 30, 12:55-59.  Alphatec asserts that the fusion aperture of the Battalion and Transcend implants is not configured to permit bone growth.  Ex. 7 (Alphatec's Seventh Suppl. Resp. to Interrog. 1) at 159, 163-64, 167, 170-71.  This argument is factually unsound.  Alphatec's own witnesses and documentation confirm that the "large graft chambers" or apertures of the accused implants are configured to permit bone growth. Ex. 5 (Aleali 10/30/20 Tr.) 94:2-96:8; Ex. 6 (Robinson 11/4/20 Tr.) 43:7-21; 73:22-74:5; Ex. 9 (Battalion Product Requirement Specification) at ATEC_LLIF000265880; Ex. 13 (Battalion LLIF Implant System) at ATEC_LLIF000002273.  Accordingly, there is no triable issue of fact.

**Second**, claim 1 and thus asserted claims 16 and 18 of the '334 patent recite "wherein a central region of said implant includes portions of the first and second sidewalls positioned generally centrally between the proximal wall and the distal wall, at least a portion of the central region defining a maximum lateral width of said implant extending from said first sidewall to said second sidewall."  Doc. No. 110-48 at 30, 12:47-52. Alphatec asserts that the Battalion implant does not infringe this claim because the central region is not located in the middle of the implant. Ex. 7 (Alphatec's Seventh Suppl. Resp. to Interrog. 1) at 162-63.  For the same reasons that the medial support from the '156 patent is in the middle of the

implant (§ III.B.5), the central region is in the middle of the implant. *See* Ex. 14 (Youssef 11/20/20 Rpt. Ex. D) at 31-34.  Thus, the accused implants infringe this claim limitation.

**Third**, claim 1 and thus asserted claims 16 and 18 of the '334 recite "at least three radiopaque markers; wherein … a third of said at least three radiopaque markers is at least partially positioned in said central region."  Doc. No. 110-48 at 31, 12:65-13:2-4. Alphatec asserts only that the Battalion implants do not infringe because the central region is not located exactly in the middle of the implant and because the markers are offset with respect to the central region, there is no infringement.  Ex. 7 (Alphatec's Seventh Suppl. Resp. to Interrog. 1) at 164-65. Alphatec's argument is illogical and factually incorrect. Alphatec's corporate witness and documentation show the presence of *midline* markers are in the middle or the "medial center line of the implant."  Ex. 5 (Aleali 10/30/2020 Tr.) 103:3-10; Ex. 1 (Battalion Lateral Implant Guide) at ATEC_LLIF000964103-04. Thus, the "central region" overlaps the midline of the implant and encompasses the midline markers. Accordingly, there is no dispute of fact.

Because Alphatec's only non-infringement arguments regarding claims 1, 5, 10, 18, and 24 of the '156 and claims 16 and 18 of the '334 patent raise no issue of fact and are legally irrelevant, summary judgment of infringement is warranted.

## C.   Alphatec's No Commercial Purpose Argument Regarding the "Titec Coated Implants"

NuVasive has separately accused a third style of implant, known as the Titec Coated Implant. The Titec Coated implants are the Battalion implant with a Titec coating on the top and bottom.  Ex. 6 (Robinson 11/4/20 Tr.) at 36:11-20. Therefore, the Titec Coated implants infringe the asserted claims for the same reasons the Battalion implants infringe as discussed above.[10]

---

[10] The claims of the Implant Patents recite the claim language "implant comprising." Doc. Nos. 110-38 at 30, 12:34; 110-48 at 30, 12:34. Thus, the Titec Coated implants still meet the claim limitation even though they include an

(continued...)

**Titec Coated**



Ex. 19 (Youssef 11/20/20 Rpt. Ex. C) at 1.

