NIMALKA R. WICKRAMASEKERA (SBN: 268518)
nwickramasekera@winston.com
LEV TSUKERMAN (SBN: 319184)
ltsukerman@winston.com
WILLIAM M. WARDLAW (SBN: 328555)
wwardlaw@winston.com
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

GEORGE C. LOMBARDI (*pro hac vice*)
glombardi@winston.com
BRIAN J. NISBET (*pro hac vice*)
bnisbet@winston.com
SARANYA RAGHAVAN (*pro hac vice*)
sraghavan@winston.com
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601-9703
Telephone: (312) 558-5600
Facsimile: (312) 558-5700

Attorneys for Defendants
ALPHATEC HOLDINGS, INC. AND ALPHATEC SPINE, INC.

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA - SAN DIEGO DIVISION**

| | |
|---|---|
| NUVASIVE, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>ALPHATEC HOLDINGS, INC., a Delaware corporation and ALPHATEC SPINE, INC., a California corporation,<br><br>Defendants. | **Case No. 18-CV-00347-CAB-MDD**<br><br>**DEFENDANTS' OPPOSITION TO GREGORY LUCIER'S MOTION TO QUASH OR MODIFY TRIAL SUBPOENA**<br><br>**Judge:** Hon. Cathy Ann Bencivengo<br>**Courtroom:** 4C<br><br>PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT |

## **TABLE OF CONTENTS**

Page

I. INTRODUCTION ..................................................................................................1

II. BACKGROUND ....................................................................................................2

III. ARGUMENT ..........................................................................................................4

    A. Mr. Lucier regularly transacts business in person in San Diego ...............5

    B. Mr. Lucier may be a critical rebuttal witness and his appearance imposes no undue burden..................................................................................8

    C. Mr. Lucier cannot force Alphatec to use his deposition testimony instead of live testimony ...........................................................................12

    D. Alphatec has already agreed to pay Mr. Lucier's attendance fees...........12

IV. CONCLUSION .....................................................................................................13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*,
  300 F.R.D. 406 (C.D. Cal. 2014) .................................................................................. 8

*Apple Inc. v. Qualcomm Inc.*,
  2018 WL 3861893 (S.D. Cal. Aug. 14, 2018) ............................................................. 4

*In re Application for Order Quashing Deposition Subpoenas*,
  2002 WL 1870084 (S.D.N.Y. Aug. 14, 2002) ........................................................ 6, 7

*Arminak v. Arminak & Assocs., LLC*,
  2017 WL 10402987 (C.D. Cal. Mar. 30, 2017) .......................................................... 8

*Bostian v. Suhor Industries, Inc.*,
  2007 WL 3005177 (N.D. Okla. 2007) ..................................................................... 6, 7

*Cobb v. Rodriguez*,
  2016 U.S. Dist. LEXIS 102823 (S.D. Cal. Aug. 2, 2016) ........................................... 8

*DataQuill Ltd. v. Kyocera Wireless Corp.*,
  2005 WL 8173292 (S.D. Cal. Oct. 26, 2005) ................................................... 2, 4, 8, 9

*Dietz v. Spangenberg*,
  2014 WL 537753 (D. Minn. Feb. 11, 2014) ............................................................ 6, 7

*Expansion Cap. Grp., LLC v. Patterson*,
  2020 WL 42786 (D. Del. Jan. 3, 2020) ........................................................................ 6

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
  564 U.S. 915 (2011) ..................................................................................................... 7

*Grain Processing Corp. v. Am. Maize–Prods. Co.*,
  185 F.3d 1341 (Fed. Cir. 1999) ................................................................................. 10

*In re Hahn*,
  2021 WL 4081577 (S.D. Cal. Sept. 8, 2021) ............................................................... 4

*Halliburton Energy Servs., Inc. v. M-I, LLC*,
  2006 WL 2663948 (S.D. Tex. Sept. 15, 2006) .................................................. 5, 7, 13

*IGT v. All. Gaming Corp.*,
  2008 WL 11451148 (D. Nev. Oct. 21, 2008) ............................................................ 12

*M'Baye v. New Jersey Sports Prod., Inc.*,
  246 F.R.D. 205 (S.D.N.Y. 2007) ............................................................................ 5, 7

*Mustafa Dogan Dairy Consulting, LLC v. La Colombe Torrefaction, Inc.*,
  2018 WL 9801022 (W.D. Mich. Sept. 7, 2018) ....................................................... 5, 7