Alphatec asserts that its Titec Coated implants do not infringe the asserted claims because these implants have not been made, used, offered to sell, or sold for a "commercial purpose." Ex. 7 (Alphatec's Seventh Suppl. Resp. to Interrog. 1) at 166. The mere act of making an accused product is an act of infringement. 35 U.S.C. § 271(a). The purpose for which the Titec Coated implants were made is irrelevant. *Strategic Operations*, *Inc. v. Joseph*, No. 17-CV-1539 JLS (WVG), 2019 U.S. Dist. LEXIS 77188, at *10 (S.D. Cal. May 7, 2019) ("The mere manufacture of a patented article, without sale, is sufficient to create an infringement."). Alphatec's documentation indicates that the Titec Coated implants were in fact made by Alphatec. Ex. 16 (LLIF Project presentation with images of Titec Coated Implant) at ATEC_LLIF000878801; Doc. No. 221-15 (management presentation detailing Titec Coated Implant) at ATEC_LLIF000854457; *Strategic Operations*, 2019 U.S. Dist. LEXIS 77188, at *10 (finding that plaintiff sufficiently raised an allegation of infringement by presenting the defendant's photos of the accused product). There is no issue of fact to be decided and summary judgment of infringement is warranted.

---

(...continued from previous page)

additional titanium coating on the top and bottom. *Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1348 (Fed. Cir. 2001).

## IV.   VALIDITY

### A.    The Asserted Claims Are Valid Under Section 112

There is no triable issue of fact regarding the definiteness of the asserted claims.  Alphatec contends that the terms "proximate to said medial plane," and "central region," are indefinite.  Doc. No. 296-6 at 15-16. Rather than making any effort to carry the heavy burden of clear and convincing evidence, Alphatec relies on nothing beyond conclusory assertions of its expert, Dr. Sachs.  *Id.*  As such, Alphatec's evidence is insufficient to present a factual dispute.  *Horizon Pharma, Inc.*, 2018 U.S. Dist. LEXIS 196702, at *25-26; *Stumbo*, 508 F.3d at 1365 ("We have repeatedly held that such cursory conclusions will not withstand summary judgment.").  Moreover, as discussed below, Alphatec's contentions conflict with positions that Alphatec took during the Alphatec IPRs in which its expert, Dr. Branch, expressed no difficulty determining the scope of the Asserted Claims.[11]

### 1.   Alphatec's "proximate to said medial plane" Argument Regarding the '156 Patent

The asserted claims of the '156 patent inform, with reasonable certainty, those skilled in the art about the scope of the invention.  As Alphatec concedes, there is no dispute as to the "meaning" of the term "proximate to said medial plane." Instead, Alphatec's indefiniteness position imposes mathematical precision for the term that is not supported by statute or caselaw.

There is no dispute as to the meaning of "medial plane" or "proximate to said medial plane."  The parties agree that the "medial plane" is "*generally perpendicular to and intersects with said longitudinal length at the middle or midline of the longitudinal length*."  Ex. 12 (Sachs 11/20/20 Rpt.), ¶ 333; Doc. No. 133-2 at 21 (App. B4).  The parties also agree that "*[i]n the context of the claims and specification ... 'proximal' is used to mean 'near.'  Thus, 'proximate*

---

[11] Dr. Sachs testified that he agrees with Dr. Branch's opinions provided in the Alphatec IPRs.  Ex. 8 (Sachs 1/11/21 Tr.), at 116:20-117:8.

***to said medial plane' would mean 'near said medial plane*.'" *Id.* ¶ 334; Ex. 24 (Youssef Rebuttal 12/18/20 Rpt.), ¶ 201; *see also* Doc. No. 288-1 (IPR2019-00362 (Paper 57)), Final Written Decision), at 19-20. Moreover, this is consistent with the meaning given to the claim by the PTAB during IPR. *Id.* at 20 ("[W]e determine that … the phrase 'proximate to said medial plane' means near or approximately at the midpoint of the longitudinal length consistent with our understanding of 'longitudinal length'"). This should be the end of the inquiry as there is no dispute as to the meaning of the claim term or whether Alphatec's accused products meet this definition. (§ III.B.5).