*Perera v. United States Fid. & Guar. Co.*,
  2007 U.S. Dist. LEXIS 90331 (M.D. Fla. Dec. 3, 2007) .......................................... 12

*Pizzuti v. Nashville Hosp. Cap., LLC*,
  2018 WL 5303061 (S.D. Ohio Oct. 25, 2018) ......................................................... 8

*Regents of the Univ. of Cal. v. Kohne*,
  166 F.R.D. 463 (S.D. Cal. 1996) ........................................................................ 5, 7

*Rigsbee v. City & Cty. of Honolulu*,
  2019 WL 1089636 (D. Haw. Mar. 7, 2019) ............................................................ 12

*SBP LLLP v. Hoffman Constr. Co. of Am.*,
  2021 WL 3131310 (D. Idaho July 23, 2021) ........................................................... 8

*United States v. Yida*,
  498 F.3d 945 (9th Cir. 2007) ................................................................................. 12

*Williams v. City of Dallas*,
  178 F.R.D. 103 (N.D. Tex. 1998) ............................................................................ 4

*Williams v. Cty. of San Diego*,
  2019 WL 5963969 (S.D. Cal. Nov. 13, 2019) ........................................................... 8

*In re Yassai*,
  225 B.R. 478 (Bankr. C.D. Cal. 1998) ..................................................................... 4

**Statutes**

28 U.S.C. § 1821 ............................................................................................................ 13

**Other Authorities**

Fed. R. Civ. P. 45 ........................................................................................................ 4, 7

Fed. R. Civ. P. 45(c)(1)(A) .............................................................................................. 4

https://corzahealth.com/contact/ ...................................................................................... 3

## I. INTRODUCTION

Mr. Lucier's motion to quash should be denied because he "regularly transacts business in person" within 100 miles of the Southern District of California. His own affidavit makes this undeniably clear—he works in, rents property in, and regularly travels to the San Diego area, including approximately seventeen times in 2020, twenty times in 2021, and twice already this year (which is not even two months old). Though he downplays his frequent trips to San Diego, Mr. Lucier does not—because he cannot—deny that he conducts business in person in San Diego. He is, after all, the CEO and Chairman of a company with offices in San Diego, where he frequently visits and does business, and serves as a director on the boards of at least two companies based in San Diego. The caselaw firmly supports a finding that such activity brings Mr. Lucier well-within Rule 45's reach, and so too does commonsense.

Mr. Lucier's alternative argument that his trial subpoena imposes an undue burden equally fails. Given his frequent, regular trips to San Diego, the travel burden for trial, if any, is minimal. And whatever burden there may be is far outweighed by the relevance of Mr. Lucier's live testimony. First, Mr. Lucier—NuVasive's former CEO and the person who decided to file this lawsuit—has unique knowledge about NuVasive's alleged harm. Since the very start of this case four years ago—and continuing to this day—NuVasive has claimed "lost profits" damages because of Alphatec's alleged infringement. NuVasive even disclosed Mr. Lucier as possessing relevant testimony on this exact issue—and others—having identified him as knowledgeable about:

> Strategy regarding NuVasive's product portfolio, including products that practice or embody the patents-in-suit; ***information relevant to NuVasive's claims for damages and injunctive relief, including irreparable harm, reasonable royalty, and lost profits***; Pat Miles' role and responsibilities at NuVasive, and Pat Miles' departure from NuVasive; NuVasive's decision to sue Alphatec in the above-captioned litigation; the damages and harm to NuVasive resulting from Alphatec's infringement of the patents-in-suit.

Ex. 1 (NuVasive Supplemental Rule 26(a)(1) Disclosures) at 6 (emphasis added).[1] Mr. Lucier's testimony will show that NuVasive's disintegrating surgeon relationships—not Alphatec's product line—were the cause of any lost business. His testimony is thus highly relevant to rebut NuVasive's lost profits claim. And although Mr. Lucier argues that "other current NuVasive employees" could address the same topics as him (Doc. No. 373-1 at 12), Mr. Lucier—like NuVasive—"does not have the right to make that trial witness decision for [Alphatec]." *DataQuill Ltd. v. Kyocera Wireless Corp.*, 2005 WL 8173292, at *3 (S.D. Cal. Oct. 26, 2005).