Dr. Sachs concedes that the term "proximate to said medial plane" encompasses "precisely or nearly in the middle of the implant," but asserts that "other meanings are equally as reasonable in view of the specification." Ex. 12 (Sachs 11/20/20 Rpt.), ¶ 334. Dr. Sachs, however, fails to identify ***any*** of these other allegedly equally reasonable meanings, and it is improper to do so now. This is particularly true in light of the parties' agreement that claim construction was complete as to the Implant Patents. Doc. No. 292 at 16.

Dr. Sachs goes on to suggest that the term "proximate to the medial plane" is indefinite absent *mathematical precision*. Ex. 12 (Sachs 11/20/20 Rpt.), ¶ 334 ("Is 'proximate' 1 mm, 2 mm, a percentage of the overall length, or some other measurement?"). However, there is no such requirement. *Nautilus*, 572 U.S. at 910 ("The definiteness requirement, so understood, mandates clarity, while recognizing that absolute precision is unattainable."); *Interval Licensing*, 766 F.3d at 1370 ("[A] patentee need not define his invention with mathematical precision in order to comply with the definiteness requirement.").

Moreover, the mere use of terms of degree or approximation does not render claims indefinite. *Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017) ("[W]e have rejected the proposition that claims involving terms of degree are inherently indefinite."). Dr. Sachs admitted as much during his

deposition.  As Dr. Sachs explains, claim terms of approximation describing surgical devices such as "generally against the incision" and "medial portion" would be easily understood by skilled artisans reading the claims.  Ex. 8 (Sachs 1/11/21 Tr.) at 233:10-234:4 ("In this case, 'generally against the incision' allows the surgeon to make that interpretation as needed"); *id.* at 238:25-240:3 ("[The medial portion] doesn't have to be in the dead center …").  Moreover, courts have addressed claims reciting the term "**proximate**" numerous times and concluded its use does not render claims indefinite.  *E.g.*, *THX, Ltd. v. Apple, Inc.*, No. 13-CV-01161-HSG, 2016 WL 6563340, at *14 (N.D. Cal. Nov. 4, 2016); *Effective Exploration, LLC v. Pa. Land Holdings Co.*, No. 14-CV-00845-AJS, 2015 WL 7184907, at *12 (W.D. Pa. Mar. 5, 2015).

The claims have agreed meanings and are sufficiently precise to inform a skilled artisan as to their scope.  And, Alphatec has little to complain about because the infringing designs admittedly have markers positioned along the medial center line of the implant. (§ III.B.5).

### 2.  *Alphatec's "central region" Argument Regarding the '334 Patent*

The asserted claims of the '334 patent inform, with reasonable certainty, those skilled in the art about the scope of the invention.  Claim 1 recites "*wherein a* ***central region*** *of said implant includes portions of the first and second sidewalls positioned* ***generally centrally*** *between the proximal wall and the distal wall, at least a portion of the* ***central region*** *defining a maximum lateral width of said implant extending from said first sidewall to said second sidewall.*"  Doc. No. 110-48 at 30, 12:47-53.  Despite this precise and detailed language, Alphatec contends that the claims of the '334 patent reciting "central region" are indefinite.  In support, Alphatec relies only on Dr. Sachs' conclusory assertion that "the claims, specification, and file history fail to provide guidance regarding how to determine the size, shape, or bounds of the claimed 'central region,' or how to determine

whether the first and second sidewalls, medial support, and/or radiopaque markers are positioned 'generally centrally' or within the 'central region.'" Ex. 12 (Sachs 11/20/20 Rpt.), ¶ 329. Dr. Sachs' conclusory testimony is insufficient and belied by the claim language itself which defines the "central region."

Moreover, in Alphatec's IPRs, Alphatec identified a "central region" (in green) of implant 10 of the '334 patent in the annotated diagram below.

**Alphatec Markup**



Doc. No. 136-1, Ex. B (IPR2019-00361, Pet.) at 116. Thus, Alphatec's analysis and construction of the phrase demonstrate that a skilled artisan has clear notice of what is claimed.