Second, Alphatec subpoenaed Mr. Lucier as a possible rebuttal witness to NuVasive's examination of Mr. Miles, the scope of which is not yet known. If NuVasive probes Mr. Miles on facts related to its now-rejected assignor estoppel defense, like Mr. Miles's discussions with private equity groups, his personal investments, and his employment negotiations, to tarnish Mr. Miles, Mr. Lucier will be key to rebutting those false claims.

Because Mr. Lucier is within the Court's subpoena power under Rule 45(c)(1)(A), he is available, and there is no undue burden, the Court should deny the motion to quash.

II.     **BACKGROUND**

Gregory Lucier was NuVasive's CEO from 2015 until he resigned in November 2018. Doc. No. 373-2 (Lucier Decl.) ¶¶ 3–4. He also served as Chairman of NuVasive's Board of Directors from 2015 until May 2021. *Id.* ¶¶ 3, 5. While Mr. Lucier was CEO and Chairman, NuVasive filed this patent infringement lawsuit against Alphatec. *See* Doc. No. 1 (filed February 13, 2018). Indeed, Mr. Lucier was involved in the decision to file the lawsuit. Ex. 2 (Lucier Dep. Tr.) at 5:19–21. NuVasive admits that Mr. Lucier has personal knowledge on, among others, "NuVasive's claims for damages and injunctive relief, including irreparable harm, reasonable royalty, and lost profits; Pat

---

[1] All "Ex." citations are to exhibits attached to the concurrently filed declaration of Brian J. Nisbet.

Miles' role and responsibilities at NuVasive, and Pat Miles' departure from NuVasive; NuVasive's decision to sue Alphatec in the above-captioned litigation; [and] the damages and harm to NuVasive resulting from Alphatec's infringement of the patents-in-suit." Ex. 1 at 6.

Though Mr. Lucier recently moved to Aspen, Colorado, he has longstanding ties to the San Diego area. Before he moved to Colorado in 2020, Mr. Lucier resided and owned a home in Encinitas, California. Doc. No. 373-2 ¶ 26. When he moved, he transferred that property to an irrevocable trust for his children. *Id.* ¶ 27. Mr. Lucier still rents that property out himself when he travels to San Diego. *Id.*

Mr. Lucier is currently the CEO of Corza Health, Inc., which is based in and has offices in Del Mar, California. *Id.* ¶¶ 17, 19.[2] He "principally" works out of Corza Health's Aspen, Colorado office though. *Id.* ¶ 23. Mr. Lucier also serves on the boards of directors for two companies in the San Diego area: Maravai LifeSciences Holdings, Inc. (based in Del Mar, CA) and Epic Sciences, Inc. (based in San Diego, CA). *Id.* ¶ 34. In fact, last year, Mr. Lucier traveled to San Diego to attend multiple in person board meetings for Maravai and Epic Sciences, collectively. *Id.* ¶¶ 35–36. But those are not the only occasions that Mr. Lucier has traveled to San Diego since he moved to Colorado.

In the last two years, Mr. Lucier has returned to the San Diego area nearly forty separate times. He traveled to San Diego approximately seventeen times in 2020 and approximately twenty times in 2021. *Id.* ¶ 29. Although 2022 is not even two months old, Mr. Lucier has already traveled to the San Diego area once this year and currently has plans for one more trip this month (February 2022) to attend a wedding. *Id.* When Mr. Lucier travels to San Diego, he typically visits Corza Health's Del Mar office once or twice per trip. *Id.* ¶ 31. Corza Health has also paid for Mr. Lucier's airfare to San

---

[2] While Corza Health's website notes that it has "offices in Colorado and San Diego," the only address listed on its website is its San Diego address. *See* https://corzahealth.com/contact/ (listing only one address, 2010 Jimmy Durante Blvd, Suite 230, Del Mar, CA 92014).

Diego for approximately nine of his trips—three in 2020 and six in 2021. *Id.* ¶ 30.

On December 26, 2021, while Mr. Lucier was in San Diego and staying at the Encinitas property for two weeks, Alphatec served him with a subpoena to testify at trial on January 18, 2022. *Id.* ¶ 37. The Court subsequently rescheduled the trial to begin March 1, 2022. Doc. No. 368. Alphatec then re-served Mr. Lucier with a new trial subpoena to appear for the present trial dates.