### 3.    *Dr. Sachs' New Indefiniteness Arguments*

Dr. Sachs opines that additional terms — i.e., "medial plane" and "generally parallel" — are indefinite. Ex. 12 (Sachs 11/20/20 Rpt.), ¶¶ 329, 333. However, these terms were not identified in Alphatec's Final Invalidity Contentions. Doc. No. 296-6 at 15-16. Consideration of these additional terms would be improper. S.D. Cal. Patent L.R. 3.3 (requiring identification of indefiniteness contentions); *see also Thermolife Int'l, LLC v. Myogenix Corp.*, No. 13cv651 JLS (MDD), 2015 U.S. Dist. LEXIS 194276, at *50-51 (S.D. Cal. Dec. 8, 2015). To the extent that Dr. Sachs' opinions are considered, he provides nothing beyond conclusory

assertions which are insufficient to withstand summary judgment. *Stumbo,* 508 F.3d at 1365.

Accordingly, this Court should grant NuVasive's Motion for Summary Judgment that the Asserted Claims meet the requirements of 35 U.S.C. § 112.

### B.   The Implant Patents Are Entitled to a Priority Date of March 29, 2004

There is no triable issue of fact regarding the priority date of the Implant Patents.  The Implant Patents claim and are entitled to a priority date of March 29, 2004 — the filing date of U.S. Provisional Application No. 60/557,536 (the "Provisional Appl.").  Doc. No. 296-3; Ex. 15 ((Non-provisional Appl. '409) (NUVA_ATEC0020856-911); Doc. No. 110-38 at 2 ('156 patent claiming priority to Provisional Application); Doc. No. 110-48 at 2 (same for '334 patent).  Alphatec contends that the Provisional Application lacks written description to support the claimed dimensions and radiopaque markers. Doc. No. 296-6 at 4-12.  Alphatec and Alphatec's expert, Dr. Sachs, however, rely on irrelevant *extrinsic* evidence, while ignoring relevant disclosure of the Provisional Application.

To prevail, NuVasive need only show that the specification of the Provisional Application provides "'a written description of the invention and the manner and process of making and using it, in such full, clear, concise, and exact terms,' to enable an ordinarily skilled artisan to practice the invention claimed in the non-provisional application." *New Railhead Mfg., L.L.C. v. Vermeer Mfg. Co.*, 298 F.3d 1290, 1294 (Fed. Cir. 2002) (quoting 35 U.S.C. § 112).  The Provisional Application meets this standard because it "convey[s] with reasonable clarity to those skilled in the art that, as of the filing date sought, [the applicant] was in possession of the invention." *New Railhead Mfg.*, 298 F.3d at 1295.  This requirement is satisfied by "words, structures, figures, diagrams, formulas, etc." *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997). Importantly, "the disclosure as originally filed does not have to provide *in haec*

*verba* support for the claimed subject matter at issue," *Crown Operations Int'l., Ltd. v. Solutia Inc.*, 289 F.3d 1367, 1376 (Fed. Cir. 2002), "[w]hat is claimed by the patent application must be the same as what is disclosed in the specification," *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 736 (2002). Put another way, "[i]dentity of description is not necessary . . . [i]dentity of that which is described, however, is necessary." *New Railhead*, 298 F.3d at 1296. There is no genuine dispute that the Provisional Application meets this standard.

### 1. The Provisional Application Discloses the Claimed Implant

The Provisional Application discloses all limitations of the asserted claims. By way of example only, the Provisional Application discloses the claimed implant:

**Provisional Application (Figs. 2 & 3)**



Doc. No. 296-3 at 33-34 (Figs. 2, 3).