### III. ARGUMENT

"Any party seeking to quash a subpoena bears the burden of persuasion." *Apple Inc. v. Qualcomm Inc.*, 2018 WL 3861893, at *3 (S.D. Cal. Aug. 14, 2018); *In re Hahn*, 2021 WL 4081577, at *2 (S.D. Cal. Sept. 8, 2021) ("Generally, the burden of persuasion is on the party moving to quash the subpoena."). To quash Alphatec's subpoena then, Mr. Lucier must show that he does not "regularly transact[] business in person" within 100 miles of this Court. Fed. R. Civ. P. 45(c)(1)(A). Because the record demonstrates that Mr. Lucier regularly transacts business in the San Diego area, he has failed to meet his burden and the Court should deny the motion to quash.

Because Mr. Lucier is within Rule 45's geographic reach, he then argues that the subpoena imposes an undue burden on him. Mr. Lucier bears a "heavy" burden to quash a subpoena on these grounds. *In re Yassai*, 225 B.R. 478, 484 (Bankr. C.D. Cal. 1998); *Williams v. City of Dallas*, 178 F.R.D. 103, 109 (N.D. Tex. 1998). Courts have "broad discretion in determining whether a subpoena is unduly burdensome." *DataQuill*, 2005 WL 8173292, at *1. "Illustratively, it might be unduly burdensome to compel an adversary to attend trial as a witness if the adversary is known to have no personal knowledge of matters in dispute, especially so if the adversary would be required to incur substantial travel burdens." Fed. R. Civ. P. 45 Advisory Committee's Note (1991 amend.). Neither is true here. Not only does Mr. Lucier have intimate personal knowledge of key issues, as confirmed by NuVasive, he also made no attempt to show that coming to San Diego—where he often travels—imposes any substantial travel burden.

1      For the reasons detailed below, this Court should deny Mr. Lucier's motion to
2 quash.

### A.    Mr. Lucier regularly transacts business in person in San Diego

The phrase "regularly transacts business in person" in Rule 45(c)(1)(A) "means just what it says." *Regents of the Univ. of Cal. v. Kohne*, 166 F.R.D. 463, 464 (S.D. Cal. 1996). There is no bright-line rule, and each case is fact-specific. But cases applying Rule 45(c)(1)(A) make clear that Mr. Lucier's activity place him squarely in the camp of "regularly" transacting business in the San Diego area.

In *Halliburton*, for example, the defendant served a nonparty German resident, Mr. Mueller, with a subpoena for him to be deposed in Houston, Texas. *Halliburton Energy Servs., Inc. v. M-I, LLC*, 2006 WL 2663948, at *1 (S.D. Tex. Sept. 15, 2006). Mr. Mueller regularly traveled to Houston to conduct business, averaging four trips each year and staying for approximately ten days each trip. *Id.* The court concluded that Mueller's "regular, frequent, and extended trips to Houston clearly place him in the category of regularly transacting business in person in this city." *Id.* at *2. Spending an average of "forty days in Houston each year defeats his contention that he does not regularly transact business in person here." *Id.* The court therefore compelled Mr. Mueller's compliance with the subpoena.

At the other end of the spectrum—not applicable here—far more "infrequent and sporadic" trips will not suffice as regularly transacting business. *Mustafa Dogan Dairy Consulting, LLC v. La Colombe Torrefaction, Inc.*, 2018 WL 9801022, at *2 (W.D. Mich. Sept. 7, 2018). In *Mustafa*, which Mr. Lucier cites, the subpoenaed individuals only "recently visited the Michigan facility" that was the subject of the lawsuit. *Id.* That is, a single trip is not enough. And in *M'Baye*, which Mr. Lucier also relies on, the subpoenaed individual, a U.K. resident, traveled to an area within 100 miles of the deposition location (New York) on only five occasions over a two-year period, for a total of fourteen to eighteen days. *M'Baye v. New Jersey Sports Prod., Inc.*, 246 F.R.D. 205, 207–08 (S.D.N.Y. 2007). That was "insufficient to render a person amenable to a

subpoena." *Id.* at 208. Similarly insufficient is twice yearly visits, *Bostian v. Suhor Indus., Inc.*, 2007 WL 3005177, at *1 (N.D. Okla. 2007), three times in one year, *Dietz v. Spangenberg*, 2014 WL 537753, at *5 (D. Minn. Feb. 11, 2014), and visiting four times within five years, *In re Application for Order Quashing Deposition Subpoenas*, 2002 WL 1870084, at *3 (S.D.N.Y. Aug. 14, 2002) ("*Nissan*").