- is made of radiolucent, non-bone material, Doc. No. 296-3 at 6 (4:9-12), 13 (11:8-12), 32-37 (Figs. 1-6); Ex. 25 (Youssef 11/20/20 Rpt.) at ¶¶ 105, 204;

- includes anti-migration elements on both the top and bottom surfaces for gripping the adjacent vertebrae; Doc. No. 296-3 at 6 (4:9-12), 7-8 (5:16-6:3), 32-37 (Figs. 1-6); Ex. 25 (Youssef 11/20/20 Rpt.) at ¶ 205;

- has a longitudinal length greater than maximum lateral width; *Id.* at 6 (4:18-21, 13 (11:5-14), 15 (13:12-14), 32-37 (Figs. 1-6); Ex. 25 (Youssef 11/20/20 Rpt.) at ¶¶ 96-103, 206;

- has at least three radiopaque markers in each of the proximal and distal walls and central region; Doc. No. 296-3 at 16 (14:6-21); 32-37 (Figs. 1-6); Ex. 25 (Youssef 11/20/20 Rpt.) at ¶¶ 106-110, 208;

- includes "fusion apertures" extending from the top to the bottom of the implant, Doc. No. 296-3 at 17 (15:1-7); 32-37 (Figs. 1-6); Ex. 25 (Youssef 11/20/20 Rpt.) at ¶¶ 104, 207; and

- has a "medial support" within a central region. Doc. No. 296-3 at 17 (15:2-4); 32-37 (Figs. 1-6).

Relevant citations to the portions of the Provisional Application from which those limitations can be readily discerned are provided herein and reproduced in the attached Appendix C, which provides a summary view of written description support for all the limitations of the Asserted Claims.

> ### 2. The Provisional Application Discloses the Dimension Limitations of the Asserted Claims

Alphatec contends that the Provisional Application does not adequately disclose the implant dimensions by failing to consider drawings that exemplify the claimed implant. As set forth below, the Provisional Application fully discloses the claimed implant dimensions.

The Provisional Application discloses implants with the claimed dimensions. Asserted claims 1, 5, 10, 18, and 24 of the '156 patent require a *longitudinal length* greater than the *maximum lateral width*. Asserted claims 16 and 18 of the '334 patent require a *longitudinal length* at least two and half times greater than said maximum lateral width and claim 18 further requires a *maximum lateral width* that is approximately 18 mm.

Although this Court has not construed the phrase **"longitudinal length"** as used in the Asserted Claims, the PTAB construed it to mean *"the implant's longer dimension 'extending from a proximal end of said proximal wall to a distal end of the said distal wall.'"*   Doc. No. 288-1 (IPR2019-00362(Paper 57), at 16-20 (quoting Doc. No. 110-38 at 30, 12:45-47)); *Wi-Lan Inc. v. LG Elecs., Inc.*, 421 F. Supp. 3d 911, 936 (S.D. Cal. 2019) (crediting PTAB's claim construction).   Under this construction and, as shown below, the dimensions disclosed in the Provisional application are entirely consistent with the nomenclature used in the claims.



| U.S. PATENT NO. 8,361,156 | PROVISIONAL APPLICATION NO. 60/557,536 |
|---|---|
| FIG. 1 | FIG. 1 |
| FIG. 3 | FIG. 3 |
| "The spinal fusion implant 10 of the present invention may be dimensioned, by way of example only, having a width ranging between 9 and 18 mm, a height ranging between 8 and 16 mm, and a length ranging between 25 and 45 mm." | "The spinal fusion implant 10 of the present invention may be dimensioned, by way of example only, having a length ranging between 9 and 18 mm, a height ranging between 8 and 16 mm, and a width ranging between 25 and 45 mm." |
| '156 patent at 5:15-19 | Provisional 60/557,536 at NUVA_ATEC0020816 |

Ex. 20 (Ex. 10 to Sachs 1/11/21 Tr.).