Mr. Lucier's trips to San Diego are neither infrequent nor sporadic. In 2020, he traveled to San Diego approximately seventeen times, and last year in 2021 he traveled to San Diego approximately twenty times. Doc. No. 373-2 ¶ 29. And barely two months into this new year, Mr. Lucier has already traveled to San Diego at least once. *Id.* In total, Mr. Lucier has almost forty separate trips to San Diego in the last two years. Although Mr. Lucier does not say how long he was in San Diego for each trip, even a conservative estimate of an average of three days per trip[3] means that Mr. Lucier spends an average of approximately sixty days—or two months—per year in the San Diego area. It strains credulity for Mr. Lucier to argue that spending at least two months out of the year in San Diego does not bring him within the confines of Rule 45(c)(1)(A).

Indeed, Mr. Lucier admits that he "regularly travels to the San Diego area," as he must, though he attempts to qualify his trips as "principally for leisure." Doc. No. 373-1 at 8. His distinction is unavailing—both legally and factually. Although "vacationing is not the same as regularly conducting business in person" (Doc. No. 373-1 at 9 (quoting *Expansion Cap. Grp., LLC v. Patterson*, 2020 WL 42786, at *2 (D. Del. Jan. 3, 2020))), Mr. Lucier notably does not aver that he *only* vacations in San Diego. In *Expansion Capital Group*, the subpoenaed individual visited Delaware "only for a few days a year for family vacations and *does not conduct business* in person [t]here." 2020 WL 42786, at *2 (emphasis added). Compare that with Mr. Lucier who, to the contrary, does in fact conduct business in person in San Diego because he visits Corza

---

[3] When Alphatec initially served Mr. Lucier in person in San Diego with a trial subpoena, he was staying in San Diego for two weeks. Doc. No. 373-2, Lucier Decl. ¶ 37.

Health's Del Mar office on his trips. Doc. No. 373-2 ¶ 31. Corza Health even paid for his airfare to San Diego for three trips in 2020 and six trips in 2021. *Id.* ¶ 30. Those nine trips in the last two years *alone* are sufficient to find that Mr. Lucier regularly transacts business in person in San Diego. And on top of that, in 2021, Mr. Lucier attended *four* different board meetings in person in San Diego—two for Maravai LifeSciences Holdings, Inc. and two for Epic Sciences, Inc. *Id.* ¶¶ 35–36. Regardless of what Mr. Lucier conveniently wants to consider his "principal" purpose for travel, his affidavit conclusively establishes that he transacts business in person when he travels to San Diego. And he unquestionably travels to San Diego regularly.

The principles underlying Rule 45(c)(1)(A)'s geographic limitation reinforce that Mr. Lucier regularly transacts business in person in San Diego. Though the phrase "regularly transacts business in person" may bring to mind the concept of personal jurisdiction, the two are distinctly different. A court's authority to exercise personal jurisdiction, on the one hand, is concerned with due process and such minimum contacts so as not to offend "traditional notions of fair play and substantial justice." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011). Rule 45, on the other hand, "responds to an entirely different set of concerns." *Regents of Univ. of Cal.*, 166 F.R.D. at 464. The "*only* concern" under Rule 45(c) is "the burden to the witness of being required to physically appear." *Id.* (emphasis added). Given Mr. Lucier's frequent and repeated visits to San Diego, there is minimal, if any, burden to requiring him to physically appear here to testify live at trial.

Under any reasonable interpretation of what constitutes "regularly transact[ing] business in person," Mr. Lucier's activity easily meets the definition. In the past two years, Mr. Lucier has traveled to San Diego on almost forty separate occasions. Not only is the regularity of his travel readily distinguishable from the one to three trips per year that *Mustafa*, *M'Baye*, *Bostian*, *Dietz*, and *Nissan* found too infrequent, Mr. Lucier's almost twenty trips per year far surpasses even the four trips per year that the *Halliburton* court found was sufficient to fit within Rule 45(c)(1)(A)'s geographic

limitation. Mr. Lucier regularly transacts business in person in San Diego and therefore this Court should deny his motion to quash.

### B. Mr. Lucier may be a critical rebuttal witness and his appearance imposes no undue burden

Because Alphatec's trial subpoena complies with Rule 45(c)(1)(A), and thus compels Mr. Lucier to attend trial, Mr. Lucier resorts to claiming undue burden to avoid appearing. Instead of demonstrating any burden, however, Mr. Lucier goes to great lengths to argue that his testimony is unnecessary, calling it "cumulative" and of "negligible" value. (Doc. No. 373-1 at 9–12.) This misses the mark entirely.