Tellingly, when confronted with the Exhibit reproduced above, Dr. Sachs conceded that the "length" of implant 10, as that term is used in the Provisional Application, is represented by the blue line shown in Figures 1 and 3.  Ex. 8 (Sachs

1  1/11/21 Tr.) at 140:23-141:14.  Thus, the Provisional Application discloses the

2  claimed dimensions and, as set forth below, these dimensions are entirely

3  consistent with the detailed language used in the claims.

| Provisional Application | Dimension disclosed | Implant Patents | Claim Language |
|---|---|---|---|
| "width" | 25-45 mm | "length" | • "said implant has a longitudinal length extending from a proximal end of said proximal wall to a distal end of said distal wall, … said longitudinal length is greater than said maximum lateral width" ('156 patent, claim 1)<br>• "the longitudinal aperture length is greater than the lateral aperture width" ('156 patent, claim 1)<br>• "a longitudinal aperture length extending generally parallel to the longitudinal length of said implant, and a lateral aperture width extending between said first sidewall to said second sidewall" ('156 and '334 patents, claim 1)<br>• "longitudinal length is greater than 40 mm" ('156 patent, claim 5; '334 patent, claim 1)<br>• a longitudinal length "at least two and a half times greater than said maximum lateral width" ('334 patent, claim 1) |
| "length" | 9-18 mm | "width" | • "implant has a maximum lateral width extending from said first sidewall to said second sidewall" ('156 and '334 patents, claim 1)<br>• "said maximum lateral width is greater than said height" ('156 patent, claim 24)<br>• "said maximum lateral width[12] of said implant is approximately 18 mm" ('334 patent, claim 18) |

---

[12] The Provisional Application describes an implant with a proximal-to-distal dimension of 45 mm and discloses an implant whose longitudinal length is at least 2.5 times greater than its lateral width (i.e., 18 mm x 2.5 = 45 mm).

| "height" | 8-16 mm | "height" | • "a height of said implant" |
|---|---|---|---|

Thus, as admitted by Alphatec's expert and demonstrated above, a skilled artisan reviewing the Provisional Application would conclude that NuVasive "was in possession of" an implant whose "longitudinal length" in the proximal-to-distal dimension as set forth in the claims is the "implant's longer dimension." Ex. 8 (Sachs 1/11/21 Tr.) at 140:23-141:14.

### 3.    *Alphatec's Priority Date Arguments Regarding Radiopaque Markers are Insufficient to Withstand Summary Judgment*

Alphatec argues that the Provisional Application does not adequately disclose the "radiopaque markers" limitation because the Provisional Application refers to "the spike elements 7, 8, 9" as "anti-migration features," Doc. No. 296-3 at 16, 14:6-9, and that it was not until NuVasive filed its non-provisional application that it disclosed the use of the radiopaque spikes for visualization purposes.  These arguments are meritless and contradicted by Alphatec's own witnesses.  Nothing in the Provisional Application or the Implant Patents says that the spike elements may *only* serve as anti-migration features.  To the contrary, because the Provisional Application describes the spike elements 7, 8, 9 as preferably being made of "radiopaque" material, a skilled artisan would immediately recognize that the spike elements would serve the dual purpose of facilitating radiographic visualization of an otherwise radiolucent implant.  Doc. No. 296-3 at 16, 14:11-14.

### a.    *Dr. Sachs Concedes the Purpose of the Radiopaque Markers*

Dr. Sachs concedes that the purpose of making the spike elements 7, 8, 9 out of radiopaque material is to allow the surgeon to visualize the spikes via radiographic imaging.  Ex. 10 (Sachs Rebuttal 12/18/20 Rpt.) ¶ 105 ("[M]aking the spikes radiopaque would allow confirmation that the spikes are serving their

intended and repeatedly stated function of gripping into the adjacent vertebrae.");
*id.* at ¶¶ 94-95, 99; *see also* Ex. 11 (IPR2019-00361, Branch Decl.) ¶ 109 (opining
"spikes 24" are "radiopaque markers" based on disclosure that "spikes 24 . . . can
be made of a material that is opaque to X-rays."). This is all the claim requires.