Mr. Lucier cites and relies on cases discussing the burden of responding to a *discovery* subpoena. *See Arminak v. Arminak & Assocs., LLC*, 2017 WL 10402987, at *3 (C.D. Cal. Mar. 30, 2017) (deposition subpoenas); *Williams v. Cty. of San Diego*, 2019 WL 5963969, at *1 (S.D. Cal. Nov. 13, 2019) (deposition subpoena to a minor); *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 408 (C.D. Cal. 2014) (deposition subpoena listing thirty topics); *Pizzuti v. Nashville Hosp. Cap., LLC*, 2018 WL 5303061, at *2 (S.D. Ohio Oct. 25, 2018) (deposition subpoena).[4] But Alphatec's subpoena seeks the trial testimony of Mr. Lucier, which involves an entirely different balance of considerations. *DataQuill*, 2005 WL 8173292, at *3 (rejecting undue burden argument in motion to quash trial subpoena where movant "cites case law addressing depositions, not trial subpoenas"). This is not a matter of party fishing for relevant information, imposing discovery burdens on a nonparty in the hopes of possibly uncovering some evidence. Mr. Lucier was the CEO of NuVasive and "has personal knowledge of facts and events relevant to the matters at issue in the

---

[4] Though two cases Mr. Lucier cites did involve trial subpoenas, both are inapposite. In *SBP LLLP*, the defendant served a subpoena on one of the plaintiff's trial attorneys to appear and testify at trial. *SBP LLLP v. Hoffman Constr. Co. of Am.*, 2021 WL 3131310, at *1 (D. Idaho July 23, 2021). There was thus the unique burden of disqualifying trial counsel from representing the plaintiff. *Id.* And in *Cobb*, the pro se plaintiff subpoenaed three officers to testify at trial, but none of the three officers were involved in any of the events at all. *Cobb v. Rodriguez*, 2016 U.S. Dist. LEXIS 102823, at *2 (S.D. Cal. Aug. 2, 2016). Unquestionably, Mr. Lucier was involved in and has personal knowledge related to the relevant events here.

upcoming trial." *Id.* And while Mr. Lucier says that other NuVasive employees could cover the same topics as him (Doc. No. 373-1 at 12), neither Mr. Lucier nor NuVasive has "the right to make that trial witness decision for [Alphatec]." *DataQuill*, 2005 WL 8173292, at *3.

In any event, Mr. Lucier possesses unique personal knowledge of facts and information that are highly relevant to issues that NuVasive itself has implicated in this trial. Indeed, despite Mr. Lucier's best efforts to disclaim relevant knowledge, NuVasive itself identified Mr. Lucier in its Rule 26(a)(1) disclosures as an individual with information that NuVasive may use to support its claims or defenses. *See* Ex. 1 at 6. Specifically, NuVasive said that its former CEO Mr. Lucier is knowledgeable about:

> Strategy regarding NuVasive's product portfolio, including products that practice or embody the patents-in-suit; information relevant to NuVasive's claims for damages and injunctive relief, including irreparable harm, reasonable royalty, and lost profits; Pat Miles' role and responsibilities at NuVasive, and Pat Miles' departure from NuVasive; NuVasive's decision to sue Alphatec in the above-captioned litigation; the damages and harm to NuVasive resulting from Alphatec's infringement of the patents-in-suit.

Ex. 1 at 6. These are the same basic topics that Alphatec identified. *See* Doc. No. 373-1 at 9 (quoting Doc. No. 355 at 45). And of the nearly thirty witnesses that NuVasive disclosed, Mr. Lucier is the ***only*** one identified as knowledgeable about Mr. Miles's role and responsibilities at NuVasive and his departure from the company.