### b.  *Alphatec's Individual Priority Date Arguments*

Alphatec's "Spike" Argument Is Flawed: Alphatec contends that because the
non-provisional Implant Patents have some *additional* information discussing the
use of the radiopaque spikes, this proves that written description support for
radiopaque materials for visualization is somehow lacking in the Provisional
Application. Doc. No. 296-6 at 5-6, 9-10. But the Asserted Claims are directed to
a device, namely — a radiolucent implant with radiopaque elements purposely
disposed in the proximal, distal and central regions. Doc. No. 296-3 at 15
(NUVA_ATEC0020818) (Radiopaque materials are, by definition, visible in an x-
ray). And, the Provisional Patent goes on to describe a variety of shapes and
implementations of these radiopaque elements. *Id.* That radiopaque markers are to
be used by a "surgeon [to] track the progress of the implant during implantation"
or to "enhance[] visualization" as stated in the Implant Patents, is neither relevant
nor fatal to whether the Provisional Application provides a written description for a
***radiolucent implant*** device having ***radiopaque elements*** in a variety of shapes and
sizes that are disposed in specific locations throughout the implant. It does; and
thus, there can be no dispute. Doc. No. 110-38, at 26, 3:9-10, at 30, at 11:48; Doc.
No. 110-48 at 26, 3:9-10, at 30, at 11:48.

Alphatec's FDA Argument Is Irrelevant: Alphatec contends that a certain
communication NuVasive had with the FDA provides support for its argument that
the Provisional Application does not disclose an implant with radiopaque markers.
This argument is legally irrelevant and completely lacks foundation. What
NuVasive said to the FDA concerning a premarket submission and why, has not
been established and has no bearing on the disclosure of the Provisional

Application.  *Ariad Pharm.*, 598 F.3d at 1351 ("[T]he test requires an objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art.").

Alphatec's IPR Argument Is Inaccurate: Alphatec contends that NuVasive took a contrary position with respect to whether radiopaque spikes may also be "radiopaque markers" in Alphatec's IPRs. Ex. 12 (Sachs 11/20/20 Rpt.) ¶¶ 176-177.  Not so.  NuVasive conceded that spikes made of radiopaque material constitute "radiopaque markers."  Ex. 18 (IPR2019-00361(Patent Owner's Prelim. Resp.), at 60.  NuVasive's position during Alphatec's IPRs —which the PTAB agreed with—was that the prior art did not teach the claimed *configuration* of radiopaque markers.  Ex. 17 (IPR2019-00361 (Patent Owner's Br.) at 58-60; *see generally* Doc. No. 288-1 (IPR2019-00362, Final Written Decision).  Thus, like Alphatec's "FDA communications" argument addressed above, the Court should disregard Alphatec's IPR argument as an irrelevant sideshow.

Because there is no triable issue of fact regarding the priority date of the Implant Patents, summary judgment is warranted.

### C.   Alphatec does not contend an invalidating event occurred before the critical date

There is no triable issue of fact regarding the prior public use and sale of implants within the scope of the claims prior to the critical date.  The Implant Patents are entitled to a priority date of March 29, 2004 and none of the allegedly invalidating events asserted by Alphatec occurred before March 29, 2003.  Doc. No. 296-6 at 12-15; Ex. 12 (Sachs 11/20/20 Rpt.) ¶¶ 293-327. Accordingly, summary judgment of validity under § 102(b) is proper.

### V.   CONCLUSION

As discussed above, there are no issues of material fact, and summary judgment is appropriate as a matter of law.

Dated: January 26, 2021 **WILSON SONSINI GOODRICH & ROSATI**

By: _____
Paul D. Tripodi II (SBN162380)
*Attorneys for Plaintiff NuVasive, Inc.*

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing document has been served on this date to all current and/or opposing counsel of record, if any to date, who are deemed to have consented to electronic service via the Court's CM/ECF system per Civ.L.R. 5.4(d). Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct. Executed this 26th day of January 2021 at Los Angeles, California.

By: */s/ Soo Kim*
SOO KIM