Though Alphatec maintains it may call Mr. Lucier to testify on any of the topics it identified in the Joint Pretrial Order, Mr. Lucier's personal knowledge about "NuVasive's contentions regarding harm in this litigation" and "damages related issues" is particularly illustrative. *Id.*; *see also* Ex. 1 at 6 (NuVasive disclosing Mr. Lucier as having knowledge about "the damages and harm to NuVasive").[5]

In this case NuVasive inflates its alleged harm and claims millions in lost

---

[5] NuVasive's witness list for trial also identifies Mr. Lucier as a witness that it may call to testify regarding "loss of business and business opportunities due to Alphatec's infringement." Doc. No. 355 at 26.

profits—none of which is supported by competent expert opinion. To recover lost profits, NuVasive "must show 'causation in fact,' establishing that 'but for' the infringement, [it] would have made additional profits." *Grain Processing Corp. v. Am. Maize–Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999). Mr. Lucier's has relevant testimony illustrating exactly why NuVasive cannot make that showing. As he admits, Mr. Lucier was never worried about Alphatec's alleged infringement, but was instead deeply concerned that Mr. Miles "brings with him particular surgeon relationships." Ex. 2 (Lucier Dep. Tr.) at 63:13–19; *see also id.* at 96:22–25 (testifying that Mr. Miles "knew every surgeon that NuVasive had and its relationship with those individuals, and so him going to a competitor was something that required us to take that very seriously"). To that same end, after Mr. Miles left NuVasive for Alphatec, Mr. Lucier sought to "lock down surgeons" with NuVasive—including Dr. Jim Youssef, NuVasive's only technical expert. *See id.* at 104:10–19; *see also* Doc. No. 253-3 at 3 (Mr. Lucier writing, in the wake of Mr. Miles's departure, "we've got to use speed to our advantage to lock down as many of our surgeons as possible").

And while Mr. Lucier selectively quotes this Court's comments during the pretrial conference to suggest that "the Court indicated that *limited testimony* concerning the reasons for NuVasive's lost sales—specifically relating to the relationship between NuVasive and its physicians—may be relevant" (Doc. No. 373-1 at 13 (emphasis added)), this Court painted with broader strokes:

> So there is room, I suppose, to get in there when you get into these arguments about these redirected surgeons and why it's -- *because at least for their lost profit claims, it's but for, and if the but for isn't really because you were selling a product but it's because they had a disintegrating relationship with NuVasive*. And, again, this is just me kind of, I wouldn't say speculating but opining, you know, just generally *if that's the kind of testimony, then, yes*.

Doc. No. 373-5 (Pretrial Conf. Tr.) at 62:14–21 (emphasis added). The reasons for NuVasive's lost sales are directly relevant to NuVasive's lost profits claim and the "but

for" analysis upon which it is predicated. Alphatec may need to rebut those claims through Mr. Lucier's testimony.

Mr. Lucier also asserts that his testimony on NuVasive's harm would be "cumulative at best" because NuVasive identifies three other individuals on its "will call" list that can cover the same topic. Doc. No. 373-1 at 13. Those three individuals are allegedly Paul McClintock, Chris Burton, and Kyle Malone. *Id.* at 13 & n.8. Remarkably, however, NuVasive did not identify a single one of those three witnesses during discovery as possessing any knowledge related to NuVasive's harm, lost profits damages, or surgeon relationships. *See* Doc. No. 355 at 23–24. Mr. Lucier's bald assertion aside, his testimony would not be addressed by other witnesses at trial and would not be cumulative.

Mr. Lucier will also be a key rebuttal witness particularly if NuVasive is permitted to explore with Mr. Miles (who NuVasive has already subpoenaed for trial) facts that NuVasive claims support its now-rejected assignor estoppel defense (Doc. No. 282 at 14–17), namely Mr. Miles's discussions with private equity groups, his personal investments, and his employment negotiations with Alphatec. Should NuVasive be allowed to falsely suggest that Mr. Miles was working against NuVasive's interests while still employed there, Mr. Lucier's testimony on Mr. Miles's responsibilities at NuVasive and his departure from the company will become even more relevant. *See* Ex. 1 at 6 (disclosing Mr. Lucier as knowledgeable about these topics). NuVasive has yet to say whether it will try to cross into this territory with Mr. Miles, despite multiple meet-and-confers to agree on the scope of Mr. Miles's and, in turn, Mr. Lucier's testimony. And because Alphatec does not know what exactly NuVasive will examine Mr. Miles on, Mr. Lucier may serve as a key rebuttal witness depending on the scope of NuVasive's examination of Mr. Miles. To protect its interests then, Alphatec must reserve the right to call Mr. Lucier at trial.

### C. Mr. Lucier cannot force Alphatec to use his deposition testimony instead of live testimony

As a final attempt to avoid Alphatec's valid trial subpoena, Mr. Lucier asks this Court to constrain Alphatec to only introducing Mr. Lucier's deposition testimony instead of presenting his live testimony for the jury. Mr. Lucier cites no authority to support his demand. The case that Mr. Lucier does cite, *Perera*, is inapplicable here. Doc. No. 373-1 at 17. In *Perera*, not only did the serving party (the defendant) concede that the nonparty witnesses were outside the court's subpoena power, the defendant also stated that it subpoenaed the witnesses for the sole "purpose of establishing their unavailability." *Perera v. United States Fid. & Guar. Co.*, 2007 U.S. Dist. LEXIS 90331, at *4 (M.D. Fla. Dec. 3, 2007). The defendant all along simply intended to use their deposition testimony at trial. *Id.* Unlike *Perera*, Mr. Lucier is within Rule 45(c)(1)(A)'s geographic scope and is thus required to testify live. Further, especially because this is a jury trial, there is a "strong preference for live testimony." *Rigsbee v. City & Cty. of Honolulu*, 2019 WL 1089636, at *2 (D. Haw. Mar. 7, 2019); *see also United States v. Yida*, 498 F.3d 945, 950 (9th Cir. 2007) ("Underlying … the rules of evidence is a preference for live testimony."). "Live testimony gives the jury (or other trier of fact) the opportunity to observe the demeanor of the witness while testifying." *Yida*, 498 F.3d at 950; *IGT v. All. Gaming Corp.*, 2008 WL 11451148, at *2 (D. Nev. Oct. 21, 2008) ("[I]t is highly preferred for the jury to experience live testimony than a videotape.").

Because Mr. Lucier is within the Court's subpoena power and is available, Alphatec is entitled to call him to testify live at trial.[6]

### D. Alphatec has already agreed to pay Mr. Lucier's attendance fees

Though Mr. Lucier requests that the Court modify the subpoena to require

---

[6] Mr. Lucier's use of Covid-19 as "another reason that requiring Mr. Lucier to comply with the Subpoena is unduly burdensome" rings hollow. Doc. No. 373-1 at 17 n.11. Over the last two years, during the height of the pandemic, Mr. Lucier has travelled to San Diego almost forty times. And he is set to do so again this month for a wedding. Doc. No. 373-2 ¶ 29.

Alphatec to pay his witness fee and travel allowance for attendance at trial under 28 U.S.C. § 1821, Alphatec has already agreed to do so. *See* Doc. No. 373-1 at 4 n.4. This is yet another reason why requiring Mr. Lucier's attendance at trial would not be unduly burdensome. *See Halliburton*, 2006 WL 2663948, at *2 (noting that given the serving party agreed to pay for the witness's travel to Houston for his deposition, the witness did not establish that compliance with the subpoena would be "unreasonable and oppressive").

Mr. Lucier also indicates that he is unavailable to testify on March 1–4 and 10–11, 2022, due to preexisting conflicts. Doc. No. 373-1 at 18. Alphatec is willing to accommodate his schedule and arrange to call him to testify between March 7–9, 2022, when Mr. Lucier acknowledges he is available. And if Alphatec determines it need not call Mr. Lucier at trial—which may turn on how NuVasive probes Mr. Miles—Alphatec will inform NuVasive and Mr. Lucier at the earliest possible moment.

## IV. CONCLUSION

Alphatec's subpoena to Mr. Lucier requiring his trial attendance complies with Rule 45(c)(1)(A)'s geographical limitations because the record clearly establishes that Mr. Lucier regularly transacts business in person in San Diego. And Mr. Lucier has made no showing that complying with the subpoena imposes an undue burden on him. For all the reasons discussed above, Alphatec respectfully requests that the Court deny Mr. Lucier's motion to quash.

Dated: February 23, 2022

WINSTON & STRAWN LLP

By: */s/ Nimalka R. Wickramasekera*
NIMALKA R. WICKRAMASEKERA

Attorneys for Defendants
ALPHATEC HOLDINGS, INC. AND
ALPHATEC SPINE, INC.

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was filed with the Court's CM/ECF system which will provide notice to all counsel deemed to have consented to electronic service. All other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing document by mail on this day.

I declare under penalty of perjury under the Laws of the United States of America that the above is true and correct. Executed this 23rd day of February 2022 at San Diego, California.

Dated: February 23, 2022                WINSTON & STRAWN LLP

                                        By: */s/ Nimalka R. Wickramasekera*
                                            NIMALKA R. WICKRAMASEKERA